1  CHARLES E. PATTERSON (CA SBN 120081)
   CPatterson@mofo.com
2  STEVEN M. HAINES (CA SBN 166677)
   Shaines@mofo.com
3  NANCY R. THOMAS (CA SBN 236185)
   NThomas@mofo.com
4  MORRISON & FOERSTER LLP
   555 West Fifth Street
5  Los Angeles, California  90013-1024
   Telephone:  213.892.5200
6  Facsimile:   213.892.5454

7  Attorneys for Plaintiff and Counterclaim Defendant
   Herbalife International of America, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12

| | |
|---|---|
| 13  Herbalife International of America, Inc., a Nevada Corporation, | Case No. CV 07 2529 GAF (FMOx) |
| 14                     Plaintiff, | Hon. Gary A. Feess |
| 15          v. | **NOTICE OF MOTION AND MOTION BY HERBALIFE INTERNATIONAL OF AMERICA, INC. TO DISMISS THE AMENDED COUNTERCLAIM;** |
| 16  Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; Dianna N. Thompson; and Jason Fisher, | |
| 17 | |
| 18 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 19                     Defendants. | |
| 20 | Date:          March 24, 2008 |
| 21 | Time:          9:30 a.m. |
|    | Courtroom: 740-Roybal |

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO DEFENDANTS/COUNTERCLAIMANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 24, 2008, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 740 - Roybal of the above Court, Plaintiff and Counterclaim Defendant Herbalife International of America, Inc. ("Herbalife"), will move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all causes of action of the Amended Counterclaim filed by Defendants and Counterclaimants Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jason Fisher, Dianna Thompson, Jeff Orr and Kathy Orr (collectively, "Defendants").

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the pleadings and other files herein, and such other written and oral argument as may be presented to the Court.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 20, 2007 and February 25, 2008.

Dated:     March 3, 2008          MORRISON & FOERSTER LLP


By: /s/ Nancy R. Thomas
                                  Charles E. Patterson
                                  Nancy R. Thomas

                                  Attorneys for Plaintiff and
                                  Counterclaim Defendant
                                  HERBALIFE INTERNATIONAL
                                  OF AMERICA, INC.

1

1

# TABLE OF CONTENTS

2

**Page**

INTRODUCTION ..................................................................................................1

FACTS ALLEGED IN THE AMENDED COUNTERCLAIM..............................2

PROCEDURAL HISTORY....................................................................................3

ARGUMENT .........................................................................................................4

I.    DEFENDANTS CANNOT STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT 1)...............................................................................4

    A.    Defendants Do Not Plead Facts Demonstrating the Existence of a Business Relationship in Which the Probability of Future Economic Benefit Is More Than Speculative ......................................4

    B.    Defendants Have Not and Cannot Plead an Independently Wrongful Act........................................................................................6

II.   DEFENDANTS CANNOT STATE A CLAIM FOR NEGLIGENT INTERFERENCE (COUNT 2) ..................................................................7

III.  DEFENDANTS CANNOT STATE A CLAIM FOR VIOLATION OF THE UCL OR THE FAL (COUNTS 3 & 5)...................................................8

    A.    Defendants Cannot Pursue Claims Based on Their Herbalife Contracts or Herbalife Rules ...................................................................8

        1.    Herbalife's Enforcement of Certain Contractual Provisions To Protect Its Trade Secrets Falls Within the UCL "Safe Harbor"................................................................9

        2.    Defendants Lack Standing to Pursue Claims Based on Any Other Contractual Provisions or Rules .............................10

    B.    Defendants Cannot Pursue Claims Based on Harm to Their Herbalife Businesses ........................................................................11

    C.    Defendants Lack Standing To Pursue Claims Based on Alleged Lost Profits In Their Melaleuca Businesses.......................................12

IV.   DEFENDANTS CANNOT STATE A CLAIM FOR VIOLATION OF CALIFORNIA'S ENDLESS CHAIN SCHEME LAW (COUNT 4) ..........15

CONCLUSION...................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ........................................................... 7, 8

*Blank v. Kirwan*,
  39 Cal. 3d 311 ( 1985)................................................................................ 6, 14

*Bowen v. First Family Fin. Services., Inc.*,
  233 F.3d 1331 (11th Cir. 2000)........................................................................ 10

*Buckland v. Threshold Enterprises, Ltd.*,
  155 Cal. App. 4th 798 (2007) ........................................................................... 13

*CRST Van Expedited, Inc. v. Werner Enterprises*,
  479 F.3d 1099 (9th Cir. 2007)............................................................................ 4

