CHARLES E. PATTERSON (CA SBN 120081)
CPatterson@mofo.com
NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
SEAN P. GATES (CA SBN 186247)
SGates@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California  90013-1024
Telephone:  213.892.5200
Facsimile:   213.892.5454

Attorneys for Plaintiff and Counterclaim Defendant
Herbalife International of America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Herbalife International of America, Inc., a Nevada Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; Dianna N. Thompson; and Jason Fisher,<br><br>        Defendants. | Case No. CV 07 2529 GAF (FMOx)<br><br>Hon. Gary A. Feess<br><br>**NOTICE OF MOTION AND MOTION BY HERBALIFE INTERNATIONAL OF AMERICA, INC. FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      June 1, 2009<br>Time:     9:30 a.m.<br>Courtroom: 740-Roybal |

1

2     **Amended Notice of Motion and Motion for Summary Judgment or, in the**

3     **Alternative, Partial Summary Judgment**

4     To Defendants/Counterclaimants and Their Counsel of Record:

5            PLEASE TAKE NOTICE that on June 1, 2009, at 9:30 a.m., or as soon

6     thereafter as the matter may be heard, in Courtroom 740 - Roybal of the above

7     Court, Plaintiff and Counterclaim Defendant Herbalife International of America,

8     Inc. ("Herbalife"), will move this Court, pursuant to Rule 56 of the Federal Rules

9     of Civil Procedure, for an order granting summary judgment as to all claims or, in

10    the alternative, partial summary judgment regarding the claims for Intentional

11    Interference with Prospective Economic Advantage, Violation of Business &

12    Professions Code § 17200, and Violation of Business & Professions Code § 16600

13    of the Amended Counterclaim filed by Defendants and Counterclaimants Robert

14    Ford, Julia Ford, Bruce Roth, Nancy Roth, Jason Fisher, Dianna Thompson, Jeff

15    Orr and Kathy Orr (collectively, "Defendants").  With regard to the alternative of

16    partial summary judgment, Herbalife will move the Court for an order that these

17    counterclaims (1) cannot be based on Herbalife's filing of this lawsuit or

18    communications with its distributors regarding Defendants' conduct and

19    Herbalife's remedial actions and (2) cannot be based on Herbalife's promulgation

20    or enforcement of a provision in Rule 8-A of Herbalife's Rules of Conduct and

21    Distributor Policies that bars, for one year post-termination, former Herbalife

22    distributors from soliciting or recruiting current Herbalife distributors they became

23    aware of in the course of their Herbalife distributorship.

24           Herbalife previously filed a notice and motion for partial summary

25    judgment (Dkt. No. 156), which was taken off calendar.  This amended notice and

26    motion supersede that prior filed notice and motion.

27

28

1

1     This motion is based on this Notice of Motion and Motion, the Memorandum

2  of Points and Authorities in support thereof, the pleadings and other files herein,

3  and such other written and oral argument as may be presented to the Court.  This

4  motion is made following the conference of counsel pursuant to L.R. 7-3, which

5  took place on April 8, 2009.

6

7

8  Dated:    May 4, 2009                    MORRISON & FOERSTER LLP

9                                           By: /s/ Sean P. Gates

10                                               Charles E. Patterson
                                                 Nancy R. Thomas
11                                               Sean P. Gates

12                                               Attorneys for Plaintiff and
                                                 Counterclaim Defendant
13                                               HERBALIFE INTERNATIONAL
                                                 OF AMERICA, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. II

INTRODUCTION ............................................................................. 1

FACTUAL BACKGROUND .............................................................. 3

    A.    Defendants Raid Herbalife's Distribution Chain ................................. 3

    B.    Raiding by Former Distributors is Especially Disruptive to Herbalife's Distribution Chain ......................................................... 4

    C.    Rule 8-A's Post-Termination Nonsolicitation Provision Aims to Prevent This Disruptive Conduct .................................................. 5

    D.    Herbalife's Response to Defendants' Raiding ................................. 5

    E.    Defendants' Counterclaim and Claimed Injury ............................... 6

GOVERNING STANDARD ............................................................... 7

ARGUMENT ................................................................................... 7

    A.    Defendants Lack Standing under Sections 17200 and 17500 ............ 7

    B.    Defendants Cannot Show Causation ............................................. 9

        1.    Herbalife's Filing Its Lawsuit and Communications with Its Distributors are Privileged ...................................... 10

        2.    There is No Causal Connection Between Any Herbalife Conduct and Defendants' Alleged Injury ...................... 13

    C.    Defendants Cannot Pursue Their Endless Chain Scheme Claim ....... 15

    D.    Defendants Cannot Base Their Claims on Rule 8-A ........................ 16

        1.    Employee Nonsolicitation Provisions Do Not Violate Section 16600 Whether or Not Necessary to Protect Trade Secrets ...................................................................... 17

        2.    Post-Termination Nonsolicitation Provisions Binding Independent Distributors Are Equally Valid ................... 19

        3.    *Edwards* Does Not Affect This Conclusion ................... 20

        4.    Rule 8-A's Limited Prohibition on Soliciting Herbalife Distributors Does Not Violate Section 16600 .................. 21

        5.    Rule 8-A's Distributor Nonsolicitation Provision Cannot Be the Basis of Defendants' Claims ............................... 23

CONCLUSION ............................................................................... 24

i

la-1027560

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**CASES**

4

5

*1100 Park Lane Assocs. v. Feldman,*
  160 Cal. App. 4th 1467 (2008) ........................................................................ 11

6

*Action Apartment Ass'n v. City of Santa Monica,*
  41 Cal. 4th 1232 (2007) ................................................................................... 11

7

8

*Bollow v. Federal Reserve Bank,*
  650 F.2d 1093 (9th Cir. 1981) ......................................................................... 12

9

10

*Buskuhl v. Family Life Insurance Co.,*
  271 Cal. App. 2d 514 (1969) ...................................................................... passim

11

12

*Cal. v. Campbell,*
  138 F.3d 772 (9th Cir. 1998) ............................................................................. 7

13

14

*Carter v. Chotiner,*
  210 Cal. 288 (1930) ......................................................................................... 16

15

16

*Cell Assocs. v. NIH,*
  579 F.2d 1155 (9th Cir. 1978) ......................................................................... 16

17

*Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
  171 Cal. App. 4th 1 (2009) ............................................................................ 7, 8

18

19

*City of Oakland v. Hassey,*
  163 Cal. App. 4th 1477 (2008) .................................................................. 20, 23

20

21

*Cuenca v. Safeway San Francisco Employees Federal Credit Union,*
  180 Cal. App. 3d 985 (1986) ........................................................................... 13

22

23

*Daro v. Super. Ct.,*
  151 Cal. App. 4th 1079 (2007) ..................................................................... 9, 15

24

25

*Deaile v. Gen. Tel. Co.,*
  40 Cal. App. 3d 841 (1974) ............................................................................. 12

26

27

*Dey v. Cont'l Cent. Credit,*
  170 Cal. App. 4th 721 (2008) .......................................................................... 24

28

ii

*Edwards v. Arthur Andersen LLP*,
 44 Cal. 4th 937 (2008) .................................................................................. 20

*Edwards v. Lang*,
 198 Cal. App. 2d 5 (1961) ...................................................................... 16, 20

*Fisher v. Lucky Stores, Inc.*,
 No. C93-1019, 1994 WL 125104 (N.D. Cal. Apr. 4, 1994)...................... 13, 14

