1 CHARLES E. PATTERSON (CA SBN 120081)
CPatterson@mofo.com
2 NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
3 SEAN P. GATES (CA SBN 186247)
SGates@mofo.com
4 MORRISON & FOERSTER LLP
555 West Fifth Street
5 Los Angeles, California  90013-1024
Telephone:  213.892.5200
6 Facsimile:   213.892.5454

7 Attorneys for Plaintiff and Counterclaim Defendant
Herbalife International of America, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        WESTERN DIVISION

12

| | |
|---|---|
| 13 Herbalife International of America, Inc., a Nevada Corporation, | Case No. CV 07 2529 GAF (FMOx) |
| 14 | Hon. Gary A. Feess |
| 15 Plaintiff, | **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION BY HERBALIFE INTERNATIONAL OF AMERICA, INC. FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| 16 Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and | |
| 17 Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; | |
| 18 Dianna N. Thompson; and Jason Fisher, | |
| 19 Defendants. | |
| 20 | Date:          June 1, 2009 |
| 21 | Time:         9:30 a.m. Courtroom: 740-Royal |

22

23

24

25

26

27

28

la-1027564

Counterdefendant and moving party Herbalife International of America, Inc. ("Herbalife") submits the following Statement of Uncontroverted Facts and Conclusions of Law in support of Herbalife's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. This statement sets forth each of the material facts as to which Herbalife contends there is no genuine issue and which entitle Herbalife to summary judgment as a matter of law.

## UNCONTROVERTED MATERIAL FACTS

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| 1. As a direct sales company, Herbalife relies on a network of distributors (independent contractors) to sell and promote its products. | Declaration of Sean P. Gates in Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Gates Decl.) Ex. A ¶ 5, 12 (Miller Declaration); Ex. B at D00005 (Rule 8-F). |
| 2. Herbalife distributors also recruit and train other Herbalife distributors, who in turn may recruit and train additional distributors to sell Herbalife products. | Gates Decl. Ex. A ¶ 7 (Miller Declaration); Ex. C ¶ 30 (Further Miller Declaration). |

1

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 3. To encourage distributors to build Herbalife's sales force, Herbalife pays its distributors based on their own sales as well as the sales of their "downline" – those persons recruited directly or indirectly into the organization by the distributor. | Gates Decl. Ex. A ¶¶ 9-11 (Miller Declaration). |
| 4. Each of the Defendants left Herbalife to join Herbalife's competitor, Melaleuca. | Gates Decl. Ex. D (Answer to Amended Counterclaim ¶¶ 8-12). |
| 5. Melaleuca distributors earn money based on the sales of those they recruit to become Melaleuca distributors. | Gates Decl. Ex. E (Jeff Orr Dep. Tr. 187:15-190:4); Ex. F (Kathy Orr Dep. Tr. 187:16-188:13); Ex. G (Nancy Roth Dep. Tr. 61:19-62:23) |

la-1027564

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 6. Defendants launched a campaign to build their Melaleuca organizations by recruiting Herbalife distributors to join them.  For instance, in February 2007, just after leaving Herbalife, Bruce and Nancy Roth joined Jason Fisher and Robert Ford for a ten-day recruiting blitz, working continuously to solicit Herbalife distributors in the Roths' former downline.  Each of the Defendants made similar efforts. | Gates Decl. Ex G (Nancy Roth Dep. Tr. 122:16-19, 126:16-127:11, 146:2-149:21); Ex. H (Bruce Roth Dep. Tr. 152:25-154:21); Ex. I (Jeff and Kathy Orr Supplemental Responses to Rogs No. 6); Ex. J (Robert Ford Dep. Tr. 186:14-20); Ex. E (Jeff Orr Dep. Tr. 219:7-17, 220:12-18); Ex. K (Dianna Thompson Dep. Tr.  93:20-94:14); Ex. L (Jason Fisher Dep. Tr.  195:3-20). |
| 7. Herbalife distributors complained that Defendants engaged in various coercive and deceptive recruiting tactics. | Declaration of Paul Greenberg in Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Greenberg Decl.) ¶¶ 2-8, Ex. A-F. |
| 8. Herbalife distributors complained that Defendants were raiding their downline, a practice which some described as "unethical" and "sleazy." | Greenberg Decl. ¶ 3, Ex. A, B. |

