UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC. | ) ) ) | NO. CV 07-2529 GAF (FMOx) |
| Plaintiff, | ) ) | **ORDER Re: DISCOVERY MOTION and PROTECTIVE ORDER** |
| v. | ) ) | |
| ROBERT E. FORD, et al., | ) ) | |
| Defendants. | ) ) | |

The court has reviewed and considered all the briefing filed with respect to plaintiff's "Motion to Compel Production of Responsive Documents and Deposition Testimony" ("Motion" or "Joint Stip."), and concludes that oral argument is not necessary to resolve this matter. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001, as amended Mar. 27, 2001).

**INTRODUCTION**

Herbalife International of America, Inc. ("Herbalife" or "plaintiff") filed this lawsuit against eight former Herbalife distributors who are now associated with a competing company, Melaleuca, Inc. ("Melaleuca"), for misuse of trade secrets and breach of contract. (Joint Stip. at 22). Defendants filed counterclaims against plaintiff, alleging, among other things, interference with prospective economic advantage, unfair business practices and false advertising (California Business & Professions Code §§ 17200 & 17500). (Id. at 23).

Plaintiff's Motion seeks an order compelling defendants Jeff and Kathy Orr, Nancy and Bruce Roth, Dianna Thompson, Robert Ford and Jason Fisher to testify at their depositions regarding communications with Herbalife's competitor Melaleuca and to produce any joint defense agreement 24 hours prior to the first deposition. (Joint Stip. at 1).

## DISCUSSION

I. STANDARD OF REVIEW.

A party can discover any nonprivileged information which is relevant to the claims or defenses of any other party. Fed. R. Civ. P. 26(b)(1). Relevant information does not have to be admissible so long as it appears calculated to lead to the discovery of admissible evidence. Id. "Relevancy is broadly construed, and a request for discovery should be considered relevant . . . to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." McCormick v. City of Lawrence, Kansas, 2005 WL 1606595, at *5 (D. Kan. 2005) (citations omitted); see also Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence.") (internal quotation marks and citations omitted). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 655-56 (C.D. Cal. 2005); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied. They did not meet this burden."); Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("[T]his Court prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment.").

II. JOINT DEFENSE AGREEMENT.

On April 16, 2007, defendants entered into the subject Joint Defense and Common Interest Agreement ("JDA") with Melaleuca, Herbalife's competitor and a nonparty to this action. (Declaration of Joshua K. Chandler ("Chandler Decl.") at ¶ 5).

Plaintiff's Request for Production No. 3 states as follows:

> All documents relating to [defendants'] involvement in Melaleuca, Inc. ("Melaleuca"), including, but not limited to any agreements between [defendants] and Melaleuca.

(Joint Stip. at 6). In response, defendants agreed to "produce any agreements between [defendants] and Melaleuca." (Id.; see also Declaration of Monica L. Scheetz in Support of Motion, Exh. A). The JDA was not produced or listed on any privilege log. (Joint Stip. at 37).

Defendants did not rely on the attorney-client privilege or work product doctrine to resist producing the JDA. (See Joint Stip. at 6). This is significant because a joint defense agreement, such as the JDA relied on by defendants, "is more appropriately characterized under California law as a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and the work-product doctrine." OXY Res. Cal. LLC v. Superior Court, 115 Cal.App.4th 874, 889 (2004, as amended Mar. 4, 2004). Thus, defendants' failure to raise the attorney-client privilege or work-product doctrine in its original response to the discovery request prevents them from now relying on those grounds to resist producing the JDA.

Nevertheless, defendants appear to rely on relevance grounds as a basis for not producing the JDA. They contend that the JDA is not responsive to Request No. 3 because "[c]ounsel for Defendants interpreted that request to seek business documents only because he was thinking of documents that relate to Defendants' involvement in the Melaleuca business opportunity." (Joint Stip. at 38; see also Declaration of Cameron M. Jolly in Support of Joint Stip. ("Jolly Decl.") at ¶ 5). Defendants' response not only strains credulity, but is disingenuous as well. Nowhere does Request No. 3 state that it is limited to "business documents." (See Joint Stip. at 6). The subject request calls for all agreements – with no limitation – between defendants and Melaleuca. (See id.). This clearly includes the JDA.

