1  CHARLES E. PATTERSON (CA SBN 120081)
   CPatterson@mofo.com
2  NANCY R. THOMAS (CA SBN 236185)
   NThomas@mofo.com
3  SEAN P. GATES (CA SBN 186247)
   SGates@mofo.com
4  MORRISON & FOERSTER LLP
   555 West Fifth Street
5  Los Angeles, California  90013-1024
   Telephone:  213.892.5200
6  Facsimile:   213.892.5454

7  Attorneys for Plaintiff and Counterclaim Defendant
   Herbalife International of America, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

| | |
|---|---|
| 13  Herbalife International of America, Inc., a Nevada Corporation, | Case No. CV 07 2529 GAF (FMOx) |
| 14 | Hon. Gary A. Feess |
| 15  Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY HERBALIFE INTERNATIONAL OF AMERICA, INC. FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
|  v. | |
| 16  Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and | |
| 17  Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; | |
| 18  Dianna N. Thompson; and Jason Fisher, | |
| 19            Defendants. | Date:        June 1, 2009 |
| 20 | Time:        9:30 a.m. |
| 21 | Courtroom: 740-Roybal |

22

23

24

25

26

27

28

la-1029776

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

GOVERNING STANDARD .......................................................................................2

ARGUMENT ..............................................................................................................2

    A.    Defendants Lack Standing under Sections 17200 and 17500 ...............2

        1.    Defendants Must Show That They Lost Money or Property Subject to Restitution ....................................................3

        2.    Defendants Failed to Proffer Evidence They Lost Money or Property Subject to Restitution ...................................5

    B.    Defendants Cannot Show Causation .....................................................7

        1.    Herbalife's Filing Its Lawsuit and Communications with Its Distributors are Privileged .............................................7

            a.    There Has Been No Waiver ...............................................8

            b.    Defendants Have Not Shown a Genuine Issue Precludes the *Noerr-Pennington* Doctrine or Common Interest Privilege ...........................................12

                (i)    *Noerr-Pennington* Applies to the Emails .............12

                (ii)    There is No Evidence the Lawsuit is a Sham .......13

                (iii)    The Common Interest Privilege Applies .............14

        2.    Defendants Failed to Proffer Evidence of Causation ...............16

    C.    Defendants Effectively Concede Their Endless Chain Scheme Claim ..................................................................................................19

    D.    Defendants Cannot Base Their Claims on Rule 8-A ..........................20

CONCLUSION ..........................................................................................................23

i

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

C<small>ASES</small>

5

*Aron v. U-Haul Co. of Cal.,*

6

   143 Cal. App. 4th 796 (2007) ................................................................4

7

*Boone v. Redevelopment Agency of City of San Jose,*

   841 F.2d 886 (9th Cir. 1988) ...............................................................8

8

9

*Buskuhl v. Family Life Insurance Co.,*

   271 Cal. App. 2d 514 (1969) ........................................................21, 22

10

11

*Cacique, Inc. v. Robert Reiser & Co.,*

   169 F.3d 619 (9th Cir. 1999) ...............................................................7

12

13

*Camarillo v. McCarthy,*

   998 F.2d 638 (9th Cir. 1993) ...............................................................8

14

15

*Chavez v. Blue Sky Natural Beverage Co.,*

   503 F. Supp. 2d 1370 (N.D. Cal. 2007).................................................7

16

17

*Citizens of Humanity, LLC v. Costco Wholesale Corp.,*

   171 Cal. App. 4th 1 (2009) .........................................................4, 5, 6

18

19

*City of Oakland v. Hassey,*

   163 Cal. App. 4th 1477 (2008) ...........................................................23

20

21

*Cruey v. Gannett Co.,*

   64 Cal. App. 4th 356 (1998) ...............................................................9

22

23

*Deaile v. Gen. Tel. Co.,*

   40 Cal. App. 3d 841 (1974) ...............................................................15

24

*Edwards v. Arthur Andersen LLP,*

   44 Cal. 4th 937 (2008) ...............................................................21, 22

25

26

*Fisher v. Lucky Stores, Inc.,*

   No. C93-1019, 1994 WL 125104 .......................................................15

27

28

*FTC v. Stefanchik,*

   559 F.3d 924 (9th Cir. 2009) ...............................................................2

ii

la-1029776

*Fulford v. Logitech, Inc.*,
    No. C-08-2041 MMC, 2009 WL 1299088 (N.D. Cal. May 8, 2009) .................4

*Ghebreselassie v. Coleman Security Serv.*,
    829 F.2d 892 (9th Cir. 1987) ...........................................................................14

*Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*,
    679 F.2d 803 (9th Cir. 1982) .............................................................................9

*Ingrassia v. Bailey*,
    172 Cal. App. 2d 117 (1959) ...........................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...........................................................................5, 6, 7

*Kwikset Corp. v. Super. Ct.*,
    171 Cal. App. 4th 645 (2009) ............................................................................7

*Loehr v. Ventura Co. Cmty. Coll. Dist.*,
    147 Cal. App. 3d 1071, 195 Cal. Rptr. 576 (1983) ...........................................5

*Loral Corp. v. Moyes*,
    174 Cal. App. 3d 268 (1985) ...........................................................................22

*Masson v. New Yorker Magazine*,
    832 F. Supp. 1350 (N.D. Cal. 1993) ................................................................15

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir.1992) ..........................................................................8

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
    22 Cal. App. 4th 853 (1994) ...........................................................................22

*Pegasus Satellite TV, Inc. v. DirecTV, Inc.*,
    318 F. Supp. 2d 968 (C.D. Cal. 2004) ..............................................................5

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ..................................................................................22

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ............................................................6

*Saelzler v. Advanced Group 400*,
    25 Cal. 4th 763 (2001) ....................................................................................18

iii

*SDV/ACCI, Inc. v. AT&T Corp.*,
  522 F.3d 955 (9th Cir. 2008) ...............................................................................9

*Southern California Housing Rights Center v. Los Feliz Towers Homeowners Association*,
  426 F. Supp. 2d 1061 (C.D. Cal. 2005) ..............................................................4

*State Farm Mutual Auto. Ins. Co. v. Dempster*,
  174 Cal. App. 2d 418 (1959) ..............................................................................22

*Stockton Executive Limousine Charter Serv., Inc. v. Union Pac. R.R.*,
  No. CIVS041999, 2006 WL 769623 (E.D. Cal. Mar. 27, 2006).........................6

*Summers v. A. Teichert & Son, Inc.*,
  127 F.3d 1150 (9th Cir. 1997) ..............................................................................2

