CHARLES E. PATTERSON (CA SBN 120081)
CPatterson@mofo.com
NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
SEAN P. GATES (CA SBN 186247)
SGates@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California  90013-1024
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
HERBALIFE INTERNATIONAL
OF AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Herbalife International of America, Inc., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; Dianna N. Thompson; and Jason Fisher,<br><br>Defendants. | Case No. CV 07 2529 GAF (FMOx)<br><br>Hon. Gary A. Feess<br><br>**RESPONSE TO DEFENDANTS' AND COUNTERCLAIMANTS' STATEMENT OF GENUINE ISSUES IN SUPPORT OF DEFENDANTS' AND COUNTERCLAIMANTS' OPPOSITION TO HERBALIFE INTERNATIONAL OF AMERICA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:         June 1, 2009<br>Time:         9:30 a.m.<br>Courtroom: 740-Roybal |

la-1030052

Plaintiff and Counterdefendant Herbalife International of America, Inc. ("Herbalife") submits this response to Defendants' and Counterclaimants' statement of genuine issues, filed by Defendants and Counterclaimants in opposition to Herbalife International of America, Inc.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

Facts 1 through 48 below correspond to Herbalife's undisputed facts and supporting evidence in support of Herbalife's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. Herbalife states any evidentiary objections to Defendants' opposing evidence and any response to Defendants' objections. The bases for those objections are set forth in separate, concurrently filed document.

Facts 49 through 100 below correspond to Defendants' and Counterclaimants' Additional Material Facts and supporting evidence in support of Defendants' and Counterclaimants' Opposition to Herbalife's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. For disputed facts, Herbalife cites to opposing evidence and states any evidentiary objections. The bases for those objections are set forth in separate, concurrently filed document.

Facts 101 through 230 below correspond to alleged facts and supporting evidence presented in Defendants' and Counterclaimants' Separate Statement of Uncontroverted Facts in support of Defendants' and Counterclaimants' Motion for Partial Summary Judgment and are identical to the facts and evidence responded to in Herbalife's Statement of Genuine Issues in Support of Herbalife's Opposition to Defendants' and Counterclaimants' Motion for Partial Summary Judgment. For disputed facts, Herbalife cites to opposing evidence.

Facts 231 through 233 are additional alleged facts and supporting evidence presented by Defendants and Counterclaimants for the first time. Herbalife states is evidentiary objections. The bases for those objections are set forth in separate, concurrently filed document.

la-1030052

Where Herbalife responds that a statement of fact submitted by
Counterclaimants is "undisputed," "disputed," or "disputed on evidentiary
grounds," the response is limited for purposes of this motion only.

### RESPONSE TO DEFENDANTS' AND COUNTERCLAIMANTS' STATEMENT OF GENUINE ISSUES

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| 1. As a direct sales company, Herbalife relies on a network of distributors (independent contractors) to sell and promote its products. | 1. Disputed as to "sell ... products" should be "purchase ... products." Herbalife's Evidence: Declaration of Sean P. Gates in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Gates Decl.) Ex. A ¶ 5, 12 (Miller Declaration); Ex. B at D00005 (Rule 8-F). Opposing Evidence: "Live the Good Life with Herbalife," p. 22 (Declaration of John B. Stephens ["Stephens Decl."], Ex. "A," p. 6). "Sales & Marketing Plan and Business Rules," p. 4 (Stephens Decl., Ex. "B," p. 9). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice |

3

|   |   |   |
|---|---|---|
|   |   | President, Counsel. Greenberg Depo. 225:23-226:1 (Stephens Decl., Ex. "C," pp. 29-30); Deposition of Jacqueline Miller ("Miller Depo.") Miller Depo: 31-15-21, 33:6-10 (Stephens Decl., Ex. "D," pp. 35, 37). |
| 2. | Herbalife distributors also recruit and train other Herbalife distributors, who in turn may recruit and train additional distributors to sell Herbalife products. | 2. Undisputed. Gates Decl. Ex. A ¶ 7 (Miller Declaration); Ex. C ¶ 30 (Further Miller Declaration). |
| 3. | To encourage distributors to build Herbalife's sales force, Herbalife pays its distributors based on their own sales as well as the sales of their "downline" - those persons recruited directly or indirectly into the organization by the distributor. | 3. Disputed. Herbalife's Evidence: Gates Decl. Ex. A ¶¶ 9-11 (Miller Declaration). Opposing Evidence: Miller Depo. 38:13-39:8 (Stephens Decl., Ex. "D," p. 38, 39). "Sales & Marketing Plan and Business Rules," p. 1 (Stephens Decl., Ex. "B," p.10). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Greenberg Depo. 225:23-226: I (Stephens Decl., Ex. "C," pp. 29-30.) |

la-1030052

| | | | |
|---|---|---|---|
| 4. | Each of Defendants left Herbalife to join Herbalife's competitor, Melaleuca. | 4. | Undisputed. Gates Decl. Ex, D (Answer to Amended Counterclaim ¶¶ 8-12). |
| 5. | Melaleuca distributors earn money based on the sales of those they recruit to become Melaleuca distributors. | 5. | Gates Decl. Ex. E (Jeff Orr Dep. Tr. 187:15-190:4); Ex. F (Kathy Orr Dep. Tr. 187:16-188:13); Ex. G (Nancy Roth Dep. Tr. 61:19-62:23). |
| 6. | Defendants launched a campaign to build their Melaleuca organizations by recruiting Herbalife distributors to join them. For instance, in February 2007, just after leaving Herbalife, Bruce and Nancy Roth joined Jason Fisher and Robert Ford for a ten-day recruiting blitz, working continuously to solicit Herbalife distributors in the Roths' former downline. Each of the Defendants made similar efforts. | 6. | Gates Decl. Ex G (Nancy Roth Dep. Tr. 122:16-19, 126:16-127:11, 146:2-149:21); Ex. H (Bruce Roth Dep. Tr. 152:25-154:21); Ex. I (Jeff and Kathy Orr Supplemental Responses to Rogs No. 6); Ex. J (Robert Ford Dep. Tr. 186:14-20); Ex. E (Jeff Orr Dep. Tr. 219:7-17, 220:12-18); Ex. K (Dianna Thompson Dep. Tr. 93 :20-94:14); Ex. L (Jason Fisher Dep. Tr. 195:3-20). |
| 7. | Herbalife distributors complained that Defendants engaged in various coercive and deceptive recruiting tactics. | 7. | Disputed based on evidentiary objections. Herbalife's Evidence: Declaration of Paul Greenberg in Support of Motion By Herbalife International of America, Inc. for Summary |

la-1030052

Judgment or, in the Alternative

Partial Summary Judgment

(Greenberg Decl.) ¶ 2-8, Ex. A-F.

Objections: Greenberg Decl., ¶¶ 2-8,

Ex. A-F: Hearsay, Lacks

Foundation.

**Counterclaimants' Objection Disputed:**

Evidence not offered for the truth;

evidence offered for declarant's state of

mind (FRE  803(3))

8.   Herbalife distributors complained that Defendants were raiding their downline, a practice which some described as "unethical" and "sleazy."

8.   Disputed based on evidentiary objections.

Herbalife's Evidence: Greenberg Decl. ¶3, Ex. A, B.

Objections: Greenberg Decl., ¶ 3 and to Ex. A, B: Hearsay, Lacks Foundation.

**Counterclaimants' Objection Disputed:**

Evidence not offered for the truth;

evidence offered for declarant's state of

mind (FRE  803(3))

9.   Herbalife distributors complained that Defendants threatened to "take [the distributor's] entire downline to Melaleuca" unless

9.   Disputed.

Herbalife's Evidence: Greenberg Decl. ¶ 4, Ex. F; Herbalife Evidence: Declaration of Robert Palmer in

la-1030052

| | |
|---|---|
| they joined Melaleuca, which some distributors called "blackmail." | Support of Motion By Herbalife Inter-National of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Palmer Decl.) ¶¶ 4-6; Gates Decl. Ex. M ¶ 5 (Schmaman Declaration); Ex. N ¶ 11 (Nix Declaration); Ex. O ¶ 12 (Klucken Declaration); Ex. P (Schmaman Dep. Tr. 83:2-90:1). Opposing Evidence: B. Roth Depo. 179:8-18 (Stephens Decl., Ex. "E," pp. 44); D. Thompson Decl., ¶ 10; R. Ford Decl., ¶ 11; K. Orr Decl., ¶ 11; J. Off Decl., ¶ 11; J. Fisher Decl., ¶ 10. Objections: Greenberg Decl. ¶ 4, Ex. F: Hearsay, Lacks Foundation. **Counterclaimants' Objection Disputed:** Evidence not offered for the truth; evidence offered for declarant's state of mind (FRE 803(3)) |
| 10.  Herbalife distributors indicated that Defendants gained an entree by falsely representing they were | 10.  Disputed. Herbalife's Evidence: Greenberg Decl. ¶¶ 5, 6, 7, Ex. B, C; |

la-1030052

| | |
|---|---|
| still with Herbalife, used Herbalife records to contact their downlines, and were "saying horrible things about us and Herbalife." | Declaration of Potato Richardson in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Richardson Decl.) ¶¶ 1-3; Gates Decl. Ex. Q ¶¶ 1-4 (Justesen Declaration), Ex. N 10. |
| | Opposing Evidence: B. Roth Depo. 179:8-18 (Stephens Decl., Ex. "E," pp. 44); D. Thompson Decl., ¶ 10; R. Ford Decl., ¶ 11; K. Orr Decl., ¶ 11; J. Orr Decl., ¶ 11; J. Fisher Decl., ¶ 10. |
| | Objections: Greenberg Decl. ¶¶ 5, 6, 7: Hearsay, Vague, Lacks Foundation; Greenberg Decl., Ex. B, C: Hearsay, Lacks Foundation; Greenberg Decl., Ex. N (Lilith Nix Decl.) ¶ 10: Hearsay, Lacks Foundation. |
| | **Counterclaimants' Objection Disputed:** Evidence not offered for the truth; evidence offered for declarant's state of mind (FRE 803(3)) |
| 11.   Several Herbalife distributors | 11.   Disputed based on evidentiary |

8

la-1030052

requested that Herbalife take action to stop Defendants' conduct.

objections.

Herbalife's Evidence: Greenberg Decl. ¶ 9, Ex. D, E.

Objections: Greenberg Decl. 119, Ex. D, E: Hearsay, Lacks Foundation.

**Counterclaimants' Objection Disputed:** Evidence not offered for the truth; evidence offered for declarant's state of mind (FRE 803(3))

12.  Because Herbalife depends on its network of distributors to sell its products, raiding by former Herbalife distributors impacts Herbalife's distribution, training, and sales.

12.  Disputed.

Herbalife's Evidence: Greenberg Decl. ¶ 10; Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration).

Opposing Evidence: "Live the Good Life with Herbalife," p. 22 (Stephens Decl., Ex. "A," p. 6). "Sales & Marketing Plan and Business Rules," p. 4 (Stephens Decl., Ex. "B," p. 9). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Greenberg Depo. 225:23-226:1 (Stephens Decl., Ex. "C," pp. 29-30); Miller

9

|  |  |  |  |
|---|---|---|---|
|  |  |  | Depo. 31:15-21, 33:6-10 (Stephens Decl., Ex. "D," pp. 35, 37). Objection to term "raiding" on grounds of being vague, argumentative, conclusory, and irrelevant. |
| 13. | Raiding not only impacts Herbalife through the loss of particular distributors, it also impacts Herbalife's remaining distributors. | 13. | Disputed on Evidentiary Grounds. Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration). Objection to term "raiding" on grounds of being vague, argumentative, conclusory, and irrelevant. |
| 14. | When an Herbalife distributor, especially one in a leadership position, is raided by a former distributor and leaves, it is difficult to recreate the relationships necessary for an effective distribution chain. | 14. | Disputed as to term "raiding." Herbalife's Evidence: Gates Decl. Ex. C ¶ 30 (Further Miller Declaration). Objection to term "raiding" on grounds of being vague, argumentative, conclusory, and irrelevant. |
| 15. | Herbalife's distributors train distributors many levels down from them and learn from those many levels above them. Moreover, Herbalife distributors | 15. | Gates Decl. Ex. M (Schmaman Dep. Tr. 48:8-49:18); Ex. F (Kathy Orr Dep. Tr. 94:20-95:21, 106:21-108:3); Ex. F (Jeff Orr Dep. Tr. 90:24-94:4); Ex. R (Julia Ford Dep. |

la-1030052

send members of their downline to meet and be trained by Herbalife leaders outside of the distributors' area.

Tr. 135:8-22); Ex. S (Stephan Gratziani Dep. Tr. 40:1-18); Ex. T (Michael Johnson Dep. Tr. 89:18-90:6, 95:18-96:8); Ex. U (Lilith Nix Dep. Tr. 34:14-36:13.)

16. Raiding by former distributors especially impairs the effectiveness of the distributors above the one being solicited. Instead of focusing on selling product, recruiting, and training, these distributors are forced to focus their time and energy on countering the raid.

16. Disputed as to term "raiding." Herbalife's Evidence: Gates Decl. Ex. A ¶ 38 (Miller Declaration), Ex. C ¶¶ 30-31 (Further Miller Declaration), Ex. V ¶¶ 2-4 (McClain Declaration), Ex. W (Paul Greenberg Dep. Tr. 94:2-96:1). Objection to term "raiding" on grounds of being vague, argumentative, conclusory, and irrelevant.

17. Raiding by former distributors impairs the effectiveness of the distributors above the one being solicited, particularly when a significant part of the downline is threatened, such as when a raided distributor solicits other distributors in the downline to leave as well.

17. Disputed as to term "raiding." Herbalife Evidence: Gates Decl. Ex. X ¶ 3 (Mandryk Declaration), Ex. M ¶¶ 5-9 (Schmaman Declaration), Ex. E (Jeff Orr Dep. Tr. 216:25-220:18). Objection to term "raiding" on grounds of being vague, argumentative, conclusory, and irrelevant.

18. Each Herbalife distributor is

18. Gates Decl. Ex. C ¶¶ 3, 14 (Further

la-1030052

| | | | |
|---|---|---|---|
| | bound by Herbalife's Rules of Conduct and Distributor Policies. | | Miller Declaration), Ex. B at D00001. |
| 19. | Herbalife's Rules of Conduct and Distributor Policies Rule 8-A provides: During the course of a Distributorship and for one year thereafter, neither the Distributor nor their spouse, nor any other person assisting the Distributorship will, directly or indirectly ... solicit, promote, sponsor or recruit any Herbalife Distributor ... they became aware of in the course of their Herbalife Distributorship, to join, promote, sell or purchase products of, or participate in as a salesperson or otherwise, any multi-level marketing or direct-sales company ... | 19. | Gates Decl. Ex. C ¶¶ 15-17 (Further Miller Declaration). |
| 20. | The purpose of Rule 8-A is "[to protect the company and its distributors from distributors taking the down line organizations or other distributors into another company, so that they lose income and lose their | 20. | Gates Decl. Ex. Y (Jackie Miller Dep. Tr. 58:16-20). |

12

1

organization."

2

21.  In response to its distributors'
concerns, Herbalife sent cease-
and desist letters to Robert Ford
and Jason Fisher in February
2007.

21.  Disputed as to Date (Letters are
dated 9/26/06)
Herbalife's Evidence: Greenberg
Decl. ¶ 14, Ex. Q.
Opposing Evidence: Greenberg
Decl., Ex. Q.

22.  It also sent a letter to the Direct
Selling Association complaining
that this type of conduct by
Melaleuca distributors violated
the Association's ethical rules.

22.  Disputed. Herbalife's Evidence:
Greenberg Decl. ¶ 14, Ex. Q.
Opposing Evidence: Greenberg
Decl. ¶ 14, Ex. Q (titled "*Summary
of Letter sent to DSA ....*")
(emphasis added).

23.  To inform its distributors of these
actions, Herbalife sent an email
to Herbalife TAB Team
Members (a subset of Herbalife
distributors). The email contained
links to demand letters sent to
Messrs. Ford and Fisher as well
as to a letter sent by Herbalife to
the Direct Selling Association.

23.  Disputed as to purpose of email.
Herbalife's Evidence: Greenberg
Decl. IT 14, Ex. Q.
Opposing Evidence: Greenberg
Decl., Ex. Q.
Objections: Greenberg Decl. ¶ 14:
Hearsay, Lacks Foundation,
Relevance.

**Counterclaimants' Objection Disputed:**
Evidence not offered for the truth;
evidence offered for declarant's state of
mind (FRE 803(3))

13

| | |
|---|---|
| 24. A line in this first email read, "We have received feedback from several of you that currently there are Melaleuca distributors who are misleading, blackmailing and misrepresenting Melaleuca incomes to Herbalife distributors." It also states Herbalife's belief that Melaleuca products are not nontoxic. The numerous complaints, as well as scientific studies of Melaleuca products, gave Herbalife a substantial basis for these assertions. | 24. Disputed as to "numerous complaints, as well as scientific studies of Melaleuca products." Herbalife's Evidence: Greenberg Decl. Ex. Q. Opposing Evidence: Herbalife's Responses to Defendant and Counterclaimant Robert E. Ford's First Set of Interrogatories (Nos. 1-18) (Stephens Decl., Ex. "F," p. 48-62); Greenberg Depo. 153:19-155:12 (Stephens Decl., Ex. "C," pp. 24-26). |
| 25. Herbalife's CEO (Michael Johnson later sent an email to Herbalife President Team Members (a smaller subset of Herbalife distributors) informing them that Herbalife had filed suit against the Defendants. | 25. Disputed. Herbalife's Evidence: Greenberg Decl. 14, Ex. R. Opposing Evidence: Johnson Depo. 136:13-137:16 (Stephens Decl., Ex. "G," pp. 67-68). Objection. Greenberg Decl. 14, Ex. R: Hearsay, Lacks Foundation.