*Cal. Auto. Assigned Risk Plan v. Garamendi*,
  234 Cal. App. 3d 1486 (1991) .......................................................................... 14

*Californians for Disability Rights v. Mervyn's, LLC*,
  39 Cal. 4th 223 (2006)............................................................................... 12, 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...................................................................................... 9

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000)............................................................................ 9

*Cortez v. Purolator Air Filtration  Products Co.*,
  23 Cal. 4th 163 (2000)...................................................................................... 13

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
  No. C 03-05340 JF, 2005 U.S. Dist. LEXIS 6228
  (N.D. Cal. March 30, 2005)................................................................................ 5

*Grisham v. Philip Morris U.S.A., Inc.*,
  40 Cal. 4th 623 (2007)...................................................................................... 11

*Harshbarger v. Philip Morris, Inc.*,
  No. 02-05267 JSW, 2003 U.S. Dist. LEXIS 25023
  (N.D. Cal. April 1, 2003)................................................................................... 11

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL No. 1409, M21-95, 05 Civ. 7116 (WHP),
  2006 U.S. Dist. LEXIS 66986 (S.D.N.Y. Sept. 20, 2006) ............................... 10

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979)........................................................................................ 7

la-965729

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003).................................................................4, 6, 7, 13, 15

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) ............................................................................ 9

*Lee v. Am. Express Travel Related Services*,
  No. C 07-04765 CRB, 2007 WL 4287557 (N.D. Cal. Dec. 6, 2007) ............ 10

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
  97 Cal. App. 4th 1282 (2002)........................................................................... 11

*Neet v. Holmes*,
  25 Cal. 2d 447 (1944) ....................................................................................... 16

*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*,
  74 Cal. App. 4th 1211 (1999) .......................................................................... 16

*Stockton Executive Limousine Charter Serv., Inc. v. Union Pac. R.R.*,
  No. CIV S-04-1999 LKK/PAN, 2006 U.S. Dist. LEXIS 25067
  (E.D. Cal. March 23, 2006) .............................................................................. 15

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ......................................................................................... 11

*Walker v. USAA Cas. Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007)...................................................... 13, 14

*Westside Ctr. Assocs. v. Safeway Stores, 23, Inc.*,
  42 Cal. App. 4th 507 (1996).............................................................................. 6

**STATUTES**

Cal. Bus. & Prof. Code

  § 17200 .....................................................................1, 7, 8, 11, 12, 13

  § 17203 ......................................................................................... 13

  § 17204 ......................................................................................... 13

  § 17208 ......................................................................................... 11

  § 17535 ......................................................................................... 13

  § 17500  ................................................................................... 11, 15

iii

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

Cal. Civ. Code

§ 1689.2 .................................................................................................2, 15, 16

Cal. Civ. Proc. Code

§ 338(a)........................................................................................................ 11

Cal. Penal Code

§ 327 ....................................................................................................6, 7, 15

la-965729

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants' amended counterclaim, like the original counterclaim they filed and abandoned without even responding to Herbalife's motion to dismiss it, lacks merit and should be dismissed.  Defendants' theory is that Herbalife's purportedly unfair contracts, misleading advertising and unfair business practices harmed them when they were distributors and interfered with their Melaleuca businesses. Defendants' lengthy tenure at Herbalife defeats any claims based on contracts, advertising and practices they knew of and participated in long ago.  Their interference claims fare no better because they have not and cannot identify any wrongful act and they lack standing to pursue their remaining claims.

Defendants assert two new claims for intentional and negligent interference with prospective economic advantage to their Melaleuca businesses.  These claims fail for several reasons.  First, they have not identified any specific business they would have obtained absent Herbalife's purported wrongful conduct.  Courts have long held that parties may not use interference claims for speculative lost opportunities.

Second, Defendants have not and cannot plead any alleged wrongful act, an essential element of both causes of action.  This Court has already found that Defendants may not use Herbalife trade secrets to solicit for their Melaleuca businesses.  They cannot evade this ruling by contending that their inability to do so constitutes tortious interference.  Their claim for negligent interference fails for the additional reason that they cannot allege any special relationship between Herbalife and themselves, another required element that they neglected to, and cannot possibly, plead.

Defendants' claims for violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200 ("UCL") and for False Advertising under Bus. & Prof. Code § 17500 ("FAL") are similarly deficient.  Claims based on Herbalife's

1

1  enforcement of contractual provisions expressly authorized by this Court's prior
2  rulings fall within the safe harbor of the UCL.  Defendants lack standing to pursue
3  claims based on contractual provisions Herbalife is not enforcing.