*Ghebreselassie v. Coleman Security Serv.*,
 829 F.2d 892 (9th Cir. 1987) .................................................................. 12, 13

*Globetrotter Software, Inc. v. Elan Computer Group*,
 362 F.3d 1367 (Fed. Cir. 2004).................................................................... 11

*Hall v. Time Inc.*,
 158 Cal. App. 4th 847 (2008) ................................................................... 9, 15

*Harris Technical Sales, Inc. v. Eagle Test Sys., Inc.*,
 No. 06-02471, 2008 WL 343260 (D. Ariz. Feb. 5, 2008)................................ 7

*Ingrassia v. Bailey*,
 172 Cal. App. 2d 117 (1959) ........................................................................ 19

*John F. Matull & Assocs. v. Cloutier*,
 194 Cal. App. 3d 1049 (1987) ...................................................................... 17

*Killian v. Millard*,
 228 Cal. App. 3d 1601 (1991) ........................................................................ 9

*King v. United Parcel Serv., Inc.*,
 152 Cal. App. 4th 426 (2007) ................................................................. 11, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003).............................................................. 8, 9, 15, 24

*Kwikset Corp. v. Super. Ct.*,
 171 Cal. App. 4th 645 (2009) ......................................................................... 7

*Loral Corp. v. Moyes*,
 174 Cal. App. 3d 268 (1985) ................................................................. passim

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ....................................................................................... 9

iii

*McCormick v. Fund Am. Cos.*,
  26 F.3d 869 (9th Cir. 1994) ......................................................................... 7

*Moss, Adams & Co. v. Shilling*,
  179 Cal. App. 3d 124 (1986) ...................................................................... 17

*Neways Inc. v. Mower*,
  543 F. Supp. 2d 1277 (D. Utah 2008) ....................................................... 22

*Okura & Co. (Am.), Inc. v. Careau Group*,
  783 F. Supp. 482 (C.D. Cal. 1991) ............................................................ 16

*Ponchik v. King*,
  957 F.2d 608 (8th Cir. 1992) ....................................................................... 9

*Pre-Paid Legal Servs. v. Harrell*,
  No. CIV-06- 019-JHP, 2008 U.S. Dist. LEXIS 1773 (E.D. Okla. Jan. 8,
  2008) ........................................................................................................... 22

*State Farm Mutual Auto. Ins. Co. v. Dempster*,
  174 Cal. App. 2d 418 (1959) ...................................................................... 19

*Stegner v. Bahr & Ledoyen*,
  126 Cal. App. 2d 220 (1954) ...................................................................... 15

*Stevenson Real Estate Serv. v. CB Richard Ellis Real Estate Serv., Inc.*,
  138 Cal. App. 4th 1215 (2006) ................................................................... 24

*Stockton Executive Limousine Charter Serv., Inc. v. Union Pac. RR*,
  No. CIVS041999, 2006 WL 769623 (E.D. Cal. Mar. 27, 2006) .................. 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) ................................................................ 10, 11

*Thompson v. Impaxx, Inc.*,
  113 Cal. App. 4th 1425 (2003) ................................................................... 17

*Thrifty Oil Co. v. Superior Ct.*,
  91 Cal. App. 4th 1070 (2001) ..................................................................... 24

*Trujillo v. First Am. Registry, Inc.*,
  157 Cal. App. 4th 628 (2007) ....................................................................... 9

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007), *aff'd*, 558 F.3d 1025 (9th Cir.
   2009) ........................................................................................................ 7, 8

*Watson Labs. v. Rhone-Poulenc Rorer, Inc.*,
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................................ 7

*Webb v. West Side District Hospital*,
   144 Cal App. 3d 946 (1983) ................................................ 19, 20, 21, 23

*Williams v. Taylor*,
   129 Cal. App. 3d 745 (1982) .......................................................... 12


STATUTES

Cal. Civ. Code § 47(b) ................................................................................ 11

Cal. Civ. Code § 47(c) ................................................................................ 11

Cal. Civ. Code § 48 ..................................................................................... 13

Cal. Civ. Code § 1689.2 .............................................................................. 16

Cal. Civ. Code § 1691(b) ............................................................................ 16

Cal. Civ. Code § 3369 ................................................................................. 16

California Business & Professions Code § 16600 ...................................... passim

California Business & Professions Code § 17200 ...................................... passim

California Business & Professions Code § 17500 ...................................... passim

California Penal Code § 327 .......................................................................... 15

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Herbalife brought this action to stop the misuse of its trade secrets and breaches of its contracts. Each of the Defendants is a former distributor of Herbalife. Each left Herbalife and joined Herbalife's competitor, Melaleuca. Herbalife will demonstrate that Defendants used Herbalife confidential information and coercive techniques to solicit and recruit Herbalife's distributors. This conduct misappropriated Herbalife's trade secrets and violated Defendants' agreements with Herbalife. The Court already found that Herbalife was likely to succeed on these claims; it issued a preliminary injunction against the Defendants, prohibiting them from using or disclosing Herbalife's confidential information and from soliciting or recruiting certain Herbalife distributors. The Ninth Circuit affirmed this injunction with minor changes.

After the injunction issued, Defendants filed amended counterclaims, alleging that Herbalife caused them to lose "income that they would have earned as Melaleuca Marketing Executives." Defendants contend they were injured because Herbalife's rules and contracts, its business model, alleged misrepresentations, and informing its distributors of actions taken to address Defendants' conduct prevented Defendants from successfully recruiting Herbalife distributors. In particular, Defendants' challenge as unlawful Herbalife's Rule 8-A, which prohibits former Herbalife distributors, for the period of one year after they leave Herbalife, from soliciting or recruiting to join another direct sales or multi-level marketing company current Herbalife distributors they became aware of in the course of their Herbalife distributorship.

Defendants assert that this alleged conduct amounts to intentional interference with prospective economic advantage (IIPEA), unfair competition under California Business & Professions Code § 17200 (Section 17200), fraudulent advertising under California Business & Professions Code § 17500 (Section

1

17500), an unlawful restraint on employment under California Business & Professions Code § 16600 (Section 16600), and that Herbalife is an endless chain scheme.  The Court should grant summary judgment; each of these claims fails.

- Defendants lack standing to bring their Section 17200 and 17500 claims. Earlier this year, the Ninth Circuit held that to bring a claim under these statutes, whether for monetary or injunctive relief, the plaintiff must demonstrate it lost money or property subject to restitution.  Defendants do not meet this standing requirement.  The Court should dismiss these claims.

- Defendants cannot show a causal connection between their alleged injury and any non-privileged Herbalife conduct.  Defendants testified that their alleged injury stems from Herbalife's filing this lawsuit and Herbalife's informing its distributors of actions it was taking to address problems created by Defendants.  This conduct is protected under federal and California law; it cannot be the basis for liability.  Nor is there any evidence that any non-privileged conduct harmed Defendants.  The Court should therefore dismiss Defendants' Section 17200, 17500, 16600, and IIPEA claims.

- Defendants cannot show they are entitled to relief under their endless chain scheme claim.  As a matter of law, injunctive relief is not available to Defendants.  Nor can they meet the prerequisite for rescission; Defendants have not shown they are able and willing to restore to Herbalife the benefits they obtained through the allegedly illegal contract.  The Court should therefore dismiss the endless chain scheme claim.

- To the extent not already dismissed, the Court should grant partial summary judgment that Defendants' claims cannot be based on the post-termination nonsolicitation provision in Herbalife's Rule 8-A.  California courts have made it clear that this type of nonsolicitation provision is lawful whether or not necessary to protect trade secrets.