la-1027564

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 9.  Herbalife distributors complained that Defendants threatened to "take [the distributor's] entire downline to Melaleuca" unless they joined Melaleuca, which some distributors called "blackmail." | Greenberg Decl. ¶ 4, Ex. F; Declaration of Robert Palmer in Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Palmer Decl.) ¶¶ 4-6; Gates Decl. Ex. M ¶ 5 (Schmaman Declaration); Ex. N ¶ 11 (Nix Declaration); Ex. O ¶ 12 (Klucken Declaration); Ex. P (Schmaman Dep. Tr. 83:2-90:1). |
| 10. Herbalife distributors indicated that Defendants gained an entrée by falsely representing they were still with Herbalife, used Herbalife records to contact their downlines, and were "saying horrible things about us and Herbalife." | Greenberg Decl. ¶¶ 5, 6, 7, Ex. B, C; Declaration of Potato Richardson in Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Richardson Decl.) ¶¶ 1-3; Gates Decl. Ex. Q ¶¶ 1-4 (Justesen Declaration), Ex. N ¶ 10. |

4

la-1027564

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 11. Several Herbalife distributors requested that Herbalife take action to stop Defendants' conduct. | Greenberg Decl. ¶ 9, Ex. D, E. |
| 12. Because Herbalife depends on its network of distributors to sell its products, raiding by former Herbalife distributors impacts Herbalife's distribution, training, and sales. | Greenberg Decl. ¶ 10; Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration). |
| 13. Raiding not only impacts Herbalife through the loss of particular distributors, it also impacts Herbalife's remaining distributors. | Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration). |
| 14. When an Herbalife distributor, especially one in a leadership position, is raided by a former distributor and leaves, it is difficult to recreate the relationships necessary for an effective distribution chain. | Gates Decl. Ex. C ¶ 30 (Further Miller Declaration). |

5

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 15. Herbalife's distributors train distributors many levels down from them and learn from those many levels above them.  Moreover, Herbalife distributors send members of their downline to meet and be trained by Herbalife leaders outside of the distributors' area. | Gates Decl. Ex. M (Schmamam Dep. Tr.  48:8-49:18); Ex. F (Kathy Orr Dep. Tr.  94:20-95:21, 106:21-108:3); Ex. E (Jeff Orr Dep. Tr.  90:24-94:4); Ex. R (Julia Ford Dep. Tr.  135:8-22); Ex. S (Stephan Gratziani Dep. Tr. 40:1-18); Ex. T (Michael Johnson Dep. Tr.  89:18-90:6, 95:18-96:8); Ex. U (Lilith Nix Dep. Tr.  34:14-36:13.) |
| 16. Raiding by former distributors especially impairs the effectiveness of the distributors above the one being solicited.  Instead of focusing on selling product, recruiting, and training, these distributors are forced to focus their time and energy on countering the raid. | Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration), Ex. V ¶¶ 2-4 (McClain Declaration), Ex. W (Paul Greenberg Dep. Tr. 94:2-96:1). |

6

la-1027564

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 17. Raiding by former distributors impairs the effectiveness of the distributors above the one being solicited, particularly when a significant part of the downline is threatened, such as when a raided distributor solicits other distributors in the downline to leave as well. | Gates Decl. Ex. X ¶ 3 (Mandryk Declaration), Ex. M ¶¶ 5-9 (Schmaman Declaration), Ex. E (Jeff Orr Dep. Tr. 216:25-220:18). |
| 18. Each Herbalife distributor is bound by Herbalife's Rules of Conduct and Distributor Policies. | Gates Decl. Ex. C ¶¶ 3, 14 (Further Miller Declaration), Ex. B at D00001. |
| 19. Herbalife's Rules of Conduct and Distributor Policies Rule 8-A provides: | Gates Decl. Ex. C ¶¶ 15-17 (Further Miller Declaration). |

> During the course of a Distributorship and for one year thereafter, neither the Distributor nor their spouse, nor any other person assisting the Distributorship will, directly or indirectly … solicit, promote, sponsor or recruit any Herbalife Distributor … they became aware of in the course of their Herbalife Distributorship, to join, promote, sell or purchase products of, or participate in as a salesperson or otherwise, any multi-level marketing or direct-sales company …