3

1    Further, defendants made no effort to establish that the subject document request is limited
2    to "business documents." "The party who resists discovery has the burden to show discovery
3    should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."
4    Keith H., 228 F.R.D. at 655-56. Even assuming Request No. 3 was limited to "business
5    documents," defendants made no effort to establish that the JDA is not a business document.
6    Given that defendants joined Melaleuca as independent distributors, any agreement between
7    defendants and Melaleuca, including the subject JDA, arguably constitutes a "business document."
8    In any event, the JDA is relevant to the claims and/or defenses in this case. Indeed, the
9    JDA is the foundation for defendants' refusal to answer several deposition questions. Defendants'
10   assertion that "no court of which Defendants are aware has ever upheld the relevance of a joint
11   defense agreement and ordered production, and this Court should not be the first[,]" (Joint Stip.
12   at 39), is not well-taken. Contrary to defendants' assertion, courts have ordered the production
13   of joint defense agreements, even on relevance grounds. See Bryant v. Mattel, Inc., 2007 WL
14   5430893, at *2 & *5-6 (C.D. Cal. 2007) (ordering production of Joint Defense Agreement because
15   it was "relevant to demonstrate bias and lack of credibility[]"); Trading Technologies Int'l, Inc. v.
16   eSpeed, Inc., 2007 WL 1302765, at *2 (N.D. Ill. 2007) (noting that court previously ordered
17   production of Joint Defense Agreement); Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,
18   1996 WL 71507, at *6 (S.D.N.Y. 1996) (ordering production of a joint prosecution agreement as
19   relevant and not protected by attorney-client privilege or work-product doctrine). Indeed, in the
20   leading California case relied on by both parties, (see Joint Stip. at 30-31 & 42), the joint defense
21   agreement was voluntarily produced by the party seeking to invoke its protections. See OXY Res.
22   Cal. LLC, 115 Cal.App.4th at 881 n. 3 ("OXY sought to file the Joint Defense Agreement under
23   seal with this court, contending it is a confidential communication that is privileged and protected
24   from disclosure. Based upon our finding that the Joint Defense Agreement contains no attorney
25   work product or other confidential information that might justify sealing, we denied the motion.").
26   Like the party that sought to invoke the common interest privilege in OXY Res. Cal. LLC,
27   defendants arguably should have included the JDA as a part of their papers in the instant Motion.
28   In short, whether courts order the production of joint defense agreements depends on the

circumstances of the case. Compare Bryant, 2007 WL 5430893, at *2 & *5-6, Trading Technologies Int'l, Inc., 2007 WL 1302765, at *2, and Bank Brussels Lambert, 1996 WL 71507, at *6, with (Joint Stip. at 38-39) (cases cited therein).

Finally, although it is possible that the JDA may not be admissible, the court finds it reasonably likely that the JDA could lead to the discovery of relevant, admissible evidence. Fed. R. Civ. P. 26(b)(1). Accordingly, defendants shall produce the JDA.[1]

III. DEPOSITION QUESTIONS.

During their depositions, defendants testified that they have discussed this case with officers and in-house counsel for Melaleuca. (See Joint Stip. at 1; see also id. at 6-22). Defendants refused to answer a number of questions, many of them foundational-type questions, relating to those conversations,[2] asserting that the information requested is protected by attorney-client privilege and the JDA. (See id. at 1-2 & 4-5; see also id. at 6-22).

In diversity actions, Rule 501 of the Federal Rules of Evidence requires federal courts to apply the law of privilege that would be applied to the courts of the state in which the federal court is located. Samuelson v. Susen, 576 F.2d 546, 549 (3d Cir. 1978) ("Rule 501 requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits."). Accordingly, California state law must be applied to determine whether the information sought is privileged. See id.; In re Cal. Pub. Utilities Comm'n, 892 F.2d 778, 781 (9th Cir. 1989) (state law applies to diversity actions governed by state law).

However, although the substance of a privilege is governed by state law in a diversity case, "the procedure for the proper assertion of a privilege is governed by federal law." Eureka Fin. Corp. v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 182 n. 5 (E.D. Cal. 1991) ("it hardly needs mentioning that the *procedure* for responding to discovery requests in federal court

---

[1] To the extent that defendants contend that the JDA contains "sensitive" information, (see Joint Stip. at 38), the court will enter a protective order that limits the use of the JDA.

[2] As a preliminary matter, having reviewed the deposition transcripts, the court finds that the questions at issue are relevant. Although it is possible that some of the information plaintiff seeks may be inadmissible, it is likely that such information could lead to the discovery of relevant, admissible evidence. Fed. R. Civ. P. 26(b)(1).