*Swaffield v. Universal Ecsco Corp.*,
  271 Cal. App. 2d 147 (1969) ..............................................................................15

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ..............................................................................14, 15

*Theme Promotions, Inc. v. News American Marketing FSI*,
  546 F.3d 991 (9th Cir. 2008) ..............................................................................13

*U.S. ex rel. Wilson v. Maxxam, Inc.*,
  No. C 06-7497 CW, 2009 WL 322934 (N.D. Cal. Feb. 9, 2009) .......................8

*U.S. Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.*,
  No. 1:07-cv-00718 GSA, 2008 WL 5054107 (E.D. Cal. Nov. 19, 2008)......9, 12

*Victory Oil v. Hancock Oil Co.*,
  125 Cal. App. 2d 222, 270 P.2d 604 (1954).........................................................5

*Vikco Ins. Services, Inc. v. Ohio Indem. Co.*,
  70 Cal. App. 4th 55 (1999) ..................................................................................6

*Walker. G&C Auto Body Inc. v. Geico Gen. Ins. Co.*,
  No. C06-04898 MJJ, 2007 WL 4350907 (N.D. Cal. Dec. 12, 2007)..................4

*Walker v. Geico General Insurance Co.*,
  558 F.3d 1025 (9th Cir. 2009) ...................................................................passim

iv

*Webb v. West Side District Hospital*,
   144 Cal App. 3d 946 (1983) ........................................................................21, 22

*White v. Trans Union, LLC*,
   462 F. Supp. 2d 1079 (C.D. Cal. 2006) ...............................................................4

*Williams v. U.S. Gen. Serv. Admin.*,
   905 F.2d 308 (9th Cir. 1990) ...............................................................................19


**STATUTES**

Cal. Bus. & Prof. Code § 17204 ...........................................................................3, 7

Cal. Bus. & Prof. Code § 17535 ................................................................................3

California Civil Code § 47 ...................................................................................8, 14

California Civil Code § 1689.2 ................................................................................19

California Penal Code § 327 ....................................................................................19


**OTHER AUTHORITIES**

*Black's Law Dictionary* (8th ed. 2004) 1287............................................................20

la-1029776

**INTRODUCTION**

In its opening brief, Herbalife demonstrated that Defendants have sought to raid Herbalife's distribution network by soliciting and recruiting Herbalife distributors to join Herbalife's competitor, Melaleuca. Defendants do not dispute that they "launched a campaign to build their Melaleuca organizations by recruiting Herbalife distributors." (CCF 6.)[1] Nor do they dispute that this type of raiding activity by former Herbalife distributors impairs the effectiveness of Herbalife's distribution network and its distributors. (CCF 13-17.) Defendants nonetheless take the position that anything that might hinder them from using Herbalife confidential information and coercive techniques to solicit and recruit Herbalife's distributors is an unlawful restraint of trade that harms their Melaleuca businesses. In addition, they seek to label Herbalife, the company for which they served as distributors for years and made some of them millions, as an illegal endless chain scheme.

Herbalife demonstrated in its opening brief that it is entitled to summary judgment on Defendants' claims. Nothing in Defendants' opposition affects that conclusion. Defendants failed to proffer any affirmative evidence showing that a jury could find in their favor. Specifically:

- Defendants failed to show they have standing to bring their section 17200 and 17500 claims. They cannot distinguish the Ninth Circuit's holding in *Walker* that they must demonstrate they lost money or property subject to restitution. Nor have they proffered any evidence that they in fact suffered such a loss. The Court should dismiss these claims.

- Defendants failed to bring forth evidence showing a causal connection between their alleged injury and any Herbalife conduct. The conduct they testified caused their harm – Herbalife's filing this lawsuit and Herbalife's

---

[1] CCF refers to Defendants' Statement of Genuine issues.

1

communications with its distributors – is protected by the *Noerr-Pennington* doctrine and the California common interest privilege.  Herbalife did not waive these privileges.  Even putting them aside, Defendants failed to bring forth anything but pure speculation that any Herbalife conduct caused them harm.  The Court should dismiss Defendants' section 17200, 17500, 16600, and IIPEA claims.

- Defendants do not contest that they cannot obtain rescission or an injunction under their endless chain scheme claim.  They only argue that they can seek an injunction under their other claims.  The Court should dismiss the endless chain scheme claim.

- Defendants have not contested any of the material facts regarding the post-termination nonsolicitation provision in Herbalife's Rule 8-A.  They simply don't like the law.  But California law is clear that such provisions are lawful.  To the extent not already dismissed, the Court should grant partial summary judgment that Defendants' claims cannot be based on Rule 8-A.

## GOVERNING STANDARD

To avoid summary judgment, "a non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor."  *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  A "mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint.  Summary judgment may be granted if the evidence is merely colorable ... or is not significantly probative."  *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## ARGUMENT

### A.   Defendants Lack Standing under Sections 17200 and 17500

In *Walker v. Geico General Insurance Co.*, 558 F.3d 1025 (9th Cir. 2009), the Ninth Circuit held that standing for injunctive relief under sections 17200 and

2

17500 is limited to those who lost money or property in which they had prior possession or a vested legal interest, i.e., that is eligible for restitution.  *Id.* at 1027.  Barely mentioning *Walker*, Defendants argue that they are somehow exempt from this requirement.  To do so, they contort the statutory language and rely on pre-*Walker* district court decisions.  Defendants cannot escape *Walker*; it is both applicable and controlling.

Defendants also argue that they have in fact lost money or property subject to restitution.  But here they twist the concept of property beyond recognition and ignore the relevant case law.  The Court should grant summary judgment dismissing Defendants section 17200 and 17500 claims.

## 1.    Defendants Must Show That They Lost Money or Property Subject to Restitution

Defendants claim that because they are competitors, not class representatives, they have standing under sections 17200 and 17500 to obtain injunctive relief despite the fact that they have not lost money or property subject to restitution.  (Def. Br. 9-11.)  Not so.

Defendants parse the language of section 17203 to argue only representative actions are subject to the loss-of-money-or-property-subject-to-restitution requirement.  (Def. Br. 9)  But that section deals with the *type* of relief available – section 17204 specifies who may have *standing* to obtain relief.[2]  Section 17204 states, "Actions for relief pursuant to this chapter shall be prosecuted … by [certain government prosecutors] *or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition*."  Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also* Cal. Bus. & Prof. Code § 17535 (identical

---

[2] Thus, *In re Tobacco II Cases* (Def. Br. 10), which construed section 17203's application to absent class members, is irrelevant.

la-1029776

1  language for standing under section 17500).  The statute makes no distinction

2  between competitor suits and representative actions.