**Counterclaimants' Objection Disputed:** Evidence not offered for the truth; evidence offered for declarant's state of |

14

la-1030052

mind (FRE 803(3))

| | |
|---|---|
| 26. Herbalife sent the emails to its distributors to inform its members of Defendants' conduct as well as the steps Herbalife was taking to address the problem. As Herbalife's CEO explained, "there was an upset group of current distributors who didn't believe the company was doing enough to protect their businesses." | 26. Disputed as to why emails sent. Herbalife's Evidence: Greenberg Decl. ¶¶ 10, 14, 16; Gates Decl. Ex. T (Michael Johnson Dep. Tr. 107:3-10). Opposing Evidence: Greenberg Decl., Ex. Q (Email from Sales Strategy Department); Johnson Depo. 136:13-137:16 (Stephens Decl., Ex. "O," pp. 67-68); Objections: Greenberg Decl. ¶¶ 10, 14, 16, Hearsay, Lacks Foundation, Relevance. |
| | **Counterclaimants' Objection Disputed:** Evidence not offered for the truth; evidence offered for declarant's state of mind (FRE 803(3)) |
| 27. Defendants' entire theory of harm is that the alleged conduct prevented them from successfully recruiting more Herbalife distributors into Melaleuca. Defendants stated in their interrogatory responses: [Defendants'] believe that many | 27. Disputed as to "entire theory of harm." Herbalife Evidence: Gates Decl. Ex. Z (Defendant's Responses to Plaintiff's Second Set of Special Interrogatories No. 17). Opposing Evidence: K. Orr Decl., ¶¶ 2-19; J. Orr Decl., ¶¶ 2-19; R. |

15

Herbalife distributors would have joined them at Melaleuca if Herbalife did not commit its acts of unfair competition and false advertising. These persons include: (1) distributors who were in [Defendants'] former Herbalife organization; (2) Herbalife distributors who [Defendants] met at Herbalife trainings, events, and otherwise in the course of networking; (3) Herbalife Distributors and customers who [Defendants] became aware of in the course of their Herbalife distributorship; and (4) members of the sales organization of former Herbalife distributors who have been recruited by [Defendants] to Melaleuca.

Ford Decl., ¶¶ 2-18; B. Roth Dec1., ¶¶ 2-18; D. Thompson Decl., ¶¶ 2-16; J. Fisher Dec1., ¶¶ 2-18.

**Objections to Counterclaimants' Evidence -** Lacks Foundation (FRE 602): J. Fisher Decl., ¶ 12, B. Roth Decl., ¶ 12; J. Orr Decl., ¶ 12, K Orr Decl., ¶ 12, R. Ford Decl., ¶ 12; Speculation (FRE 701): J. Fisher Decl., ¶¶ 8, 11 & 12, B. Roth Decl., 8, 10 & 12, D. Thompson Decl., ¶¶ 8, 11, J. Orr Decl., ¶¶ 8, 11 & 12, K. Orr Decl., ¶¶ 8, 11 & 12, R. Ford Decl., ¶¶ 8, 10 & 12; Legal Conclusion (FRE 103(c)): J. Fisher Decl., ¶¶ 8 10, 12, 14 & 15, B. Roth Decl., ¶¶ 8, 11, 12, 14 & 15, D. Thompson Decl., ¶¶ 8, 10 & 13, J. Orr Decl., ¶¶ 8, 10-12, 14 & 18, K. Orr Decl., ¶¶ 8, 10-12, 14 & 15, R. Ford Decl., ¶¶ 8, 10-12, 14 & 15; Hearsay (FRE 802): J. Fisher Decl., 13, 14, B. Roth Decl., ¶¶ 13, 14, D. Thompson Decl., ¶ 12, J. Orr Decl., ¶¶ 13, 18 & 19, K. Orr Decl., ¶¶ 13, 14 & 19, R. Ford Decl., ¶¶ 13, 14

16

28.  Defendants calculate their "lost income" based on their inability to successfully recruit Herbalife distributors.

28.  Disputed.

Herbalife's Evidence: Gates Decl. Ex. Z (Defendant's Responses to Plaintiff s Second Set of Special Interrogatories No. 17).

Opposing Evidence: K. Orr Decl., ¶¶ 2-19; J. Orr Decl., ¶¶ 2-19; R. Ford Decl., ¶¶ 2-18; B. Roth Decl., ¶¶ 2-18; D. Thompson Decl., ¶¶ 2-16; J. Fisher Decl., ¶¶ 2-18.

**Objections to Counterclaimants' Evidence -** <u>Lacks Foundation</u> (FRE 602): J. Fisher Decl., ¶ 12, B. Roth Decl., ¶ 12; J. Orr Decl., ¶ 12, K Orr Decl., ¶ 12, R. Ford Decl., ¶ 12; <u>Speculation</u> (FRE 701): J. Fisher Decl., ¶¶ 8, 11 & 12, B. Roth Decl., 8, 10 & 12, D. Thompson Decl., ¶¶ 8, 11, J. Orr Decl., ¶¶ 8, 11 & 12, K. Orr Decl., ¶¶ 8, 11 & 12, R. Ford Decl., ¶¶ 8, 10 & 12; <u>Legal Conclusion</u> (FRE 103(c)): J. Fisher Decl., ¶¶ 8 10, 12, 14 & 15, B. Roth Decl., ¶¶ 8, 11, 12, 14 & 15, D. Thompson Decl., ¶¶ 8, 10 & 13, J. Orr Decl., ¶¶ 8, 10-12, 14 & 18, K.

17

Orr Decl., ¶¶ 8, 10-12, 14 & 15, R.
Ford Decl., ¶¶ 8, 10-12, 14 & 15;
<u>Hearsay</u> (FRE 802): J. Fisher Decl.,
13, 14, B. Roth Decl., ¶¶ 13, 14, D.
Thompson Decl., ¶ 12, J. Orr Decl.,
¶¶ 13, 18 & 19, K. Orr Decl., ¶¶ 13,
14 & 19, R. Ford Decl., ¶¶ 13, 14

29. When pressed in deposition,
Defendants could only identify
two actions that supposedly
caused them harm: (1) Herbalife's
filing this lawsuit and (2) the two
Herbalife communications to its
distributors describing
Defendants' conduct and
informing them of remedial steps
taken by Herbalife.

29. Disputed.

Herbalife's Evidence: Gates Decl.
Ex. F (Kathy Orr Dep. Tr. 215:17-
24, 225:20-25); Ex. L (Fisher Dep.
Tr. 114:13-115:11).

Opposing Evidence: K. Orr Depo.
215:20-216:3; 218:3-219:3; 274:15-
276:17; 302:19-303:8 (Stephens
Decl., Ex. "H," pp.72-77, 79-80); K.
Orr Decl., ¶¶ 2-19; J. Orr Decl.,
¶¶ 2-19; R. Ford Decl., ¶¶ 2-18; B.
Roth Decl., ¶¶ 2-18; D. Thompson
Decl., ¶¶ 2-16; J. Fisher Decl., ¶¶ 2-
18.

**Objections to Counterclaimants'
Evidence -** <u>Lacks Foundation</u> (FRE
602): J. Fisher Decl., ¶ 12, B. Roth
Decl., ¶ 12; J. Orr Decl., ¶ 12, K Orr
Decl., ¶ 12, R. Ford Decl., ¶ 12;

la-1030052

Speculation (FRE 701): J. Fisher Decl., ¶¶ 8, 11 & 12, B. Roth Decl., 8, 10 & 12, D. Thompson Decl., ¶¶ 8, 11, J. Orr Decl., ¶¶ 8, 11 & 12, K. Orr Decl., ¶¶ 8, 11 & 12, R. Ford Decl., ¶¶ 8, 10 & 12; Legal Conclusion (FRE 103(c)): J. Fisher Decl., ¶¶ 8 10, 12, 14 & 15, B. Roth Decl., ¶¶ 8, 11, 12, 14 & 15, D. Thompson Decl., ¶¶ 8, 10 & 13, J. Orr Decl., ¶¶ 8, 10-12, 14 & 18, K. Orr Decl., ¶¶ 8, 10-12, 14 & 15, R. Ford Decl., ¶¶ 8, 10-12, 14 & 15; Hearsay (FRE 802): J. Fisher Decl., 13, 14, B. Roth Decl., ¶¶ 13, 14, D. Thompson Decl., ¶ 12, J. Orr Decl., ¶¶ 13, 18 & 19, K. Orr Decl., ¶¶ 13, 14 & 19, R. Ford Decl., ¶¶ 13, 14

30.    Kathy Orr testified that her drop in income at Melaleuca was because "Herbalife slapped a lawsuit on us." When asked if there was any other reason, she testified: "It was totally the lawsuit that changed our income."

30.    Disputed.
Herbalife Evidence: Gates Decl. Ex. F (Kathy Orr Dep. Tr. 215:17-24, 225:20-25).
Opposing Evidence: K. Orr Depo 218:3-18 (Stephens Decl., Ex. "H," pp. 74).

31.    Jason Fisher testified that the

31.    Gates Decl. Ex. L (Fisher Dep. Tr.

la-1030052

drop in his Melaleuca income was caused by "the letter that [Herbalife] e-mailed out to the entire TAB team announcing our lawsuit and scaring anybody that I have ever became associated with in my life not to join me."

114:13-115:11).

32.   Dianna Thompson testified that her success at Melaleuca was limited because she stopped contacting certain Herbalife distributors "once I saw those letters, I pretty much thought, well, they are not going to believe in us right now. They're going to be too scared. They're going to be afraid they're going to get sued too. That's what I thought about it because that's what that letter said. Everybody is going to get sued if they go into Melaleuca."

32.   Disputed. Herbalife's Evidence: Gates Decl. Ex. K (Thompson Dep. Tr. 204:8-205:1).
Opposing Evidence: D. Thompson Depo. 204:3-205:1, 214:12-215:3 (Stephens Decl., Ex. "I," pp. 85-88.)

33.   When asked what "problems" he had recruiting Herbalife distributors, Bruce Roth testified, "Again, it's based on assumptions. Most of my work

33.   Gates Decl. Ex. H (Bruce Roth Dep. Tr. 199:20-200:7).

la-1030052

has been over the phone. So, it's based on the assumption that they talk to their sponsor, their sponsor shared about this letter or e-mailed these letters from Michael Johnson to them."

34.   Asked how Herbalife's conduct harmed her, Nancy Roth testified, "When Michael Johnson issued the letter to the distributors that we had left and that a lawsuit had been filed, that had prevented others from joining - others from joining Melaleuca when we talked to them. So we were monetarily harmed because we could not - they could not sign up as Melaleuca executives for fear of a lawsuit."

34.   Gates Decl. Ex. G (Nancy Roth Dep. Tr. 20:2-16).

35.   Asked why more Herbalife distributors didn't join him at Melaleuca, Robert Ford claimed that "someone" told him that "they were afraid to go to Melaleuca for fear of being sued."

35.   Gates Decl. Ex. J (Robert Ford Dep. Tr. 192:7-17).

36.   Julia Ford insisted that but for

36.   Gates Decl. Ex. BB (Defendant's

la-1030052

|  |  |  |  |
|---|---|---|---|

Herbalife's conduct, she and her husband had a "good probability" of "free[ing] up" Herbalife distributors - such as Richard and Sonja Palmer, Potato Richardson, and Paul Michaels - to join Melaleuca.

Responses to Plaintiffs Second Set of Interrogatories No. 5), Ex. R (Julia Ford Dep. Tr. 174:21-175:20).

37.   The Fords solicited the Palmers to join Melaleuca in the Fall of 2006 (before the Herbalife communications), threatening to recruit away the Palmers' downline if they did not do so. The Palmers nonetheless chose to stay with Herbalife (an "easy" decision) "because [they] had had (and continue to have) such a positive and successful relationship with Herbalife." No conduct on the part of Herbalife discouraged them from leaving.

37.   Disputed as to "threatening to recruit away the Palmers' downline" and Palmers had a "positive and successful relationship" with Herbalife.
Herbalife's Evidence: Palmer Decl. ¶¶ 2-8.
Opposing Evidence: R. Ford Decl., ¶¶ 22-32.

**Objections to Counterclaimants' Evidence –**

Hearsay (FRE 802): R. Ford Decl. ¶¶ 22-24, 26, 29-31;  Speculation (FRE 701): R. Ford Decl. ¶ 24

38.   In the Fall of 2006, Potato Richardson rejected "completely" Robert Ford's proposal he join Melaleuca and "scolded [Mr.

38.   Disputed. Herbalife's Evidence: Richardson Decl. ¶¶ 1-5
Opposing Evidence: R. Ford Decl. ¶¶ 33-35.

22

la-1030052

Ford] for even trying." The proposal did not interest Mr. Richardson "in the slightest" because he believes strongly in Herbalife's products, has had a wonderful experience with Herbalife, and has been very successful with his Herbalife distributorship. The notion that some actions by Herbalife discouraged him from joining Melaleuca "is a complete fabrication."

| 39. | Defendants testified that they were very successful in Melaleuca - "rocking and rolling and moving up Melaleuca and gaining tons of bonuses above and beyond our residual income" until Herbalife filed its lawsuit and issued its communications. | 39. | Gates Decl. Ex. F (Kathy Orr Dep. Tr. 216:7-24); Ex. E (Jeff Orr Dep. Tr. 240:21-241:16); Ex. H (Bruce Roth Dep. Tr. 198:14-199:8); Ex. G (Nancy Roth Dep. Tr. 78:1-80:24); Ex. R (Julia Ford Dep. Tr. 186:3-187:19); Ex. L (Jason Fisher Dep. Tr. 114:1-115:20). |
| 40. | Robert Ford testified: Q. "[D]id any [Herbalife distributor] tell you that they would not leave Herbalife to go to Melaleuca because of Rule 8-A or because they would be prohibited from | 40. | Gates Decl. Ex. J (Robert Ford Dep. Tr. 192:7-12). |

la-1030052

soliciting their down-line?" A.
"No."

41.     Kathy Orr testified: Q. "I want          41.     Gates Decl. Ex. F (Kathy Orr Dep.
        you to list for me every person                  Tr. 278:24).
        that you contend would have
        joined Melaleuca it hadn't been
        for some wrongful act by
        Herbalife." A. "The thing is Jeff
        and I didn't make very many
        calls. So until we call these
        people, we don't know if they
        will enroll into Melaleuca or not,
        but because of that letter and
        because of Rule 8A and number
        four on the application, of my
        application, they wouldn't come
        over. So I can't say unless I talk
        to them."

42.     Jason Fisher testified, Q. "Were          42.     Gates Decl. Ex. L (Fisher Dep. Tr.
        there any [Herbalife distributors]                206:7-13).
        ... that said to you, I'm not going
        to do it, and by that I mean come
        over to Melaleuca, because I'm
        afraid of what might happen to
        me?" A. "That, I do not
        remember."

43.     Dianna Thompson testified: Q.            43.     Gates Decl. Ex. K (Thompson Dep.

la-1030052

"Is there anyone that you can identify that you believe you would have converted over to Melaleuca if not for [the first email to Herbalife distributors], if Herbalife hadn't sent that out?" A. "I can't identify any names ..."

Tr. 187:21-188:2).

44.   Nancy Roth testified: Q. "[I]s there any reason that you are aware of, other than perhaps the letters you just mentioned, why the enrollment rate declined or the enrollment number declined?" A. "Those letters contributed for the February and March, and the Michael Johnson letter contributed to the subsequent months after that." Q. "Okay. But is there any other reason you are aware of why the number went down?" A. "No."

44.   Gates Decl. Ex. G (Nancy Roth Dep. Tr. 157:5-14).

45.   Over the course of their distributorships, Defendants each obtained from Herbalife between $200,000 to over $2,000,000.

45.   Declaration of Jennifer Hienrich in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment ¶¶ 3-6, Ex. A.

la-1030052

| | | | |
|---|---|---|---|
| 46. | Defendants' deposition testimony and interrogatory responses show that they cannot restore these monies to Herbalife. | 46. | Disputed Based On Evidentiary Objection.<br>Herbalife's Evidence: Gates Decl. Ex. E (Jeff Orr Dep. Tr. 179:13-21, 203:3-8); Ex. F (Kathy Orr Dep. Tr. 227:7-11); Ex. K (Thompson Dep. Tr. 71:10-18).<br>Objection: Gates Decl. Ex. E (Jeff Orr Dep. Tr. 179:13-21, 203:3-8); Ex. F (Kathy Orr Dep. Tr. 227:7-11); Ex. K (Thompson Dep. Tr. 71:10-18): Relevance as to all defendants. Also all are irrelevant as to Fords, Roths, and Fisher.<br>Objection: Incomplete because no interrogatory responses are referenced.<br><br>**Counterclaimants' Objection Disputed:** *See* Defendants' Additional Material Fact No. 58 |
| 47. | Jason Fisher, Robert Ford, Jeff Orr and Kathy Orr knew the facts underlying their endless chain scheme claim long before the four-year statute of limitations period. | 47. | Disputed.<br>Herbalife's Evidence: Gates Decl. Ex. E (Jeff On. 224:15-225:22); Ex. F (Kathy Orr Dep. Tr. 287:17-290:15); Ex. L (Fisher Dep. Tr. 53:3-25, 98:19-100:5, 187:22- |

la-1030052

| | | | |
|---|---|---|---|
| | | | 190:18). |
| | | | Opposing Evidence: K. Orr Decl., ¶¶ 18-21; J. Orr Decl., ¶¶ 18-21; J. Fisher Decl., ¶¶ 17-19; J. Orr Depo. 223:13-25 (Stephens Decl., Ex. "J," p. 92). |
| 48. | Melaleuca requires its distributors, including Defendants, to abide by a one-year post-termination nonsolicitation provision "to protect the efforts of all Marketing Executives in building and maintaining their individual Marketing Organizations and Customer bases, and in order to protect Melaleuca's interest in the overall Customer base." | 48. | Gates Decl. Ex. AA (Melaleuca Rule 20). |

la-1030052

## RESPONSE TO DEFENDANTS' AND COUNTERCLAIMANTS'ADDITIONAL MATERIAL FACTS

49. As independent Herbalife distributors, Defendants had their own independent business and paid for their own rent, utilities, computer equipment, office supplies, customer and distributor leads, phone equipment and service, and office supplies.

49. K. Orr Decl., ¶ 2; J. Orr Decl., ¶ 2; J. Fisher Decl., ¶ 2 ; R. Ford Decl., ¶ 2; D. Thompson Decl., ¶ 2; B. Roth Decl., ¶ 2.

50. As independent distributors, Defendants were responsible for developing their distributor and customer base through their own effort and expense.

50. K. Orr Decl., ¶ 3; J. Orr Decl., ¶ 3; J. Fisher Decl., ¶ 3; R. Ford Decl. ¶ 3; D. Thompson Decl., ¶ 3; B. Roth Decl., ¶ 3.