4      Their claims based on purported harm to their Herbalife businesses are time
5  barred and they lack standing to assert claims based on purported harm to their
6  Melaleuca businesses.  After the passage of Proposition 64, Defendants must show
7  that they lost money or property that they paid to Herbalife as a result of Herbalife's
8  unfair competition and false advertising.  Here, Defendants seek to recover for sales
9  made by distributors that would have gone to Melaleuca instead of Herbalife.  Lost
10  profits are not money paid by Defendants to Herbalife, so Defendants lack standing
11  to assert their claims.

12      Finally, Defendants' claim for violation of California's endless chain scheme
13  fails for lack of remedy.  Defendants cannot seek an injunction under Civil Code
14  section 1689.2 and they have waived any right to rescission by accepting and
15  retaining all the payments and other benefits they received under their contracts.

16      Having failed in two attempts to identify claims to assert against Herbalife,
17  Defendants' amended counterclaim should be dismissed with prejudice.

18                **FACTS ALLEGED IN THE AMENDED COUNTERCLAIM**

19      Defendants' amended counterclaim ("ACC") rests on three primary
20  allegations:  (1) Herbalife purportedly makes false and misleading income claims
21  by failing to disclose the financial risks associated with the Herbalife "business
22  opportunity" (ACC ¶¶ 4, 21-22); (2) Herbalife improperly restrains competition by
23  its former distributors through allegedly illegal contractual provisions such as the
24  covenant not to compete contained in Herbalife's Distributorship Agreement and
25  the one-year non-solicitation provision contained in Herbalife's Rule 8 (ACC ¶¶ 6,
26  26-28.); and (3) Herbalife operates an endless chain scheme by failing to enforce its
27  retail sales rules (ACC ¶¶ 23-25).

28

la-965729

1    Based on these allegations, Defendants claim to have suffered the following

2  harms:  1) fraudulent inducement to join Herbalife and to continue investing money

3  in their Herbalife businesses; and 2) harm to their Melaleuca businesses because

4  distributors and customers who would have associated with or purchased products

5  from Melaleuca went to Herbalife instead.  (ACC ¶¶ 7, 37, 45, 48.)

6                          **PROCEDURAL HISTORY**

7    On December 11, 2007, this Court granted Herbalife's motion for a

8  preliminary injunction and enjoined Defendants from using Herbalife trade secrets

9  to solicit Herbalife distributors for Melaleuca.  (Minute Order dated December 11,

10  2007 ("Minute Order").)  In the Order, the Court specifically rejected Defendants'

11  contention, repeated in their Amended Counterclaim, that Herbalife's contracts as

12  enforced are illegal.  (*Id.* at 3, 5.)

13    The Court held that Defendants' contracts with Herbalife "provide a

14  contractual basis for precluding the use of a wide variety of confidential business

15  information" and that Defendants are "bound" by the confidentiality provision.  (*Id.*

16  at 3.)  With respect to the agreement not to solicit, the Court held:  "Such covenants

17  are enforceable in California where necessary to protect trade secrets."  (*Id.* at 4.)

18  For this reason, the Court ruled that Defendants "should be preliminarily enjoined

19  from soliciting or recruiting any Herbalife distributor or customer for a period of

20  one year after the termination of their distributorship agreements."  (*Id.*)

21    Defendants filed their original counterclaim on December 3, 2007.  After

22  Herbalife filed its motion to dismiss on December 27, 2007, Defendants abandoned

23  those claims.  They then filed their Amended Counterclaim on February 15, 2008.

24

25

26

27

28

3

**ARGUMENT**

I.   **DEFENDANTS CANNOT STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT 1)**

Defendants' counterclaim for intentional interference with prospective economic advantage is based on the faulty premise that the distributors they recruited to Herbalife and customers who brought Herbalife products from them would have followed them to Melaleuca, but for Herbalife's allegedly wrongful interference.  Aside from being highly speculative, the claim fails because Defendants have not and cannot allege a probability of future economic benefit from any existing relationships with other Herbalife distributors or customers, or that Herbalife engaged in any conduct that was wrongful by some legal measure other than the fact of interference itself.  Lacking either of these essential elements, the claim must be dismissed.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (setting forth elements of an action for intentional interference with prospective economic advantage.)[1]

---

[1] The elements of an action for intentional interference of prospective economic advantage, which are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship, which acts are wrongful by some legal measure other than the fact of interference itself; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1107-10 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

4

la-965729

### A.   Defendants Do Not Plead Facts Demonstrating the Existence of a Business Relationship in Which the Probability of Future Economic Benefit Is More Than Speculative