2

la-1027560

# FACTUAL BACKGROUND

As a direct sales company, Herbalife relies on a network of distributors (independent contractors) to sell and promote its products. (Statement of Undisputed Facts (SUF) ¶ 1.)  Herbalife distributors also recruit and train other Herbalife distributors, who in turn may recruit and train additional distributors to sell Herbalife products. (SUF ¶ 2.)  To encourage distributors to build Herbalife's sales force, Herbalife pays its distributors based on their own sales as well as the sales of their "downline" – those persons recruited directly or indirectly into the organization by the distributor. (SUF ¶ 3.)  Herbalife distributors are thus Herbalife's sales force, training arm, and distribution chain.

## A.    Defendants Raid Herbalife's Distribution Chain

Each of the Defendants left Herbalife to join Herbalife's competitor, Melaleuca. (SUF ¶ 4.)  Melaleuca distributors earn money based on the sales of those they recruit to become Melaleuca distributors. (SUF ¶ 5.)

Defendants therefore launched a campaign to build their Melaleuca organizations by recruiting Herbalife distributors to join them.  For instance, in February 2007, just after leaving Herbalife, Bruce and Nancy Roth joined Jason Fisher and Robert Ford for a ten-day recruiting blitz, working continuously to solicit Herbalife distributors in the Roths' former downline. (SUF ¶ 6.)  Each of the Defendants made similar efforts. (SUF ¶ 6.)

But Defendants did not simply solicit Herbalife distributors.  Herbalife distributors complained that Defendants engaged in various coercive and deceptive recruiting tactics. (SUF ¶ 7.)  For instance, Herbalife distributors complained that Defendants were raiding their downline, a practice which some described as "unethical" and "sleazy." (SUF ¶ 8.)  Herbalife distributors complained that Defendants threatened to "take [the distributor's] entire downline to Melaleuca" unless they joined Melaleuca, which some distributors called "blackmail." (SUF ¶ 9.)  Herbalife distributors indicated that Defendants gained an entrée by falsely

3

representing they were still with Herbalife, used Herbalife records to contact their downlines, and were "saying horrible things about us and Herbalife." (SUF ¶ 10.) Several Herbalife distributors requested that Herbalife take action to stop this conduct. (SUF ¶ 11.)

## B.   Raiding by Former Distributors is Especially Disruptive to Herbalife's Distribution Chain

Because Herbalife depends on its network of distributors to sell its products, raiding by former Herbalife distributors impacts Herbalife's distribution, training, and sales. (SUF ¶ 12.)  Raiding not only impacts Herbalife through the loss of particular distributors, it also impacts Herbalife's remaining distributors. (SUF ¶ 13.)  When an Herbalife distributor, especially one in a leadership position, is raided by a former distributor and leaves, it is difficult to recreate the relationships necessary for an effective distribution chain.[1]  (SUF ¶ 14.)  Raiding by former distributors impairs the effectiveness of the distributors above the one being solicited.  (SUF ¶¶ 16-17.)  Instead of focusing on selling product, recruiting, and training, these distributors are forced to focus their time and energy on countering the raid.  (SUF ¶ 16.)  This is particularly true when a significant part of the downline is threatened, such as when a raided distributor solicits other distributors in the downline to leave as well.  (SUF ¶ 17.)

Distributors who recently left Herbalife are able to engage in "recruiting" activities that others could not.  Putting aside the obvious issue that former distributors can misuse Herbalife's confidential business information to solicit

---

[1] Herbalife's distributors train distributors many levels down from them and learn from those many levels above them.  Moreover, Herbalife distributors send members of their downline to meet and be trained by Herbalife leaders outside of the distributors' area.  (SUF ¶ 15.)  Thus, Herbalife distributors will become aware of distributors in others' downlines.

4

current distributors, the complaints about Defendants' conduct show such former

distributors have several other recruiting weapons at their disposal.  (SUF ¶¶ 7-11.)

**C.      Rule 8-A's Post-Termination Nonsolicitation Provision Aims to Prevent This Disruptive Conduct**

To prevent this sort of raiding, each Herbalife distributor is bound by

Herbalife's Rules of Conduct and Distributor Policies, which include Rule 8-A:

> During the course of a Distributorship and for one year thereafter,
>
> neither the Distributor nor their spouse, nor any other person assisting
>
> the Distributorship will, directly or indirectly … solicit, promote,
>
> sponsor or recruit any Herbalife Distributor … they became aware of
>
> in the course of their Herbalife Distributorship, to join, promote, sell or
>
> purchase products of, or participate in as a salesperson or otherwise,
>
> any multi-level marketing or direct-sales company …

(SUF ¶¶ 18-19.)  The purpose of Rule 8-A is "[t]o protect the company and its

distributors from distributors taking the down line organizations of other

distributors into another company, so that they lose income and lose their

organization."  (SUF ¶ 20.)

**D.      Herbalife's Response to Defendants' Raiding**

In response to its distributors' concerns, Herbalife sent cease-and-desist

letters to Robert Ford and Jason Fisher in February 2007.  (SUF ¶ 21.)  It also sent a

letter to the Direct Selling Association complaining that this type of conduct by

Melaleuca distributors violated the Association's ethical rules.  (SUF ¶ 22.)  To

inform its distributors of these actions, Herbalife sent an email to Herbalife TAB

Team Members (a subset of Herbalife distributors).  (SUF ¶ 23.)  The email

contained links to demand letters sent to Messrs. Ford and Fisher as well as to a

letter sent by Herbalife to the Direct Selling Association.  (SUF ¶ 23.)

After receiving further complaints from its distributors, Herbalife brought

this suit, alleging that Defendants used Herbalife's trade secret information to

la-1027560

1  recruit Herbalife's distributors.  (Complaint [Dkt No. 1] ¶¶ 82-90)  In addition,

2  Herbalife alleges that Defendants' conduct violated Rule 8A.  (*Id.* ¶ 78.)

3  Herbalife's CEO (Michael Johnson) later sent an email to Herbalife President Team

4  Members (a smaller subset of Herbalife distributors) informing them that Herbalife

5  had filed suit against the Defendants.  (SUF ¶ 25.)

6  **E.    Defendants' Counterclaim and Claimed Injury**

7       After the Court issued an injunction against Defendants, they filed an

8  amended counterclaim.  (Amd. Counterclaim [Dkt No. 98].)  Boiled down,

9  Defendants allege that Herbalife is an endless chain scheme, restrains competition

10  through allegedly illegal contractual provisions, and makes fraudulent

11  representations regarding the income of its distributors.  (*Id.*)  The gist of

12  Defendants' complaint is that Herbalife's conduct hinders the ability of its

13  distributors to leave Herbalife and enter into competition with it.  For instance, the

14  post-termination nonsolicitation provision in Rule 8-A allegedly discourages this

15  conduct because it would preclude former distributors from immediately raiding

16  other Herbalife distributors.  (*Id.*)  Defendants also claim Herbalife's informing its

17  distributors of this lawsuit deterred them from joining Melaleuca.  (*Id.* ¶ 28.)

18       Defendants allege that they "have suffered damages as a proximate result of

19  these unlawful, unfair, and fraudulent practices because, among other things, they

20  have lost income that they would have earned as Melaleuca Marketing executives."