7

la-1027564

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 20. The purpose of Rule 8-A is "[t]o protect the company and its distributors from distributors taking the down line organizations of other distributors into another company, so that they lose income and lose their organization." | Gates Decl. Ex. Y (Jackie Miller Dep. Tr. 58:16-20). |
| 21. In response to its distributors' concerns, Herbalife sent cease-and-desist letters to Robert Ford and Jason Fisher in February 2007. | Greenberg Decl. ¶ 14, Ex. Q. |
| 22. It also sent a letter to the Direct Selling Association complaining that this type of conduct by Melaleuca distributors violated the Association's ethical rules. | Greenberg Decl. ¶ 14, Ex. Q. |

8

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 23. To inform its distributors of these actions, Herbalife sent an email to Herbalife TAB Team Members (a subset of Herbalife distributors).  The email contained links to demand letters sent to Messrs. Ford and Fisher as well as to a letter sent by Herbalife to the Direct Selling Association. | Greenberg Decl. ¶ 14, Ex. Q. |
| 24. A line in this first email read, "We have received feedback from several of you that currently there are Melaleuca distributors who are misleading, blackmailing and misrepresenting Melaleuca incomes to Herbalife distributors."  It also states Herbalife's belief that Melaleuca products are not nontoxic.  The numerous complaints, as well as scientific studies of Melaleuca products, gave Herbalife a substantial basis for these assertions. | Greenberg Decl. Ex. Q. |

9

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 25. Herbalife's CEO (Michael Johnson) later sent an email to Herbalife President Team Members (a smaller subset of Herbalife distributors) informing them that Herbalife had filed suit against the Defendants. | Greenberg Decl. ¶ 14, Ex. R. |
| 26. Herbalife sent the emails to its distributors to inform its members of Defendants' conduct as well as the steps Herbalife was taking to address the problem.  As Herbalife's CEO explained, "there was an upset group of current distributors who didn't believe the company was doing enough to protect their businesses." | Greenberg Decl. ¶¶ 10, 14, 16; Gates Decl. Ex. T (Michael Johnson Dep. Tr.  107:3-10). |

10

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 27. Defendants' entire theory of harm is that the alleged conduct prevented them from successfully recruiting more Herbalife distributors into Melaleuca. Defendants stated in their interrogatory responses: | Gates Decl. Ex. Z (Defendant's Responses to Plaintiff's Second Set of Special Interrogatories No. 17). |

> [Defendants'] believe that many Herbalife distributors would have joined them at Melaleuca if Herbalife did not commit its acts of unfair competition and false advertising. These persons include: (1) distributors who were in [Defendants'] former Herbalife organization; (2) Herbalife distributors who [Defendants] met at Herbalife trainings, events, and otherwise in the course of networking; (3) Herbalife Distributors and customers who [Defendants] became aware of in the course of their Herbalife distributorship; and (4) members of the sales organization of former Herbalife distributors who have been recruited by [Defendants] to Melaleuca.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 28. Defendants calculate their "lost income" based on their inability to successfully recruit Herbalife distributors. | Gates Decl. Ex. Z (Defendant's Responses to Plaintiff's Second Set of Special Interrogatories No. 17). |

11

la-1027564

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 29. When pressed in deposition, Defendants could only identify two actions that supposedly caused them harm: (1) Herbalife's filing this lawsuit and (2) the two Herbalife communications to its distributors describing Defendants' conduct and informing them of remedial steps taken by Herbalife. | Gates Decl. Ex. F (Kathy Orr Dep. Tr. 215:17-24, 225:20-25); Ex. L (Fisher Dep. Tr.  114:13-115:11). |
| 30. Kathy Orr testified that her drop in income at Melaleuca was because "Herbalife slapped a lawsuit on us." When asked if there was there any other reason, she testified: "It was totally the lawsuit that changed our income." | Gates Decl. Ex. F (Kathy Orr Dep. Tr. 215:17-24, 225:20-25). |
| 31. Jason Fisher testified that the drop in his Melaleuca income was caused by "the letter that [Herbalife] e-mailed out to the entire TAB team announcing our lawsuit and scaring anybody that I have ever became associated with in my life not to join me." | Gates Decl. Ex. L (Fisher Dep. Tr. 114:13-115:11). |