1  litigation . . . is governed by federal law") (italics in original); see Cates v. Sears, Roebuck & Co.,
2  928 F.2d 679, 687 (5th Cir. 1991) ("[F]ederal courts apply substantive state law when adjudicating
3  diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings.");
4  Everitt v. Brezzel, 750 F.Supp. 1063, 1065 (D. Colo. 1990) ("Discovery in the federal courts is
5  governed by federal law as set forth in the Federal Rules of Civil Procedure, whether federal
6  jurisdiction is based on the existence of a federal question or on diversity of citizenship.")
7  Defendants did not address the applicable federal law relating to whether they properly invoked
8  the attorney-client privilege and/or whether they waived it by having discussions with employees
9  and counsel of Melaleuca. See Burlington N. & Santa Fe Ry. v. U.S. Dist. Court, 408 F.3d 1142,
10 1148-49 (9th Cir. 2005, as amended May 19, 2005), cert. denied, 546 U.S. 939, 126 S.Ct. 428
11 (2005) (diversity case that sets forth standard for finding waiver of attorney-client privilege in
12 federal court). As such, defendants have not made a sufficient showing that they properly invoked
13 and established the attorney-client privilege and/or that there was a nonwaiver of the privilege.
14 (See, generally, Joint Stip. at 42-44); see also United States v. Honeywell Int'l, Inc., 2008 WL
15 508503, at *1 (E.D. Cal. 2008) ("This Court is not obligated to do for the [party] what he has failed
16 to do for himself.").

17     Further, even assuming state procedure relating to invoking of a privilege (i.e., was the
18 privilege properly established such that there has been no waiver of the privilege) applied to the
19 instant case, the result would not change. In California, "[t]he attorney-client privilege is contained
20 in Evidence Code section 950 et seq., and in general allows the client 'to refuse to disclose and
21 to prevent another from disclosing, a confidential communication between client and lawyer[.]'"
22 Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal.App.4th 110, 119 (1997) (quoting Cal.
23 Evid. Code § 954). The attorney-client privilege must be narrowly construed because it prevents
24 the admission of relevant and otherwise admissible evidence. See People v. Sinohui, 28 Cal.4th
25 205, 212 (2002) ("Because privileges prevent the admission of relevant and otherwise admissible
26 evidence, they should be narrowly construed.") (internal quotation marks and citation omitted). The
27 party asserting the privilege must, as an initial matter, establish that the subject communication
28 was made in confidence during the course of the attorney-client relationship. See State Farm Fire

& Casualty Co. v. Superior Court, 54 Cal.App.4th 625, 639 (1997, as amended May 1, 1997). Once the party asserting the privilege makes this initial showing, the burden shifts to the party opposing the privilege to show either that the information was not confidential or that it falls within an exception. Id.

California "Evidence Code section 912 establishes a statutory basis for determining when one has voluntarily waived the attorney-client privilege: whether the client claiming the privilege has disclosed or consented to a disclosure of a significant part of the communication." S. Cal. Gas Co. v. Pub. Utilities Comm'n, 50 Cal.3d 31, 46 (1990). California Evidence Code § 912 provides in relevant part:

> (a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceedings in which the holder has the legal standing and opportunity to claim the privilege.

To constitute a significant part of the communication, the client must "reveal the specific content of its communications with its counsel." S. Cal. Gas Co., 50 Cal.3d at 49. "Merely revealing that one has consulted an attorney is not enough to waive the privilege." Id. at 46. Nor does revealing the conclusions arrived at by a client's attorney during the privileged conversation waive the privilege. Id. at 49 ("[W]e conclude that SoCalGas's disclosure of . . . the conclusions arrived at by its attorneys to members of the commission was not an express waiver of the attorney-client privilege.").

California Evidence Code § 912 also addresses waiver of the attorney-client privilege where disclosure is made to a party outside the attorney-client relationship. The statute provides, in relevant part:

7

> (d) A disclosure in confidence of a communication that is protected by a privilege provided by Section 954 (lawyer-client privilege), . . . when disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege.

The "privilege extends to communications which are intended to be confidential, if they are made to attorneys, to family members, business associates, or agents of the party or his attorneys on matters of joint concern, when disclosure of the communication is reasonably necessary to further the interest of the litigant." OXY Res. Cal. LLC, 115 Cal.App.4th at 890 (internal quotation marks omitted).