3      Similarly unavailing is Defendants' assertion that "[e]very case cited by

4  Herbalife is a consumer class action."  (Def. Br. 10.)  *Citizens of Humanity, LLC v.*

5  *Costco Wholesale Corp.*, 171 Cal. App. 4th 1 (2009), which Defendants ignore, was

6  not a representative action.  Yet the court held that the plaintiff did not have

7  standing to seek injunctive relief under section 17200 absent suffering "losses

8  which would entitle it to restitution."  *Id.* at 22.

9      Nor can Defendants find solace in their pre-*Walker* federal district court

10  decisions.  As recognized by the Northern District, the reasoning in *White v. Trans*

11  *Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006), was "in tension" with the

12  district court's holding in *Walker*.  *G&C Auto Body Inc. v. Geico Gen. Ins. Co.*, No.

13  C06-04898 MJJ, 2007 WL 4350907, at *4 (N.D. Cal. Dec. 12, 2007).  The Ninth

14  Circuit not only affirmed the *Walker* district court holding, it agreed with the

15  district court's analysis of the "history and purpose of the law," which repudiates

16  the *White* court's analysis.  *Walker*, 558 F.3d at 1027.  Similarly, *Southern*

17  *California Housing Rights Center v. Los Feliz Towers Homeowners Association*,

18  426 F. Supp. 2d 1061 (C.D. Cal. 2005), relies on pre-Proposition 64 cases and

19  contains absolutely no analysis of whether the lost money or property must be

20  eligible for restitution.[3]  *Id.* at 1069.

21      The case law is clear.  To have standing under section 17200 or 17500

22  (whether for restitution or injunctive relief), a plaintiff must have suffered a loss

23

24      [3] Defendants' other cases are also inapposite.  In *Fulford v. Logitech, Inc.*,
   No. C-08-2041 MMC, 2009 WL 1299088 (N.D. Cal. May 8, 2009), the plaintiff
25  lost money that was in his prior possession; he paid money for a product and
   allegedly would have paid less absent the defendants' conduct. *Id.* at *2.  *Aron v.*
26  *U-Haul Co. of Cal.*, 143 Cal. App. 4th 796 (2007), involved property subject to
   restitution; he was allegedly forced to overfill a rental truck gas tank to avoid
27  defendants' penalty.  *Id.* at 802-03.

28

4

la-1029776

subject to restitution.  *Walker*, 558 F.3d at 1027; *Citizens of Humanity*, 171 Cal. App. 4th at 22.

### 2.    Defendants Failed to Proffer Evidence They Lost Money or Property Subject to Restitution

None of Defendants' "evidence" shows they can fulfill this requirement. Everything they cite is either not money or property subject to restitution, not property at all, or a loss that was not "as a result of" the alleged unfair conduct.

Defendants' contention that they have standing because Herbalife has "taken" their "independent businesses" is poppycock.  Defendants do not have a property interest in their Herbalife downline organization.  They cannot own other Herbalife distributors or claim to have a vested interest in them.

> A "vested" interest is one that is "unconditional," "absolute," and "not contingent." … A contingent interest, on the other hand, is dependent upon an uncertain future event. *See Victory Oil v. Hancock Oil Co.*, 125 Cal. App. 2d 222, 231, 270 P.2d 604 (1954); *Loehr v. Ventura Co. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1080-81, 195 Cal. Rptr. 576 (1983) (contrasting "earned but unpaid salary or wages which are vested property rights" with "additional salary or benefits plaintiff might have earned had he not been terminated, which are not vested).

*Pegasus Satellite TV, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004).  Distributors in their downlines entered into contracts with Herbalife, not Defendants.  (SUF ¶ 1.)[4]  Defendants' only economic expectation with regard to their Herbalife downlines was based on their contracts with Herbalife.  (SUF ¶ 3.) That sort of economic expectation is not an interest subject to restitution.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003).

_____

[4] SUF refers to Herbalife's Statement of Uncontroverted Facts.

la-1029776

1      Moreover, Defendants' argument defies common sense.  If Robert Ford owns

2    his downline organization, then the Herbalife distributor who recruited Mr. Ford

3    into Herbalife must own Mr. Ford as well as "his" downline.  In addition, the

4    Herbalife distributor just below Mr. Ford must own all of the downline below that

5    distributor.  Thus, by recruiting members of his downline to join Melaleuca, Mr.

6    Ford must be stealing property from his upline.  Defendants cannot have it both

7    ways.

8       Defendants' other "property" losses exhibit similar contortions.  The "right to

9    pursue any calling, business or profession" is not a "property" interest subject to

10   restitution.  *Cf. Citizens of Humanity*, 171 Cal. App. 4th at 22 (good will not

11   property interest subject to restitution); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121,

12   1127 (N.D. Cal. 2008) (no property interest in stolen personal information of job

13   applicant); *Vikco Ins. Services, Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 67

14   (1999) (no property interest in unrealized commissions).  Defendants' investments

15   of time and money "locating, grooming, sponsoring and recruiting potential

16   customers" are not eligible for restitution.  Defendants cannot seek restitution of

17   their business information:  it is in their possession.

18      Nor can Defendants claim restitution for their lost profits.  Even if Herbalife

19   obtained "monies from customers to the exclusion of" Defendants, causing them

20   "lost profits," that is not a loss of monies in Defendants' prior possession.  *See*

21   *Korea Supply*, 29 Cal. 4th at 1150-51.  Nor are their alleged lost Melaleuca

22   incomes, which were contingent on Herbalife distributors joining and performing at

23   Melaleuca, subject to restitution.  *See id.* at 1173.  These are damages unavailable

24   under section 17200.  *Id.* at 1151 ("[c]ompensation for a lost business opportunity

25   is a measure of damages and not restitution"); *Stockton Executive Limousine*

26   *Charter Serv., Inc. v. Union Pac. R.R.*, No. CIVS041999, 2006 WL 769623, at *7

27   (E.D. Cal. Mar. 27, 2006) (dismissing UCL claim because plaintiff sought damages

28

1  for allegedly lost business); *see also Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d
2  619, 624 (9th Cir. 1999) (no damages on 17200 claims).