51. As Herbalife independent distributors, Defendants' invested considerable time and considerable financial resources to develop business relationships with customers, prospective customers, and their Herbalife downline distributors.

51. **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence:

K. Orr Decl., ¶ 3; J. Orr Decl., ¶ 3; J.

la-1030052

Fisher Decl., ¶ 3; R. Ford Decl., ¶ 3;
D. Thompson Decl., ¶ 3; B. Roth
Decl., ¶ 3.

**Evidentiary Objection** – Irrelevant (FRE
401)

K. Orr Decl., ¶ 3; J. Orr Decl., ¶ 3; J.
Fisher Decl., ¶ 3; R. Ford Decl., ¶ 3;
D. Thompson Decl., ¶ 3; B. Roth
Decl., ¶ 3.

52. Defendants expended thousands of hours and thousands of dollars, locating, grooming, training, sponsoring, and recruiting their potential customers, actual customers, and "downline" independent distributors. Defendants networked and developed business relationships with persons who were in their independent sales organizations.

52. **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence

K. Orr Decl., ¶ 3; J. Orr Decl., ¶ 3; J.
Fisher Decl., ¶ 3; R. Ford Decl., ¶ 3;
D. Thompson Decl., ¶ 3; B. Roth
Decl. ¶3.

**Evidentiary Objection** – Irrelevant (FRE
401)

K. Orr Decl., ¶ 3; J. Orr Decl., ¶ 3; J.
Fisher Decl., ¶ 3; R. Ford Decl., ¶ 3;

la-1030052

D. Thompson Decl., ¶ 3; B. Roth
Decl. ¶3.

53.  Defendants personally kept track of their business associates, customers, prospects, people they networked with, and people in their independent sales organizations in their own computer databases spreadsheets, files, and Rolodex's, none of which were purchased from Herbalife. The contact information contained names, addresses, and phone numbers. Some defendants had over 1,000 such contacts.

53.  **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence

K. Orr Decl. ¶¶ 4-5; J. Orr Decl. ¶¶ 4-5; J. Fisher Decl. ¶¶ 4-5; R. Ford Decl., ¶¶ 4-5; D. Thompson Decl. ¶¶ 4-5; B. Roth Decl. ¶¶ 4-5.

**Evidentiary Objection** – Irrelevant (FRE 401)

K. Orr Decl. ¶¶ 4-5; J. Orr Decl. ¶¶ 4-5; J. Fisher Decl. ¶¶ 4-5; R. Ford Decl., ¶¶ 4-5; D. Thompson Decl. ¶¶ 4-5; B. Roth Decl. ¶¶ 4-5.

54.  Herbalife did not collect or gather defendants' business contact information.

54.  **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500, and to the extent that Counterclaimants'

30

business contacts were in their
lineage.

<u>Counterclaimants' Evidence</u>

K. Orr Decl., ¶ 5; J. Orr Decl., ¶ 5; J.
Fisher Decl., ¶ 5; R. Ford Decl. ¶ 5;
D. Thompson Decl., ¶ 5; B. Roth
Decl., ¶ 5.

**<u>Evidence Controverting The Fact</u>**

Public Declaration of Sean P. Gates
in Support of Herbalife International
of America, Inc.'s Opposition to
Defendants' and Counterclaimants'
Motion for Partial Summary
Judgment (Gates Decl. in Support of
Opposition), Ex. V ¶¶ 12-14, 16-21
(Miller Declaration)

**<u>Evidentiary Objection</u>** – <u>Irrelevant</u> (FRE
401)

K. Orr Decl., ¶ 5; J. Orr Decl., ¶ 5; J.
Fisher Decl., ¶ 5; R. Ford Decl. ¶ 5;
D. Thompson Decl., ¶ 5; B. Roth
Decl., ¶ 5.

| | | |
|---|---|---|
| 55. | Defendants were in an economic relationship with many of the people who are listed in their business contact information and had formed a bond with many of | 55. **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants |

the persons listed.

were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence:

K. Orr Dec1., ¶ 9; J. Orr Decl., ¶ 9; J. Fisher Decl., ¶ 9; R. Ford Decl. ¶ 9; D. Thompson Decl., ¶ 9; B. Roth Decl., ¶ 9

**Evidence Controverting the Fact:**

Gates Decl. in Support of Opposition, Ex. V ¶¶ 6-11 (Miller Declaration)

**Evidentiary Objection** – Irrelevant (FRE 401)

K. Orr Dec1., ¶ 9; J. Orr Decl., ¶ 9; J. Fisher Decl., ¶ 9; R. Ford Decl. ¶ 9; D. Thompson Decl., ¶ 9; B. Roth Decl., ¶ 9

56.   Many of the people listed in Defendants' business contact information bought products from Defendants or were a part of their independent sales organization downline and Defendants received income based on their purchases of

56.   **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500

Counterclaimants' Evidence:

K. Orr Dec1., ¶ 9; J. Orr Decl., ¶ 9; J. Fisher Decl., ¶ 9; R. Ford Decl. ¶ 9; D. Thompson Decl., ¶ 9; B.

32

la-1030052

products from Herbalife.

Roth Decl., ¶ 9

**Evidentiary Objection** – <u>Irrelevant</u> (FRE 401)

K. Orr Dec1., ¶ 9; J. Orr Decl., ¶ 9; J. Fisher Decl., ¶ 9; R. Ford Decl. ¶ 9; D. Thompson Decl., ¶ 9; B. Roth Decl., ¶ 9

57.   Typically, when Defendants recruited a person to join their downline, Defendants met with that person either on the phone or in person, shook their hand if possible, called and followed-up with that person, met with them many times, and developed a business relationship through countless hours of time.

57.   K. Orr Dec1., ¶ 9; J. Orr Decl., ¶ 9; J. Fisher Decl., ¶ 9; R. Ford Decl. ¶ 9; D. Thompson Decl., ¶ 9; B. Roth Decl., ¶ 9

58.   Defendants left Herbalife because they could no longer afford to operate their independent distributorships and it became far too difficult to operate a business under Herbalife's marketing plan.

58.   **Disputed** regarding the implication that it is difficult to make money in Herbalife.

<u>Counterclaimants' Evidence</u>

K. Orr Decl., ¶¶ 6-7; J. Orr Decl., ¶¶ 6-7; J. Fisher Decl., ¶ 7; R. Ford Decl. ¶ 6-7; D. Thompson Decl., ¶¶ 6-7; B. Roth Decl., ¶¶ 6-7.

**Evidence Controverting The Fact**

Gates Decl. in Support of

33

|  |  |  |
|---|---|---|
|  |  | Opposition, Ex. M (S. Gratziani Dep. Tr. 66:12-67:8) |
| 59. | Defendants began independent businesses with Melaleuca because Melaleuca's marketing plan is not based on purchasing 2,500 volume points to get a paycheck and Melaleuca sells products other than weight-loss and nutritional products. | 59.   K. Orr Decl., ¶ 7; J. Orr Decl., ¶ 7; J. Fisher Decl., ¶ 7; R. Ford Decl., ¶ 7; D. Thompson Decl., ¶ 7; B. Roth Decl., ¶ 7. |
| 60. | The Orrs were paid $111,983.75 by Melaleuca in 2007. In 2008, they were paid only $36,572.01 from Melaleuca, over $75,000 less than the year before. Currently, they are likely to make less than $40,000 this year. The Orrs attribute this loss to Herbalife's misconduct. | 60.   **Disputed on Evidentiary Grounds.** Counterclaimants' Evidence:  K. Orr Decl., ¶ 9; J. Orr Decl., ¶ 9. **Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)), Improper Lay Opinion (FRE 701):  K. Orr Decl., ¶ 9; J. Orr Decl., ¶ 9. |
| 61. | The Fords were paid $43,511.44 by Melaleuca in 2006. In 2007, the Fords were paid $200,120.74 by Melaleuca. In 2008, the Fords were paid only $112,320.70 from Melaleuca, over $87,000 less than the year before. The Fords attribute this loss to Herbalife's | 61.   **Disputed on Evidentiary Grounds.** Counterclaimants' Evidence:  R. Ford Decl. ¶ 8. **Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)), Improper Lay Opinion (FRE 701):  R. Ford Decl. ¶ 8. |

la-1030052

misconduct.

62.   In 2007, Jason Fisher was paid approximately $328,000 by Melaleuca. In 2008, Jason Fisher was paid approximately $167,000 from Melaleuca. Jason Fisher attributes this reduction to Herbalife's misconduct.

62.   **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

   J. Fisher Decl., ¶ 8.

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)), Improper Lay Opinion (FRE 701):

   J. Fisher Decl., ¶ 8.

63.   In 2007, Dianna Thompson was paid $6,900 by Melaleuca. In 2008, Diana Thompson was only paid $2,414 from Melaleuca. She attributes this reduction to Herbalife's misconduct.

63.   **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

   D. Thompson Decl., ¶ 8.

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)), Improper Lay Opinion (FRE 701):

   D. Thompson Decl., ¶ 8.

64.   In 2007, the Roths were paid $63,318 by Melaleuca. In 2008, the Roths were only paid $7,445 from Melaleuca. The Roths attribute this reduction to Herbalife's misconduct.

64.   **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

   B. Roth Decl., ¶ 8.

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)), Improper Lay Opinion (FRE 701):

   B. Roth Decl., ¶ 8.

65.   Defendants are certain that they would have been able to recruit

65.   **Disputed** to the extent that Counterclaimants seek to use these

la-1030052

to their Melaleuca businesses some of the persons listed in their business contact information with whom they had an ongoing economic business relationship, had Herbalife not interfered with their rights by enforcing its covenant not to compete provisions in its Agreement of Distributorship (paragraph 4) that prevented them from using their own business information, and enforced its broadly worded non-solicitation rule (Rule 8-A), among other things.

facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence

K. Orr Decl., ¶ 12; J. Orr Decl., ¶ 12; J. Fisher Decl., ¶ 11; R. Ford Decl., ¶ 10; D. Thompson Decl., ¶ 11; B. Roth Decl., ¶ 10. "Sales & Marketing Plan and Business Rules," p. 51 (Stephens Decl., Ex. "B," p. 14). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Greenberg Depo. 225:23-226:1 (Stephens Decl., Ex. "C," pp. 29-30)

**Evidence Controverting The Fact**

a. *Herbalife Did Not Enforce Covenant Not to Compete*: Gates Decl. in Support of Opposition, Ex. Q (B. Roth Dep. Tr. 79:3-22); Ex. R (P. Greenberg Dep. Tr. 104:3-16), Ex. D (N. Roth Dep. Tr. 19:3-9), Ex.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I (J. Ford Dep. Tr. 108:12-109:4, 109:16-21, 110:20-24); Ex. S (E. Klucken Dep. Tr. 125:8-16), Ex. N (D. Thompson Dep. Tr. 158:15-25).

b. *The Covenant Not to Compete Did Not Affect Defendants' Recruitment Efforts*: Gates Decl. in Support of Response to Defendants' and Counterclaimants' Statement of Genuine Issues in Opposition to Herbalife International of America, Inc.'s Motion for Partial Summary Judgment (Gates Decl.), Ex. E (N. Roth Dep. Tr. 20:23-21:19), Ex. F (J. Ford Dep. Tr. 110:25-11:12), Ex. H (J. Fisher Dep. Tr. 123:16-19, 204:19-206:13), Ex. G (R. Ford Dep. Tr. 192:1-193:6); Declaration of Sandy Gioiosa in Support of Plaintiff Herbalife International of America, Inc.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Gioiosa Decl.); Declaration of Paul Michaels in Support of Plaintiff Herbalife International of America, Inc.'s

37

la-1030052

Motion for Summary Judgment or,
in the Alternative, Partial Summary
Judgment (Michaels Decl.);
Declaration of Michael Katz in
Support of Plaintiff Herbalife
International of America, Inc.'s
Motion for Summary Judgment or,
in the Alternative, Partial Summary
Judgment (Katz Decl.); Declaration
of Trey Herron in Support of
Plaintiff Herbalife International of
America, Inc.'s Motion for
Summary Judgment or, in the
Alternative, Partial Summary
Judgment (Herron Decl.);
Declaration of Dr. Steven Komadina
in Support of Plaintiff Herbalife
International of America, Inc.'s
Motion for Summary Judgment or,
in the Alternative, Partial Summary
Judgment (Komadina Decl.)

**Evidentiary Objection** – <u>Speculation</u>
(FRE 701), <u>Lack of Foundation</u> (FRE
602), <u>Legal Conclusion</u> (FRE 103(c)):
K. Orr Decl., ¶ 12; J. Orr Decl.,
¶ 12; J. Fisher Decl., ¶ 11; R. Ford
Decl., ¶ 10; D. Thompson Decl.,

38

¶ 11; B. Roth Decl., ¶ 10.

66. Defendants are certain that they would have been able to recruit to their Melaleuca businesses some of the persons listed in their business contact information with whom they had an ongoing economic business relationship, had Herbalife not interfered with their rights by sending an email to all Herbalife distributors (and former distributors) known as the Tab Team claiming that the Melaleuca products that defendants were promoting were toxic, and that defendants were "misleading, blackmailing and misrepresenting Melaleuca incomes to Herbalife Distributors;" and that Herbalife had "record retail sales of $3 billion in 2006;" and that in 2006, Herbalife Supervisors were paid $2.2 billion in commissions, royalties and bonuses," among other things.

66. **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence

K. Orr Decl., ¶ 12; J. Orr Decl., ¶ 12; J. Fisher Decl., ¶ 11; R. Ford Decl. ¶ 10; D. Thompson Decl., ¶ 11; B. Roth Decl., ¶ 10.

**Evidence Controverting The Fact**

Gates Decl. in Support of Opposition, Ex. I (J. Ford Dep. Tr. 107:13-25), Ex. M (Schmaman Dep. Tr. 43:9-11, 103:6-105:3), Ex. S (Klucken Dep. Tr. 122:2-9), Ex. E (L. Nix Dep. Tr. 322:5-19, 323:8-11); Gioiosa Decl.; Michaels Decl.; Katz Decl.; Herron Decl.; Komadina Decl.

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE

39

602), Legal Conclusion (FRE 103(c)):

K. Orr Decl., ¶ 12; J. Orr Decl.,

¶ 12; J. Fisher Decl., ¶ 11; R. Ford

Decl. ¶ 10; D. Thompson Decl.,

¶ 11; B. Roth Decl., ¶ 10.

67.    Defendants are certain that they would have been able to recruit to their Melaleuca businesses some of the persons listed in their business contact information with whom they had an ongoing economic business relationship, had Herbalife not interfered with their rights by sending out an "Important Message" from Herbalife's CEO to Herbalife's President's Team members indicating that defendants were "competing unfairly with [Herbalife's] Independent Distributors," among other things.

67.    **Disputed** to the extent that Counterclaimants seek to use these facts to assert standing under Sections 17200 and 17500; also, on the grounds that Counterclaimants were only in an economic relationship with Herbalife and benefited from others' economic relationships with Herbalife.

Counterclaimants' Evidence

K. Orr Decl., ¶ 12; J. Orr Decl,, ¶ 12; J. Fisher Decl., ¶ 11; R. Ford Decl. ¶ 10; D. Thompson Decl,, ¶ 11; B. Roth Decl., ¶ 10.

**Evidence Controverting The Fact**

Gates Decl., Ex. I (L. Nix Dep. Tr. 328: 9-17), Ex. J (S. Gratziani Dep. Tr. 140:14-141:1), Ex. K (D. Schmaman Dep. Tr. 19:15-23); Gioiosa Decl.; Michaels Decl.; Katz Decl.; Herron Decl.; Komadina Decl.

40

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)):

    K. Orr Decl., 12; J. Orr Decl,, 12; J. Fisher Decl., ¶ 11; R. Ford Decl. ¶ 10; D. Thompson Decl,, ¶ 11; B. Roth Decl., ¶ 10.

68. The convent not to compete and the non-solicitation restraint (Rule 8-A), has disrupted defendants' economic relationship with their business contacts.

68. **Disputed.**

Counterclaimants' Evidence

    K. Orr Decl., T 13; J. Orr Decl., ¶ 13; J. Fisher Decl. ¶ 12; R. Ford Decl., ¶ 12; B. Roth Decl., ¶12.

**Evidence Controverting The Fact**

    a. *Herbalife Did Not Enforce Covenant Not to Compete*: Gates Decl. in Support of Opposition, Ex. Q (B. Roth Dep. Tr. 79:3-22); Ex. R (P. Greenberg Dep. Tr. 104:3-16), Ex. D (N. Roth Dep. Tr. 19:3-9), Ex. I (J. Ford Dep. Tr. 108:12-109:4, 109:16-21, 110:20-24); Ex. S (E. Klucken Dep. Tr. 125:8-16), Ex. N (D. Thompson Dep. Tr. 158:15-25).

    b. *The Covenant Not to Compete Did Not Affect Defendants' Recruitment Efforts*: Gates Decl., Ex. E (N. Roth Dep. Tr. 20:23-

41

21:19), Ex. F (J. Ford Dep. Tr. 110:25-11:12), Ex. H (J. Fisher Dep. Tr. 123:16-19, 204:19-206:13), Ex. G (R. Ford Dep. Tr. 192:1-193:6); Gioiosa Decl.; Michaels Decl.; Katz Decl.; Herron Decl.; Komadina Decl.

**Evidentiary Objection** – Speculation (FRE 701), Lack of Foundation (FRE 602), Legal Conclusion (FRE 103(c)): K. Orr Decl., ¶ 13; J. Orr Decl., ¶ 13; J. Fisher Decl. ¶ 12; R. Ford Decl., ¶ 12; B. Roth Decl., ¶12.

| | | |
|---|---|---|
| 69. | Herbalife represented to defendants that they owned their own business and were building their own sales organization. Herbalife states that distributors "own their own business" are "building their own sales organizations" and instructs distributors to "develop their downline organization." Herbalife also represents at its events that success is based on "the time and effort a distributor puts into his or her own business | 69. **Disputed on Evidentiary Grounds. Misleading,** Counterclaimants were building their own **Herbalife** businesses and sales organizations.<br><br>Counterclaimants' Evidence: K. Orr Decl., ¶ 14; J. Orr Decl., ¶ 14; J. Fisher Decl., ¶ 13; R. Ford Decl., ¶ 13; D. Thompson Decl, ¶ 12; B. Roth Decl. ¶ 13.<br><br>**Evidentiary Objection** – Hearsay (FRE 802): K. Orr Decl., ¶ 14; J. Orr Decl., ¶ 14; J. Fisher Decl., ¶ 13; R. Ford Decl., ¶ 13; D. Thompson Decl, |

la-1030052

and their downline organization." ¶ 12; B. Roth Decl. ¶ 13.