Defendants fail to satisfy the first element of a claim for intentional interference with prospective economic advantage because they are unable to allege a probability of future economic benefit from any existing relationships with Herbalife distributors or customers.  Defendants assert that as Melaleuca Marketing Executives, they compete in the market with Herbalife and that Herbalife's customers and distributors are their prospective customers.  (ACC ¶ 32.)  They contend that they developed relationships with Herbalife distributors and customers and that Herbalife's rules and contractual provisions prohibiting solicitation of Herbalife distributors allegedly interfere with Defendants' relationships with these prospective customers.  (*Id.*)

These kinds of vague allegations identifying relationships with "customers" are insufficient absent the pleading of facts indicating some "promise of future economic advantage."  *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 U.S. Dist. LEXIS 6228, at *39 (N.D. Cal. Mar. 30, 2005) (dismissing counterclaim for interference with prospective economic advantage).  In *Google*, counterclaimant American Blind alleged that Google interfered with American Blind's relationships with its customers by allowing American Blind's competitors to purchase search terms that would direct customers to competitors' web sites when customers entered search terms for "American Blind" in Google's search engine.  *Id*. at *7-8.  To satisfy the first element of the claim, American Blind asserted that but for Google's conduct, "it is reasonably certain that American Blind would realize additional sales from existing customers and/or new customers."  *Id*. at *37 n.31.  The court held that such allegations were too speculative to rise to the level of the requisite "promise of future economic

5

1   advantage" because the allegations were based on nothing more than "unspecified

2   future sales to unspecified returning customers."  *Id.* at *40.

3       Here, Defendants fail to allege any facts indicating that any unidentified

4   Herbalife customers or distributors would want to purchase Melaleuca products

5   from Defendants or become Melaleuca Marketing Executives associated with

6   Defendants, but for Herbalife's interference.  Defendants have not pled that

7   distributors who sell Herbalife products would be equally willing to sell Melaleuca

8   products or that customers who purchase Herbalife products would be just as likely

9   to purchase Melaleuca products.  Allegations that amount to a mere "hope for an

10  economic relationship and a desire for future benefit" are inadequate to satisfy the

11  pleading requirements of the first element of this tort.  *Westside Ctr. Assocs. v.*

12  *Safeway Stores, 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996) (quoting *Blank v.*

13  *Kirwan*, 39 Cal. 3d 311 ( 1985) and denying claim for interference where plaintiff

14  "fail[ed] to provide any factual basis upon which to determine whether the plaintiff

15  was likely to have actually received the expected benefit").  Defendants must plead

16  non-conclusory facts which, if proven, would show the probability of future

17  economic benefit to Defendants from specified relationships.  *Id.*  Defendants have

18  not done so; their intentional interference claim must be dismissed.

19      **B.    Defendants Have Not and Cannot Plead an Independently**

20             **Wrongful Act**

21      Defendants' claim for intentional interference with prospective economic

22  advantage also fails for the independent reason that they have not alleged that

23  Herbalife engaged in any conduct that was wrongful by some legal measure other

24  than the fact of interference itself.  *Korea Supply*, 29 Cal. 4th at 1158 (party

25  bringing claim has "rigorous pleading burden since it must show that the

26  defendant's conduct was independently wrongful").  In *Korea Supply*, the

27  California Supreme Court explained that "an act is independently wrongful if it is

28

6

1  *unlawful*, that is, if it is proscribed by some constitutional, statutory, regulatory,

2  common law, or other determinable legal standard." *Id*. at 1159 (emphasis added).

3       In the present action, Defendants have failed to allege sufficient facts to

4  demonstrate that Herbalife has engaged in any "independently wrongful" or

5  unlawful conduct. (*See* ACC ¶¶ 31-38.)  The only "wrongful conduct" alleged in

6  the amended counterclaim is Herbalife's supposed violation of California Business

7  & Professions Code sections 16600, 17200, 17500 and California Penal Code

8  section 327.   (ACC ¶ 35.)

9       With respect to section 16600, this Court has already found that the

10  contractual provisions Herbalife is enforcing against Defendants are not illegal

11  restraints of trade.  (Minute Order at 3, 5.)  Herbalife's effort to enforce these

12  provisions to stop Defendants from using Herbalife's trade secrets to solicit for a

13  competitor is lawful and cannot provide a basis for tortious interference with

14  Defendants' prospective business.  *See Korea Supply*, 29 Cal. 4th at 1158-59

15  (explaining "[t]he tort of intentional interference with prospective economic

16  advantage is not intended to punish individuals or commercial entities for their

17  choice of commercial relationships or their pursuit of commercial objectives, unless

18  their interference amounts to independently actionable conduct").