21  (*Id.*)  As they admitted in responses to interrogatories, Defendants' theory of harm

22  is that the alleged conduct prevented them from successfully recruiting more

23  Herbalife distributors into Melaleuca:

24      [Defendants'] believe that many Herbalife distributors would have

25      joined them at Melaleuca if Herbalife did not commit its acts of unfair

26      competition and false advertising.  These persons include: (1)

27      distributors who were in [Defendants'] former Herbalife organization;

28      (2) Herbalife distributors who [Defendants] met at Herbalife trainings,

la-1027560

events, and otherwise in the course of networking; (3) Herbalife

Distributors and customers who [Defendants] became aware of in the

course of their Herbalife distributorship; and (4) members of the sales

organization of former Herbalife distributors who have been recruited

by [Defendants] to Melaleuca.

(SUF ¶ 27.)

### GOVERNING STANDARD

The Court may grant summary judgment on "all or part of a claim." Fed. R. Civ. P. 56(a). Summary judgment or partial summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See McCormick v. Fund Am. Cos.*, 26 F.3d 869, 875 (9th Cir. 1994); *Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Partial summary judgment is an appropriate vehicle to eliminate issues for trial and may be granted as to a particular legal theory that underlies a claim. *See* Moore's Federal Practice § 56.40[2] (3d ed. 2007); *Harris Technical Sales, Inc. v. Eagle Test Sys., Inc.*, No. 06-02471, 2008 WL 343260, at *9-10 (D. Ariz. Feb. 5, 2008); *Watson Labs. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1123 (C.D. Cal. 2001).

### ARGUMENT

**A.     Defendants Lack Standing under Sections 17200 and 17500**

Defendants lack standing to pursue their Section 17200 and 17500 claims; Defendants cannot show they "lost money or property" that was either in their prior possession or in which they had a vested interest. *See, e.g.*, *Kwikset Corp. v. Super. Ct.*, 171 Cal. App. 4th 645, 654 (2009); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd*, 558 F.3d 1025 (9th Cir. 2009).

This standing requirement applies whether Defendants seek monetary or injunctive relief. In ruling on Herbalife's motion to dismiss, the Court held that "the loss of customers and income" is "sufficient to seek injunctive relief under

7

la-1027560

1  section 17200 and 17500." (Order [Dkt. No. 125] at 4.)  In March of this year,

2  however, the Ninth Circuit held that plaintiffs seeking injunctive relief are subject

3  to the same standing requirement as plaintiffs seeking monetary relief: they must

4  show a loss of money or property eligible for restitution.  *Walker v. Geico Gen. Ins.*

5  *Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009); *see also Citizens of Humanity*, 171 Cal.

6  App. 4th at 22 (loss of goodwill not sufficient).

7         Defendants cannot make this showing.  Their alleged injury stems from

8  supposed lost business opportunities.  Defendants allege that "Herbalife's allegedly

9  wrongful and illegal practices have resulted in the loss of customers and income."

10  (Order [Dkt. No. 125] at 4.)  In their answers to interrogatories, Defendants also

11  stated the basis for their alleged injury: "many Herbalife distributors would have

12  joined them at Melaleuca if Herbalife did not commit its acts of unfair competition

13  and false advertising."  (SUF ¶ 27.)  Defendants thus calculate their "lost income"

14  based on their inability to successfully recruit Herbalife distributors.  (SUF ¶ 28.)

15         Compensation for lost business opportunities is not restitution.  *Korea Supply*

16  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003).  By definition,

17  Defendants cannot show that they had prior possession of future income. *See*

18  *Walker*, 474 F. Supp. 2d at 1172.  Nor do Defendants have a vested interest in these

19  monies; the alleged lost income was contingent on Herbalife distributors joining

20  and performing at Melaleuca.  *See id.* at 1173 (contingent interest in future income

21  not vested interest); *Stockton Executive Limousine Charter Serv., Inc. v. Union Pac.*

22  *RR*, No. CIVS041999, 2006 WL 769623, at *7 (E.D. Cal. Mar. 27, 2006).

23         Defendants thus cannot pursue their 17200 and 17500 claims.  *Walker*, 558

24  F.3d at 1027.  The Court should enter judgment dismissing these claims.

25

26

27

28

8

**B.    Defendants Cannot Show Causation**

The Court should dismiss Defendants' IIPEA and Section 17200, 17500, and 16600[2] claims because Defendants cannot show a causal connection between their alleged injury and any non-privileged Herbalife conduct.[3]

When pressed in deposition, Defendants could only identify two actions that supposedly caused them harm: (1) Herbalife's filing this lawsuit and (2) the two Herbalife communications to its distributors describing Defendants' conduct and informing them of remedial steps taken by Herbalife.  (SUF ¶ 29.)

- **Kathy Orr**.  What caused her drop in income at Melaluca?  Mrs. Orr testified it was because "Herbalife slapped a lawsuit on us."  Was there any other reason?  "It was totally the lawsuit that changed our income."  (SUF ¶ 30.)

- **Jason Fisher**.  What caused the drop in his Melaleuca income?  Mr. Fisher blamed "the letter that [Herbalife] e-mailed out to the entire TAB team announcing our lawsuit and scaring anybody that I have ever became associated with in my life not to join me."  (SUF ¶ 31.)

---

[2] Defendants did not state a counterclaim under Section 16600.  Based on Defendants' references to Section 16600, the Court treated "the counterclaim as alleging a claim under section 16600."  (Order [Dkt. No. 125] at 4-5.)  Herbalife construes this to be a claim seeking to declare void Defendants' Herbalife contracts.  Defendants do no have standing to seek to void others' contracts.  *See Killian v. Millard*, 228 Cal. App. 3d 1601, 1605 (1991); *Ponchik v. King*, 957 F.2d 608, 609 (8th Cir. 1992).  To the extent the Section 16600 counterclaim goes further, Defendants cannot show causal injury.

[3] To have standing at all, Defendants must demonstrate "a causal connection between the injury and the conduct complained of."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  For their section 17200 and 17500 claims, Defendants must specifically show a causal connection between the challenged conduct and injury in fact.  *See, e.g., Hall v. Time Inc.*, 158 Cal. App. 4th 847, 853 (2008); *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 639 (2007); *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007).  For their IIPEA claim, Defendants must show that the challenged conduct was the proximate cause of their alleged injury.  *Korea Supply*, 29 Cal. 4th at 1165.

9

la-1027560

- **Dianna Thompson**.  What limited her success at Melaleuca? Ms. Thompson testified she stopped contacting certain Herbalife distributors "once I saw those letters, I pretty much thought, well, they are not going to believe in us right now. They're going to be too scared.  They're going to be afraid they're going to get sued too…. because that's what that letter said.  Everybody is going to get sued if they go into Melaleuca."  (SUF ¶ 32.)

- **Bruce Roth**.  What "problems" did he have recruiting Herbalife distributors?  Mr. Roth explained, "Again, it's based on assumptions.  Most of my work has been over the phone.  So, it's based on the assumption that they talk to their sponsor, their sponsor shared about this letter or e-mailed these letters from Michael Johnson to them."  (SUF ¶ 33.)

- **Nancy Roth.**  How did Herbalife's conduct harm her?  "When Michael Johnson issued the letter to the distributors that we had left and that a lawsuit had been filed, that had prevented others from joining – others from joining Melaleuca when we talked to them.  So we were monetarily harmed because we could not – they could not sign up as Melaleuca executives for fear of a lawsuit."  (SUF ¶ 34.)

- **Robert Ford.**  Why didn't more Herbalife distributors join him?  Mr. Ford claimed that "someone" told him that "they were afraid to go to Melaleuca for fear of being sued."  (SUF ¶ 35.)