12

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 32. Dianna Thompson testified that her success at Melaleuca was limited because she stopped contacting certain Herbalife distributors "once I saw those letters, I pretty much thought, well, they are not going to believe in us right now. They're going to be too scared.  They're going to be afraid they're going to get sued too. That's what I thought about it because that's what that letter said.  Everybody is going to get sued if they go into Melaleuca." | Gates Decl. Ex. K (Thompson Dep. Tr.  204:8-205:1). |
| 33. When asked what "problems" he had recruiting Herbalife distributors, Bruce Roth  testified, "Again, it's based on assumptions.  Most of my work has been over the phone.  So, it's based on the assumption that they talk to their sponsor, their sponsor shared about this letter or e-mailed these letters from Michael Johnson to them." | Gates Decl. Ex. H (Bruce Roth Dep. Tr.  199:20-200:7). |

la-1027564

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 34. Asked how Herbalife's conduct harmed her, Nancy Roth testified, "When Michael Johnson issued the letter to the distributors that we had left and that a lawsuit had been filed, that had prevented others from joining – others from joining Melaleuca when we talked to them.  So we were monetarily harmed because we could not – they could not sign up as Melaleuca executives for fear of a lawsuit." | Gates Decl. Ex. G (Nancy Roth Dep. Tr. 20:2-16). |
| 35. Asked why more Herbalife distributors didn't join him at Melaleuca, Robert Ford claimed that "someone" told him that "they were afraid to go to Melaleuca for fear of being sued." | Gates Decl. Ex. J (Robert Ford Dep. Tr.  192:7-17). |

14

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 36. Julia Ford insisted that but for Herbalife's conduct, she and her husband had a "good probability" of "free[ing] up" Herbalife distributors – such as Richard and Sonja Palmer, Potato Richardson, and Paul Michaels – to join Melaleuca. | Gates Decl. Ex. BB (Defendant's Responses Plaintiff's Second Set of Interrogatories No. 5), Ex. R (Julia Ford Dep. Tr. 174:21-175:20). |
| 37. The Fords solicited the Palmers to join Melaleuca in the Fall of 2006 (before the Herbalife communications), threatening to recruit away the Palmers' downline if they did not do so.  The Palmers nonetheless chose to stay with Herbalife (an "easy" decision) "because [they] had had (and continue to have) such a positive and successful relationship with Herbalife."  No conduct on the part of Herbalife discouraged them from leaving. | Palmer Decl. ¶¶ 2-8. |

15

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 38. In the Fall of 2006, Potato Richardson rejected "completely" Robert Ford's proposal he join Melaleuca and "scolded [Mr. Ford] for even trying." The proposal did not interest Mr. Richardson "in the slightest" because he believes strongly in Herbalife's products, has had a wonderful experience with Herbalife, and has been very successful with his Herbalife distributorship.  The notion that some actions by Herbalife discouraged him from joining Melaleuca "is a complete fabrication." | Richardson Decl. ¶¶ 1-5. |
| 39. Defendants testified that they were very successful in Melaleuca – "rocking and rolling and moving up Melaleuca and gaining tons of bonuses above and beyond our residual income" – until Herbalife filed its lawsuit and issued its communications. | Gates Decl. Ex. F (Kathy Orr Dep. Tr. 216:7-24); Ex. E (Jeff Orr Dep. Tr. 240:21-241:16); Ex. H (Bruce Roth Dep. Tr.  198:14-199:8); Ex. G (Nancy Roth Dep. Tr. 78:1-80:24); Ex. R (Julia Ford Dep. Tr. 186:3-187:19); Ex. L (Jason Fisher Dep. Tr. 114:1-115:20). |