The "common interest" doctrine, which is also known as the "joint defense" or "pooled interest" doctrines, "operates as an exception to the general rule that [attorney-client] privilege is waived upon voluntary disclosure of the privileged information to a third party[.]" OXY Res. Cal. LLC, 115 Cal.App.4th at 888. Under California law, the common interest doctrine is "a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and work product doctrine." Id. at 889.

> Therefore, a party seeking to rely on the common interest doctrine does not satisfy its burden to justify a claim of privilege simply by demonstrating that a confidential communication took place between parties who purportedly share a common interest. Rather, the party seeking to invoke the doctrine must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege. . . . The next step in the analysis is to determine whether disclosing the information to a party outside the attorney-client relationship waived any applicable privileges.
>
>         \*   \*   \*
>
> Applying these waiver principles in the context of communications among parties with common interests, it is essential that participants in an exchange have a reasonable expectation that information disclosed will

> remain confidential. If a disclosing party does not have a reasonable expectation that a third party will preserve the confidentiality of the information, then any applicable privileges are waived. An expectation of confidentiality, however, is not enough to avoid waiver. In addition, disclosure of the information must be reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted.

Id. at 890 & 891. The party asserting the privilege bears the burden of establishing that privilege bars discovery despite the apparent waiver. See Sony Computer Entm't Am., Inc. v. Great Am. Ins. Co., 229 F.R.D. 632, 634 (N.D. Cal. 2005) ("Where a third party is present, no presumption of confidentiality obtains, and the usual allocation of burden of proof, resting with the proponent of the privilege, applies in determining whether confidentiality was preserved under [Cal. Evid. Code] § 952.").

Having reviewed the disputed deposition questions, the court concludes as follows. First, defendants have not met their burden of establishing that responding to the subject questions would result in the disclosure of privileged information. Many of the disputed questions focus on the nature of communications, and not the substance of the communications. (See, e.g., Joint Stip. at 9 ("And how did this call come about?" "[D]id the people at Melaleuca set up the phone call? Was it their idea or was it the idea of you or one of the other defendants?"), 11 ("And who is it who initiated the phone call?") & 15 ("Did you discuss with anyone at Melaleuca any recruitment of Herbalife distributors?")). As such, those questions are not covered by the attorney-client privilege. See Teknowledge Corp. v. Akamai Technologies, Inc., 2004 WL 2480705, at *1 (N.D. Cal. 2004) (because plaintiff "bears the burden of establishing the requirements of the privilege[,]" "questions seeking to establish whether an attorney-client communication took place do not violate the privilege[]"); cf. see Sinohui, 28 Cal.4th at 212 ("Because privileges prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed.") (internal quotation marks and citation omitted).

Second, defendants made little effort, if any, to identify the common interest underlying each of the questions they refused to answer. Further, even assuming a common interest exists

1  between defendants and Melaleuca, defendants' portion of the Joint Stip. and supporting
2  documents are insufficient to establish the underlying claim of privilege, i.e., that the information
3  sought by the subject deposition questions is privileged. See Sony Computer, 229 F.R.D. at 634
4  ("no admissible evidence [in support of the privilege claim] was presented to the Court as part of
5  the parties' submissions in support of or in opposition to the motion to compel[]"). Defendants
6  assert, without any citation to the record, that they "have brought forth evidence showing that their
7  discussions between themselves, their attorneys, Melaleuca, and Melaleuca's attorneys were
8  necessary to their defense of Herbalife's allegations about the Defendants and Melaleuca." (Joint
9  Stip. at 44). However, defendants' declarations establish only the existence of the JDA, (see Jolly
10 Decl. at ¶¶ 2-4; Chandler Decl. at ¶¶ 5-6; Declaration of John B. Stephens ("Stephens Decl.") at
11 ¶¶ 6-7); they do not establish the contours or the necessity of the particular discussions at issue.
12 See OXY Res. Cal. LLC, 115 Cal.App.4th at 890 ("a party seeking to rely on the common interest
13 doctrine does not satisfy its burden to justify a claim of privilege simply by demonstrating that a
14 confidential communication took place between parties who purportedly share a common
15 interest[]"). Defendants' papers give no indication of the purpose or content of the
16 communications they seek to protect. (See, e.g., Joint Stip. at 44-48; Chandler Decl. at ¶¶ 5-6;
17 Jolly Decl. at ¶¶ 2-4; Stephens Decl. at ¶¶ 4 & 6-7). Given that there is little, if anything, in
18 defendants' declarations or supporting papers that gives any indication as to the content of any
19 of the communications, it is virtually impossible for plaintiff to offer evidence refuting defendants'
20 claims that all the withheld conversations involve matters of common interest or, for that matter,
21 that the conversations included privileged information. "As a practical matter, it is impossible to
22 know whether any of the disclosures of purportedly privileged information between [defendants]
23 and [Melaleuca] were reasonably necessary to accomplish the purpose for which a lawyer was
24 consulted without knowing in at least a general sense the communication's content." OXY Res.
25 Cal. LLC, 115 Cal.App.4th at 895.
26      Finally, defendants did not provide any evidence to support their contention that the
27 discussions were reasonably necessary for accomplishing the purpose for which the attorney was
28 consulted. See OXY Res. Cal. LLC, 115 Cal.App.4th at 891 ("disclosure of the information must