3      Defendants' other supposed losses – alleged unpaid commissions, Herbalife
4  product they purchased, resources and time to investigate and sue Herbalife, etc.
5  (all items never raised before) – are either not subject to restitution or are not "as a
6  result of" the alleged unlawful conduct.  Cal. Bus. & Prof. Code § 17204; *see also*
7  *Korea Supply*, 29 Cal. 4th at 1148-49 (plaintiff had no vested interest in receiving a
8  commission for work done in negotiations for award of a government contract);
9  *Kwikset Corp. v. Super. Ct.*, 171 Cal. App. 4th 645, 654 (2009) (no 17200 standing
10 where plaintiffs failed to show it did not receive benefit of bargain); *Chavez v. Blue*
11 *Sky Natural Beverage Co.*, 503 F. Supp. 2d 1370, 1734 (N.D. Cal. 2007) (no 17500
12 standing where no showing product not worth purchase price).

13     Defendants thus cannot pursue their 17200 and 17500 claims.  *Walker*, 558
14 F.3d at 1027.  The Court should enter judgment dismissing these claims.

15 **B.    Defendants Cannot Show Causation**

16     Defendants failed to proffer any admissible evidence to preclude summary
17 judgment on the issue of causation.  Herbalife's filing of this lawsuit and its
18 communications to its distributors about Defendants' conduct are privileged under
19 federal and California law – these privileges were not waived.  But even if that
20 were not the case, Defendants have failed to produce anything other than their own
21 speculation that they were harmed by any Herbalife conduct.  The Court should
22 dismiss Defendants' IIPEA and section 17200, 17500, and 16600 claims.

23        **1.    Herbalife's Filing Its Lawsuit and Communications with Its**
24              **Distributors are Privileged**

25     The *Noerr-Pennington* doctrine and the California litigation and common
26 interest privileges preclude any liability based on either the filing of this lawsuit or
27 the communications to Herbalife distributors (the TAB Team email and the

28

7

1  President Team email).  Herbalife has not waived these privileges.  Nor have

2  Defendants borne their burden to show they are inapplicable.

3  **a.      There Has Been No Waiver**

4  Defendants complain that Herbalife did not raise the *Noerr-Pennington*

5  doctrine or the privileges under California law in its answer to Defendants'

6  Counterclaim.  There is simple reason for this.  Defendants' Counterclaim is devoid

7  of any allegation that they were harmed by the filing of the lawsuit.  (Counterclaim

8  [Dkt. No. 98].)  Nothing in the Counterclaim indicated Defendants would claim

9  harm from the TAB Team email.  (*Id.*)  And the Counterclaim had only a passing

10  reference to the President Team email.  (*Id.* at ¶ 28.)  When asked point blank in

11  interrogatories to identify the facts underlying their claims that Herbalife

12  distributors were deterred from joining a competing company, Defendants failed to

13  identify the filing of the lawsuit or the emails. (SUF ¶ 27.)  It was not until

14  Defendants' depositions – more than a year after the filing of the Counterclaim –

15  that Defendants finally asserted they were harmed by the filing of the lawsuit and

16  two emails.  (SUF ¶¶ 29-35.)

17  More to the point, Herbalife did not need to raise the *Noerr-Pennington*

18  doctrine in its answer.  Because the doctrine is based on the First Amendment, a

19  complaint must "contain specific allegations demonstrating that the *Noerr-*

20  *Pennington* protections do not apply."  *Boone v. Redevelopment Agency of City of*

21  *San Jose*, 841 F.2d 886, 894 (9th Cir. 1988).  First Amendment immunity is "not

22  merely an affirmative defense," *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552,

23  1559 n. 9 (11th Cir.1992), and it is not waived by failing to raise it in an answer,

24  *U.S. ex rel. Wilson v. Maxxam, Inc.*, No. C 06-7497 CW, 2009 WL 322934, at *3

25  n.4 (N.D. Cal. Feb. 9, 2009).

26  Nor is Herbalife's privilege under California Civil Code § 47 waived.  An

27  affirmative defense may be raised for the first time at summary judgment in the

28  absence of a showing of prejudice.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639

8

la-1029776

1  (9th Cir. 1993); *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804

2  (9th Cir. 1982).  To support their objection, it is Defendants' burden to make a

3  specific showing of prejudice.  *U.S. Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.*,

4  No. 1:07-cv-00718 GSA, 2008 WL 5054107, at *8 (E.D. Cal. Nov. 19, 2008)

5  (plaintiff failed to show prejudice when defense first raised on summary judgment).

6  The same is true under California law.  *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356,

7  367 (1998) (finding no waiver though privilege raised for the first time on summary

8  judgment).

9       Defendants were not prejudiced.  They had ready sources of information on

10  the issue of whether there was any hatred or ill-will: the Defendants themselves.

11  The target of the alleged ill-will is typically in the best position to provide evidence

12  of malice.  *See, e.g.*, *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 963 (9th Cir.

13  2008) (plaintiff testified that defendant made "menacing comments" to her to show

14  that defamatory remark in e-mail was motivated by malice).  Yet none of the

15  Defendants have offered any indication that anyone at Herbalife hated them.

16       Nor does Defendants' claim they would have asked more questions of

17  Herbalife witnesses regarding these issues show prejudice.[5]  Defendants deposed

18  Herbalife employees at length regarding the reasons and bases for the two emails

19  and the lawsuit.  (RSGI ¶ 96.)[6]  A few short excerpts demonstrate this is the case:

20            **Why Herbalife Sued Defendants**

21               *Michael Johnson, Herbalife CEO*

22       Q.  "[D]o you know why Herbalife sued the defendants in this case?

23

24

---

25       [5] Even if *Noerr-Pennington* were an affirmative defense, Defendants can show no prejudice because defeating the application of the doctrine requires a

26  showing that the lawsuit was objectively baseless, which would not turn on the information Defendants claim they would have sought in discovery.

27       [6] RSGI refers to Herbalife's Response to Defendants' Statement of Genuine

28  Issues.

la-1029776

1     A. "The simple answer is that we had an ex-distributor who was engaged in

2  practices that we found were not legal."

3     Q. "Do you remember what those practices were?"

4     A. "My vague recollection, in this case, is that they were attempting to take

5  information from Herbalife and use it."

6     Q. "Do you remember what information you were under the impression that

7  they were trying to take from Herbalife and use? ...."

8     A. "Not specifically."

9     Q. "Do you remember generally?"

10     A. "Some lists, I believe. Some distributor lists."

11  (RGSI ¶ 96.)

12          ***Paul Greenberg, Herbalife Senior Vice President, Counsel***

13     Q. "Okay. Why did Herbalife sue Jason Fisher?"

14     A. "We sued them because we -- we -- because he was engaged in the

15  conduct that was described in the complaint."