70. Defendants were never instructed by anyone (including Herbalife personnel) that Herbalife takes the position that their business information, contacts, network, customers, and past and current downline distributors become Herbalife's property and that they could not use their own business information when they left Herbalife.

70. **Disputed,** misstates Herbalife's position.

Counterclaimants' Evidence:

K. Orr Decl., ¶ 15; J. Orr Decl., ¶ 15; J. Fisher Decl. ¶ 14, R. Ford Decl. ¶ 14; D. Thompson Decl., ¶13; B. Roth Decl., ¶ 14.

**Evidence Controverting The Fact**

Gates Decl. in Support of Opposition, Ex. P (Counterclaimant's Signed Herbalife Distributorship Agreements), Ex. V ¶ 15, Ex. A; ¶ 17, Ex. B (Miller Declaration)

71. Herbalife charged admission to the Herbalife classes taught by defendants but Herbalife did not pay defendants any wages. Defendants were lead to believe that teaching the classes was networking and growing their independent distributorship businesses. Herbalife owes defendants wages for these classes.

71. **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

K. Orr Decl., ¶ 15; J. Fisher Decl., ¶ 14; R. Ford Decl., ¶ 14; B. Roth Decl. ¶ 14.

**Evidentiary Objection** – Hearsay (FRE 802), Legal Conclusion (FRE 103(c)), Lack of Foundation (FRE 602), Irrelevant (FRE 401):

K. Orr Decl., ¶ 15; J. Fisher Decl., ¶ 14; R. Ford Decl., ¶ 14; B. Roth Decl. ¶ 14.

43

la-1030052

72. Defendants believed that their independent Herbalife distributorship businesses, their customers, and their downline were their property and not the property of Herbalife.

72. **Disputed.**

Counterclaimants' Evidence:

K. Orr Decl., ¶ 16; J. Orr Decl., ¶ 16; J. Fisher Decl. ¶ 15; R. Ford Decl. ¶ 15; D. Thompson Decl., ¶ 13; B. Roth Decl., ¶ 15.

**Evidence Controverting The Fact**

Gates Decl. in Support of Opposition, Ex. P (Counterclaimant's Signed Herbalife Distributorship Agreements), Ex. V ¶ 15, Ex. A; ¶ 17, Ex. B (Miller Declaration)

**Evidentiary Objection** – Irrelevant (FRE 401), Speculation (FRE 701), Lack of Foundation (FRE 602):

K. Orr Decl., ¶ 16; J. Orr Decl., ¶ 16; J. Fisher Decl. ¶ 15; R. Ford Decl. ¶ 15; D. Thompson Decl., ¶ 13; B. Roth Decl., ¶ 15.

73. Defendants never knowingly transferred their business goodwill to Herbalife.

73. **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

K. Orr Decl., ¶ 16; J. Orr Decl., ¶ 16; J. Fisher Decl., ¶ 15; R. Ford Decl., ¶ 15; D. Thompson Decl., ¶13; B. Roth Decl., ¶ 15.

**Evidentiary Objection** – Irrelevant (FRE

la-1030052

401):

K. Orr Decl., ¶ 16; J. Orr Decl.,

¶ 16; J. Fisher Decl., ¶ 15; R. Ford

Decl., ¶ 15; D. Thompson Decl.,

¶13; B. Roth Decl., ¶ 15.

74. Through its misconduct, Herbalife has taken a significant portion of Defendants' business contacts and downline sales organization from Defendants without their consent and has prevented Defendants from contacting people whom they met and developed as business contacts through their own hard work.

74. **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

K. Orr Decl., ¶ 16; J. Orr Decl.,

¶ 16; J. Fisher Decl., ¶ 15; R. Ford

Decl., ¶ 15; D. Thompson Decl.,

¶13; B. Roth Decl., ¶ 15.

**Evidentiary Objection** – Argumentative

(FRE 611(a)), Foundation (FRE 602):

K. Orr Decl., ¶ 16; J. Orr Decl.,

¶ 16; J. Fisher Decl., ¶ 15; R. Ford

Decl., ¶ 15; D. Thompson Decl.,

¶13; B. Roth Decl., ¶ 15.

75. Defendants are entitled to restitution for the reasonable value of their business goodwill (their customers and downline sales organization) that Herbalife took from them.

75. K. Orr Decl., ¶ 16; J. Orr Decl.,

¶ 16; J. Fisher Decl., ¶ 15; R. Ford

Decl., ¶ 15; D. Thompson Decl.,

¶ 13; B. Roth Decl., ¶15.

76. Herbalife continues to do business with some of Defendants' customers and downlines and has not paid

76. **Disputed**, misleading, Herbalife is permitted continue to do business with Counterclaimants' former customers.

45

| | | |
|---|---|---|
| | Defendants for the profits made from such sales. | Counterclaimants' Evidence: K. Orr Decl., ¶ 16; J. Orr Decl., ¶ 16; J. Fisher Decl., ¶ 15; R. Ford Decl. ¶ 15; D. Thompson Decl., ¶ 13; B. Roth Decl., ¶ 15. |
| 77. | Defendants paid Herbalife to purchase products in order to obtain their paychecks from Herbalife. Defendants were stuck with thousands of dollars in products at the time they left Herbalife and Herbalife must pay restitution to Defendants for same. | 77.   **Disputed.** Counterclaimants' Evidence: K. Orr Decl., ¶ 17; J. Orr Decl., ¶ 17; J. Fisher Decl., ¶ 16; R. Ford Decl. ¶ 16; D. Thompson Decl., ¶ 14; B. Roth Decl., ¶ 16. **Evidence Controverting The Fact** Gates Decl. in Support of Opposition, Ex. B (Sales and Marketing Plan pp. 43-45 – citing to buyback policy; pp. 53, 62 – citing to Rules 9-D and 24-E). **Evidentiary Objection** – Legal Conclusion (103(c)), Lack of Foundation (FRE 602): K. Orr Decl., ¶ 17; J. Orr Decl., ¶ 17; J. Fisher Decl., ¶ 16; R. Ford Decl. ¶ 16; D. Thompson Decl., ¶ 14; B. Roth Decl., ¶ 16. |
| 78. | Defendants never blackmailed anybody about joining Melaleuca or made any false statements to | 78.   **Disputed.** Counterclaimants' Evidence: K. Orr Decl., ¶ 11; J. Orr Decl., |

46

la-1030052

anybody regarding Melaleuca's products, the safety of those products, or Melaleuca's business opportunity, including their Melaleuca income.

¶ 11; J. Fisher Decl., ¶ 10; R. Ford Decl., ¶ 11; D. Thompson Decl., ¶ 10; B. Roth Decl., ¶11.

**Evidence Controverting The Fact**

Gates Decl. in Support of Opposition, Ex. EE ¶ 4, Ex. F (Greenberg Declaration), Ex. CC ¶¶ 4-6 (Palmer Declaration), Ex. BB ¶ 5 (Schmaman Declaration), Ex. DD ¶ 11 (Nix Declaration), Ex. FF ¶ 12 (Declaration of Elizabeth Klucken in Support of Herbalife's Motion for Preliminary Injunction (Klucken Declaration)), Ex. L (Schmaman Dep. Tr. 83:2-90:1)

79.   Herbalife wrongly withheld approximately $10,000 from the Roths that is money due to the Roths for commissions and royalties earned.

79.   **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

B. Roth Decl., ¶ 16.

**Evidentiary Objection** – Legal Conclusion (103(c)), Lack of Foundation (FRE 602), Irrelevant (FRE 401):

B. Roth Decl., ¶ 16.

80.   Herbalife failed to pay Jason Fisher approximately $1,000 for royalties and bonuses that Jason Fisher earned prior to leaving Herbalife.

80.   **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

J. Fisher Decl., ¶ 16.

**Evidentiary Objection** – Legal Conclusion (103(c)), Lack of Foundation

47

|  |  |  |  |
|---|---|---|---|
|  |  | (FRE 602), <u>Irrelevant</u> (FRE 401): J. Fisher Decl., ¶ 16. |
| 81. | Dianna Thompson lost money when she was charged for Herbalife product that was returned by her downline distributors. | 81. | D. Thompson Decl., ¶ 14 |
| 82. | Defendants were never trained on Herbalife's rules and never observed any training on Herbalife's rules at any time when they were distributors at Herbalife. Defendants were never trained on the meaning of Herbalife's Agreement of Distributorship and those agreements are signed many times in an exciting party-like atmosphere during Herbalife events. | 82. | K. Orr Decl., ¶ 18; J. Orr Decl., ¶ 18; J. Fisher Decl., ¶ 17; R. Ford Decl., ¶ 17; D. Thompson Decl., ¶ 15; B. Roth Decl., ¶ 17. |
| 83. | The February 6, 2007 Email advised distributors to use the statements contained in the email in the distributors' "pitch books." | 83. | February 6, 2007 Email from Herbalife's Tom Zimmer to TAB Team Members (Stephens Decl., Ex. "K," p. 98). |
| 84. | On April 20, 2007, Herbalife sent out an email containing an | 84. | April 20, 2007 Email from Herbalife (Stephens Decl., Ex. "L," p. 106). |

"Important Message" from its CEO, Michael O. Johnson. In the email, which was sent to all of Herbalife's President's Team members, Herbalife claimed that Defendants were "competing unfairly with our Independent Distributors."

85. Michael O. Johnson, Herbalife's CEO, testified that he knew "very little" about Melaleuca's products or business opportunity.

85. Deposition of Michael O. Johnson ["Johnson Depo."] 45:23-25, 46:7-9. (Stephens Decl., Ex. "G," p. 65-66).

86. Stephan Gratziani, an Herbalife distributor, testified that he believes he is bound by a non-compete.

86. Deposition of Stephan Gratziani ["Gratziani Depo."] 89:20-90:1 (Stephens Decl., Ex. "M," p. 108-109).

87. Paul Greenberg refused to answer questions about his state of mind.

87. **Disputed.**

Counterclaimants' Evidence:

Deposition of Paul Greenberg ["Greenberg Depo."] 7:20-8:10, 17:2-18:7 (Stephens Decl., Ex. "C," p. 17-20).

**Evidence Controverting the Fact:**

Gates Decl., Ex. A (P. Greenberg Dep. Tr. 7:20-10:18)

**Evidentiary Objection** – Misstates Testimony (FRE 103(c)):

la-1030052

Deposition of Paul Greenberg
["Greenberg Depo."] 7:20-8:10,
17:2-18:7 (Stephens Decl., Ex. "C,"
p. 17-20).

88. The only information that Paul Greenberg could recall about Melaleuca's products was from some unknown journal that he found using Google that "had something to do with Melaleuca oil ... causing the - the growth of breasts in . . . prepubescent boys, when applied topically."

88. **Disputed.**

Counterclaimants' Evidence:
Greenberg Depo. 154:19-155:17
(Stephens Decl., Ex. "C," p. 25-26).

**Evidence Controverting the Fact:**
Gates Decl. in Support of
Opposition, Ex. EE ¶ 13, Ex. G-P
(Greenberg Declaration)

89. Herbalife's CEO, Michael O. Johnson, has made public statements that Herbalife is not a pyramid scheme because, among other things, Herbalife has a lot of discount buyers just like Costco.

89. May 20, 2007 Mad Money
Appearance by Michael O. Johnson
(Stephens Decl., Ex. "N").

90. During oral arguments before the Ninth Circuit, Judge Smith remarked that Rule 8-A "looks remarkably like a covenant not to compete."

90. **Disputed** in that Defendants'
Additional Material Fact is not a
"material" fact in the sense
contemplated by FRCP Rule 56.

Counterclaimants' Evidence:
Transcript of the Appeal from the
United States District Court for the

50

Central District of California, argued and submitted on July 15, 2008 at 23:23-24 (Stephens Decl., Ex. "O," p. 114).

91. Herbalife's Rule 8-F provides that Herbalife's independent distributors are not employees of Herbalife.

91. "Sales & Marketing Plan and Business Rules," p. 51-52 (Stephens Decl., Ex. "B," p. 14-15). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Deposition of Paul Greenberg ["Greenberg Depo."]) 225:23-226:1 (Stephens Decl., Ex. "C," pp. 29-30).

92. Jackie Miller testified as follows: "Let me give you this hypothetical. Let's say that I leave Herbalife, and I'm aware of a lot of Herbalife distributors. I just know them. I've met them over the years many, many times. Okay? I know a lot of them. And I take all the information that I've ever received from Herbalife, and I take it to a trash dump and I burn it. Right? And then I take a phone book; right? And I go on the Internet, and I recreate all the

92. Miller Depo. 58:3-14 (Stephens Decl., Ex. "D," at 41).

la-1030052

contact information of those people that I was aware of, and I go and I call on 100 of them. I bring them all over to Melaleuca. Did I violate Rule 8-A; yes or no? A Yes."

93.   Jackie Miller also testified as follows: "Q And based on your understanding of Rule 8-A, if a former Herbalife distributor solicited an Herbalife distributor of which they were aware, while the former Herbalife distributor was an Herbalife distributor, and they did not use any confidential information to do so, would they be in violation of Rule 8-A? A Yes.

93.   Miller Depo. 57:9-15 (Stephens Decl., Ex. "D," at 40).

94.   Paragraph 4 of the Distributorship Agreement prohibits the use of any "business information" acquired by the distributorship.

94.   **Disputed**, incomplete citation of the rule. Complete citation is as follows: "For a period of three (3) years after the termination of this agreement Distributor will hold in confidence any trade secrets, formulas, sales and distribution systems, business information, and literature which Distributor acquired during the term

52

la-1030052

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of this agreement and will not use directly or indirectly such items. For such period Distributor also agrees not to enter or participate in a competing business or business activity."

Counterclaimants' Evidence

Herbalife Distributor Agreements (Stephens Decl., Ex. "P," pp. 117-122).

**Evidence Controverting the Fact**

Herbalife Distributor Agreements (Stephens Decl., Ex. "P," pp. 117-122).

95.  On February 6, 2007, Herbalife sent out a publication to thousands of its distributors that accused Counterclaimants of selling "toxic" Melaleuca products, and "misleading," "blackmailing," and "misrepresenting" Melaleuca incomes to Herbalife distributors.

95.  **Disputed**, evidence does not support assertion.

Counterclaimants' Evidence:

February 6, 2007 Email from Herbalife's Tom Zimmer to TAB Team Members (Stephens Decl., Ex. "K," pp. 97-100).

**Evidence Controverting The Fact:**

February 6, 2007 Email from Herbalife's Tom Zimmer to TAB Team Members (Stephens Decl., Ex. "K," pp. 97-100) – Email does not identify Dianna Thompson, Nancy

53

Roth, Bruce Roth, Jeff Orr, or Kathy Orr

96. Counterclaimants' counsel deposed eight Herbalife witnesses, including Herbalife's legal counsel and Herbalife's CEO.

96. **Disputed.** Defendants' Additional Material Fact is not a "material" fact in the sense contemplated by FRCP Rule 56. Further disputed on the grounds that Defendants imply they were unable to ask extensive questions regarding the reasons for Herbalife's lawsuit and its communications with its distributors.

Counterclaimants' Evidence:

Declaration of Cameron M. Jolly ["Jolly Decl."] ¶¶ 2, 5; Stephens Decl., ¶¶ 2, 5.

**Evidence Controverting the Fact:**

Gates Decl., Ex. B (J. Miller Dep. Tr. 9:10-14, 178:8-183:17, 190:2-191:15, 213:6-216:3), Ex. D (M. McKee Dep. Tr. 5:25-7:9, 37:21-38:5, 49:25-50:2, 159:12-160:12, 161:5-23, 162:23-163:1, 165:5-168:9, 196:25-200:20), Ex. C (M. Johnson Dep. Tr. 7:13-9:24, 103:9-19, 104:23-105:12, 136:13-137:16, 139:3-140:12, 140:20-143:2, 171:10-

173:5, 173:18-174:21), Ex. A (P. Greenberg Dep. Tr. 7:14-11:20, 13:19-14:15, 17:1-21:2, 22:25-23:25, 26:21-29:14, 30:21-32:1, 32:20-33:15, 34:11-35:21, 36:4-37:8, 38:3-9, 38:17-39:17, 99:14-100:2, 100:16-23, 101:25-103:4, 126:12-128:5, 165:19-167:4, 167:22-168:5)

97. During his deposition, Paul Greenberg testified as follows regarding Melaleuca: "They are a fraud."

97. **Disputed on Evidentiary Grounds.**
Counterclaimants' Evidence:
 Greenberg Depo. 146:11 (Stephens Decl., Ex. "C," pp. 21).

**Evidentiary Objection** – Irrelevant (FRE 401)
 Greenberg Depo. 146:11 (Stephens Decl., Ex. "C," pp. 21).

98. During his deposition, Paul Greenberg testified as follows regarding Melaleuca: "Melaleuca and its distributors are engaged in direct selling and multilevel marketing, despite their propaganda and misrepresentations to the contrary."

98. **Disputed on Evidentiary Grounds.**
Counterclaimants' Evidence:
 Greenberg Depo. 149:13-16 (Stephens Decl., Ex. "C," pp. 23).

**Evidentiary Objection** – Irrelevant (FRE 401)
 Greenberg Depo. 149:13-16 (Stephens Decl., Ex. "C," pp. 23).

99. During his deposition, Paul Greenberg testified as follows

99. **Disputed on Evidentiary Grounds.**
Counterclaimants' Evidence:

la-1030052

|   |   |   |
|---|---|---|
| 1 | | |

regarding Melaleuca: "I can make the conclusion that what they are doing is fraudulent okay -- and -- and we will -- and I wouldn't permit that."

Greenberg Depo. 156:7-10 (Stephens Decl., Ex. "C," pp. 27).

**Evidentiary Objection** – Irrelevant (FRE 401)

Greenberg Depo. 156:7-10 (Stephens Decl., Ex. "C," pp. 27).