19       Likewise, as set forth below, Defendants' claims for violations of the UCL

20  and the FAL (Counts 3 and 5) and Penal Code section 327 (Count 4) fail as a matter

21  of law and therefore do not supply the independently wrongful conduct necessary to

22  satisfy this element.

23       Because Defendants have not and cannot plead facts to establish the requisite

24  wrongful conduct or probability of future economic benefit, this claim should be

25  dismissed.

26

27

28

la-965729

## II.   DEFENDANTS CANNOT STATE A CLAIM FOR NEGLIGENT INTERFERENCE (COUNT 2)

To state a claim for negligent interference with economic advantage, Defendants must allege that Herbalife owed them a duty of care in addition to the elements required to state a cause of action for intentional interference with prospective economic advantage. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 957-58 (N.D. Cal. 2003) citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803-04 (1979).  As stated above, Defendants have failed to satisfy the underlying elements of an intentional interference claim.  They also have failed to allege that Herbalife owed any duty to Defendants so as to sustain a claim for negligent interference.  (*See* ACC ¶¶ 39-45.)

As Defendants point out in their pleadings, their only relationship with Herbalife in their role as Melaleuca Marketing Executives is that they are competitors with Herbalife.  (ACC ¶ 40.)  This relationship does not establish a duty of care. *Accuimage Diagnostics*, 260 F. Supp. 2d at 957 (dismissing claim because no duty of care exists between business competitors).

Defendants have not and cannot plead this required element, any wrongful act or a probability of future economic benefit, so their negligent interference claim should be dismissed.

## III.   DEFENDANTS CANNOT STATE A CLAIM FOR VIOLATION OF THE UCL OR THE FAL (COUNTS 3 & 5)

Neither the UCL nor the FAL helps Defendants find claims to assert against Herbalife.  Their claims based on their Herbalife contracts and Herbalife rules fail because the contractual provisions Herbalife is enforcing against them fall within the "safe harbor" for expressly authorized conduct and Defendants cannot base a claim on the mere existence of contractual provisions that Herbalife is not enforcing against them.

8

la-965729

1    Defendants assert harm to their Herbalife businesses and to their Melaleuca

2    businesses.  Defendants' claim that they "lost the benefits of the sums invested in

3    building their 'independent [Herbalife] business'" based on alleged unfair

4    contractual provisions, false advertising and unfair business practices (ACC ¶ 48 at

5    17:26-18:5) accrued long before the three or four-year statute of limitations

6    applicable to these claims.  They lack standing to pursue their claim that these

7    alleged bad acts harmed their Melaleuca businesses because they do not allege that

8    they seek to recover money they paid to Herbalife, so they have not "lost money or

9    property" as required to assert a claim under the UCL.

10   **A.    Defendants Cannot Pursue Claims Based on Their Herbalife**

11   **Contracts or Herbalife Rules**

12   Herbalife's right to enforce its contracts and rules to prohibit Defendants

13   from misappropriating Herbalife's trade secrets has been confirmed by this Court.

14   (Minute Order at 3, 5; Memorandum and Order Regarding Defendants' Motion to

15   Dismiss and to Strike filed Sept. 28, 2007 ("Order") at 7-12.)  Actions expressly

16   authorized by law are not actionable under the UCL.  Herbalife is not presently

17   enforcing any other aspects of its contracts or rules as to these Defendants, so they

18   cannot pursue any claim based on the mere existence of these provisions.

19   **1.    Herbalife's Enforcement of Certain Contractual Provisions**

20   **To Protect Its Trade Secrets Falls Within the UCL "Safe**

21   **Harbor"**

22   This Court has already ruled that Herbalife may enforce its contracts to

23   prohibit Defendants from using Herbalife's trade secrets.  (Minute Order at 3, 5;

24   Order at 7-12.)  Defendants may not evade this ruling by asserting a UCL claim to

25   prevent Herbalife from doing just that.

26   "A court may not allow a plaintiff to 'plead around an absolute bar to relief

27   simply by recasting the cause of action as one for unfair competition.'"  *Chabner v.*

28

9

1 *United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  As the
2 California Supreme Court explained

3     the resulting immunity [conferred by some other law]
4     should not evaporate merely because the plaintiff
5     discovers a conveniently different label for pleading what
6     is in substance an identical grievance arising from
7     identical conduct . . . . We thus conclude that a plaintiff
8     may not bring an action under the unfair competition law
9     if some other provision bars it.

10 *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163,
11 182, 184 (1999).