### 1.     Herbalife's Filing Its Lawsuit and Communications with Its Distributors are Privileged

Neither the filing of this lawsuit nor the communications to Herbalife distributors may be the basis for Defendants' claims.

Herbalife's filing of this lawsuit is privileged.  Under the *Noerr-Pennington* doctrine, all conduct incidental to non-sham litigation is immune from state law tort liability.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).  California statutory law also grants an absolute privilege to

10

1   communications, such as a complaint, in a judicial proceeding. *See* Cal. Civ. Code

2   § 47(b); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1249

3   (2007); *1100 Park Lane Assocs. v. Feldman*, 160 Cal. App. 4th 1467, 1485-86

4   (2008) (litigation privilege bars claims such as unfair competition and intentional

5   interference based on filing of lawsuit).

6        Herbalife's communications with its distributors are also privileged. The

7   *Noerr-Pennington* doctrine protects pre-litigation communications such as demand

8   letters and informing customers of a lawsuit against a competitor. *Theme*

9   *Promotions*, 546 F.3d at 1007-08. The doctrine applies even if the communications

10  disrupted Defendants' recruiting efforts by making Herbalife distributors "afraid

11  they're going to get sued too." *Id.* (letter telling customers they would be

12  "embroiled" in litigation if they placed orders with plaintiff); *see also Globetrotter*

13  *Software, Inc. v. Elan Computer Group*, 362 F.3d 1367 (Fed. Cir. 2004) (letters

14  alleging patent infringement sent to potential purchaser of plaintiff's business).

15       California law also precludes liability for the publication of "a

16  communication, without malice, to a person interested therein, (1) by one who is

17  also interested, or … (3) who is requested by the person interested to give the

18  information." *See* Cal. Civ. Code § 47(c).

19       Herbalife and its distributors clearly shared an interest in the matter. "Parties

20  in a business or contractual relationship have the requisite 'common interest' for the

21  privilege to apply." *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440

22  (2007). Defendants were raiding Herbalife's distribution chain. Herbalife received

23  numerous complaints from its distributors, calling Defendants' conduct "unethical,"

24  "sleazy,"and "blackmail." (SUF ¶¶ 8-9.) Herbalife distributors requested that

25  Herbalife take action to halt this conduct. (SUF ¶ 11.)

26       The two challenged communications furthered Herbalife's and its

27  distributors' common interest. As Herbalife's CEO explained, "there was an upset

28  group of current distributors who didn't believe the company was doing enough to

11

1    protect their businesses." (SUF ¶ 26.)  Herbalife sent the emails to inform its

2    members of Defendants' conduct as well as the steps Herbalife was taking to

3    address the problem.  (SUF ¶ 26.)  *See, e.g.*, *Deaile v. Gen. Tel. Co.*, 40 Cal. App.

4    3d 841, 846 (1974) (communication from employer to employees to preserve

5    "morale and job efficiency" privileged).

6         California courts have routinely protected such communications.  For

7    instance, courts have found privileged a communication between a company and its

8    workers regarding actions taken against another worker.  *See, e.g.*, *King*, 152 Cal.

9    App. 4th at 440 (termination for falsifying time cards).  Courts have also applied

10   the privilege to similar communications between parties in a commercial

11   relationship.  *See, e.g.*, *Williams v. Taylor*, 129 Cal. App. 3d 745, 752 (1982) (auto

12   body shop manager and insurance adjusters).

13        Defendants raise a fuss because a line in the first email read, "We have

14   received feedback from several of you that currently there are Melaleuca

15   distributors who are misleading, blackmailing and misrepresenting Melaleuca

16   incomes to Herbalife distributors." (SUF ¶ 24.)  They also take offense at

17   Herbalife's stating its belief that Melaleuca products are not nontoxic.  (SUF ¶ 24.)

18        This language does not vitiate the privilege.  California law is clear on this

19   point.  In *Deaile v. General Telephone Co.*, 40 Cal. App. 3d 841 (1974), privilege

20   protected an employers' communication to its employees that the plaintiff had taken

21   actions "akin to thievery." *Id.* at 845.  In *Bollow v. Federal Reserve Bank*, 650 F.2d

22   1093 (9th Cir. 1981), privilege protected the statement that plaintiff was a

23   "troublemaker" and "guilty of misconduct." *Id.* at 1102.  In *Williams v. Taylor*, 129

24   Cal. App. 3d 745 (1982), privilege protected an auto body shop manager's

25   statement to insurance adjustors that the plaintiff had engaged in criminal activity.

26   *Id.* at 752.  In *Ghebreselassie v. Coleman Security Serv.*, 829 F.2d 892 (9th Cir.

27   1987), privilege protected an employers' report that the plaintiff had engaged in

28   theft, even though the plaintiff was later acquitted of that charge.  *Id.* at 898.  In

                                        12

la-1027560

1     *Cuenca v. Safeway San Francisco Employees Federal Credit Union*, 180 Cal. App.

2     3d 985 (1986), privilege protected comments that plaintiff took illegal kickbacks.

3     *Id.* at 995-96.

4             To avoid the privilege, Defendants bear the burden to show "actual malice."

5     *Id.* at 898-99.  This they cannot do.  As a matter of law, malice cannot be inferred

6     from the communications.  Cal. Civ. Code § 48.  Nor is there any evidence of

7     malice.  The numerous complaints, as well as scientific studies of Melaleuca

8     products, gave Herbalife a substantial basis for the assertions.  (SUF ¶ 24.)

9     Herbalife made the communication because of concerns among its distributors.

10     (SUF ¶ 26.)  *Cf. Fisher v. Lucky Stores, Inc.*, No. C93-1019, 1994 WL 125104, *6

11     (N.D. Cal. Apr. 4, 1994) (informing employees of termination to show penalty for

12     breaching employer's policies not malicious).  The communications are privileged

13     and cannot be the basis for Defendants' claims.

14           **2.**       **There is No Causal Connection Between Any Herbalife Conduct**

15                       **and Defendants' Alleged Injury**

16             In fact, there is no causal connection between Defendants' alleged injury and

17     any Herbalife conduct.  Although Defendants solicited dozens, if not hundreds, of

18     Herbalife distributors, Defendants have no evidence that any refused to join

19     Melaleuca because of Herbalife's rules, business model, or supposed

20     misrepresentations.  Instead, Defendants rely on inadmissible conjecture.  (SUF ¶

21     36.)  For instance, Julia Ford insisted that but for Herbalife's conduct, she and her

22     husband had a "good probability" of "free[ing] up" Herbalife distributors – such as

23     Richard and Sonja Palmer and Potato Richardson – to join Melaleuca.  (SUF ¶ 36.)

24             The evidence shows otherwise.  For instance, the Fords solicited the Palmers

25     to join Melaleuca in the Fall of 2006 (before the Herbalife communications),

26     threatening to recruit away the Palmers' downline if they did not do so.  (SUF ¶

27     37.)  The Palmers nonetheless chose to stay with Herbalife (an "easy" decision)

28     "because [they] had had (and continue to have) such a positive and successful

13

relationship with Herbalife." (*Id.*)  No conduct on the part of Herbalife discouraged them from leaving.  (*Id.*)

Similarly, in the Fall of 2006, Potato Richardson rejected "completely" Robert Ford's proposal he join Melaleuca and "scolded [Mr. Ford] for even trying." (SUF ¶ 38.)  The proposal did not interest Mr. Richardson "in the slightest" because he believes strongly in Herbalife's products, has had a wonderful experience with Herbalife, and has been very successful with his Herbalife distributorship.  (*Id.*) The notion that some actions by Herbalife discouraged him from joining Melaleuca "is a complete fabrication." (*Id.*)

Defendants' own testimony demonstrates that no non-privileged Herbalife conduct caused them harm.  Defendants testified that they were very successful in Melaleuca – "rocking and rolling and moving up Melaleuca and gaining tons of bonuses above and beyond our residual income" – until Herbalife filed its lawsuit and issued its communications.  (SUF ¶ 39.)  In contrast, Defendants offer no evidence that the other alleged conduct prevented them from success.  (SUF ¶¶ 40- 44.)