16

la-1027564

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 40. Robert Ford testified: Q. "[D]id any [Herbalife distributor] tell you that they would not leave Herbalife to go to Melaleuca because of Rule 8-A or because they would be prohibited from soliciting their down-line?"  A.   "No." | Gates Decl. Ex. J (Robert Ford Dep. Tr. 192:7-12). |
| 41. Kathy Orr testified: Q. "I want you to list for me every person that you contend would have joined Melaleuca it hadn't been for some wrongful act by Herbalife."  A. "The thing is Jeff and I didn't make very many calls.  So until we call these people, we don't know if they will enroll into Melaleuca or not, but because of that letter and because of Rule 8A and number four on the application, of my application, they wouldn't come over.  So I can't say unless I talk to them." | Gates Decl. Ex. F (Kathy Orr Dep. Tr. 278:24). |

la-1027564

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 42. Jason Fisher testified, Q. "Were there any [Herbalife distributors] … that said to you, I'm not going to do it, and by that I mean come over to Melaleuca, because I'm afraid of what might happen to me?"  A.   "That, I do not remember." | Gates Decl. Ex. L (Fisher Dep. Tr. 206:7-13). |
| 43. Dianna Thompson testified: Q. "Is there anyone that you can identify that you believe you would have converted over to Melaleuca if not for [the first email to Herbalife distributors], if Herbalife hadn't sent that out?"  A. "I can't identify any names …" | Gates Decl. Ex. K (Thompson Dep. Tr.  187:21-188:2). |

18

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 44. Nancy Roth testified: Q. "[I]s there any reason that you are aware of, other than perhaps the letters you just mentioned, why the enrollment rate declined or the enrollment number declined?"  A. "Those letters contributed for the February and March, and the Michael Johnson letter contributed to the subsequent months after that."   Q. "Okay.  But is there any other reason you are aware of why the number went down?"  A. "No." | Gates Decl. Ex. G (Nancy Roth Dep. Tr.  157:5-14). |
| 45. Over the course of their distributorships, Defendants each obtained from Herbalife between $200,000 to over $2,000,000. | Declaration of Jennifer Hienrich in Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment ¶¶ 3-6, Ex. A. |
| 46. Defendants' deposition testimony and interrogatory responses show that they cannot restore these monies to Herbalife. | Gates Decl. Ex. E (Jeff Orr Dep. Tr. 179:13-21, 203:3-8); Ex. F (Kathy Orr Dep. Tr.  227:7-11); Ex. K (Thompson Dep. Tr.  71:10-18). |

19

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 47. Jason Fisher, Robert Ford, Jeff Orr and Kathy Orr knew the facts underlying their endless chain scheme claim long before the four-year statute of limitations period. | Gates Decl. Ex. E (Jeff Orr 224:15-225:22); Ex. F (Kathy Orr Dep. Tr. 287:17-290:15); Ex. L (Fisher Dep. Tr. 53:3-25, 98:19-100:5, 187:22-190:18). |
| 48. Melaleuca requires its distributors, including Defendants, to abide by a one-year post-termination nonsolicitation provision "to protect the efforts of all Marketing Executives in building and maintaining their individual Marketing Organizations and Customer bases, and in order to protect Melaleuca's interest in the overall Customer base." | Gates Decl. Ex. AA (Melaluca Rule 20). |

20

la-1027564

**CONLUSIONS OF LAW**

1.      Defendants do not have standing to bring claims under California Business & Professions Code §§ 17200, 17500.  Plaintiffs seeking injunctive relief are subject to the same standing requirement as plaintiffs seeking monetary relief: they must show a loss of money or property eligible for restitution.  *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009); *see also Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009).  Defendants cannot show they "lost money or property" that was either in their prior possession or in which they had a vested interest.  *See, e.g.*, *Kwikset Corp. v. Super. Ct.*, 171 Cal. App. 4th 645, 654 (2009); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd*, 558 F.3d 1025 (9th Cir. 2009).  There being no genuine issue of material fact, Herbalife is entitled to summary judgment on these claims.

2.      Defendants cannot show causation for their claims under California Business & Professions Code §§ 16600, 17200, 17500 or their intentional interference with prospective economic advantage.  Herbalife's filing this lawsuit and its communications with its distributors regarding Defendants' conduct and the steps Herbalife was taking to address that conduct cannot be the basis for Defendants' claims.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); Cal. Civ. Code § 47(b) & (c); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007); *1100 Park Lane Assocs. v. Feldman*, 160 Cal. App. 4th 1467, 1485-86 (2008); *Deaile v. Gen. Tel. Co.*, 40 Cal. App. 3d 841, 846 (1974); *Bollow v. Federal Reserve Bank*, 650 F.2d 1093 (9th Cir. 1981); *Williams v. Taylor*, 129 Cal. App. 3d 745 (1982); *Ghebreselassie v. Coleman Security Serv.*, 829 F.2d 892 (9th Cir. 1987).  Defendants have not met their burden of coming forward with evidence showing that any wrongful, non-privileged Herbalife conduct caused them harm.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 853 (2008);