1  be reasonably necessary for the accomplishment of the purpose for which the lawyer was
2  consulted[]"); Sony Computer, 229 F.R.D. at 634 ("Here, [plaintiff] provided no evidentiary support
3  for its claim that [the third party] was present to further the interest of [plaintiff] in the consultation
4  or someone to whom disclosure was reasonably necessary to accomplish the purpose for which
5  the lawyer was consulted."). Their conclusory assertion that "[i]t was necessary to have
6  discussions between Melaleuca and its counsel and [defendants] and [defense counsel] so that
7  [defendants] could defend themselves against Herbalife's allegations[,]" (Stephens Decl. at ¶ 4),
8  is insufficient to establish that any particular, let alone all, the conversations between defendants
9  and Melaleuca were "reasonably necessary to accomplish the purpose for which the lawyer was
10 consulted." OXY Res. Cal. LLC, 115 Cal.App.4th at 891; see Nidec Corp. v. Victor Co. of Japan,
11 249 F.R.D. 575, 579 (N.D. Cal. 2007) ("the common interest exception requires that the
12 communication at issue be designed to further *that* legal effort . . . , must be made in the course
13 of formulating a *common legal strategy*, or otherwise furthering the parties' joint interest") (internal
14 quotation marks, brackets and citations omitted) (italics in original); Bank of the West v. Valley
15 Nat'l Bank, 132 F.R.D. 250, 260 (N.D. Cal. 1990) ("privilege is not vitiated when the holder of the
16 privilege shows that it had to make the disclosures to the third persons *in order to accomplish the*
17 *purpose for which the client retained the lawyer*[]") (italics in original). A joint defense agreement
18 "merely evidences an expectation of confidentiality necessary to avoid waiver by disclosure to
19 someone outside the attorney-client relationship; it does not protect [conversations] from
20 disclosure, unless they contain or reflect attorney-client communications or attorney work product."
21 OXY Res. Cal. LLC, 115 Cal.App.4th at 894.

22      In short, defendants have not met their burden of establishing that the deposition questions,
23 either individually or as a category, are protected by the attorney-client privilege. They did not
24 establish that the deposition questions sought information about conversations where there was
25 a reasonable expectation that the substance of the conversations would be maintained in
26 confidence between parties who purportedly share a common interest, and that the conversations
27 were reasonably necessary for the purpose for which attorneys were consulted. Thus, with the
28

exception of questions relating to payment of attorney's fees, which the court believes are irrelevant at this time, defendants shall respond to the questions set forth below:[3]

    A.    <u>Jeff Orr</u>.

Mr. Orr must respond to the following questions:

- And how did this call come about?
- Did the people at Melaleuca set up the phone call?
- Was it Melaleuca's idea or was it the idea of you or one of the other defendants?
- And who is it who initiated the phone call?
- Can you tell me the substance of the conversation?

(<u>See</u> Joint Stip. at 9-11).

    B.    <u>Kathy Orr</u>.

Ms. Orr must respond to the following questions:

- And how did this call come about?
- Did the people at Melaleuca set up the phone call?
- Was it their idea or was it the idea of you or one of the other defendants?
- And who is it who initiated the phone call?
- Can you tell me the substance of the conversation?

(<u>See</u> Joint Stip. at 12; <u>see</u> <u>also</u> <u>id.</u> at 9-11).

    C.    <u>Nancy Roth</u>.

Ms. Roth must respond to the following questions:

- Did you discuss with anyone at Melaleuca any recruitment of Herbalife distributors?
- Did you advise Melaleuca or anyone at Melaleuca as to which Herbalife distributors you might have contacted?