16     Q. "[H]ave you told me every reason that Herbalife filed a lawsuit against

17     Mr. Fisher?"

18     Q. "We had and we are experiencing a pattern and conspiracy of unfair

19  raiding, unfair competition that was unparalleled in my, at that time, almost 35

20  years of practice in multilevel marketing. We had – also, we had attempted to

21  address that with letters to Mr. Ford and Mr. Fisher and had no satisfactory

22  response. We had then attempted to – we had attempted to address it with

23  Melaleuca with no success and with even less lip service than they had paid in

24  connection with the prior activity by other – of their distributors in the past, and we

25  had attempted unsuccessfully to deal with it with Melaleuca through the Direct

26  Selling Association. So we had no other choice."

27     Q. "Anything else, subject to the same objection?"

28     A. "None that comes to mind."

1   (RGSI ¶ 96.)

2   ***Jacqueline A. Miller, former Herbalife Vice President of***

3   ***Distributor Policy Administration***

4   Q. "Do you know why the defendants were sued in this case?"

5   A. "No."

6   Q. "Do you know who made the decision to sue them?"

7   A. "No."

8   (RGSI ¶ 96.)

9   **<u>Why Herbalife Sent the Two Emails</u>**

10   ***Michael Johnson, Herbalife CEO***

11   Q. "Do you know what the purpose was for publicizing to the distributor

12   base the fact that a lawsuit had been filed against these people that are mentioned

13   here specifically in Exhibit 97?"

14   A. "Well, there was a lot of discussion about what was taking place with

15   these rogue distributors.  And I think this was probably in order to build some

16   confidence among the distributors that we were standing up for our company."

17   Q. "Was part of the reason why this E-mail was sent out to try to dissuade

18   other distributors from joining the individuals mentioned in Exhibit 97, at

19   Melaleuca?

20   A. "I think it was to build confidence among our distributors that we were

21   standing behind them."

22   Q. "Any other reason?"

23   A. "To build confidence was the only reason that I can put at this."

24   ***Paul Greenberg, Herbalife Senior Vice President, Counsel***

25   Q. "What was the purpose for the -- this TAB Team member announcement,

26   if you know?"

27   A. "Purpose was to be responsive to a lot of concern we were hearing from

28   distributors about unfair competition by your clients."

la-1029776

1    Q.  "Was part of the purpose of Exhibit 25 to make sure that no further

2    Herbalife distributors conducted business with my clients?"

3    A.  "No."

4            * * *

5    Q.  "And why was it that Herbalife wanted Herbalife TAB Team members to

6    see the letters to Mr. Ford and Mr. Fisher, if you know?"

7    A.  "We wanted to alert them to the activities of Ford and Fisher, and we

8    wanted to let – we wanted to let them know what we were trying to do about

9    it."

10   (RGSI ¶ 96.)

11           ***Michael McKee, Herbalife Vice President of Sales and Marketing***

12   Q.  "All right.  Do you know why the letters to Mr. Ford and Mr. Fisher

13   were attached to the TAB Team announcement?"

14   A.  "No."

15   (RGSI ¶ 96.)

16    Defendants have not shown prejudice.  *See, e.g.*, *U.S. Fire*, 2008 WL

17   5054107, at *8.  Both the *Noerr-Pennington* and the California privileges apply.

18           **b.    Defendants Have Not Shown a Genuine Issue Precludes the**

19           ***Noerr-Pennington* Doctrine or Common Interest Privilege**

20   Defendants assert (1) the *Noerr-Pennington* doctrine does not apply to the

21   two emails; (2) there is a genuine issue as to whether the lawsuit was a sham; and

22   (3) there are genuine issues precluding the application of the common interest

23   privilege.  None of these assertions are supported.

24           **(i)    *Noerr-Pennington* Applies to the Emails**

25   According to Defendants, they were harmed by the TAB Team email and the

26   President Team email because the emails implicitly threatened Herbalife would sue

27   distributors if they joined Melaleuca.  (SUF ¶¶ 30-35.)  Defendants argue that

28

12

la-1029776

1  *Noerr-Pennington* does not apply to these communications because they "did not

2  petition the government." (Def. Br. 18.) This misstates the law.

3      *Noerr-Pennington* protects pre-litigation communications threatening legal

4  action. In *Theme Promotions, Inc. v. News American Marketing FSI*, 546 F.3d 991

5  (9th Cir. 2008), for instance, the Ninth Circuit held that the doctrine protected a

6  defendant's communication with the plaintiff's customers stating that they would

7  be "embroiled" in litigation if they placed orders with plaintiff. *Id.* at 1107-08.

8  Similarly, *Noerr-Pennington* applies to the emails in this case.

9                    **(ii)      There is No Evidence the Lawsuit is a Sham**

10     To avoid application of *Noerr-Pennington*, Defendants must show first, "the

11 lawsuit [is] objectively baseless in the sense that no reasonable litigant could

12 reasonably expect success on the merits." *Theme Promotions*, 546 F.3d at 1007.

13 Only after this is proven does the court consider the litigant's subjective motivation.

14 *Id.* The issue then is "whether the baseless lawsuit conceals an attempt to interfere

15 directly with the business relationships of a competitor, through the use of the

16 governmental process – as opposed to the outcome of that process – as an

17 anticompetitive weapon." *Id.*

18     Defendants have not raised a triable issue on the first prong. Defendants cite

19 only three bits of "evidence." (Def. Br. 19.) That the Ninth Circuit modified this

20 Court's preliminary injunction does not vaguely imply that no reasonable litigant

21 could expect Herbalife would succeed on the merits. The fact that Defendants

22 contend Rule 8-A violates section 16600 does not make the suit baseless;

23 Herbalife's motion for summary judgment and opposition to Defendants' motion

24 refute this notion. Moreover, Defendants' argument that Rule 8-A supposedly does

25 not apply to Fisher and the Fords could not show the suit is baseless; the Ninth

26 Circuit upheld this Court's injunction despite the fact that the applicability of Rule

27 8-A was moot. (Opinion [Dkt. No. 113].)