100.   During his deposition, Paul Greenberg testified as follows regarding Melaleuca: "Melaleuca's private. They can keep all kinds of secrets and issue whatever misinformation they want."

100.  **Disputed on Evidentiary Grounds.**

Counterclaimants' Evidence:

Greenberg Depo. 159:9-12 (Stephens Decl., Ex. "C," pp. 28).

**Evidentiary Objection** – Irrelevant (FRE 401)

Greenberg Depo. 159:9-12 (Stephens Decl., Ex. "C," pp. 28).

56

la-1030052

**STATEMENT OF GENUINE ISSUES IN SUPPORT OF HERBALIFE'S OPPOSITION TO DEFENDANTS' AND COUNTERCLAIMANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

101.  Herbalife is a multi-level marketing company that sells nutritional supplements, vitamins, and skin care products.

101.  Undisputed.

102.  Herbalife publishes a chart showing its marketing plan that does not mention customers or retail sales.

102.  Disputed, in that the chart to which Counterclaimants refer is part of a booklet with extensive discussion of customers and retail sales.

Moving Party's Evidence

"Live the Good Life with Herbalife," p. 22 (Dyer Decl., ¶ 4, Ex. "C," p. 60). This "stair step" chart was authenticated by Miller. Miller Depo. 71:2-15 (Dyer Decl., Ex. "A," p. 26).

"Sales & Marketing Plan and Business Rules," p. 4 (Dyer Decl., ¶ 5, Ex. "D," p. 63). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Deposition of Paul Greenberg ["Greenberg Depo."]) 225:23-226:1 (Dyer Decl.,

57

la-1030052

Ex. "E," pp. 86-87.)

Evidence Controverting the Fact

Declaration of Sean Gates in Support of Herbalife International of America, Inc.'s Opposition to Defendants and Counterclaimants' Motions for Partial Summary Judgment (Gates Decl.) Ex. A ("Live the Good Life with Herbalife" – Dep. Ex. 5). This document was authenticated by J. Miller. J. Miller Dep. Tr. 70:23-71:4 (Gates Decl. Ex. O); Gates Decl. Ex. B (Sales and Marketing Plan – Dep. Ex. 30). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. P. Greenberg Dep. Tr. 225:15-226:1 (Gates Decl. Ex. R).

103. According to the Herbalife's Marketing Plan, royalties, bonuses and advancement at Herbalife are based exclusively on purchases from Herbalife.

103. Disputed.  Royalties, bonuses and advancement at Herbalife cannot be earned without actual and substantial retail sales.

Moving Party's Evidence

"Live the Good Life with Herbalife," p. 22 (Dyer Decl., Ex. "C," p. 60). "Sales & Marketing Plan and

la-1030052

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Business Rules," p. 4 (Dyer Decl., Ex. "D," p. 63).

Evidence Controverting the Fact

Gates Decl. Ex. B pp. 6, 7, 59, 62 (Sales & Marketing Plan – citing to Rules 20-C, 20-D, & 24-B), Ex. C (McKee Dep. Tr. 12:2-23, 17:11-25, 51:13-24, 104:21-105:9, 133:1-9, 190:2-21), Ex. C (N. Roth Dep. Tr. 94:16-21, 95:8-11), Ex. E (L. Nix Dep. Tr. 168:23-169:14, 237:23-238:12), Ex. F (J. Orr Dep. Tr. 23:16-24:12, 71:8-72:7, 81:21-82:10, 123:22-124:11), Ex. G (K. Orr Dep. Tr. 72:2-10), Ex. H (Johnson Dep. Tr. 80:25-81:23), Ex. I (J. Ford Dep. Tr. 30:9-12; 33:3-34:11; 34:25-35:21; 50:22-51:14; 79:15-80:4), Ex. I (J. Fisher Dep. Tr. 9:16-10:12; 39:24-40:3; 55:6-56:5), Ex. K (R. Ford Dep. Tr. 20:3-10; 46:3-7; 46:14-47:3), Ex. L (D. Schmaman Dep. Tr. 36:10-18; 53:2-12), Ex. M (S. Gratziani Dep. Tr. 40:1-20; 66:12-67:8; 96:1-9; 144:13-22), Ex. N (D. Thompson Dep. Tr. 26:15-27:21; 50:4-10); Confidential

la-1030052

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Declaration of Sean P. gates in Support of Opposition By Herbalife International of America, Inc. to Defendants' Motion for Partial Summary Judgment (Gates Confid. Decl.) Ex. F (Johnson Dep. Tr. 133:8-25); Declaration of Mike McKee in Support of Plaintiff Herbalife International of America, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment (McKee Declaration) ¶¶ 14, 15, 17, 18, 20-23; Declaration of Jennifer Hienrich in Support of Plaintiff Herbalife International of America, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment (Hienrich Declaration) ¶¶ 5, 7

104.   Herbalife does not keep records of retail sales.

104.   Undisputed that Herbalife cannot and does not keep records of actual retail sales by distributors.  Disputed in that (1) HL does calculate retail sales figures as that phrase is commonly used in sales reporting and (2) Herbalife does know the names of many of its retail customers which

la-1030052

include, among others, Herbalife distributors.

Moving Party's Evidence

Greenberg Depo. 117:3-5 (Dyer Decl., ¶ 6, Ex. "E," pp. 80).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp 42, 59 (Sales & Marketing Plan – citing to Rules 20-C & 20-D), Ex. H (Johnson Depo. 175:6-176:9, 188:2-9), Ex. F (J. Orr Dep. Tr. 31:20-32:4, 95:17-96:3), Ex. G (K. Orr Dep. Tr. 67:17-68:22), Ex. I (J. Ford Dep. Tr. 74:8-11), Ex. E (L. Nix Dep. Tr. 247:3-15)

105.   Herbalife's sales force is composed of independent contractors who start as "distributors."

105.   Undisputed.

106.   Distributors are not agents, employees, or legal representatives of Herbalife.

106.   Undisputed.

107.   Distributors have the right to buy products at a discount to use or resell and to recruit other distributors into the program.

107.   Undisputed.

108.   Distributors qualify to become a "supervisor by ordering from

108.   Disputed.  Supervisors qualify based total volume, as defined in the Sales

la-1030052

Herbalife a minimum amount of product, costing thousands of dollars, for either one month or two consecutive months.

and Marketing Plan.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 4 (Dyer Decl., Ex. "D," p. 63).

Evidence Controverting the Fact

McKee Decl. ¶ 13; Gates Decl. Ex. B, pp. 6-7, 9-10 (Sales & Marketing Plan and Business Rules)

109. Supervisors must meet certain order quotas each year to retain their supervisor status.

109. Disputed. Supervisors requalify based on total volume, as explained in the Sales and Marketing Plan.

Moving Party's Evidence

Miller Depo. 36:22-37:14, 38:13-39:8 (Dyer Decl., Ex. "A," pp. 15-18).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 10, 11 (Sales & Marketing Plan)

110. Supervisors are entitled to receive a "Royalty Override" on up to three generations of "downline" supervisors.

110. Disputed. As a Supervisor, with Fully Qualified or Qualifying Supervisors in your first three levels, you may qualify to receive Royalty Overrides if additional requirements are met. A Royalty Override is a "payment ranging from 1% to 5% made to Fully Qualified Supervisors

la-1030052

|  |  |  |
|---|---|---|
| | | on the Monthly Volume of their three levels of active downline Supervisors." |
| | | Moving Party's Evidence |
| | | Miller Depo. 73:3-20 (Dyer Decl., Ex. "A," p. 27). |
| | | "Sales & Marketing Plan and Business Rules," p. 11 (Dyer Decl., Ex. "D," p. 64). |
| | | Evidence Controverting the Fact |
| | | Gates Decl. Ex. B, pp. 11, 18 (Sales and Marketing Plan) |
| 111. | The Royalty Override gives the supervisor a 1% to 5% commission on orders placed by downline supervisors. | 111. Disputed. As a Supervisor, with Fully Qualified or Qualifying Supervisors in your first three levels, you may qualify to receive Royalty Overrides if additional requirements are met. A Royalty Override is a "payment ranging from 1% to 5% made to Fully Qualified Supervisors on the Monthly Volume of their three levels of active downline Supervisors." |
| | | Moving Party's Evidence |
| | | Miller Depo. 73:3-20 (Dyer Decl., Ex. "A," p. 27). |
| | | Evidence Controverting the Fact |

63

Gates Decl. Ex. B, pp. 11, 18 (Sales and Marketing Plan)

112.   Supervisors and those they recruit must continue to purchase a minimum amount of product each month from Herbalife to qualify the supervisor for the Royalty Override.

112.   Disputed.  Qualification for Royalty Overrides is based on total volume, as specified in the Sales & Marketing Plan.

Moving Party's Evidence

Miller Depo. 73:3-20 (Dyer Decl., Ex. "A," p. 27).

"Sales & Marketing Plan and Business Rules," p. 11 (Dyer Decl., Ex. "D," p. 64).

Evidence Controverting the Fact

Gates Decl. Ex. O (Miller Dep. Tr. 73:3-20), Ex. B, pp. 11, 18 (Sales & Marketing Plan and Business Rules)

113.   Herbalife supervisors receive the right to sell the products and earn royalties based on product orders made by the supervisor's recruits.

113.   Disputed, in that Herbalife supervisors have right to sell products without regard to orders placed by their supervisors, and have right to earn royalties if they meet the additional requirements (e.g., retail product sales).

Moving Party's Evidence

"Live the Good Life with Herbalife," pp. 21-22 (Dyer Decl., Ex. "C," pp. 59-60).

|  |  |  |
|---|---|---|
|  |  | Evidence Controverting the Fact |
|  |  | Gates Decl. Ex. B, pp. 9, 11 (Sales and Marketing Plan) |
| 114. | Advancement within Herbalife "is not based on retail. It's based on volume purchased from the company." | 114. Disputed, in that retails sales are required for advancement. |
|  |  | Moving Party's Evidence |
|  |  | Deposition of Mike McKee ["McKee Depo."]) 90:22-91:15 (Dyer Decl., If 7, Ex. "F," pp. 109-110). |
|  |  | Evidence Controverting the Fact |
|  |  | Cited evidence does not support assertion. |
|  |  | Deposition of Mike McKee ["McKee Depo."]) 90:22-91:15 (Dyer Decl., If 7, Ex. "F," pp. 109-110). |
|  |  | Gates Decl. Ex. B pp. 6, 7, 59, 62 (Sales & Marketing Plan – citing to Rules 20-C, 20-D, & 24-B), Ex. C (McKee Dep. Tr. 12:2-23, 17:11-25, 51:13-24, 104:21-105:9, 133:1-9, 190:2-21), Ex. D (N. Roth Dep. Tr. 94:16-21, 95:8-11), Ex. E (L. Nix Dep. Tr. 168:23-169:14, 237:23-238:12), Ex. F (J. Orr Dep. Tr. 23:16-24:12, 71:8-72:7, 81:21-82:10, 123:22-124:11), Ex. G (K. Orr Dep. Tr. 72:2-10), Ex. H (Johnson Dep. |

65

Tr. 80:25-81:23), Ex. I (J. Ford Dep. Tr. 30:9-12; 33:3-34:11; 34:25-35:21; 50:22-51:14; 79:15-80:4), Ex. J (J. Fisher Dep. Tr. 9:16-10:12; 39:24-40:3; 55:6-56:5), Ex. K (R. Ford Dep. Tr. 20:3-10; 46:3-7; 46:14-47:3), Ex. L (D. Schmaman Dep. Tr. 36:10-18; 53:2-12), Ex. M (S. Gratziani Dep. Tr. 40:1-20; 66:12-67:8; 96:1-9; 144:13-22), Ex. N (D. Thompson Dep. Tr. 26:15-27:21; 50:4-10); Gates Confid. Decl. Ex. F (Johnson Dep. Tr. 133:8-25); McKee Decl. ¶¶ 14, 15, 17, 18, 20-23; Hienrich Decl. ¶¶ 5, 7

115. Counterclaimants signed Herbalife's Distributor Agreement (the "Agreement").

115. Undisputed.

116. The Agreement contains a broad prohibition against post termination use of "information" and a blanket 3-year non-compete.

116. Disputed. Agreement incorporates a valid and enforceable prohibition on use of confidential information, and incorporates valid non-solicitation provision. Three year non-compete in version of Agreement defendants signed not enforced.

Moving Party's Evidence

Herbalife Distributor Agreements

66

la-1030052

(Dyer Decl., ¶8, Ex. "G," pp. 120-125).

Evidence Controverting the Fact

Gates Decl. Ex. P (Dep. Exs. 2, 15 & 16 - HL000001, HL000003, HL000005, HI000007, HL000008, HL000009, HL000012). Defendants' Distributorship Agreements were authenticated by J. Miller. Miller Dep. Tr. 49:6-50:8 (Gates Decl. Ex. O). A blank copy of the Distributorship Agreement and Jeff Orr's Tab Team Agreement were authenticated by Jeff Orr. J Orr Dep. Tr. 30:11-17, 65:3-20 (Gates Decl. Ex. F). Gates Decl. Ex. B, p. 51 (Sales & Marketing Plan – citing to Rule 8-A), Ex. Q (B. Roth Dep. Tr. 79:3-22), Ex. R (P. Greenberg Dep. Tr. 104:3-16), Ex. D (N. Roth Dep. Tr. 19:3-9), Ex. I (J. Ford Dep. Tr. 108:12-109:4; 109:16-21; 110:20-24), Ex. S (E. Klucken Dep. Tr. 125:8-16), Ex. N (D. Thompson Dep. Tr. 158:18-25)

117. Herbalife has not made any announcement to its independent

117. Undisputed, *see* Statement of Genuine Issue 16, *see also*

67

| | | |
|---|---|---|
| | distributors that the non-compete covenant was abandoned. | Additional Material Fact (AMF) 214. |
| 118. | Herbalife's in-house counsel maintains that the non-compete covenant is enforceable. | 118. Disputed, in that Mr. Greenberg does not "maintain" that it is enforceable, because Herbalife does not enforce it.  However, undisputed in that when asked whether he believed it was enforceable, Mr. Greenberg testified he thought it was. |

Moving Party's Evidence

> Greenberg Depo. 106:4-9 (Dyer Decl., Ex. "E," p. 79).

Evidence Controverting the Fact

> *See* Statement of Genuine Issue 16, 17; *see also* Additional Material Fact 214

| | | |
|---|---|---|
| 119. | Mike McKee, Herbalife's Vice President of Business Development (Sales) agrees that the non-compete covenant is enforceable. | 119  Disputed.  Mr. McKee did not express an opinion on the enforceability of any non-compete covenant.  Mr. McKee is not responsible for rules interpretation or enforcement; he refers all rules issues to compliance personnel. |

Moving Party's Evidence

> McKee Depo. 28:17-29:5 (Dyer Decl., Ex. "F," pp. 105-106).

Evidence Controverting the Fact

la-1030052

The evidence cited does not support the assertion.

McKee Depo. 28:17-29:5 (Dyer Decl., Ex. "F," pp. 105-106).

McKee Decl. ¶ 6

120.   McKee testified that the non-compete covenant prevents Counterclaimants from putting flyers on cars.

120.   Disputed.  Mr. McKee is not responsible for rule interpretation or enforcement, and did not testify as to the meaning of any Herbalife rule. He simply responded to a question from defendant's counsel asking his personal understanding based on the rule.

Moving Party's Evidence

McKee Depo. 35:16-36:6 (Dyer Decl., Ex. "F," pp. 107-108).

Evidence Controverting the Fact

McKee Depo. 35:16-36:6 (Dyer Decl., Ex. "F," pp. 107-108).

McKee Decl. ¶ 6

121.   McKee testified that the non-compete provision is "in full force and effect."

121.   Disputed.  Misstates testimony.  Mr. McKee is not responsible for rules interpretation or enforcement; he refers all rules issues to compliance personnel.

Moving Party's Evidence

McKee Depo. 35:16-36:6 (Dyer

la-1030052

Decl., Ex. "F," pp. 107-108).

Evidence Controverting the Fact

The evidence cited does not support the assertion.

McKee Depo. 35:16-36:6 (Dyer Decl., Ex. "F," pp. 107-108).

McKee Decl. ¶ 6

122. Jacqueline Miller, Herbalife's top rules official, stated that Herbalife distributors are "not allowed to participate in a competing business" for 3 years after termination.

122. Disputed.  Ms. Miller is not Herbalife's "top rule official."

Moving Party's Evidence

Miller Depo. 54:1-24 (Dyer Decl., Ex. "A," p. 20).

Evidence Controverting the Fact

The evidence cited does not support the assertion, in that Ms. Miller was simply asked to read a portion of a distributorship agreement.

Miller Dep. 54:1-24 (Dyer Decl., Ex. "A," p. 20)

Gates Decl. Ex. O (Miller Dep. Tr. 12:7-12, 14:2-15); Hienrich Decl. ¶¶ 1-4

123. Herbalife's Agreement also provides that distributors must follow Herbalife's rules, policies, and procedures.

123. Undisputed.

124. Herbalife enacted Rule 8-A, its

124. Undisputed to the extent that

70

restraint against post-termination solicitation, in September 2006- after Counterclaimants Robert and Julia Ford and Jason Fisher had resigned from Herbalife.

Herbalife does not contend that defendants Robert and Julia Ford and Jason Fisher were subject to Rule 8-A prior to their resignation. However, Herbalife does contend that those defendants induced others to violate Rule 8-A.

125.   Rule 8-A is a blanket non-solicitation restraint that does not reference the use of trade secrets.

125.   Disputed.  Rule 8-A is not a "blanket non-solicitation restraint" and it serves to protect trade secrets.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 51 (Dyer Decl., Ex. "D," p. 68).

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 51 (Sales & Marketing Plan), Ex. O (Miller Dep. Tr. 58:16-20), Dkt. No. 77, December 11, 2007 Minute Order, pp. 2, 4.

126.   Rule 8-A has the effect of continuously restraining former Herbalife distributors because it not only violates Rule 8-A to solicit Herbalife distributors for one year after termination, but also to sponsor others who do so.

126.   Disputed.  Cited evidence does not support assertion.  Also, Rule 8-A does not prevent solicitation of all Herbalife distributors, and does not "continuously restrain" former Herbalife distributors.

Moving Party's Evidence

Greenberg Depo. 220:22-221:20

(Dyer Decl., Ex. "E," pp. 84-85).