12     Courts have repeatedly held that this "safe harbor" under the UCL prevents
13 an end-run around laws that permit a party's practices and procedures.  *E.g., Cel-*
14 *Tech*, 20 Cal. 4th at 182; *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)
15 ("A business practice cannot be unfair if it is permitted by law.").  Here, the Court's
16 ruling rather than a statute provides the express authorization creating a safe harbor.
17 The Court held that Herbalife can enforce its contractual provisions to prevent
18 Defendants from misappropriating Herbalife's trade secrets.  These actions
19 therefore cannot form the basis for a UCL claim.

20          **2.**    **Defendants Lack Standing to Pursue Claims Based on Any**
21             **Other Contractual Provisions or Rules**

22     Nor can Defendants base their claim on any other rules or contract provisions
23 because Herbalife is not attempting to enforce any of them against Defendants.
24 *Bowen v. First Family Fin. Services., Inc.*, 233 F.3d 1331, 1334 (11th Cir. 2000)
25 ("[P]laintiffs lack standing . . . because there has been no attempt to enforce the
26 [contractual arbitration provision] against them, and they have not established that
27 there is a substantial likelihood that it will be enforced against them in the future.");
28 *Lee v. Am. Express Travel Related Services*, No. C 07-04765 CRB, 2007 WL

la-965729

1    4287557, at *5 (N.D. Cal. Dec. 6, 2007) (holding plaintiff lacked standing to sue

2    based on the mere existence of alleged unconscionable provision in his agreement

3    absent any attempt to enforce it); *In re Currency Conversion Fee Antitrust Litig.*,

4    MDL No. 1409, M 21-95, 05 Civ. 7116 (WHP), 2006 U.S. Dist. LEXIS 66986, at

5    *5 (S.D.N.Y. Sept. 20, 2006) (same).

6         In *Bowen*, plaintiffs brought suit based the presence of an allegedly

7    unconscionable arbitration provision in their contracts with the defendant.  The

8    Eleventh Circuit affirmed the district court's dismissal of their claim on grounds

9    that, absent any showing that defendant was or intended to enforce the provision in

10   question, plaintiffs lacked standing to maintain claims based on those provisions.

11   *Bowen*, 233 F.3d at 1334.

12        As was the case in *Bowen*, Defendants seek to base their UCL claim on

13   contractual provision(s) that Herbalife is not — and has already stated in court

14   papers will not — enforce against them.  (ACC ¶¶ 6, 26-28.)  They cannot rely on

15   these provisions as a basis for their claims.

16   **B.    Defendants Cannot Pursue Claims Based on Harm to Their**

17   **Herbalife Businesses**

18        Defendants' collective almost 100 year history with Herbalife defeats their

19   UCL and FAL claims based on purported harm to their Herbalife businesses.  The

20   UCL has a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208 ("Any

21   action to enforce any cause of action pursuant to this chapter shall be commenced

22   within four years after the cause of action accrued.").[2]  The FAL is governed either

23   by the three-year statute of limitations set forth in California Code of Civil

24   Procedure section 338(a), which applies to "[a]n action upon a liability created by

---

26        [2] The Court applies state statutes of limitations because they are considered
matters of state substantive law.  *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750-
52 (1980)

statute," or by the four-year statute of limitations applicable to UCL claims.  *See Harshbarger v. Philip Morris, Inc.*, No. 02-05267 JSW, 2003 U.S. Dist. LEXIS 25023, at \*18 (N.D. Cal. April 1, 2003) (comparing cases).  As in *Harshbarger*, however, this Court need not determine which statute applies since Defendants' claims are time-barred in any event.  *Id.*

Statutes of limitations begin to run when a cause of action "accrues."  A cause of action brought under the UCL or FAL for economic injury based on alleged misrepresentations or omissions accrues when the party learns the truth or discovers the omission.  *Grisham v. Philip Morris U.S.A.*, *Inc.,* 40 Cal. 4th 623, 646 (2007) (holding plaintiff asserting UCL and FAL claims failed to adequately plead that her justifiable reliance on tobacco defendants' alleged fraudulent statements and omissions ended within the limitations period); *see also Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282 (2002) (holding the statute of limitations on a UCL claim runs "from the time a reasonable person would have discovered the basis for a claim").

Defendants base their claim on "false and misleading statements in promoting and advertising," Herbalife's "operating an endless chain scheme," and the inclusion of "illegal restraints of trade in its distributorship agreements and 'rules.'"  (ACC ¶¶ 47 at 17:9-15, 48 at 17:18-20.)  However, on the face of the Amended Counterclaim it is not plausible that Defendants discovered the truth about any of these purported bad acts within the last four years.