- ***Robert Ford.***  Q. "[D]id any [Herbalife distributor] tell you that they would not leave Herbalife to go to Melaleuca because of Rule 8-A or because they would be prohibited from soliciting their down-line?" A.  "No." (SUF ¶ 40.)
- ***Kathy Orr.***  Q. "I want you to list for me every person that you contend would have joined Melaleuca it hadn't been for some wrongful act by Herbalife." A. "The thing is Jeff and I didn't make very many calls.  So until we call these people, we don't know if they will enroll into Melaleuca or not, but because of that letter and because of Rule 8A and number four on the application, of my application, they wouldn't come over.  So I can't say unless I talk to them." (SUF ¶ 41.)
- ***Jason Fisher.***  Q. "Were there any [Herbalife distributors] … that said to you, I'm not going to do it, and by that I mean come over to Melaleuca,

14

la-1027560

because I'm afraid of what might happen to me?" A. "That, I do not remember." (SUF ¶ 42.)

- ***Dianna Thompson.*** Q. "Is there anyone that you can identify that you believe you would have converted over to Melaleuca if not for [the first email to Herbalife distributors], if Herbalife hadn't sent that out?" A. "I can't identify any names …" (SUF ¶ 43.)

- ***Nancy Roth.*** Q. "[I]s there any reason that you are aware of, other than perhaps the letters you just mentioned, why the enrollment rate declined or the enrollment number declined?" A. "Those letters contributed for the February and March, and the Michael Johnson letter contributed to the subsequent months after that." Q. "Okay. But is there any other reason you are aware of why the number went down?" A. "No." (SUF ¶ 44.)

The Court should enter judgment against Defendants' IIPEA and Sections 17200, 17500, and 16600 claims. *Daro*, 151 Cal. App. 4th at 1099 (plaintiffs failed to prove causal connection between alleged unfair business practice and injury; injury caused by lawful act); *Hall*, 158 Cal. App. 4th at 857-58 (plaintiff failed to show alleged misrepresentation caused harm); *Korea Supply*, 29 Cal. 4th at 1165 (dismissing IIPEA claim for failure to show causation).

**C.    Defendants Cannot Pursue Their Endless Chain Scheme Claim**

Alleging that Herbalife is an endless chain scheme, Defendants seek an injunction and rescission of their Herbalife contracts. The Court should dismiss this claim. As a matter of law, injunctive relief is not available to Defendants; they have failed to meet the prerequisites to obtain rescission; and four defendants are barred by the statute of limitations.

By seeking an injunction, Defendants effectively seek to enforce a criminal statute: California Penal Code section 327. But injunctive relief cannot be granted "to enforce penal law, except in a case of nuisance or as otherwise provided by law." Cal. Civ. Code § 3369; *Stegner v. Bahr & Ledoyen*, 126 Cal. App. 2d 220,

15

231 (1954).  An endless chain scheme is not a "nuisance."  *See Carter v. Chotiner*, 210 Cal. 288, 291 (1930) ("violation of a penal ordinance does not of itself create a private nuisance").  Nor does the law otherwise provide a right to an injunction; the California legislature only provided for rescissionary relief.   Cal. Civ. Code § 1689.2; *see also Cell Assocs. v. NIH*, 579 F.2d 1155, 1159 (9th Cir. 1978) (injunctive relief not available where legislature provided only for damages).

Defendants cannot obtain rescission either.  To do so, Defendants must demonstrate that they are willing and able to restore to Herbalife everything of value received under their contracts.  Cal. Civ. Code § 1691(b);[4] *Okura & Co. (Am.), Inc. v. Careau Group*, 783 F. Supp. 482, 504-05 (C.D. Cal. 1991).

The undisputed evidence shows that Defendants are unable to meet this threshold requirement.  Over the course of their distributorships, Defendants each obtained from Herbalife between $200,000 to over $2,000,000.  (SUF ¶ 45.)  Their own deposition testimony and interrogatory responses show that they cannot restore these monies to Herbalife.  (SUF ¶ 46.)  The Court should dismiss their claim. *Okura*, 783 F. Supp. 504-05; *Edwards v. Lang*, 198 Cal. App. 2d 5, 13 (1961).

Jason Fisher, Robert Ford, Jeff Orr and Kathy Orr are also barred by the statute of limitations.  Each knew the facts underlying their claim long before the statute of limitations period.  (SUF ¶ 47.)  Cal. Civ. Pro. Code § 337(2).

**D.     Defendants Cannot Base Their Claims on Rule 8-A**

According to Defendants' counterclaim, Herbalife's post-termination nonsolicitation provision in Rule 8-A violates Section 16600 because it allegedly is not "necessary to protect Herbalife's trade secrets."  (Amd. Counterclaim [Dkt. No.

---

[4] This procedural prerequisite applies to all rescissionary remedies in California Civil Code, Title 5, Chapter 1, Part 2, which includes section 1689.2.  Its applicability is also demonstrated by the language of section 1689.2.

16

98] ¶¶ 26-27.)  This alleged violation is a basis for Defendants' IIPEA, Section 17200, and Section 16600 claims.  (*Id.* at ¶ 35, 47.)

The Court should grant partial summary judgment dismissing these claims to the extent these are based on the nonsolicitation provision in Rule 8-A.  While the need to protect trade secrets may be necessary for provisions preventing former employees from soliciting *customers*,[5] California law is clear that Section 16600 does not bar provisions, whether or not necessary to protect trade secrets, preventing former employees and independent contractors from soliciting their former *coworkers*.

**1.      Employee Nonsolicitation Provisions Do Not Violate Section 16600 Whether or Not Necessary to Protect Trade Secrets**

*Buskuhl v. Family Life Insurance Co.*, 271 Cal. App. 2d 514 (1969), makes this perfectly clear.  Buskuhl's employment contracts provided that he would receive commissions for a period of five years regardless of whether he stayed with the company.  *Id.* at 516.  The company could terminate the payments if Buskuhl (1) solicited the company's customers or (2) solicited company agents to join another insurer.  *Id.* at 517.  Buskuhl joined another insurer, solicited the defendant's customers, and recruited the defendant's agents.  *Id.* at 518.  The defendant terminated Buskuhl's commission payments.  *Id.*

The court summarily rejected Buskuhl's claim that the provision prohibiting solicitation of the insurer's agents violated Section 16600:

> Appellant's continued right to commissions after termination of his employment was also conditioned upon his not attempting to induce agents of Family Life to discontinue their representation of that

---

[5] *See, e.g., Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429 (2003); *John F. Matull & Assocs. v. Cloutier*, 194 Cal. App. 3d 1049, 1054 (1987); *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 129 (1986).

17

la-1027560

1       company for the purpose of representing another insurance company.

2       That provision is not such an inhibition upon a former employee's

3       right to engage in a trade, business, or profession as to be within the

4       proscription of section 16600.