21

1   *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 639 (2007); *Daro v.*

2   *Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007); *Korea Supply Co. v. Lockheed*

3   *Martin Corp.*, 29 Cal. 4th 1134, 1165 (2003). There being no genuine issue of

4   material fact, Herbalife is entitled to summary judgment on these claims.

5        3.    Defendants cannot seek relief under their endless chain scheme claim.

6   Defendants cannot seek an injunction. Cal. Civ. Code § 3369; *Stegner v. Bahr &*

7   *Ledoyen*, 126 Cal. App. 2d 220, 231 (1954); *Carter v. Chotiner*, 210 Cal. 288, 291

8   (1930); *Cell Assocs. v. NIH*, 579 F.2d 1155, 1159 (9th Cir. 1978). Nor are can they

9   seek rescission under Cal. Civ. Code § 1689.2; Defendants have not demonstrated

10   that they are willing and able to restore to Herbalife everything of value received

11   under their contracts. Cal. Civ. Code § 1691(b); *Okura & Co. (Am.), Inc. v. Careau*

12   *Group*, 783 F. Supp. 482, 504-05 (C.D. Cal. 1991). There being no genuine issue

13   of material fact, Herbalife is entitled to summary judgment on this claim.

14        4.    Herbalife's promulgation and enforcement of Herbalife's Rules of

15   Conduct and Distributor Policies Rule 8-A to prohibit former Herbalife distributors,

16   for the period of one year after they leave Herbalife, from soliciting or recruiting

17   current Herbalife distributors they became aware of during the course of their

18   Herbalife distributorship to join another direct sales or multi-level marketing

19   company does not violate California Business & Professions Code § 16600. *See*

20   *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985); *Buskuhl v. Family Life*

21   *Insurance Co.*, 271 Cal. App. 2d 514 (1969).

22        5.    There being no genuine issue of material fact, Herbalife is entitled to

23   partial summary judgment regarding Defendants' counterclaim alleging a violation

24   of California Business & Profession Code § 16600 to the extent that counterclaim is

25   premised on Herbalife's promulgation and enforcement of Rule 8-A to prohibit

26   former Herbalife distributors, for the period of one year after they leave Herbalife,

27   from soliciting or recruiting current Herbalife distributors they became aware of

28

1 during the course of their Herbalife distributorship to join another direct sales or
2 multi-level marketing company.

3       6.    There being no genuine issue of material fact, Herbalife is entitled to
4 partial summary judgment regarding Defendants' counterclaim alleging a violation
5 of California Business & Profession Code § 17200 to the extent that counterclaim is
6 premised on Herbalife's promulgation and enforcement of Rule 8-A to prohibit
7 former Herbalife distributors, for the period of one year after they leave Herbalife,
8 from soliciting or recruiting current Herbalife distributors they became aware of
9 during the course of their Herbalife distributorship to join another direct sales or
10 multi-level marketing company.

11       7.    There being no genuine issue of material fact, Herbalife is entitled to
12 partial summary judgment regarding Defendants' counterclaim alleging intentional
13 interference with prospective economic advantage to the extent that counterclaim is
14 premised on Herbalife's promulgation and enforcement of Rule 8-A to prohibit
15 former Herbalife distributors, for the period of one year after they leave Herbalife,
16 from soliciting or recruiting current Herbalife distributors they became aware of
17 during the course of their Herbalife distributorship to join another direct sales or
18 multi-level marketing company.

19
20   Dated:   May 4, 2009         MORRISON & FOERSTER LLP

21
22                               By: /s/ Sean P. Gates
                                Charles E. Patterson
23                                 Nancy R. Thomas
                                Sean P. Gates
24
                                Attorneys for Plaintiff and
25                                 Counterclaim Defendant
                                HERBALIFE INTERNATIONAL
26                                 OF AMERICA, INC.

27

28

la-1027564