---

[3] The court takes no position regarding the extent to which, if any, that follow-up questions may be privileged. Such questions were not asked nor have they been presented to the court. However, the parties should be mindful of the state court's statement that "[a]s a practical matter, it is impossible to know whether any of the disclosures of purportedly privileged information between OXY and EOG were reasonably necessary to accomplish the purpose for which a lawyer was consulted without knowing in at least a general sense the communication's content." <u>OXY Res. Cal. LLC</u>, 115 Cal.App. at 895.

1     •     Did you discuss with anyone at Melaleuca Herbalife's contention that downline lists
2          with lineage reports and such are trade secrets?
3     •     During those conversations, did your lawyers express their views about this case to
4          anyone at Melaleuca?
5     •     Did you discuss any of Herbalife's rules with anyone at Melaleuca?
6     •     Did you discuss with anyone at Melaleuca any claims that you might have with
7          Herbalife?

(See Joint Stip. at 15-16).

    D.     Bruce Roth.

Mr. Roth must respond to the following questions:

- Did you discuss with anyone at Melaleuca any recruitment of Herbalife distributors?
- Did you advise Melaleuca or anyone at Melaleuca as to which Herbalife distributors you might have contacted?
- Did you discuss with anyone at Melaleuca Herbalife's contention that downline lists with lineage reports and such are trade secrets?
- During those conversations, did your lawyers express their views about this case to anyone at Melaleuca?
- Did you discuss any of Herbalife's rules with anyone at Melaleuca?
- Did you discuss with anyone at Melaleuca any claims that you might have with Herbalife?

(See Joint Stip. at 17; see also id. at 15-16).

    E.     Dianna Thompson.

Ms. Thompson must respond to the following questions:

- Did you discuss with anyone at Melaleuca any recruitment of Herbalife distributors?
- Did you advise Melaleuca or anyone at Melaleuca as to which Herbalife distributors you might have contacted?
- Did you discuss with anyone at Melaleuca Herbalife's contention that downline lists with lineage reports and such are trade secrets?

1    • During those conversations, did your lawyers express their views about this case to
2      anyone at Melaleuca?
3    • Did you discuss any of Herbalife's rules with anyone at Melaleuca?
4    • Did you discuss with anyone at Melaleuca any claims that you might have with
5      Herbalife?

(See Joint Stip. at 17; see also id. at 15-16).

F.   Robert Ford.

Mr. Ford must respond to the following question:

• Can you tell me the substance of that call?

(See Joint Stip. at 20).

G.   Jason Fisher.

Mr. Fisher must respond to the following question:

• What was the substance of the discussion with defendants, Frank VanderSloot, McKay Christiansen, and someone from the legal department of Melaleuca?

(See Joint Stip. at 21).

**This Order is not intended for publication.  Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion to Compel Production of Responsive Documents and Deposition Testimony **(Document No. 211)** is **granted in part and denied in part**.  No later than **May 20, 2009**, defendants shall produce the Joint Defense and Common Interest Agreement referenced above.

2. Defendants' depositions shall be completed no later than **Wednesday, May 27, 2009**.[4] The deposition of each defendant shall be limited to no more than 90 minutes, exclusive of breaks and other recesses, and shall be limited to the topics set forth in the Joint Stip.

3. This Order constitutes a Protective Order for the information ordered produced in the discovery request set forth above. Other than the parties, their attorneys and staff, and the court, the above-referenced information may not be disclosed to any other person or entity. If this case proceeds to trial, the parties must seek an order from the district judge assigned to the case that the above-referenced information may remain private. The above-referenced information shall become public and will be presumptively available to all members of the public, including the press, unless good cause is shown to the district judge in advance of the trial to proceed otherwise.

4. The parties are reminded that they must comply strictly with the Court's Order of March 6, 2009.

Dated this 18th day of May, 2009.

/s/
Fernando M. Olguin
United States Magistrate Judge

---

[4] This date is past the discovery deadline of May 15, 2009. However, given that the parties noticed the instant Motion for hearing two days before the cutoff and that Judge Feess extended the previous discovery cutoff so that the parties could have the instant Motion resolved, the court believes the May 27, 2009, deadline is appropriate under the circumstances. However, given that the May 27, 2009, deadline is 12 days past the deadline set by Judge Feess, the court will not consider any requests to extend it, as any extensions of the deadlines can be granted only by Judge Feess.