28

1   The *Noerr-Pennington* doctrine thus precludes any liability based on

2   Herbalife's filing of this lawsuit or its communications to its distributors regarding

3   Defendants' conduct.

### (iii)   The Common Interest Privilege Applies

5   Nor have Defendants shown that Herbalife is not entitled to summary

6   judgment based on the California common interest privilege.[7]   Defendants do not

7   contest that the fact that Herbalife and its distributors share a common interest

8   making the privilege applicable.  Defendants can therefore only avoid the privilege

9   by bearing the burden to show the emails were sent with malice; it is not (as

10   Defendant's imply) Herbalife's burden to show lack of malice.  *See Ghebreselassie*

11   *v. Coleman Security Serv.*, 829 F.2d 892, 898-99 (9th Cir. 1987).

12   There is no evidence of malice.  The evidence shows that Herbalife sent the

13   emails to inform its members of Defendants' conduct as well as the steps Herbalife

14   was taking to address the problem because Herbalife distributors were upset by

15   Defendants' raiding.  (SUF ¶ 26.)  It also shows that Herbalife had a substantial

16   basis for the statements regarding Defendants' conduct.  (SUF ¶ 24.)

17   Defendants' so-called evidence fails to raise a genuine issue of fact.  (Def.

18   Br. 21-22.)  Mr. Greenberg's statements regarding Melaleuca do not show malice,

19   let alone malice toward Defendants.  *See Taus v. Loftus*, 40 Cal. 4th 683, 721

20   (2007) (plaintiff must show actual malice – "that the publication was motivated by

21   hatred or ill will *towards the plaintiff*" (emphasis added)).  Nor is there evidence

22   that Herbalife did not have a reasonable basis for or failed to investigate the toxicity

23   statements – the evidence shows that Herbalife was aware of a number studies

24   showing that Melaleuca products are toxic at the time it sent the email.  (SUF ¶ 24.)

25

26

27   [7] Defendants argue that California Civil Code § 47(b) does not apply to the two emails.  (Def. Br. 20.)  Herbalife never argued that it did.

28

14

la-1029776

*See also id.* (plaintiff must show defendant "lacked reasonable grounds for belief in the truth of the publication").

Herbalife's statement that it had "received feedback from several of you that currently there are Melaleuca distributors who are misleading, blackmailing and misrepresenting Melaleuca incomes to Herbalife distributors" does not show malice.  (SUF ¶ 24.)  Herbalife in fact received such feedback.  (SUF ¶¶ 7-10, 24.) This language does not raise an inference of malice.  *See, e.g.*, *Masson v. New Yorker Magazine*, 832 F. Supp. 1350, 1362 (N.D. Cal. 1993) (use of the word "blackmail" did not show malice; no one could have thought that defendants were charging plaintiff with the commission of a criminal offense); *Swaffield v. Universal Ecsco Corp.*, 271 Cal. App. 2d 147, 164 (1969) (statement accusing plaintiff of "fraud" did not show malice where reasonable basis for accusation). Moreover, the only Defendants referenced in this email were Jason Fisher and Robert Ford.  (SUF ¶ 23.)  This email cannot show malice toward the other Defendants.

Finally, the fact that Herbalife sent the emails to a large group of distributors does not show malice.  As Herbalife's CEO explained, there was concern among Herbalife distributors about Defendants' conduct.  (SUF 25.)  Defendants do not contest that Herbalife and its distributors share a common interest making the privilege applicable.  *See Deaile v. Gen. Tel. Co.*, 40 Cal. App. 3d 841, 846 (1974) (communication from employer to employees).  A communication to those who share a common interest by definition is not "beyond the group of people having a need to know."  *See id.* (informing employees about "factors surrounding plaintiff's forced retirement" not malicious because disseminated "to preserve employee morale and job efficiency"); *cf. Fisher v. Lucky Stores, Inc.*, No. C93-1019, 1994 WL 125104 FMS, at *6 (N.D. Cal. Apr. 4, 1994) (informing employees of termination to show penalty for breaching employer's policies not malicious).

la-1029776

1    The common interest privilege thus precludes liability based on Herbalife's

2    communications with its distributors regarding Defendants' conduct.

3            **2.     Defendants Failed to Proffer Evidence of Causation**

4        Regardless of whether the *Noerr-Pennington* doctrine and common interest

5    privilege apply, Herbalife is entitled to summary judgment because Defendants

6    have failed to proffer significantly probative evidence showing a causal connection

7    between any Herbalife conduct and their alleged harm.

8        Despite their supposedly extensive business contacts, which they claim

9    "contained over a thousand names of business relationships" (Def Br. 15),

10   Defendants cannot offer any evidence that a single Herbalife distributor was

11   deterred from joining Melaleuca because of the alleged Herbalife conduct.  No

12   Herbalife distributor testified to being deterred by Rule 8-A or the never-enforced

13   covenant not to compete.[8]  No one testified they were deterred by any of the

14   supposedly false statements.

15       In fact, despite Defendants' extensive recruiting efforts, they could not even

16   identify any Herbalife distributor that indicated Herbalife's alleged conduct had any

17   impact.  Although Defendants insist that the trier can infer Herbalife distributors

18   were deterred by Rule 8-A, Robert Ford admitted that no Herbalife distributor he

19   sought to recruit indicated that they would not join "Melaleuca because of Rule 8-A

20   or because they would be prohibited from soliciting their down-line."  (SUF ¶ 40.)

21   Jason Fisher could not recall any Herbalife distributor afraid of what might happen

22   to them if they joined Melaleuca.  (SUF ¶ 42.)  Kathy Orr admitted that she could

23   not say whether anyone would join her at Melaleuca "unless I talk to them."  (SUF

24       [8] Herbalife's current Distributor Agreements do not contain a 3-year
25   covenant not to compete.  (AMF ¶ 212.)  Moreover, there is no evidence Herbalife
     has ever enforced the 3-year non-compete or warned any Herbalife distributor that
26   going to another direct sales or multi-level marketing firm would violate this
     provision.  (AMF ¶ 213.)  AMF refers to Herbalife's Additional Material Facts,
27   Statement of Genuine Issues in Support of Herbalife's Opposition to
     Counterclaimants' Motion for Partial Summary Judgment
28

16

¶ 41.)  Nor is there any evidence anyone relied on or was likely deceived by the statements regarding Herbalife's retail sales and commissions in 2006.  (AMF ¶¶ 209, 211.)   The evidence is that Herbalife distributors did not rely on these statements.  (*Id.*)

The only evidence from Herbalife distributors solicited by Defendants shows they chose to stay with Herbalife for other reasons.  (SUF ¶ 37-38.)  Richard Palmer stated that, despite Defendants' recruiting pitch and threats, he and his wife chose to stay with Herbalife because of their positive experience with the company, not any of the challenged conduct.  (SUF ¶ 37.)  Potato Richardson stayed because of his wonderful experience with Herbalife.  (SUF ¶ 38.)  Other Herbalife distributors have come forward with similar stories.