Evidence Controverting the Fact

Greenberg Depo. 220:22-221:20

(Dyer Decl., Ex. "E," pp. 84-85).

Gates Decl. Ex. B, p. 51 (Sales &

Marketing Plan – citing Rule 8A)

127. Counterclaimants terminated their distributorships with Herbalife and signed up with Melaleuca, Inc.

127. Disputed, in that defendant Dianna Thompson signed up with Melaleuca, after which, Herbalife terminated her distributorship.

Moving Party's Evidence

Complaint at ¶ 26, 29, 31-33.

Evidence Controverting the Fact

Dkt. No. 1, Herbalife's Complaint ¶¶ 26, 29, 31-33; Gates Decl. Ex. T (HL000611), Ex. N (Thompson Dep. Tr. 9:23-10:5; 144:14-17, 146:4-23)

128. After Ford and Fisher handed out business cards and put flyers on cars at a hotel during an Herbalife event, Herbalife responded with a publication stating that this conduct was unfair competition.

128. Disputed.

Moving Party's Evidence

February 6, 2007 Email from Herbalife's Tom Zimmer to TAB Team Members (Dyer Decl., ¶ 10, Ex. "I," pp. 126-129).

Evidence Controverting the Fact

The cited evidence does not support the assertion.

|   |   |   |
|---|---|---|
| | | February 6, 2007 Email from Herbalife's Tom Zimmer to TAB Team Members (Dyer Decl., ¶ 10, Ex. "I," pp. 126-129). |
| 129. | Herbalife's February 6, 2007 email contained a publication that claimed that, in 2006, Herbalife had over $3 billion in retail sales and paid $2.2 billion in commissions, royalties, and bonuses to its Supervisors. | 129. Undisputed. |
| 130. | On April 20, 2007, Herbalife's CEO sent an "important announcement" to its distributors identifying each of the Counterclaimants and stating that they have been sued for unfair competition. | 130. Disputed that e-mail went to all distributors.  Undisputed that e-mail stated that Herbalife sued defendants for unfair competition.<br><br>Moving Party's Evidence<br>April 20, 2007 Email From Michael Johnson (Dyer Decl., ¶ 11, Ex. "J," p. 131).<br><br>Evidence Controverting the Fact<br>April 20, 2007 Email From Michael Johnson (Dyer Decl., ¶ 11, Ex. "J," p. 131). |
| 131. | Per Herbalife Rule 8-J, California law governs "all aspects of a Distributor's | 131. Undisputed. |

73

la-1030052

relationship with Herbalife."

132. On June 15, 2007, pursuant to California Code of Civil Procedure § 2019.210, Herbalife identified its trade secrets as "Herbalife Linage [sic] Documents," "Herbalife Passcode," and "Herbalife Trade Name and Mark."

32. Undisputed.

133. In discovery, Counterclaimant and Defendant Jeff Orr asked Herbalife to produce its alleged trade secrets.

133. Disputed.  Discovery request sought all trade secrets that were misappropriated by defendants.

Moving Party's Evidence

Defendant and Counterclaimant Jeff Orr's First Set of Request [sic] for Production to Plaintiff and Counterclaimant Herbalife of America, Inc. (Dyer Decl., II 13, Ex. "L," p. 137).

Evidence Controverting the Fact

Defendant and Counterclaimant Jeff Orr's First Set of Request [sic] for Production to Plaintiff and Counterclaimant Herbalife of America, Inc. (Dyer Decl., II 13, Ex. "L," p. 137).

la-1030052

134. Herbalife did not produce its trade secrets.

134. Disputed. Herbalife has produced thousands of pages of trade secrets in this action (e.g., Royalty Override statements) of the type that defendants misappropriated.

Moving Party's Evidence

Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., ¶ 14, Ex. "M," p. 140).

Evidence Controverting the Fact

*See* Gates Decl. ¶ 48

135. In its response to Jeff Orr's request for production of the trade secrets that Herbalife alleged had been misappropriated, Herbalife stated: "Herbalife has no way to identify the particular trade secrets or documents reflecting those trade secrets Counterclaimants misappropriated and so has no responsive documents."

135. Disputed, in that assertion quotes only a portion of Herbalife's response. Herbalife also identified categories of trade secrets that were misappropriated and used.

Moving Party's Evidence

Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., Ex. "M," p. 140).

Evidence Controverting the Fact

Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., Ex. "M," p. 140).

75

la-1030052

136. The Ninth Circuit ruled that the portion of the preliminary injunction that prohibited the Counterclaimants from "Using or disclosing for business related purpose . . . contacts or business information acquired during [Counterclaimants] work with Herbalife" was "overbroad."

136. Undisputed.

137. The Ninth Circuit narrowed the preliminary injunction to "exempt from its coverage only customer contact or business information that the defendants developed of their own accord."

137. Undisputed.

138. During oral arguments before the Ninth Circuit, Judge Silverman stated that Rule 8-A, as incorporated into the preliminary injunction in this case, was a non-compete clause and struck him as "overbroad."

138. This is not a "material fact" in the sense contemplated by FRCP Rule 56.

139. Herbalife independent distributors own and operate their own businesses.

139. Undisputed.

140. Herbalife independent distributors invest their own time

140. Undisputed.

76

la-1030052

1

2

3

4          and resources in developing
           customers and recruiting other
5          distributors.

6    141.  Rule 8-A prevents former            141.  Disputed, in that the assertion quotes
           distributors from soliciting,             only a portion of Rule 8A and the
7          sponsoring, promoting or                  full text of Rule 8A contains
8          recruiting anyone that the former         additional limitations.

9          distributor "became aware of in     <u>Moving Party's Evidence</u>
           the course of their Herbalife             "Sales & Marketing Plan and
10         distributorship."                         Business Rules," p. 51 (Dyer Decl.,
11                                                    Ex. "D," p. 68).

12                                             <u>Evidence Controverting the Fact</u>
13                                                    Gates Decl. Ex. B, p. 51 (Sales &
14                                                    Marketing Plan – citing Rule 8-A)

15   142.  As such, Rule 8-A requires          142.  Disputed.
16         former Herbalife distributors to   <u>Moving Party's Evidence</u>
17         throw out their own phone books          Greenberg Depo. 178:13-179:2
           and forget about every                   (Dyer Decl., Ex. "E," pp. 81-82)
18
19         relationship that they made while  <u>Evidence Controverting the Fact</u>
           in Herbalife, including friends          Cited evidence not support the
20
           and family.                              assertion.
21
22                                                   Greenberg Depo. 178:13-179:2
                                                     (Dyer Decl., Ex. "E," pp. 81-82)
23
24                                                   Gates Decl. Ex. R (Greenberg Dep.
                                                     Tr. 177:19-178:9), Ex. B, p. 51
25
                                                     (Sales & Marketing Plan – citing
26
                                                     Rule 8-A)
27

28

la-1030052

143. Herbalife claims that the Counterclaimants violated their rules and regulations by putting flyers on cars in a parking lot.

143. Disputed.  Herbalife contends that entire course of conduct, including this conduct, violated Herbalife's rules.

Moving Party's Evidence

Greenberg Depo. 32:20-33:5 (Dyer Decl., Ex. "E," p. 72-73).

Evidence Controverting the Fact

Cited evidence does not support assertion.

Greenberg Depo. 32:20-33:5 (Dyer Decl., Ex. "E," p. 72-73).

Gates Decl. Ex. R (Greenberg Dep. Tr. 31:13-33:5, 109:11-24)

144. Herbalife also claims that a former distributor who asked his or her child to join him or her at a competing company would violate Herbalife's rules and regulations.

144. Disputed, in that Herbalife does not make any such claim in this litigation.

Moving Party's Evidence

Miller Depo. 171:23-172:12 (Dyer Decl., Ex. "A," pp. 36-37).

Evidence Controverting the Fact

Cited evidence does not support assertion, in that Ms. Miller was responding to a hypothetical presented by Defendants' counsel.

Miller Depo. 171:23-172:12 (Dyer Decl., Ex. "A," pp. 36-37).

la-1030052

145.  Miller claims that Herbalife distributors are required to refrain from competing for three years after their distributorship is over.

145.  Disputed. Herbalife has made no such claim.  Defendants have all conceded that Herbalife never asserted a violation of that clause.

Moving Party's Evidence

Miller Depo. 54:1-24, 56:6-20 (Dyer Decl., Ex. "A," pp. 20-21)

Evidence Controverting the Fact

Gates Decl. Ex. Q (B. Roth Dep. Tr. 79:3-22), Ex. R (P. Greenberg Dep. Tr. 104:3-16), Ex. D (N. Roth Dep. Tr. 19:3-9), Ex. I (J. Ford Dep. Tr. 108:12-109:4; 109:16-21; 110:20-24), Ex. S (E. Klucken Dep. Tr. 125:8-16), Ex. N (D. Thompson Dep. Tr. 158:18-25)

146.  Miller admitted that Rule 8-A is not tied to use of trade secrets or confidential information.

146.  Disputed.  The evidence cited does not support the assertion.  Rule 8-A serves to protect trade secrets.

Moving Party's Evidence

Miller Depo. 57:9-15 (Dyer Decl., Ex. "A," p. 22)

Evidence Controverting the Fact

The evidence cited does not support the assertion.  See Miller Depo. 57:9-15 (Dyer Decl., Ex. "A," p. 22)

Rule 8-A protects trade secrets:

la-1030052

|  |  |  |
|---|---|---|
|  |  | Gates Decl. Ex. U ¶¶ 12, 38 (Declaration of Jacqueline Miller in Support of Herbalife's Motion for Preliminary Injunction (Miller Declaration)); Ex. M (Gratziani Dep. Tr. 108:24-109:13); Dkt. No. 77, December 11, 2007 Minute Order, pp. 2 & 4 |
| 147. | Rule 8-A was enacted on September 1, 2006. | 147. Disputed. <u>Moving Party's Evidence</u> Herbalife Complaint Form (Dyer Decl., Ex. "H"). Greenberg Depo. 219:20-220:6 (Dyer Decl., Ex. "E," pp. 83-84). <u>Evidence Controverting the Fact</u> Cited evidence states that Rule 8-A applies to conduct after September 1, 2006, not that it was enacted September 1, 2006.  Herbalife Complaint Form (Dyer Decl., Ex. "H"). |
| 148. | Jason Fisher left Herbalife in January 2006. | 148. Undisputed. |
| 149. | Robert and Julie Ford resigned from Herbalife on September 1, 2006. | 149. Undisputed. |
| 150. | Herbalife has submitted different | 150. Disputed, to the extent that |

80

la-1030052

versions of the Confidential and Non-Disclosure Agreement ("CNDA") to which it contends Counterclaimants agreed.

defendants imply that Herbalife contends defendants agreed to different versions of the same agreement. They consented to two separate agreements: 1) the Bizworks Subscription Agreement containing a confidentiality provision, and 2) a separate Confidentiality and Nondisclosure Agreement.

Moving Party's Evidence

Versions of Herbalife's CNDA (Dyer Decl., ¶ 17, Ex. "P," pp. 149-159).

Evidence Controverting the Fact

Gates Decl. Ex. V ¶¶ 23 & 27 (Declaration of Jacqueline Miller in Further Support of Herbalife's Motion for Preliminary Injunction (Miller Declaration in Further Support))

151. Miller testified that she had no personal knowledge of the Defendants assent to the CNDA.

151. Disputed in that Miller has knowledge regarding the "click through" defendants must have done in order to obtain access to Herbalife confidential information, e.g., Bizworks. Undisputed that Miller has no personal knowledge regarding

la-1030052

the actual click through, however.

Moving Party's Evidence

Miller Depo. 200:15-207:1 (Dyer

Decl., Ex. "A," pp. 42-49).

Evidence Controverting the Fact

Gates Decl. Ex. U ¶¶ 13-15 (Miller

Declaration)

*See* AMF 143

152.  Herbalife contends that Counterclaimants violated the following additional Herbalife rules: 8-B, 8-D, 8-G, and 8-H.

152.  Disputed in that defendant Thompson violated these rules, and defendants Nancy and Bruce Roth violated at least Rule 8-G.

Moving Party's Evidence

Herbalife's Responses to Defendant

and Counterclaimant Bruce H.

Roth's First Set of Interrogatories

(Nos. 1-23) (Dyer Decl., If 18,

Ex. "Q," p.161).

Evidence Controverting the Fact

Gates Decl. Ex. N (Thompson Dep.

Tr. 144:14-17, 146:4-23), Ex. D (N.

Roth Dep. Tr. 125:2-126:12)

153.  Rule 8-B prohibits Herbalife distributors from promoting organizations other than Herbalife when training their organizations.

153.  Undisputed.

82

la-1030052

154.  Rule 8-B does not apply to former Herbalife distributors.

154.  Undisputed that Rule 8-B does not govern conduct occurring after distributor resigns from Herbalife.

Moving Party's Evidence

Miller Depo. 174:22-175:1 (Dyer Decl., Ex. "A," pp. 38-39).

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 51 (Sales & Marketing Plan – citing Rule 8-B)

155.  Rule 8-D, entitled "Comply with Laws," applies only to current Herbalife distributors.

155.  Undisputed that Rule 8-D does not govern conduct occurring after distributor resigns from Herbalife

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 51 (Dyer Decl., Ex. "D," p. 68.

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 51 (Sales & Marketing Plan – citing Rule 8-D)

156.  Rule 8-G prohibits providing "false and misleading" information, but applies only to current Herbalife distributors.

156.  Undisputed that Rule 8-G does not govern conduct occurring after distributor resigns from Herbalife

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 52 (Dyer Decl., Ex. "D," p. 69.)

Evidence Controverting the Fact

83

Gates Decl. Ex. B, p. 52 (Sales & Marketing Plan – citing Rule 8-G)

157.  Herbalife has not presented any evidence that Counterclaimants violated Rule 8-G.

157.  Disputed as to Dianna Thompson and Nancy and Bruce Roth.

Moving Party's Evidence

Miller Depo. 192:6-10 (Dyer Decl., Ex. "A," p. 40).

Evidence Controverting the Fact

Gates Decl. Ex. N (Thompson Dep. Tr. 144:14-17, 146:4-23), Ex. D (N. Roth Dep. Tr. 125:2-126:12)

158.  Rule 8-H relates to maintaining the reputation and image of Herbalife. It applies only to current Herbalife distributors.

158.  Undisputed.

159.  Herbalife's top rule official testified that she did not know why Counterclaimants have been accused of violating Rule 8-H.

159.  Dispute characterization of Ms. Miller as Herbalife's "top rule official."  Undisputed that she testified to that effect.

Moving Party's Evidence

Miller Depo. 192:11-193:14 (Dyer Decl., Ex. "A," p. 40-41).

Evidence Controverting the Fact

Gates Decl. Ex. O (Miller Dep. Tr. 12:7-12, 14:2-15, 192:23-193:6); Hienrich Decl. ¶¶ 1-4

160.  Herbalife has stated under oath

160.  Disputed. Defendants' assertion

la-1030052

| | |
|---|---|
| that it cannot produce its trade secrets. | misrepresents Herbalife's full response to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production. |
| | Moving Party's Evidence |
| | Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., Ex. "M," p. 140). |
| | Evidence Controverting the Fact |
| | Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., Ex. "M," p. 140). |
| 161. Herbalife has failed to produce the allegedly misappropriated trade secrets. | 161. Disputed. Defendants' assertion misrepresents Herbalife's full response to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production. |
| | Moving Party's Evidence |
| | Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First Set of Requests for Production (Dyer Decl., Ex. "M," p. 140). |
| | Evidence Controverting the Fact |
| | Herbalife's Responses to Defendant and Counterclaimant Jeff Orr's First |

85

Set of Requests for Production (Dyer Decl., Ex. "M," p. 140).

162. When Herbalife was asked to identify the Defendant's misrepresentations regarding Melaleuca's products being "safe and non-toxic," Herbalife could not identify a single statement made by Defendants.

162. Disputed.

Moving Party's Evidence

Herbalife's Responses to Defendant and Counterclaimant Robert E. Ford's First Set of Interrogatories (Nos. 1-18) (Dyer Decl., ¶ 19, Ex. "R," p. 165-166).

Evidence Controverting the Fact

Gates Decl. Ex. W (Herbalife's Responses to Defendant and Counterclaimant Robert E. Ford's First Set of Interrogatories (No. 8)), Ex. EE Declaration of Paul Greenberg in Support Herbalife International of America, Inc.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Greenberg Declaration), Ex. X (FORD0010701-FORD0010706).

163. Herbalife also could not set forth any admissible evidence to support its claim that Melaleuca's products are unsafe or toxic.

163. Disputed.

Moving Party's Evidence

Herbalife's Responses to Defendant and Counterclaimant Robert E. Ford's First Set of Interrogatories

la-1030052

(Nos. 1-18) (Dyer Decl., ¶ 19, Ex. "R," p. 165-166).

Evidence Controverting the Fact

Gates Decl. Ex. W (Herbalife's Responses to Defendant and Counterclaimant Robert E. Ford's First Set of Interrogatories (No. 9)); Declaration of Dr. Steve Henig in Support of Herbalife International of America, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment (Henig Declaration) ¶¶ 4, 5

164.  The sole fraud allegation in the Complaint is that Nancy Roth sent an email to Bob Bogard at Herbalife on January 30, 2007 requesting data on her downline distributors.

164.  Disputed, but moot: Herbalife voluntarily dismisses its fraud claim.

Moving Party's Evidence

Complaint at ¶ 125.

Evidence Controverting the Fact

Dkt. No. 1, Herbalife's Complaint ¶ 125

165.  All other fraud allegations have been dismissed.

165.  Undisputed

166.  Herbalife did not send Nancy Roth with her downline list in response to her January 30, 2007 e-mail.

166.  Undisputed.

167.  Herbalife denied Nancy Roth's

167.  Undisputed.

87

la-1030052

1

2

request for her downline

information.

3

4

5

6

168.  Omnitrition's principals included former Herbalife distributors.

168.  Undisputed that at least one principal of Omnitrition is a former Herbalife distributor. Disputed in that cited evidence does not support assertion.

7

Moving Party's Evidence

8

9

Miller Depo. 99:24-100:6 (Dyer Decl., Ex. "A," p. 31-32).

10

Evidence Controverting the Fact

11

12

Cited evidence does not support assertion.

13

14

Miller Depo. 99:24-100:6 (Dyer Decl., Ex. "A," p. 31-32).