For example, they allege that Herbalife failed to inform them that the number of distributors who reach the higher levels of the Herbalife Plan is very small, that many distributors allegedly drop out in any given year or that half of Herbalife Supervisors allegedly earn no commissions.  (ACC ¶¶ 20-21.)  They further allege that Herbalife's compensation structure lends itself to abuse and that Herbalife does not enforce its retail sales rules.  (*Id.* ¶¶ 23-25.)

12

1         As long-time Herbalife supervisors, the number of distributors who drop out

2 or earn no commissions in any given year would have become known to

3 Defendants long ago.  The same is true for all of Defendants' allegations.  If

4 Herbalife operates an endless chain scheme despite its rules designed to prevent the

5 kinds of abuses alleged by Defendants (ACC ¶¶ 4-5, 21-25), Defendants certainly

6 learned of these abuses and of Herbalife's alleged failure to enforce its rules many

7 years ago.  Any additional investments they made in their Herbalife businesses as a

8 result of these alleged bad acts would therefore also have occurred long ago.

9 Defendants' UCL and FAL claims based on alleged harm to their Herbalife

10 businesses are therefore time-barred and should be dismissed.

11        **C.**      **Defendants Lack Standing To Pursue Claims Based on Alleged**

12             **Lost Profits In Their Melaleuca Businesses**

13         The portion of Defendants' UCL and FAL claims based on alleged "lost

14 income as Melaleuca Marketing Executives" (ACC ¶ 48 at 18:5-8) fails because

15 Defendants lack standing under the UCL to assert them.  The UCL previously

16 permitted "any person"—injured or not—to maintain a claim.  *Californians for*

17 *Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006).  In 2004, however,

18 California voters approved Proposition 64, which imposed a standing requirement

19 on UCL and FAL claims.  *See* Cal. Bus. & Prof. Code §§ 17203, 17204; *Mervyn's*,

20 39 Cal. 4th at 228-29 (UCL); Cal. Bus. & Prof. Code § 17535; *Buckland v.*

21 *Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 819 (2007) ("the voters made

22 identical findings regarding the UCL and FAL, and amended [§ 17535] to impose

23 the standing requirements and limits placed upon UCL actions").  Now, to maintain

24 any claim under the UCL and FAL, Defendants must show that they have "suffered

25 injury in fact and ha[ve] lost money or property as a result of [Herbalife's] unfair

26 competition."  Cal. Bus. & Prof. Code §§ 17204, 17535.

27         As United States District Judge Morrison England explained, in a particularly

28 thorough and well-reasoned decision, "the 'loss of money or property' required for

13

1    UCL standing should be construed identically to the 'lost money or property'

2    California courts require for section 17203 [restitution] purposes." *Walker v. USAA*

3    *Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007).  Before Proposition 64,

4    the concept of what constitutes "lost money or property" under the UCL was

5    extensively litigated.  The relief available under the UCL is limited to injunctions

6    and restitution.  The purpose of "restitution" was defined as the restoration "to any

7    person . . . [of] any money or property, which may have been acquired by means of

8    such unfair competition."  Cal. Bus. & Prof. Code § 17203.[3]  According to

9    California courts, the restoration of this "money or property" only entitles a UCL

10   plaintiff to the *return* of money or something in which the plaintiff held an

11   ownership interest—i.e., property.  *See Korea Supply*, 29 Cal. 4th at 1149 (the

12   "object of restitution is to restore the status quo by returning to the plaintiff funds in

13   which he or she has an ownership interest"); *Cortez v. Purolator Air Filtration*

14   *Prods. Co.*, 23 Cal. 4th 163, 177 (2000) (UCL restitutionary awards are thus for

15   "money that once had been in the possession of the person to whom it [is] to be

16   restored.").  In other words, under the UCL, Defendants have only "lost money or

17   property" if Herbalife is in possession of money that used to belong to them.

18        The electorate is presumed to have been aware of this judicial construction of

19   the UCL when it enacted Proposition 64.  *See*, *e.g.*, *Cal. Auto. Assigned Risk*

20   *Plan v. Garamendi*, 234 Cal. App. 3d 1486, 1495 (1991) (citation omitted) ("[T]he

21   electorate is presumed . . . to be aware of existing laws and judicial constructions in

22   effect at the time legislation is enacted [by initiative]") (quoting *People v. Weidert*,

23   39 Cal. 3d 836, 844 (1985)).  Moreover, in legislating against this backdrop, the

24   electorate is also presumed to have intended that "loss of money or property" would

25   be interpreted identically to these prior judicial decisions.  *See*, *e.g.*, *Weidert*, 39

26   ─────────────────

27        [3] Damages are unavailable under the UCL.  Cal. Bus. & Prof. Code § 17203; *Mervyn's*, 39 Cal. 4th at 232.