5  *Id.* at 522-23.  In other words, employee nonsolicitation provisions do not restrain

6  the ability to engage in a profession and do not violate Section 16600.

7       This is true whether or not the employee nonsolicitation provision is related

8  to protecting trade secrets.  The court relied on trade secrets protection in upholding

9  the *customer* nonsolicitation provision.  *Id.* at 522.  But trade secrets protection was

10  not the basis for its holding that the *employee* nonsolicitation provision did not

11  violate Section 16600; no confidentiality or trade secret issue applied to the

12  solicitation of the insurer's agents.  *Id.* at 522-53.

13       In *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985), the court again held

14  that an agreement not to solicit former coworkers did not violate Section 16600.

15  The agreement provided that Moyes would not "disrupt, damage, impair or interfere

16  with the business" of his former employer by "interfering with or raiding" the

17  company's employees.  *Id.* at 274.  Moyes joined another firm and recruited two

18  key employees of his former employer.  *Id.*  The former employer sued.  Moyes

19  argued that the nonsolicitation provision violated Section 16600.

20       The court held that the provision did not restrain trade and did not violate

21  Section 16600.  The restriction did not prevent the employees from contacting

22  Moyes: "All they lose is the option of being contacted by him first."  *Id.* at 279.

23  The provision did not prevent employees from going to Moyes' new firm.  *Id.*  On

24  the other hand, the provision "presumably was sought by plaintiffs in order to

25  maintain a stable work force and enable the employer to remain in business."  *Id.* at

26  280.  Thus, the provision did not violate Section 16600.  *Id.*

27       As in *Buskuhl*, the *Loral* court upheld the nonsolicitation provision without

28  any reference to protecting trade secrets.  The *Loral* court specifically noted that its

18

1  "approach does not require us to address plaintiff's interesting argument that the

2  abilities and salaries of its employees were trade secrets." *Id.* at 280 n.6.

3  **2.     Post-Termination Nonsolicitation Provisions Binding Independent**

4  **Distributors Are Equally Valid**

5  The principles in *Buskuhl* and *Loral* apply equally to independent distributors

6  such as defendants.  Although insurance agents are typically independent

7  contractors, in *Buskuhl*, the "characterization of the relationship between the parties

8  as employer-employee, principal and agent, or independent contractors [was]

9  treated as not significant by the litigants."  271 Cal. App. 2d at 517 n.1. The court

10  therefore used "the employer-employee designation for convenience only."  *Id.*

11  Moreover, California courts have repeatedly upheld post-termination

12  nonsolicitation restrictions on independent contractors under the same principles

13  applicable to employees.  *See, e.g.*, *State Farm Mutual Auto. Ins. Co. v. Dempster*,

14  174 Cal. App. 2d 418, 425-26 (1959) (upholding provision barring, for one year,

15  independent contractor insurance agents from soliciting company's policyholders);

16  *Ingrassia v. Bailey*, 172 Cal. App. 2d 117, 124-25 (1959) (upholding provision

17  barring independent contractor from soliciting company's customers).

18  Thus, in *Webb v. West Side District Hospital*, 144 Cal App. 3d 946 (1983),

19  the court upheld a two-year post-termination provision preventing a hospital from

20  employing any physician recruited and trained by its independent contractor

21  without first paying a substantial fee.  *Id.* at 949, 953 n.4, 954-55.  The hospital

22  argued that this provision violated Section 16600 by restraining it as well as the

23  physicians.  *Id.* at 954-55.  The court rejected this argument, finding that the fee

24  protected the independent contractor's interest in preventing exploitation of his

25  recruiting and training efforts and that the doctors "were not precluded from

26  working" at the hospital.  *Id.*

27

28

19

la-1027560

1    Under California law, therefore, just as with the employee nonsolicitation

2  agreements, provisions precluding former independent contractors from soliciting a

3  firm's current contractors do not violate Section 16600.

4    ### 3.    *Edwards* **Does Not Affect This Conclusion**

5    The California Supreme Court's decision in *Edwards v. Arthur Andersen*

6  *LLP*, 44 Cal. 4th 937 (2008), does not change this conclusion.  First, the *Edwards*

7  holding did not involve an employee nonsolicitation provision.  The agreement at-

8  issue in *Edwards* did bar the plaintiff from soliciting "away from the Firm any of its

9  professional personnel for eighteen months after release or resignation."  *Id.* at 942.

10  But the plaintiff did not "contend that the provision … prohibiting him from

11  recruiting Andersen's employees violated section 16600," *id.* at 946 n.4, and the

12  court's holding was limited to provisions barring the plaintiff from working for or

13  soliciting the employer's clients, *id.* at 948.

14    Second, although the *Edwards* court refused to adopt the Ninth Circuit's

15  "narrow-restraint exception" (which allowed noncompete agreements that barred

16  former employees from "pursuing only a small or limited part of the business, trade

17  or profession," *id.* at 948 (internal quotes and citation omitted)), *Buskuhl*, *Loral*,

18  and *Webb* were not premised on this exception.  As *Edwards* made clear, California

19  courts have never adopted the narrow-restraints exception.  *Id.* at 949.

20    Third, *Edwards'* emphasis on the plain meaning of Section 16600, *id.* at 946,

21  demonstrates that the statute does not prohibit employee nonsolicitation

22  agreements.  Section 16600 states that "every contract by which anyone is

23  restrained from engaging in a lawful profession, trade, or business of any kind is to

24  that extent void."  An employee nonsolicitation provision "is not such an inhibition

25  upon a former employee's right to engage in trade, business, or profession as to be

26  within the proscription of section 16600." *Buskuhl*, 271 Cal. App. 2d at 522-23; *see*

27  *also Webb*, 144 Cal. App. 3d at 955; *City of Oakland v. Hassey*, 163 Cal. App. 4th

28  1477, 1491 (2008) (agreement requiring reimbursement for training costs if officer

20

1    resigns within five years did not restrain plaintiff "from engaging in [his] lawful

2    trade, business, or profession.  Nothing prevented him from working for another

3    police department, or anywhere else, for that matter." (citations and internal

4    quotations omitted)).

5        **4.    Rule 8-A's Limited Prohibition on Soliciting Herbalife**

6              **Distributors Does Not Violate Section 16600**

7              **a.    As in *Buskuhl*, *Loral*, and *Webb*, Rule 8-A's Prohibition Does**

8                    **Not Restrain Anyone From Engaging in a Trade or Business**

9            Rule 8-A's post-termination nonsolicitation provision is valid and

10   enforceable under *Buskuhl*, *Loral*, and *Webb*.  It has limited duration; it applies for

11   only one year after a distributor leaves Herbalife.  (SUF ¶ 19.)  *See Buskuhl*, 271

12   Cal. App. 2d at 516-17 (upholding provision that was effective for 5-years).  It has

13   a limited scope; it prohibits only the solicitation of those Herbalife distributors that

14   former distributors became aware of in the course of their Herbalife

15   distributorships.  (SUF ¶ 19-4.)  *See Loral*, 174 Cal. App. 3d at 274 (precluding

16   "interfering with or raiding" the company's employees); *Buskuhl*, 271 Cal. App. 2d

17   at 516-17 (provision precluded recruiting "any agent of the company").