Robert Ford and Jason Fisher sought to recruit Paul Michaels to Melaleuca in December 2006.  (RSGI ¶ 65-68 (Michaels Decl. ¶¶ 4-7).)  Mr. Michaels responded that he and his wife were "Herbalife for life" and had no intention of leaving Herbalife.  (*Id.*)  At the time, Mr. Michaels knew of no action taken by Herbalife against Ford or Fisher, and Rule 8-A had no part in his decision.  (*Id.*)

Similarly, Sandy Gioiosa and her husband chose to stay with Herbalife because they "have developed a first rate sales organization and have provided [their] family with a comfortable income."  (RSGI ¶ 65-68 (Gioiosa Decl.¶¶ 4-8).)  No wrongful action by Herbalife nor fear that Herbalife would enforce Rule 8-A against her played into her decision to stay with Herbalife.  (*Id.*)

Michael Katz also received a call from Bruce Roth asking him to leave Herbalife, join Melaleuca, and bring his downline from Herbalife to Melaleuca.  (RSGI ¶ 65-68 (Katz Decl. ¶¶ 4-6).)   Mr. Katz responded that his wife and he were very satisfied with their business distributing Herbalife products and that they would not leave Herbalife for Melaleuca.  (*Id.*)   At the time of the call, Mr. Katz was unaware of any action taken by Herbalife with respect to Mr. Roth or Mr. Ford.

la-1029776

1  (*Id.*)   His decision had nothing to do with any supposed fear that Herbalife would

2  take some action against him or might enforce Rule 8-A against him.  (*Id.*)

3       Trey Herron similarly rejected a solicitation from Mr. Ford. (RSGI ¶ 65-68

4  (Herron Decl. ¶¶ 4-7).)   No action or fear of some action by Herbalife prevented

5  him from leaving Herblife to join Melaleuca.  (*Id.*)  As he told Mr. Ford, he and his

6  wife were satisfied with their Herbalife business and would not want to go

7  anywhere else.  (*Id.*)

8       Dr. Steven Komadina also rebuffed Mr. Ford's solicitation efforts.  (RSGI ¶

9  65-68 (Komadina Decl. ¶¶ 4-7).)   Dr. Komadina received a number of solicitation

10  calls from Mr. Ford as well as package of Melaleuca materials.  (*Id.*)  Dr. Komadina

11  rejected the offer, stating that he had built a good organization in Herbalife, which

12  was very rewarding, and he would not leave to go to a competing company like

13  Melaleuca.  (*Id.*)

14       In the face of the consistent testimony of Herbalife distributors, Defendants

15  cannot rest on an "inference" that the alleged conduct caused them harm.  Instead,

16  Defendants offer their own statements that they are "certain that they would have

17  been able to recruit to their Melaleuca businesses" Herbalife distributors but for the

18  alleged Herbalife conduct.  (CCF ¶¶ 65-67.)  This inadmissible speculation is not

19  significant probative evidence sufficient to avoid summary judgment.

20       Nor do Defendants explain their own testimony that they were successful at

21  Melaleuca until Herbalife filed this suit.  (SUF ¶ 39-44.)  If Herbalife's allegedly

22  illegal rules and contracts actually deterred Herbalife distributors from joining

23  Melaleuca, it would have done so before the lawsuit.  If the alleged endless chain

24  scheme harmed Defendants' businesses, why were defendants "rocking and rolling

25  and moving up" in Melaleuca?  (SUF ¶ 39)

26       The only inference the evidence supports is that no Herbalife conduct harmed

27  Defendants.  The Court should enter judgment against Defendants' IIPEA and

28  section 17200, 17500, and 16600 claims.  *See, e.g.*, *Saelzler v. Advanced Group*

la-1029776

1     *400*, 25 Cal. 4th 763, 781 (2001) (affirming summary judgment on issue of

2     causation despite evidence from plaintiff's experts; evidence too speculative;

3     plaintiff had "ample opportunity, through pretrial discovery, to marshal evidence"

4     showing causation).

5     **C.**      **Defendants Effectively Concede Their Endless Chain Scheme Claim**

6        Defendants' endless chain scheme claim is premised on their allegation that

7     Herbalife violates California Penal Code § 327. (Counterclaim [Dkt. No. 98] at ¶¶

8     51-54.) Defendants sought two forms of relief under this claim: rescission of their

9     Herbalife contracts under California Civil Code § 1689.2 and an injunction. (*Id.* at

10     ¶¶ 53-54.) In its opening brief, Herbalife demonstrated (1) that Defendants have

11     not shown they are ready and able to meet the prerequisites for rescission (the

12     return of all the benefits they obtained under the contracts); (2) Defendants do not

13     have standing to seek injunctive relief; and (3) four of the Defendants are barred by

14     the statute of limitations.

15        Defendants do not contest any of these points. (Def. Br. 23-24.) Instead,

16     Defendants claim they are entitled to an entirely new form of relief (cancellation)

17     and argue that they may pursue their section 17200 and 17500 claims.

18        Cancellation is not available to Defendants. It was never pled, Defendants do

19     not face serious injury (the supposed "injury" is contingent on the Court enforcing

20     the contract), and the California Legislature specified rescission as the remedy for

21     those who have such contracts. Defendants cannot end run around the requirement

22     that they return to Herbalife the benefits they obtained under the contract. *See*

23     *Williams v. U.S. Gen. Serv. Admin.*, 905 F.2d 308, 311 (9th Cir. 1990) ("where a

24     statute expressly provides a remedy, courts must be especially reluctant to provide

25     additional remedies").

26        Defendants' arguments regarding their other claims are irrelevant. The Court

27     should dismiss this claim.

28

la-1029776

**D.     Defendants Cannot Base Their Claims on Rule 8-A**

As Herbalife demonstrated in its opening brief, Rule 8-A's one-year post-termination nonsolicitation provision was designed to protect Herbalife's distribution chain and its distributors from the effects of raiding by former Herbalife distributors.  Other than a frivolous objection to the term "raid,"[9] Defendants do not dispute that this sort of solicitation and recruitment not only impacts Herbalife through the loss of particular distributors, it also impacts Herbalife's remaining distributors.  (CCF ¶ 13.)  They admit that when a raided Herbalife distributor leaves, especially one in a leadership position, it is difficult for Herbalife to recreate the relationships necessary for an effective distribution chain.  (CCF ¶ 14.)  This is because, as Defendants concede, Herbalife's distributors train distributors many levels down from them and learn from those many levels above them.  (CCF ¶ 15.)