15

16

17

169.  Herbalife is a multi-level marketing program.

169.  Disputed, in that Herbalife is a company, which operates a multi-level marketing plan.

18

Moving Party's Evidence

19

20

Miller Depo. 30:21-23 (Dyer Decl., Ex. "A," p. 12).

21

Evidence Controverting the Fact

22

23

Miller Depo. 30:21-23 (Dyer Decl., Ex. "A," p. 12).

24

25

26

170.  Herbalife sells nutritional supplements, vitamins, and skin care products.

170.  Undisputed.

27

28

171.  Herbalife's sales force are

171.  Undisputed.

88

la-1030052

"independent contractors" and
the first level of independent
contractors are referred to as
"distributors."

172. Herbalife distributors have the
right to buy products at a
discount for use or resale and to
recruit others into the program.

172. Undisputed.

173. Herbalife distributors can qualify
to become a "supervisor" by
ordering a minimum amount
(several thousand dollars) in
products, measured by suggested
retail price, from Herbalife in
one or two (consecutive) months.

173. Disputed. Supervisors qualify based
total volume, as defined in the Sales
and Marketing Plan.

Moving Party's Evidence

Miller Depo. 36:22-37:14 (Dyer
Decl., Ex. "A," p. 15-16).

Evidence Controverting the Fact

McKee Decl. ¶ 13; Gates Decl. Ex.
B, pp. 6-7, 9-10 (Sales and
Marketing Plan)

174. Herbalife supervisors must meet
certain order requirements to
maintain the status of supervisor.

174. Disputed. Supervisors requalify
based on total volume, as explained
in the Sales and Marketing Plan.

Moving Party's Evidence

Miller Depo. 38:13-39:8 (Dyer Decl.,
Ex. "A," p. 17-18).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 10-11 (Sales
& Marketing Plan)

89

la-1030052

175. Herbalife supervisors are entitled to receive a royalty override on up to three generations of "downline" supervisors.

175. Disputed.  As a Supervisor, with Fully Qualified or Qualifying Supervisors in your first three levels, you may qualify to receive Royalty Overrides if additional requirements are met.  A Royalty Override is a "payment ranging from 1% to 5% made to Fully Qualified Supervisors on the Monthly Volume of their three levels of active downline Supervisors."

Moving Party's Evidence

Miller Depo. 36:22-37:14 (Dyer Decl., Ex. "A," p. 15-16).

"Sales & Marketing Plan and Business Rules," p. 11 (Dyer Decl., Ex. "D," p. 64).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 11, 18 (Sales and Marketing Plan)

176. The royalty override gives the Herbalife supervisor a percentage commission on orders placed by downline supervisors.

176.  Disputed.  As a Supervisor, with Fully Qualified or Qualifying Supervisors in your first three levels, you may qualify to receive Royalty Overrides if additional requirements are met.  A Royalty Override is a "payment ranging from 1% to 5%

90

la-1030052

made to Fully Qualified Supervisors on the Monthly Volume of their three levels of active downline Supervisors."

Moving Party's Evidence

Miller Depo. 73:3-20 (Dyer Decl., Ex. "A," p. 27).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 11, 18 (Sales and Marketing Plan)

177. Herbalife supervisors and those they recruit must continue to purchase a minimum amount of product each month from Herbalife to qualify the supervisor for the royalty override.

177. Disputed.  Qualification for Royalty Overrides is based on total volume, as specified in the Sales & Marketing Plan.

Moving Party's Evidence

Miller Depo. 73:3-20 (Dyer Decl., Ex. "A," p. 27).

"Sales & Marketing Plan and Business Rules," p. 11 (Dyer Decl., Ex. "D," p. 64).

Evidence Controverting the Fact

Gates Decl. Ex. O (Miller Dep. Tr. 73:3-20), Ex. B, pp. 11, 18 (Sales and Marketing Plan)

178. Herbalife supervisors receive the right to sell the products and earn compensation based on

178. Disputed. Herbalife supervisors have right to sell products without regard to orders placed by their supervisors,

la-1030052

| | | |
|---|---|---|
| | product orders made by the supervisor's recruits. | and have right to earn royalties if they meet the additional requirements (e.g., retail product sales). |
| | | Moving Party's Evidence |
| | | "Live the Good Life with Herbalife," pp. 21-22 (Dyer Decl., Ex. "C," pp. 59-60). |
| | | Evidence Controverting the Fact |
| | | Gates Decl. Ex. B, pp. 9, 11 (Sales and Marketing Plan) |
| 179. | Advancement at Herbalife "is not based on retail. It's based on volume purchased from the company." | 179. Disputed, in that retails sales are required for advancement. |
| | | Moving Party's Evidence |
| | | Deposition of Mike McKee ["McKee Depo."]) 90:22-91:15 (Dyer Decl., If 7, Ex. "F," pp. 109-110). |
| | | Evidence Controverting the Fact |
| | | Cited evidence does not support assertion. |
| | | Deposition of Mike McKee ["McKee Depo."]) 90:22-91:15 (Dyer Decl., If 7, Ex. "F," pp. 109-110). |
| | | Gates Decl. Ex. B pp. 6, 7, 59, 62 (Sales & Marketing Plan – citing to Rules 20-C, 20-D, & 24-B), Ex. C (McKee Dep. Tr. 12:2-23, 17:11-25, |

92

la-1030052

51:13-24, 104:21-105:9, 133:1-9, 190:2-21), Ex. D (N. Roth Dep. Tr. 94:16-21, 95:8-11), Ex. E (L. Nix Dep. Tr. 168:23-169:14, 237:23-238:12), Ex. F (J. Orr Dep. Tr. 23:16-24:12, 71:8-72:7, 81:21-82:10, 123:22-124:11), Ex. G (K. Orr Dep. Tr. 72:2-10), Ex. H (Johnson Dep. Tr. 80:25-81:23), Ex. I (J. Ford Dep. Tr. 30:9-12; 33:3-34:11; 34:25-35:21; 50:22-51:14; 79:15-80:4), Ex. J (J. Fisher Dep. Tr. 9:16-10:12; 39:24-40:3; 55:6-56:5), Ex. K (R. Ford Dep. Tr. 20:3-10; 46:3-7; 46:14-47:3), Ex. L (D. Schmaman Dep. Tr. 36:10-18; 53:2-12), Ex. M (S. Gratziani Dep. Tr. 40:1-20; 66:12-67:8; 96:1-9; 144:13-22), Ex. N (D. Thompson Dep. Tr. 26:15-27:21; 50:4-10); Gates Confid. Decl. Ex. F (Johnson Dep. Tr. 133:8-25); McKee Decl. ¶¶ 14, 15, 17, 18, 20-23; Hienrich Decl. ¶¶ 5, 7

| | | |
|---|---|---|
| 180. | Herbalife does not keep track of retail sales. | 180. Undisputed that Herbalife cannot and does not keep records of actual retail sales by distributors. Disputed in that (1) HL does calculate retail sales |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

figures as that phrase is commonly used in sales reporting and (2) Herbalife does know the names of many of its retail customers which include, among others, Herbalife distributors.

Moving Party's Evidence

Greenberg Depo. 117:3-5 (Dyer Decl., ¶ 6, Ex. "E," pp. 80).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 42, 59 (Sales and Marketing Plan, pp. 42, 59 – citing to Rules 20-C & 20-D), Ex. H (Johnson Dep. Tr. 175:6-176:9, 188:2-9), Ex. F (J. Orr Dep. Tr. 31:20-32:4, 95:17-96:3), Ex. G (K. Orr Dep. Tr. 67:17-68:22), Ex. I (J. Ford Dep. Tr. 74:8-11), Ex. E (L. Nix Dep. Tr. 247:3-15)

181.  In Herbalife's Marketing Plan, which is shaped like a pyramid, retail sales are unrelated to advancement.

181.  Disputed.

Moving Party's Evidence

"Live the Good Life with Herbalife," p. 22 (Dyer Decl., Ex. "C," p. 60).

Evidence Controverting the Fact

Gates Decl. Ex. A ("Living the Good Life with Herbalife"), Ex. B pp. 6, 7, 59, 62 (Sales & Marketing Plan –

94

citing to Rules 20-C, 20-D, & 24-B),
Ex. C (McKee Dep. Tr. 12:2-23,
17:11-25, 51:13-24, 104:21-105:9,
133:1-9, 190:2-21), Ex. D (N. Roth
Dep. Tr. 94:16-21, 95:8-11), Ex. E
(L. Nix Dep. Tr. 168:23-169:14,
237:23-238:12), Ex. F (J. Orr Dep.
Tr. 23:16-24:12, 71:8-72:7, 81:21-
82:10, 123:22-124:11), Ex. G (K. Orr
Dep. Tr. 72:2-10), Ex. H (Johnson
Dep. Tr. 80:25-81:23), Ex. I (J. Ford
Dep. Tr. 30:9-12; 33:3-34:11; 34:25-
35:21; 50:22-51:14; 79:15-80:4), Ex.
J (J. Fisher Dep. Tr. 9:16-10:12;
39:24-40:3; 55:6-56:5), Ex. K (R.
Ford Dep. Tr. 20:3-10; 46:3-7;
46:14-47:3), Ex. L (D. Schmaman
Dep. Tr. 36:10-18; 53:2-12), Ex. M
(S. Gratziani Dep. Tr. 40:1-20;
66:12-67:8; 96:1-9; 144:13-22), Ex.
N (D. Thompson Dep. Tr. 26:15-
27:21; 50:4-10); Gates Confid. Decl.
Ex. F (Johnson Dep. Tr. 133:8-25);
McKee Decl. ¶¶ 14, 15, 17, 18, 20-
23 ); Hienrich Decl. ¶¶ 5, 7

182.   Herbalife's Marketing Plan,
        which is shaped like a pyramid,

182.  Disputed. The evidence Defendants
       cite references retail profits.

la-1030052

does not mention retail sales or retail customers in any way.

Moving Party's Evidence

"Live the Good Life with Herbalife," p. 22 (Dyer Decl., Ex. "C," p. 60).

Evidence Controverting the Fact

Gates Decl. Ex. A ("Living the Good Life with Herbalife"), Ex. B pp. 6, 7, 59, 62 (Sales & Marketing Plan – citing to Rules 20-C, 20-D, & 24-B), Ex. C (McKee Dep. Tr. 12:2-23, 17:11-25, 51:13-24, 104:21-105:9, 133:1-9, 190:2-21), Ex. D (N. Roth Dep. Tr. 94:16-21, 95:8-11), Ex. E (L. Nix Dep. Tr. 168:23-169:14, 237:23-238:12), Ex. F (J. Orr Dep. Tr. 23:16-24:12, 71:8-72:7, 81:21-82:10, 123:22-124:11), Ex. G (K. Orr Dep. Tr. 72:2-10), Ex. H (Johnson Dep. Tr. 80:25-81:23), Ex. I (J. Ford Dep. Tr. 30:9-12; 33:3-34:11; 34:25-35:21; 50:22-51:14; 79:15-80:4), Ex. J (J. Fisher Dep. Tr. 9:16-10:12; 39:24-40:3; 55:6-56:5), Ex. K (R. Ford Dep. Tr. 20:3-10; 46:3-7; 46:14-47:3), Ex. L (D. Schmaman Dep. Tr. 36:10-18; 53:2-12), Ex. M (S. Gratziani Dep. Tr. 40:1-20; 66:12-67:8; 96:1-9; 144:13-22), Ex.

la-1030052

N (D. Thompson Dep. Tr. 26:15-27:21; 50:4-10); Gates Confid. Decl. Ex. F (Johnson Dep. Tr. 133:8-25); McKee Decl. ¶¶ 14, 15, 17, 18, 20-23; Hienrich Decl. ¶¶ 5, 7

183. The bottom level of Herbalife's Marketing Plan is "Distributor"—not "customer."

183. Dispute the suggestion that Distributors are not also customers. Undisputed that Herbalife distributors are known as "Distributors."

Moving Party's Evidence

"Live the Good Life with Herbalife," p. 22 (Dyer Decl., Ex. "C," p. 60).

Evidence Controverting the Fact

Gates Decl. Ex. F (J. Orr Dep. Tr. 31:20-32:4; 95:17-96:3; 123:22-124:11), Ex. G (K. Orr Dep. Tr. 67:17-68:22; 82:12-83:3), Ex. I (J. Ford Dep. Tr. 72:10-19; 74:8-11), Ex. Q (B. Roth Dep. Tr. 21:18-22:4), Ex. E (L. Nix Dep. Tr. 204:13-205:2, 223:19-224:21, 247:3-15)

184. To earn royalty overrides on downline orders, Herbalife supervisors must certify that they have made sales to ten retail customers in the past month.

184. Undisputed.

97

la-1030052

185. To receive a royalty override, Herbalife supervisors must certify that they have sold at least 70% of products "they retain for resale" to either other Herbalife distributors or retail customers.

185. Disputed, in that Defendants' assertion misstates the rule.

Moving Party's Evidence

Miller Depo. 41:14-21 (Dyer Decl., Ex. "A," p. 19).

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 59 (Sales and Marketing Plan – citing to Rule 20-D)

186. In his deposition, McKee, Herbalife's Vice President of Business Development (Sales), admitted that he did not know what the "70% rule" was.

186. Disputed.

Moving Party's Evidence

McKee Depo. 127:16-20 (Dyer Decl., Ex. "F," p. 112).

Evidence Controverting the Fact

Cited evidence does not support Defendants' assertion.
McKee Depo. 127:16-20 (Dyer Decl., Ex. "F," p. 112).

187. McKee doesn't train on the 70% rule because he does not consider it to be "exciting stuff."

187. Undisputed that McKee does not train on the 70% rule. Disputed the reason he does not do so is because he does not find it exciting (as he testified, he is on "the sales end").

Moving Party's Evidence

McKee Depo. 127:21-128:9 (Dyer Decl., Ex. "F," p. 112-113).

Evidence Controverting the Fact

98

McKee Decl. ¶ 6; Gates Decl. Ex. C (McKee Dep. Tr. 23:16-24:4, 28:24-29:24, 127:21-128:13)

188. Herbalife has a buyback policy.

188. Undisputed.

189. Herbalife allows mere certification by distributors and does not even request the names of the ten customers.

189. Disputed.

Moving Party's Evidence

Miller Depo. 63:5-9 (Dyer Decl., Ex. "A," p. 24).

"Sales & Marketing Plan and Business Rules," p. 42 (Dyer Decl., Ex. "D," p. 65).

Evidence Controverting the Fact

Gates Decl. Ex. O (Miller Dep. Tr. 62:14-63:24), Ex. B, p. 42 (Sales and Marketing Plan); Hienrich Decl. ¶¶ 8-17

190. Herbalife has distributors sign a "certification form" that contains no information whatsoever about the retail customer, the contact information of the customer, the products sold, or the price paid for the products.

190. Undisputed that Certification form does not require distributors to reveal customer names, contact information, etc.  Disputed that Herbalife "has distributors sign" the Certification form.   They can only sign if they have in fact complied with the 10 retail customer and 70% rule and agree to furnish supporting information upon request.

Moving Party's Evidence

99

| | | |
|---|---|---|
| | | "Sales & Marketing Plan and Business Rules," p. 42 (Dyer Decl., Ex. "D," p. 65). |
| | | Evidence Controverting the Fact |
| | | Gates Decl. Ex. O (Miller Dep. Tr. 62:14-63:24), Ex. B, pp. 11, 42 (Sales and Marketing Plan) |
| 191. | Instead of random audits, Herbalife claims that it conducts a small number of audits by merely contacting distributors and requesting the names of the distributors' ten customers. | 191. Disputed.  Herbalife conducts random audits. |
| | | Moving Party's Evidence |
| | | Miller Depo. 62:14-20, 69:10-14 (Dyer Decl., Ex. "A," p. 23, 25) (stating that Herbalife conducts about 100 10-customer audits per month, even though Herbalife claims to have over 1.5 million distributors. See Dyer Decl., Ex. "I," p. 130). |
| | | Evidence Controverting the Fact |
| | | Gates Decl. Ex. O (Miller Dep. Tr. 22:16-24, 69:10-14); Hienrich Decl. ¶¶ 8-17 |
| 192. | McKee, who is the primary "link between Herbalife and its mid-level to top Supervisors" testified that he does not know the requirements of Herbalife's 10-customer rule. | 192. Disputed, misstates the cited testimony. |
| | | Moving Party's Evidence |
| | | McKee Depo. 23:16-25:15, 107:1-6 (Dyer Decl., Ex. "F," p. 102-104, 111). |

100

|   |   |
|---|---|
| | Evidence Controverting the Fact |
| | Gates Decl. Ex. C (McKee Dep. Tr. 23:16-24:4) |
| 193. The 10-customer rule is difficult to understand, even for the person at Herbalife who is responsible for enforcing it. | 193.  Disputed. |
| | Moving Party's Evidence |
| | Miller Depo. 12:4-17, 41:14-21 (Dyer Decl., Ex. "A," p. 7, 19). |
| | Evidence Controverting the Fact |
| | The cited evidence does not address the 10-customer rule. |
| | Gates Decl. Ex. O (Miller Dep. 7:7-12, 14:2-15, 41:14-21, 44:16-23); Hienrich Decl. ¶¶ 1-4, 8 |
| 194. Herbalife leaves the training of the rules to the independent distributors who are not agents or employees of Herbalife and who themselves lack experience and training to train the members of this requirement. | 194.  Disputed. |
| | Moving Party's Evidence |
| | Miller Depo. 62:14-20, 69:10-14 (Dyer Decl., Ex. "A," p. 23, 25). |
| | Evidence Controverting the Fact |
| | The evidence cited does not support the assertion. |
| | Miller Depo. 62:14-20, 69:10-14 (Dyer Decl., Ex. "A," p. 23, 25). Gates Decl. Ex. B, pp. 53-54 (Sales and Marketing Plan – citing to Rule 10-C), Ex. C (McKee Dep. Tr. 31:19-23), Ex. R (Greenberg Dep. Tr. 66:4-24, 68:12-71:4), Ex. E (Nix |

101

Dep. Tr. 53:15-54:6, 160:6-161:5), Ex. M (Gratziani Dep. Tr. 60:17-61:22)

195.   There are no educational or other requirements to be a Herbalife distributor.

195.   Undisputed that there are no formal educational requirements.  Disputed that there are no other requirements.

Moving Party's Evidence

Greenberg Depo. 63:12-14 (Dyer Decl., ¶ 6, Ex. "E," p. 74).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 3, 32, & 47-93 (Sales and Marketing Plan), Ex. P (HL000001, HL000003, HL000005, Hl000007, HL000008, HL000009, HL000012)

196.   Herbalife could require customers to submit a monthly list of retail customers and make blind, random calls to corroborate the validity of the list.