28

14

1  Cal. 3d at 845-46 ("Where the language of a statute uses terms that have been

2  judicially construed, the presumption is almost irresistible that the terms have been

3  used in the precise and technical sense which had been placed on them by the

4  courts.  This principle applies to legislation adopted through the initiative process.")

5  (internal quotation marks and citations omitted).

6      Thus, the question of "standing"—whether Defendants have "lost money or

7  property" under the UCL—is identical to the pre-Proposition 64 question of

8  whether Defendants are entitled to restitution.  *Walker*, 474 F. Supp. 2d at 1172.  In

9  other words, if a claim of lost money or property could not satisfy the UCL's test of

10  "restitution"—for example, if it is really a disguised claim seeking damages—then

11  Defendants lack "standing" under Proposition 64.

12      Such is the case here.  Defendants contend that they "lost income" because

13  unspecified customers and distributors went to Herbalife instead of joining them at

14  Melaleuca or purchasing Melaleuca products.  (ACC ¶ 28.)  This is insufficient

15  under well-established UCL precedent because "[c]ompensation for a lost business

16  opportunity is a measure of damages and not restitution to the alleged victims,"

17  which is the only compensatory remedy available under the UCL.  *Stockton*

18  *Executive Limousine Charter Serv., Inc. v. Union Pac. R.R.*, No. CIV S-04-1999

19  LKK/PAN, 2006 U.S. Dist. LEXIS 25067, at*24-25 (E.D. Cal. March 23, 2006);

20  *accord Korea Supply*, 29 Cal. 4th at 1151 (same).

21      Moreover, these losses are not money paid by Defendants to Herbalife.  It is

22  money other people — purported Herbalife distributors and customers — paid to

23  Herbalife.  As such, it does not qualify as "lost money or property" under the UCL.

24  *See Korea Supply*, 29 Cal. 4th at 1149 (Under the UCL, restitution is only available

25  for "money or property that ***defendants took directly from plaintiff***.") (emphasis

26  added).  Defendants thus lack standing to prosecute their UCL claims based on

27  harm to their Melaleuca businesses, and this portion of their UCL and FAL claims

28  should be dismissed.

15

la-965729

IV.   **DEFENDANTS CANNOT STATE A CLAIM FOR VIOLATION OF CALIFORNIA'S ENDLESS CHAIN SCHEME LAW (COUNT 4)**

Section 1689.2 of the California Civil Code provides, in relevant part:

> A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme.

In their endless chain scheme cause of action, Defendants seek an injunction and rescission. (ACC ¶¶ 53, 54.) Their claim fails for lack of a remedy because they are not entitled to an injunction and have waived any right to rescind.

The plain language of the applicable code provision defeats Defendants' demand for an injunction. Cal. Civ. Code § 1689.

Nor can Defendants seek rescission of their contracts because each of them has accepted and retained all of the benefits they received from Herbalife under these contracts during their many years as distributors. As the California Supreme Court explained, "A party to a contract who wishes to rescind cannot play fast and loose. He cannot conduct himself so as to derive all possible benefit from the transaction and then claim the right to rescind . . . ." *Neet v. Holmes* 25 Cal. 2d 447, 457-58 (1944). The Court further noted that "Waiver of a right to rescind will be presumed against a party who, having full knowledge of the circumstances which would warrant him in rescinding, nevertheless accepts and retains benefits accruing to him under the contract." *Id.*; *accord Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*, 74 Cal. App. 4th 1211, 1226 (1999).

Defendants are trying to "play fast and loose" here by conducting themselves "so as to derive all possible benefit from [their transactions with Herbalife] and then claim the right to rescind." *Id.* Each of the Defendants was an Herbalife distributor

16

la-965729

for more than 10 years.  (ACC ¶¶ 8-12.)  Having accepted and retained all of the benefits of these agreements for over a decade, they cannot now seek to rescind them.

## CONCLUSION

For all of these reasons, Defendants have failed to assert any valid counterclaims for the second time.  Accordingly, Herbalife respectfully requests that the Court dismiss Defendants' amended counterclaim with prejudice.


Dated:     March 3, 2008                    MORRISON & FOERSTER LLP


                                            /s/ Nancy R. Thomas
                                            _____
                                            Charles E. Patterson
                                            Nancy R. Thomas

                                            Attorneys for Plaintiff and
                                            Counterclaim Defendant
                                            HERBALIFE INTERNATIONAL
                                            OF AMERICA, INC.

17

la-965729