18           Rule 8-A does not prohibit any Herbalife distributor from joining Melaleuca

19   or any other multi-level marketing company.  *Loral*, 174 Cal. App. 3d at 279;

20   *Webb*, 144 Cal. App. 3d at 955.  It does not prevent the thousands of Melaleuca

21   distributors other than Defendants from soliciting or recruiting Herbalife

22   distributors.  174 Cal. App. 3d at 279.  Nor does it prevent former distributors from

23   recruiting current Herbalife distributors that they did not become aware of during

24   the course their distributorship.  *Id.*  The restriction "is not such an inhibition upon

25   a former employee's right to engage in a trade, business, or profession as to be

26   within the proscription of section 16600." *Buskuhl*, 271 Cal. App. 2d at 522-23.

27

28

                                        21

1
2
      **b.**     **Rule 8-A's Restriction is a Lawful Means to Protect Herbalife's Legitimate Interests**

3      That Rule 8-A does not restrain anyone from engaging in trade or business

4 ends the matter.  Partial summary judgment is compelled by this alone.  But it is

5 also apparent that Rule 8-A's post-termination nonsolicitation provision

6 legitimately protects Herbalife's valid interests in its distribution chain.

7      *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277 (D. Utah 2008), demonstrates

8 the importance of protecting a direct sales company's distribution chain from

9 raiding by former distributors.  Neways' rules provided that distributors were

10 prohibited for one year from recruiting "any Neways Distributor who is on his/her

11 current or past genealogy report(s) or with whom the Distributor became acquainted

12 by virtue of their mutual participation as Neways Distributors." *Id.* at 1285-86.

13 The court found that recruiting by former distributors would cause irreparable

14 injury to Neways because "a multi-level marketing company's relationship with its

15 distributors is crucial to the success of the company's marketing program.

16 Accordingly, distributor networks are extremely important assets to multi-level

17 marketing businesses." *Id.* at 1289.  The court therefore enjoined the former

18 distributors from "directly or indirectly soliciting, enrolling, encouraging or

19 attempting to influence any current Neways distributor to enroll or participate in"

20 the competing multi-level marketing company. *Id.* at 1287; *see also Pre-Paid*

21 *Legal Servs. v. Harrell*, No. CIV-06- 019-JHP, 2008 U.S. Dist. LEXIS 1773, at

22 *35-38 (E.D. Okla. Jan. 8, 2008) (granting injunction prohibiting former

23 independent contractor sales associates of multi-level marketing from soliciting

24 current distributors for 3 years).

25      Similarly, Rule 8-A's post-termination nonsolicitation provision lawfully

26 protects Herbalife's distribution chain from the type of disruptive raiding that

27 recently resigned Herbalife distributors are best able to employ.  Armed with

28 current information from Herbalife, such former distributors can credibly make the

la-1027560

1   sort of false representations and threats Herbalife distributors have complained

2   Defendants have used to coerce Herbalife distributors to join Melaleuca.  (SUF ¶ 7-

3   10.)  Rule 8-A's limited, one-year, post-termination nonsolicitation provision

4   properly protects Herbalife distributors' investments in the recruitment and training

5   of distributors.  *See Webb*, 144 Cal App. 3d at 954 (nonsolicitation provision

6   protected investment in recruitment and training); *see also Hassey*, 163 Cal. App.

7   4th at 1491 (training expense reimbursement rule designed to encourage officers to

8   stay with city).  This is critical to a direct sales company, such as Herbalife, because

9   an effective distribution chain requires a certain level of trust among distributors so

10  that they will allow their downlines to be trained by and attend events sponsored by

11  other Herbalife distributors.[6]  Rule 8-A protects Herbalife's valid interest in a stable

12  distribution chain.  *See Loral*, 174 Cal. App. 3d at 280 (nonsolicitation provision

13  upheld employer's interest in stable workforce).

14      **5.      Rule 8-A's Distributor Nonsolicitation Provision Cannot Be the**

15              **Basis of Defendants' Claims**

16      Rule 8-A's post-termination nonsolicitation provision therefore cannot be the

17  basis for Defendants' Section 16600, Section 17200, or intentional interference

18  claims.  *Buskuhl*, *Loral*, and *Webb* demonstrate that the provision does not violate

19  Section 16600.

20      This, in turn, demonstrates that Herbalife's promulgation and enforcement of

21  the distributor nonsolicitation cannot be the basis for Defendants' Section 17200

22  claim.  Defendants' based their claim, in part, on the allegation that Herbalife

23  includes "illegal restraints of trade in its … 'rules' in violation of California

24

25      [6] In fact, Melaleuca requires its distributors, including Defendants, to abide
    by a one-year post-termination nonsolicitation provision "to protect the efforts of all
26  Marketing Executives in building and maintaining their individual Marketing
    Organizations and Customer bases, and in order to protect Melaleuca's interest in
27  the overall Customer base."  (SUF ¶ 48.)

28

1   Business and Professions Code Section 16600." (Amd. Counterclaim [Dkt. No. 98]

2   ¶ 47.) Defendants thus seek to "borrow" this alleged violation as the basis for their

3   Section 17200 claim. *See Dey v. Cont'l Cent. Credit*, 170 Cal. App. 4th 721, 727

4   (2008). As Rule 8-A's post-termination distributor nonsolicitation provision does

5   not violate Section 16600, it cannot be the basis for Defendants' Section 17200

6   claim. *See Thrifty Oil Co. v. Superior Ct.*, 91 Cal. App. 4th 1070, 1078 (2001)

7   (granting summary judgment against section 17200 claim where the alleged

8   conduct was lawful under the relevant statute).

9        Likewise, Defendants' intentional interference claim cannot be based on Rule

10  8-A's post-termination distributor nonsolicitation provision. That claim requires a

11  showing that Herbalife engaged in an independently wrongful act, i.e., an act

12  "proscribed by some constitutional, statutory, regulatory, common law, or other

13  determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1153, 1159. Further, to

14  support Defendants' claim, Herbalife's act must be "independently actionable."

15  *Stevenson Real Estate Serv. v. CB Richard Ellis Real Estate Serv., Inc.*, 138 Cal.

16  App. 4th 1215, 1223 (2006). Defendants can point to no cause of action that may

17  be based on Rule 8-A's post-termination nonsolicitation provision. It thus cannot

18  be the basis for Defendants' intentional interference claim.

19                                    **CONCLUSION**

20       The Court should grant summary judgment. The Court should dismiss the

21  Section 17200 and 17500 claims because Defendants lack standing to bring these

22  claims. The Court should also dismiss these claims, along with the IIPEA and

23  Section 16600 claims, because Defendants cannot show a causal connection

24  between their alleged harm and any non-privileged Herbalife conduct. The court

25  should dismiss the endless chain scheme claim because Defendants cannot show

26  they are entitled to relief.

27       In the alternative, the Court should grant partial summary judgment.

28  Defendants cannot base their IIPEA, Section 17200 and 17500 claims on

24

la-1027560

1   Herbablife's filing this lawsuit or its communications with its distributors

2   concerning Defendants' conduct.  Nor can Defendants base their IIPEA and

3   Sections 17200 and 16600 claims on Herbalife's promulgation or enforcement of

4   Rule 8-A's one-year prohibition on solicitation by former distributors of Herbalife

5   distributors they became aware of during the course of their Herbalife

6   distributorships.

7

8   Dated:    May 4, 2009                MORRISON & FOERSTER LLP

9                                        /s/ Sean P. Gates
                                         _____
10                                       Charles E. Patterson
                                         Nancy R. Thomas
11                                       Sean P. Gates

12                                       Attorneys for Plaintiff and
                                         Counterclaim Defendant
13                                       HERBALIFE INTERNATIONAL
                                         OF AMERICA, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1027560