It is also undisputed that raiding by former distributors impairs the effectiveness of Herbalife distributors above the one being solicited because they are forced to focus their time and energy on countering the raid.  (CCF ¶ 16.)  Defendants concede that the impact on Herbalife and its distributors is particularly poignant when a significant part of a distributor's downline is threatened, such as when a raided distributor solicits other distributors in the downline to leave as well.  (CCF ¶ 17.)

Despite these telling concessions, Defendants insist that Rule 8-A is an unlawful restraint of trade.  None of their arguments have merit.

Defendants complain that provision is broader than the relief sought by Herbalife in its motion for partial summary judgment.  (Def. Br. 3.)  But Herbalife's motion was limited to Defendants' allegations: According to Defendants'

---

[9] Raid: "An attempt by a business or union to lure employees or members from a competitor."  *Black's Law Dictionary* (8th ed. 2004) 1287, "Raid," entry 2.

20

la-1029776

1  counterclaim, "Rule 8-A's ban on direct or indirect solicitation, promotion,

2  sponsorship, or recruiting of any Herbalife independent distributor within one year

3  of termination violates [California Business & Profession Code] Section 16600."

4  (Counterclaim [Dkt. No. 98] ¶ 27.)   Defendants have never contended that any

5  other portions of the rule have caused their alleged harm.

6         Defendants next misstate the law.  They argue that the California Supreme

7  Court's recent decision in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937

8  (2008), held that the contract at-issue in that case "was invalid because it

9  prohibited … soliciting [the former employer's] personnel for 18 months after

10  termination."  (Def. Br. 3-4.)  This is false.  The *Edwards* holding did not involve

11  an employee nonsolicitation provision.  The agreement at-issue in *Edwards* did bar

12  the plaintiff from soliciting "away from the Firm any of its professional personnel

13  for eighteen months after release or resignation."  *Id.* at 942.  But the court's

14  holding that the agreement was unenforceable was not based on this provision; the

15  plaintiff did not "contend that the provision … prohibiting him from recruiting

16  Andersen's employees violated section 16600," *id.* at 946 n.4, and the court's

17  holding was limited to provisions barring the plaintiff from working for or

18  soliciting the employer's clients, *id.* at 948.

19         Defendants then try to distinguish the applicable case law because Rule 8-A

20  applies to independent contractors, not employees.  (Def. Br. 4.)  But when it comes

21  to post-termination nonsolicitation provisions, California law does not distinguish

22  between employees and independent contractors.  *Webb v. West Side District*

23  *Hospital*, 144 Cal App. 3d 946 (1983), which held a two-year post-termination

24  nonsolicitation provision did not violate section 16600, involved independent

25  contractors.  *Buskuhl v. Family Life Insurance Co.*, 271 Cal. App. 2d 514 (1969),

26  which upheld a provision prohibiting a former sales supervisor from soliciting or

27  recruiting insurance agents (who are typically independent contractors), treated as

28  not significant the "characterization of the relationship between the parties as

21

1  employer-employee, principal and agent, or independent contractors." *Id.* at 517

2  n.1.  And other cases have held customer nonsolication provisions applied to

3  independent contractors do not violate section 16600.  *See, e.g.*, *State Farm Mutual*

4  *Auto. Ins. Co. v. Dempster*, 174 Cal. App. 2d 418, 425-26 (1959) (upholding

5  provision barring, for one year, independent contractor insurance agents from

6  soliciting company's policyholders); *Ingrassia v. Bailey*, 172 Cal. App. 2d 117,

7  124-25 (1959) (upholding provision barring independent contractor from soliciting

8  company's customers).

9      Nor can Defendants escape the obvious applicability of *Loral Corp. v.*

10  *Moyes*, 174 Cal. App. 3d 268 (1985), which held that an agreement not to

11  "interfer[e] with or raid[]" a company's workers did not violate Section 16600.

12  Defendants' claim that "[m]ore recent cases are to the contrary" (Def. Br. 6) is

13  wrong.  *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004), did not involve section 16600

14  at all.  *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853

15  (1994), did not involve a nonsolicitation provision – the agreement barred

16  employees entirely from working for a competitor for a year following termination.

17      Similarly, Defendants' assertion that "*Edwards* rejected the reasonable-

18  restriction concept adopted in *Loral*" (Def. Br. 6) is simply misleading.  *Loral*

19  adopted no such concept.  *Edwards* cited *Loral* approvingly and made clear, "no

20  reported California state court decision has endorsed" the narrow-restraint

21  exception.  *Edwards*, 44 Cal. 4th at 949.

22      *Loral*, *Buskuhl*, and *Webb* demonstrate that a provision preventing a former

23  independent contractor from soliciting or recruiting a company's current contractors

24  does not violate section 16600.  Simply put, such a provision does not inhibit a

25  former contractor's "right to engage in trade, business, or profession as to be within

26  the proscription of section 16600." *Buskuhl*, 271 Cal. App. 2d at 522-23.  Even if

27  the provision may have some impact on a contractor's decision to resign, this does

28  not bring a nonsolicitation provision under the ambit of section 16600.

la-1029776

1   This conclusion is confirmed by *City of Oakland v. Hassey*, 163 Cal. App.

2   4th 1477 (2008), which upheld an agreement requiring reimbursement for training

3   costs if an employee resigns within five years.  Although the requirement may

4   inhibit someone from leaving, the court held that the provision did not restrain the

5   plaintiff "from engaging in [his] lawful trade, business, or profession.  Nothing

6   prevented him from working for another [competing employer], or anywhere else,

7   for that matter."  *Id.* at 1491 (citations and internal quotations omitted)).

8   The Court should grant partial summary judgment dismissing Defendants'

9   claims to the extent these are based on the nonsolicitation provision in Rule 8-A.

10   **CONCLUSION**

11   No genuine issues of material fact exist.  The Court should grant Herbalife's

12   motion for summary judgment.

13

14

15   Dated:    May 22, 2009                MORRISON & FOERSTER LLP

16                                          /s/ Sean P. Gates
                                           _____
17                                          Charles E. Patterson
                                           Nancy R. Thomas
18                                          Sean P. Gates

19                                          Attorneys for Plaintiff and
                                           Counterclaim Defendant
20                                          HERBALIFE INTERNATIONAL
                                           OF AMERICA, INC.

21

22

23

24

25

26

27

28

la-1029776