196.   Undisputed.

197.   Herbalife's distributors simply "certify" that they have complied with the 70% rule.

197.   Disputed.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 42 (Dyer Decl., Ex. "D," p. 65).

Evidence Controverting the Fact

la-1030052

|   |   |
|---|---|
|   | Gates Decl. Ex. B, pp. 42, 59 (Sales and Marketing Plan – citing Rule 20-D), Ex. O (Miller Dep. Tr. 69:18-70:1); Hienrich Decl. ¶¶ 18-23 |
| 198.  Herbalife's distributors only certify that 70% of the product they "hold for resale" has been sold. | 198.  Undisputed that in order to obtain royalty overrides and bonuses, distributors who are supervisors must comply with the 70% rule (confirming that they have sold 70% of the total value of products they hold for resale each month) and certify such compliance.  Disputed as to the remainder of assertion because it is unclear what is meant by "only certify." |
|   | Moving Party's Evidence |
|   | "Sales & Marketing Plan and Business Rules," p. 42 (Dyer Decl., Ex. "D," p. 65). |
|   | Evidence Controverting the Fact |
|   | Gates Decl. Ex. B, pp. 11, 42, & 59 (Sales & Marketing Plan – citing Rule 20-D) |
| 199.  Despite having attended 500 to 1,000 Herbalife trainings, McKee did not know what the 70% rule was and could not | 199.  Disputed, misstates testimony. |
|   | Moving Party's Evidence |
|   | McKee Depo. 127:16-20, 129:10-13 (Dyer Decl., Ex. "F," pp. 112, 114). |

| | |
|---|---|
| recall any training or explanation of the rule occurring at those 500 to 1,000 Herbalife events. | Evidence Controverting the Fact<br><br>McKee Depo. 129:10-13 (Dyer Decl., Ex. "F," p. 114). |
| 200. Herbalife's chief rule enforcer is uncertain as to the requirements of the "difficult" 70% rule. | 200. Disputed, misstates testimony.<br><br>Moving Party's Evidence<br><br>Miller Depo. 14:21-15:4, 19:12-18, 41:14-21 (Dyer Decl., Ex. "A," p. 8-10, 19).<br><br>Evidence Controverting the Fact<br><br>Gates Decl. Ex. O (Miller Dep. Tr. 12:7-12, 14:2-15, 19:19-24, 41:14-23) |
| 201. Herbalife does not conduct routine audits to ensure compliance with the 70% rule. | 201. Undisputed that Herbalife does not conduct random audits for compliance with the 70% rule. But disputed to the extent assertion suggests Herbalife does not audit with regard to 70% rule.<br><br>Moving Party's Evidence<br><br>Miller Depo. 25:5-20 (Dyer Decl., Ex. "A," p. 11).<br><br>Evidence Controverting the Fact<br><br>Hienrich Decl. ¶¶ 18-23 |
| 202. Current Herbalife distributors are not eligible for any buyback. | 202. Disputed.<br><br>Current Herbalife distributors are eligible for buybacks, but must resign their distributorship in |

104

|  |  |  |  |
|---|---|---|---|
| 1 |  | | connection with the repurchase. |
| 2 |  | | Moving Party's Evidence |
| 3 |  | | "Sales & Marketing Plan and |
| 4 |  | | Business Rules," p. 44 (Dyer Decl., |
| 5 |  | | Ex. "D," p. 66). |
| 6 |  | | Evidence Controverting the Fact |
| 7 |  | | Gates Decl. Ex. B, pp. 44, 53 (Sales |
| 8 |  | | & Marketing Plan – citing Rule 9- |
| 9 |  | | D); Hienrich Decl.  ¶¶ 24-26 |
| 10 | 203. | Herbalife distributors who | 203.  Undisputed that buyback policy is |
| 11 |  | request a buyback suffer a | for distributors who no longer want |
| 12 |  | permanent loss of their | to be Herbalife distributors. |
| 13 |  | distributorships. | Disputed that distributors who |
| 14 |  | | choose to take advantage of buyback |
| 15 |  | | policy "suffer" as a result of the |
| 16 |  | | rights given to them under the |
| 17 |  | | buyback policy. |
| 18 |  | | Moving Party's Evidence |
| 19 |  | | "Sales & Marketing Plan and |
| 20 |  | | Business Rules," p. 44 (Dyer Decl., |
| 21 |  | | Ex. "D," p. 66). |
| 22 |  | | Evidence Controverting the Fact |
| 23 |  | | Gates Decl. Ex. B, pp. 44, 53 (Sales |
| 24 |  | | and Marketing Plan – citing to Rule |
| 25 |  | | 9-D); Hienrich Decl. ¶¶ 24-26 |
| 26 | 204. | Herbalife will not buy back | 204.   Disputed. |
| 27 |  | product from an active | Current Herbalife distributors are |
| 28 |  | | |

la-1030052

| | | |
|---|---|---|
| | distributor or even an inactive distributor who has not "permanently" resigned. | eligible for buybacks, but must resign their distributorship in connection with the repurchase. |
| | | <u>Moving Party's Evidence</u> |
| | | "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl., Ex. "D," p. 66). |
| | | <u>Evidence Controverting the Fact</u> |
| | | Gates Decl. Ex. B, pp. 44, 53 (Sales and Marketing Plan – citing to Rule 9-D); Hienrich Decl. ¶¶ 24-26 |
| 205. | A distributor requesting a buyback must first permanently resign his/her distributorship in writing. | 205.   Disputed. Current Herbalife distributors are eligible for buybacks, but must resign their distributorship in connection with the repurchase. |
| | | <u>Moving Party's Evidence</u> |
| | | "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl., Ex. "D," p. 66). |
| | | <u>Evidence Controverting the Fact</u> |
| | | Hienrich Decl. ¶¶ 24-26; Gates Decl. Ex. B, pp. 44 & 53 (Sales and Marketing Plan – citing to Rule 9-D) |
| 206. | A distributor that requests a buyback loses all royalties, commissions, bonuses, and | 206.   Disputed. |
| | | <u>Moving Party's Evidence</u> |
| | | Greenberg Depo. 264:11-21 (Dyer |

la-1030052

discounts from Herbalife.

Decl., ¶ 6, Ex. "E," p. 92).

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 53 (Sales and Marketing Plan – citing to Rule 9-D)

207.  If a distributor asks for a buyback, the distributor and the distributor's upline are retroactively charged back on their royalty bonus checks.

207.  Disputed.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 43 (Dyer Decl., Ex. "D," p. 65-66).

Evidence Controverting the Fact

Gates Decl. Ex. B, p. 53 (Sales and Marketing Plan – citing to Rule 9-D)

208.  Herbalife's agreements and rules state that a former distributor is subject to Herbalife's 3-year covenant not to compete and the 1-year non-solicitation provision.

208.  Herbalife does not dispute that defendants' distributorship agreements include a 3 year non-compete provision (which is not enforced) and that Herbalife's Rule 8-A contains a 1 year non-solicitation provision.  Herbalife disputes that all Herbalife distributor agreements contain a 3 year non-compete provision.

Moving Party's Evidence

Herbalife Distributor Agreements (Dyer Decl., Ex. "G," pp. 120-125). "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl.,

Ex. "D," p. 66).

Evidence Controverting the Fact

Herbalife Distributor Agreements (Dyer Decl., Ex. "G," pp. 120-125). Gates Decl. Ex. B, pp. 32-33 (Sales and Marketing Plan)

209. To obtain a buyback, the former Herbalife distributor must sign an agreement that states that the former distributor agrees to Herbalife's various buyback terms and rules.

209. Disputed. No separate agreement is required; rather, a Distributor must submit an Inventory Repurchase Request Form.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl., Ex. "D," p. 66).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 44-45 (Sales and Marketing Plan); Hienrich Decl. ¶¶ 24, 26

210. To obtain a buyback, the former Herbalife distributor must also provide a complete, detailed written inventory of product to be returned.

210. Disputed.

Moving Party's Evidence

"Sales & Marketing Plan and Business Rules," p. 45 (Dyer Decl., Ex. "D," p. 66).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 44-45 (Sales and Marketing Plan); Hienrich Decl. ¶¶ 24, 26

la-1030052

| | |
|---|---|
| 211. To obtain a buyback, the former Herbalife distributor must also provide cancelled checks and credit card statements proving the purchase of each item on the inventory. | 211. Undisputed, but subject to exception. *See* Hienrich Decl. ¶¶ 24, 26 |
| 212. To obtain a buyback, the former Herbalife distributor must also provide two years of records of sales to his/her retail customers and downline. | 212. Undisputed, but subject to exception. *See* Hienrich Decl. ¶¶ 24, 26 |
| 213. Herbalife's buyback offer is discretionary based on Herbalife's determinations of condition of the product and other factors. | 213. Disputed. <br> <u>Moving Party's Evidence</u> <br> "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl., Ex. "D," p. 66). <br> <u>Evidence Controverting the Fact</u> <br> Gates Decl. Ex. B, pp. 44-45, 53 (Sales and Marketing Plan - citing Rule 9-D) |
| 214. When it provides its buyback refund, Herbalife does not return its 10-11% handling charges that were originally paid on the product and the former distributor must pay the shipping charges to return the product to | 214. Undisputed that Herbalife does not return shipping or handling costs on purchase, or return shipping. |

la-1030052

1   Herbalife.

2

3

4   215.  Herbalife's top official in charge    215.  Disputed, misstates testimony.  Ms.

5   of the department that enforces    Miller was not asked whether

6   the 10-customer and 70% rules    policies are effective; just if she was

7   does not know whether    aware of studies.  Further, Ms. Miller

8   Herbalife's policies are effective    was not the "top official" responsible

9   and does not think that Herbalife    for rule compliance.

10   has conducted any studies to    Moving Party's Evidence

11   determine whether the rules are    Miller Depo. 14:21-15:4, 19:12-18,

12   effective to promote sales    94:23-95:13, 96:5-8 (Dyer Decl.,

13   outside of Herbalife.    Ex. "A," p. 8-10, 28-30).

14   Evidence Controverting the Fact

15   Gates Decl. Ex. O (Miller Dep. Tr.

16   11:14-23, 12:7-12, 14:2-15, 19:19-

17   24, 94:23-95:2); Hienrich Decl. ¶¶ 1-

18   4

19

20   216.  Herbalife does not keep any    216.  Undisputed that Herbalife cannot and

21   records relating to its    does not keep records of actual retail

22   distributors' retail sales and does    sales by distributors.  Disputed in

23   not know the names of its retail    that (1) HL does calculate retail sales

24   customers.    figures as that phrase is commonly

25   used in sales reporting and (2)

26   Herbalife does know the names of

27   many of its retail customers which

28   include, among others, Herbalife

110

la-1030052

distributors.

Moving Party's Evidence

>Greenberg Depo. 117:3-5, 251:13-252:17 (Dyer Decl., ¶ 6, Ex. "E," pp. 80, 90-91).

Evidence Controverting the Fact

>Gates Decl. Ex. B, pp. 42, 59 (Sales and Marketing Plan – citing to Rules 20-C & 20-D), Ex. H (Johnson Dep. Tr. 175:6-176:9, 188:2-9), Ex. F (J. Orr Dep. Tr. 31:20-32:4, 95:17-96:3), Ex. G (K. Orr Dep. Tr. 67:17-68:22),  Ex. I (J. Ford Dep. Tr. 74:8-11), Ex. E (L. Nix Dep. Tr. 247:3-15)

217.  Counterclaimants are in competition with Herbalife.

217.  Undisputed to the extent that Counterclaimants are distributors Melaleuca, which is in competition with Herbalife.

218.  In an email sent to all members of its "TAB Team" on February 6, 2007, Herbalife claimed that Herbalife had achieved a "record $3 Billion in retail sales in 2006."

218.   Undisputed.

219.  Herbalife also included a hyperlink in its February 6, 2007

219.   Undisputed.

la-1030052

email that invited its TAB Team members to download a document called: "Herbalife...A Proven Success."

220. The document titled: Herbalife...A Proven Success" claimed that Herbalife had "record retail sales of $3 billion in 2006 and still growing."

221. Herbalife does not keep records of its retail sales.

220. Undisputed.

221. Undisputed that Herbalife cannot and does not keep records of actual retail sales by distributors. Disputed in that (1) HL does calculate retail sales figures as that phrase is commonly used in sales reporting and (2) Herbalife does know the names of many of its retail customers which include, among others, Herbalife distributors. Undisputed that Herbalife cannot and does not keep records of actual retail sales by distributors. But disputed in that Herbalife does track and report "retail sales" as that phrase is commonly understood in reporting sales volume.

Moving Party's Evidence

112

Greenberg Depo. 117:3-5 (Dyer Decl., ¶ 6, Ex. "E," p. 80).

Evidence Controverting the Fact

Gates Decl. Ex. B, pp. 42, 59 (Sales and Marketing Plan Rules – citing to Rules 20-C & 20-D), Ex. H (Johnson Dep. Tr. 175:6-176:9, 188:2-9), Ex. F (J. Orr Dep. Tr. 31:20-32:4, 95:17-96:3), Ex. G (K. Orr Dep. Tr. 67:17-68:22), Ex. I (J. Ford Dep. Tr. 74:8-11), Ex. E (L. Nix Dep. Tr. 247:3-15)

222.   Herbalife did not receive gross revenues or retail sales of $3 billion in 2006.

222.   Undisputed that Herbalife did not receive gross revenues of $3 billion in 2006.  Disputed that Herbalife did not exceed $3 billion in retail sales in 2006, as defined in the Annual Report.

Moving Party's Evidence

Herbalife's 2006 Annual Report (Dyer Decl., Ex. "B," pp. 54-56).

Evidence Controverting the Fact

Herbalife's 2006 Annual Report (Dyer Decl., Ex. "B," pp. 54-56).

Gates Decl. Ex. H (Johnson Dep. Tr. 175:6-176:9), Ex. R (Greenberg Dep. Tr. 162:6-14)

113

223. Herbalife's "product sales," which represent the purchase price paid to Herbalife by its distributors, were $1.627 billion in 2006.

223. Undisputed that Herbalife had $1.627 in "product sales" in 2006 as defined in its Annual Report.

224. Herbalife's "net sales," which include Herbalife's income from shipping and handling on its products, were $1.885 billion in 2006.

224. Undisputed that Herbalife had $1.885 billion in "net sales" in 2006 as defined in its Annual Report.

225. The document titled: Herbalife...A Proven Success" claimed that" in 2006, Herbalife Supervisors were paid $2.2 billion in commissions, royalties, and bonuses."

225. Undisputed.

226. Herbalife's product sales in 2006 were $1.627 billion.

226. Undisputed that Herbalife had $1.627 in "product sales" in 2006 as defined in its Annual Report.

227. Herbalife's 2006 10-K showed that "Royalty overrides" for 2006 were $675 million.

227. Undisputed.

228. Herbalife advertises that its business opportunity is "recession proof"

228. Disputed, in that cited evidence does not support the assertion. In context, the video does not advertise that the Herbalife business opportunity is

la-1030052

recession proof.

Moving Party's Evidence

December 22, 2008 Video titled:

"Why Herbalife, Why Now?" (Dyer

Decl., ¶ 21, Ex. "T").

Evidence Controverting the Fact

December 22, 2008 Video titled:

"Why Herbalife, Why Now?" (Dyer

Decl., ¶ 21, Ex. "T").

Gates Decl. Ex. Y (transcript of

"Why Herbalife – Why Now"

Video).

229. The video states: "Why Herbalife? Herbal-nomics. It's recession proof ... This opportunity can be your answer . . .."

229. Disputed, in that the factual assertion is incomplete and misleading because it does not include relevant portions from the video.

Moving Party's Evidence

December 22, 2008 Video titled:

"Why Herbalife, Why Now?" (Dyer

Decl., ¶ 21, Ex. "T").

Evidence Controverting the Fact

December 22, 2008 Video titled:

"Why Herbalife, Why Now?" (Dyer

Decl., ¶ 21, Ex. "T").

Gates Decl. Ex. Y (transcript of

"Why Herbalife – Why Now" Video)

230. Mike Mckee, Herbalife's Vice

230. Undisputed.

115

| | | |
|---|---|---|
| | President of Business Development (Sales), testified that no company was recession proof, including Herbalife. | |
| 231. | Herbalife's third claim for relief for intentional interference with prospective economic advantage ("IIPEA") is based, in part, on the same nucleus of facts as Herbalife's claim for misappropriation of trade secrets. | 231. **Disputed on Evidentiary Grounds.** Counterclaimants' Evidence: Complaint at ¶¶ 95, 98. **Evidentiary Objection** – Legal Conclusion (FRE 103(c)) Complaint at ¶¶ 95, 98. |
| 232. | Herbalife's fourth claim for relief for intentional interference with contract is based, in part, on the same nucleus of facts as Herbalife's claim for misappropriation of trade secrets. | 232. **Disputed on Evidentiary Grounds.** Counterclaimants' Evidence: Complaint at ¶ 108 (incorporating allegations of misappropriation of trade secrets). **Evidentiary Objection** – Legal Conclusion (FRE 103(c)) Complaint at ¶ 108 (incorporating allegations of misappropriation of trade secrets). |

116

233.   Herbalife's fifth claim for relief for unfair competition is based, in part, on the same nucleus of facts as Herbalife's claim for misappropriation of trade secrets.

233. **Disputed on Evidentiary Grounds.**

<u>Counterclaimants' Evidence:</u>

   Complaint at ¶ 117.

**<u>Evidentiary Objection</u>** – <u>Legal</u>

   <u>Conclusion</u> (FRE 103(c))

   Complaint at ¶ 117.

Dated:    May 22, 2009

MORRISON & FOERSTER LLP

/s/ Sean P. Gates
Charles E. Patterson
Nancy R. Thomas
Sean P. Gates

Attorneys for Plaintiff and
Counterclaim Defendant
HERBALIFE
INTERNATIONAL OF
AMERICA, INC.

117