1  CHARLES E. PATTERSON (CA SBN 120081)
   CPatterson@mofo.com
2  GREGORY B. KOLTUN (CA SBN 130454)
   GKoltun@mofo.com
3  MORRISON & FOERSTER LLP
   555 West Fifth Street
4  Los Angeles, California  90013-1024
   Telephone: 213.892.5200
5  Facsimile: 213.892.5454

6  Attorneys for Plaintiff
   HERBALIFE INTERNATIONAL OF AMERICA,
7  INC.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12  Herbalife International of America, Inc.,    Case No. CV 07 2529 GAF (FMOx)
    a Nevada Corporation,
13                                               **JOINT DOCUMENT RE
                        Plaintiff,               DISPUTED JURY
14                                               INSTRUCTIONS**
                  v.
15                                               Complaint Filed: Apr. 16, 2007
    Robert E. Ford and Julia A. Ford,            Discovery Cut-Off:  Mar. 13, 2009
16  husband and wife; Bruce H. Roth and          Pretrial Conf.:  June 29, 2009
    Nancy A. Roth, husband and wife; Jeff        Trial Date:  July 28, 2009
17  Orr and Kathy Orr, husband and wife;
    Dianna N. Thompson; and Jason Fisher,        Hon. Gary A. Feess
18
                        Defendants.
19

20

21

22

23

24

25

26

27

28

# TABLE OF PLAINTIFF'S DISPUTED INSTRUCTIONS

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
| 1. | Claims and Defenses | Ninth Circuit Model Jury Instruction 1.2 | 1 |
| 2. | Misappropriation of Trade Secrets—introduction | CACI 4400 | 5 |
| 3. | Breach of contract — Introduction | CACI 300 | 9 |
| 4. | Breach of Contract—Essential Factual Elements (As to Defendants Bruce Roth, Nancy Roth, Jeff Orr, Kathy Orr and Dianna Thompson only) | CACI 303 | 13 |
| 5. | Breach of Contract—Essential Factual Elements (As to Defendants Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr, and Kathy Orr only) | CACI 303 | 17 |
| 6. | Breach of Contract—Essential Factual Elements (As to Defendant Dianna Thompson only) | CACI 303 | 21 |
| 7. | Breach of Contract—Essential Factual Elements (As to Defendants Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, | CACI 303 | 25 |

i

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
|  | Jeff Orr, and Kathy Orr only) |  |  |
| 8. | Introduction to Contract Damages | CACI 350 | 29 |
| 9. | Intentional Interference With Prospective Economic Advantage | CACI 2202 | 33 |
| 10. | Introduction to Tort Damages — Liability Contested | CACI 3900 | 37 |
| 11. | Affirmative Defense: Intentional Interference with Prospective Economic Advantage – Duty to Mitigate Damages for Past Lost Earnings | CACI 3961 | 41 |
| 12. | Affirmative Defense: Intentional Interference with Prospective Economic Advantage – Duty to Mitigate Damages for future Lost Earnings | CACI 3962 | 45 |
| 13. | *Noerr-Pennington* Doctrine | *Professional Real Estate Inv., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49 (1993); *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033 (9th Cir. 2009); *Theme* | 49 |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
| | | *Promotions, Inc. v. News American Marketing FSI*, 546 F.3d 991 (9th Cir. 2008); ABA, Model Jury Instructions in Civil Antitrust Cases (2005) | |
| 14. | Affirmative Defense: Litigation Privilege | California Affirmative Defenses § 41:21 (2009); Cal. Civ. Code § 47(b); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232 (2007); *1100 Park Lane Assocs. v. Feldman*, 160 Cal. App. 4th 1467 (2008) | 54 |
| 15. | Affirmative Defense: Common Interest Privilege | CACI Qualified Privilege (Civ. Code § 47(c)) § | 58 |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
| | | 1723; BAJI 7.05.1; Cal. Civ. Code § 47(c) | |
| 16. | Endless Chain Scheme: Definition | Based on instruction approved by California Court of Appeal in *People v. Frederick*, 142 Cal. App. 4th 400, 415 (Cal. Ct. App. 2006) | 62 |
| 17. | Endless Chain Scheme: Mental State | CALJIC 3.31.5 | 66 |
| 18. | Endless Chain Scheme: "Willfully" defined | CALJIC 1.20 | 70 |
| 19. | Endless Chain Scheme: Elements of Statutory Offense | *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975); *In re Amway Corp.*, 93 F.T.C. 618, 700 | 74 |

iv

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
| | | (1979) | |
| 20. | Endless Chain Scheme: Headhunting Fee | *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) | 78 |
| 21. | Endless Chain Scheme: Relevant Factors | *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979); (FTC Advisory Opinion Letter, dated January 14, 2004.) | 82 |

| Plaintiff's No. | Title | Source | Page No. |
|---|---|---|---|
| 22. | Endless Chain Scheme: Presence of Safeguards | *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) | 86 |
| 23. | Special Instruction: Endless Chain Scheme – Recovery | Civil Code § 1689.2 | 90 |

## TABLE OF DEFENDANT'S DISPUTED INSTRUCTIONS

| Defendant's No. | Title | Source | Page No. |
|---|---|---|---|
| 1. | Claims and Defenses | Ninth Circuit Model Jury Instruction 1.2 | 94 |
| 2. | Liability of Corporations – Scope of Authority Not in Issue | Ninth Circuit Model Jury Instruction 4.2 | 98 |
| 3. | Agent and Principal - Definition | Ninth Circuit Model Jury Instruction 4.4 | 102 |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

| Defendant's No. | Title | Source | Page No. |
|---|---|---|---|
| 4. | Act of Agent is Act of Principal – Scope of Authority Not in Issue | Ninth Circuit Model Jury Instruction 4.6 | 106 |
| 5. | Damages – Mitigation | Ninth Circuit Model Jury Instruction 5.3 | 110 |
| 6. | Damages Arising in the Future – Discount to Present Cash Value | Ninth Circuit Model Jury Instruction 5.4 | 114 |
| 7. | Intentional Interference with Prospective Economic Advantage | CACI 2202 | 118 |
| 8. | Violation of Endless Chain Scheme | Penal Code Section 327; *Webster v. Omnitrition Intl.*, 79 F. 3d 776, 781 (9th Cir. 1996) | 122 |
| 9. | Business & Professions Code Section 17500 | Bus. & Prof. Code Section 17500 | 126 |
| 10. | False Advertising (Section 43(a)) Lanham Act Claim | Section 43(a) Lanham Act 15 U.S.C. § 1125(a); *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038,1051 (9th Cir. 2008) | 130 |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

| Defendant's No. | Title | Source | Page No. |
|---|---|---|---|
| 11. | False Advertising – Definition of Materiality (Section 43(a) Lanham Act 15 U.S.C. Section 11259(a)) | Section 43(a) Lanham Act 15 U.S.C. § 1125(a) | 134 |
| 12. | Affirmative Defense – Fraud | CACI 335 | 138 |
| 13. | Affirmative Defense – Failure to Mitigate | CACI 358; *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993); *Brandon & Tibbs v. George Kevorkian Accounting Corp.*, 226 Cal.App.3d 442, 460 (1990) | 142 |
| 14. | Affirmative Defense – Illegality | Civil Code Section 1608; Civil Code Section 1550(3); 1596; 1667; 1608; *see also* 1441; *Tiedie v. Aluminum Taper Milling Co.*, 46 Cal.2d 450 (1956); *Wells v. Comstock*, 46 Cal.2d 528 (1956); *Hamilton v.* | 146 |

viii

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

| Defendant's No. | Title | Source | Page No. |
|---|---|---|---|
| | | *Abadjian*, 30 Cal.2d 49, 53 (1947); *McIntosh v. Mills*, 121 Cal. App.4th 333, 344 (2004); *also see* 1-3FCalifornia Forms of Jury Instruction 300F.90 | |
| 15. | Affirmative Defense – Unconscionability | Civil Code Section 1670.5; *Nunes Turfgrass v. Vaughn-Jacklin Seed Co.*, (1988) 200 Cal. App.3d 1518, 1534; *Neal v. State Farm Ins. Cos.*, 188 Cal.App2d 690, 694 (1961); A&M Produce Co., 135 Cal.App.3d ___ | 150 |
| 16. | Violation of California Civil Code 16600 | Bus. & Prof. Code § 16600 | 154 |

1

2

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 1
CLAIMS AND DEFENSES**

3       To help you follow the evidence, I will give you a brief summary of the

4   positions of the parties:

5       Herbalife claims that Defendants (1) misappropriated their trade secrets; (2)

6   breached their contracts with Herbalife; (3) intentionally interfered with Herbalife's

7   prospective economic advantage; and (4) intentionally interfered with Herbalife's

8   contracts with its Distributors.

9       Herbalife has the burden of proving these claims.

10       Defendants deny those claims and also contend that Herbalife intentionally

11   interfered with Defendants' prospective economic advantage.  Defendants have the

12   burden of proof on this counterclaim.

13       Herbalife denies that it intentionally interfered with Defendants' prospective

14   economic advantage.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

la-1033212

1    **Authority:** Ninth Circuit Model Jury Instruction 1.2.

2

3                                                          GIVEN:        _____

4                                                          REFUSED:      _____

5                                                          MODIFIED:     _____

6                                                          WITHDRAWN:    _____

la-1033212

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Defendants and Counterclaimants dispute the portion of the proposed instruction in that it omits references to their counterclaims and affirmative defenses.  This is based on the Ninth Circuit Model Civil Jury Instruction 1.2 which specifically provides for the inclusion of information about counterclaims and affirmative defenses.

Information about the counterclaims and affirmative defenses is proper and required to be presented to the jury because once the right to a jury trial attaches, it extends to all factual issues necessary to resolve the claim.  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999).  There is a right to a trial by jury under the Lanham Act.  *See L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F. Supp. 644, 646 (D. Me. 1986); *NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 422 (D. Minn. 1994).

When a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues.  "It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable.  As long as any legal cause is involved the jury rights it creates control."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).  In addition, issues raising mixed questions of law and fact may be presented to the jury if they are essentially factual.  *City of Monterey*, 526 U.S. at 720.

Defendants propose the following language for the fourth and fifth paragraphs:
*Defendants deny Herbalife's claims and also contend that Herbalife (1) intentionally interfered with Defendants' prospective economic advantage; (2) operates an illegal pyramid scheme; (3) engages in false advertising; (4) and imposed illegal restraints of trade on Defendants.  Defendants have the burden of proof on these counterclaims.  Defendants also assert certain defenses to Herbalife's claims, including (1) fraud, (2) illegality, and (3) unconscionability.*

la-1033212

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

As stated more fully herein in its objections to Defendants' proposed instructions on their counterclaims, Herbalife believes Defendants are not entitled to a jury trial on any of their counterclaims, with the exception of their intentional interference with prospective economic advantage claim.  Therefore, inclusion of these counterclaims in the instruction would confuse and mislead the jury.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 2
## MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION

Herbalife claims that it is the owner of data reports relating to its distributors' -- known as "Lineage Reports" or "Indented Lineage Reports," Royalty Override Statements, and Production Bonus statements -- which contain the names, addresses, identification numbers, telephone numbers, email addresses, fax numbers, level or rank, volume and sales statistics, relationships among distributors, persons recruited into Herbalife by a distributor, and economic activities of Herbalife's distributors and customers.

Herbalife claims that these Lineage Reports, Royalty Override Statements, Production Bonus statements and the data contained within them are "trade secrets", and that Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr, Kathy Orr, Jason Fisher and Dianna Thompson "misappropriated" them.

"Misappropriation" means the improper acquisition, use and/or disclosure of the trade secrets. It is possible to find that a Defendant committed multiple acts of misappropriation.

Herbalife also claims that each Defendant's misappropriation caused it harm and caused each Defendant to be unjustly enriched.

Each Defendant denies misappropriating Herbalife's trade secrets.

la-1033212

1    **Authority:** CACI 4400.

2    **Modified**: Adds that it is possible to find that a Defendant committed multiple

3    acts of misappropriation.

4

5    | | GIVEN: _____ |
6    | | REFUSED: _____ |
7    | | MODIFIED: _____ |
8    | | WITHDRAWN: _____ |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3
4
5
6

Defendants dispute the portion of the proposed instruction that omits any reference to Defendants' affirmative defenses. This proposed instruction is based on CACI 4400 which specifically provides for this instruction to contain information about the Defendants' affirmative defenses.

7
8
9
10
11
12
13
14
15

Information about the counterclaims and affirmative defenses is proper and required to be presented to the jury because once the right to a jury trial attaches, it extends to all factual issues necessary to resolve the claim. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999). When a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues. "It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).

16
17

Accordingly, Defendants propose the following language be added at the end of the proposed instruction:

18
19
20

> *Each Defendant also claims the affirmative defenses of fraud, unconscionability, and illegality, which I will instruct you on in a moment.*

21
22
23
24
25
26
27
28

7

la-1033212

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

As stated more fully herein in its objections to Defendants' proposed instructions on their affirmative defenses, Herbalife believes Defendants are not entitled to a jury trial on any of their equitable affirmative defenses.  Therefore, inclusion of these affirmative defenses in the instruction would confuse and mislead the jury.

8

la-1033212

1
2

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 3**
**BREACH OF CONTRACT — INTRODUCTION**

3
4
5
6

   Herbalife claims that it entered into a contract with Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr, Kathy Orr, Jason Fisher and Dianna Thompson which required these individuals not to disclose Herbalife's trade secrets or to solicit people they had met through Herbalife for their Melaleuca businesses.

7
8

   Herbalife claims that each Defendant breached this contract by using Herbalife's confidential information to solicit Herbalife distributors for their Melaleuca businesses.

9
10
11

   Herbalife also claims that each Defendant's breach of this contract caused harm to Herbalife for which each Defendant should pay.  A Defendant may be found to have breached more than one provision of his or her contract.

12

   Defendants deny they breached their Herbalife contracts.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9

la-1033212

1  **Authority:** CACI 300.

2  **Modified**: Adds that a Defendant may be found to have breached more than one

3  provision of the contract.

4

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Defendants and Counterclaimants object to this proposed instruction on several grounds. First, Defendants object to the portion of the proposed instruction in the first paragraph that states: "or to solicit people they had met through Herbalife for their Melaleuca business." This portion implies that conduct protected by California Business & Professions Code section 16600 is wrongful.

Furthermore, this instruction is vague and confusing because it does not reference what contract Defendants are alleged to have breached. Rule 8-A does not prohibit solicitation only. Rule 8-A is far more broad in that it purports to prevent Herbalife's distributors from "solicit[ing], promot[ing], sponsor[ing], or recruit[ing] any Herbalife Distributor or any Herbalife customer they became aware of in the course of their Herbalife Distributorship." Herbalife should not be permitted to narrow the restraint in the jury instructions. Noncompetition covenants (like 8-A) are to be closely scrutinized, and not tolerated. *Edwards vs. Arthur Anderson*, 44 Cal. 4th 937, 955 (2008). The instruction, therefore, misstates the law.

Defendants also object to the improper use of the term "confidential information" in the second paragraph. This phrase is argumentative. Defendants propose that the phrase "confidential information" be changed to "trade secrets."

Finally, Defendants dispute the portion of the proposed instruction that omits any reference to Defendants' affirmative defenses. This proposed instruction is based on CACI 300 which specifically provides for this instruction to contain information about the Defendants' affirmative defenses.

Defendants propose the following language for the end of the instruction:

> *Defendants also claim that the contracts are unenforceable because they contain illegal restraints of trade, are unconscionable, and have been procured by fraud.*

11

la-1033212

1    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2         Herbalife is entitled to inform the jury as to the specific nature of its claims.

3    While Defendants may challenge the legality of the non-solicitation provision in their

4    Distributor contracts, the provision is a key part of Herbalife's breach of contract

5    claim.

6         Moreover, there are distinct contract claims against the Defendants in this case.

7    Because several of the breach of contract allegations apply only to certain Defendants,

8    delineating each of the claims will help the jury distinguish what is at issue when

9    determining who breached what.  Including specific language regarding the provisions

10   at issue will provide guidance for the jury in their deliberations and minimize

11   confusion.

12        In addition, as stated more fully herein in its objections to Defendants' proposed

13   instructions on their affirmative defenses, Herbalife believes Defendants are not

14   entitled to a jury trial on any of their equitable affirmative defenses.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 4**
**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**
**(AS TO DEFENDANTS BRUCE ROTH, NANCY ROTH, JEFF ORR, KATHY ORR AND DIANNA THOMPSON ONLY)**

2

3

4      To recover damages from Bruce Roth, Nancy Roth, Jeff Orr, Kathy Orr, and

5   Dianna Thompson for breach of contract arising out of their solicitation of Herbalife

6   distributors, Herbalife must prove all of the following:

7      1.      That Herbalife and the Defendant entered into a contract by virtue of the

8              Defendant signing an Herbalife Distributorship Agreement;

9      2.      That the Herbalife Distributorship Agreement contained a provision

10             requiring the Defendant to abide by all Herbalife policies and rules;

11     3.      That Herbalife Rule 8-A prohibited Herbalife Distributors, for a period of

12             1 year after the termination of the Distributorship, from soliciting or

13             recruiting any Herbalife Distributor he/she became aware of during the

14             course of his/her Distributorship to any multi-level marketing or direct-

15             sales company.

16     4.      That Herbalife did all, or substantially all, of the significant things that the

17             contract required it to do;

18     5.      That the Defendant after resigning or being terminated from his or her

19             Herbalife Distributorship, solicited Herbalife Distributors to join

20             Melaleuca, a multi-level marketing company; and

21     6.      That Herbalife was harmed by the failure of the Defendant to comply with

22             the provision contained in the Distributorship Agreement requiring them

23             to abide by Herbalife rules, including Rule 8-A.

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI 303.

**Modified**: Accounts for the specific claims in this case.

| | GIVEN: | _____ |
|---|---|---|
| | REFUSED: | _____ |
| | MODIFIED: | _____ |
| | WITHDRAWN: | _____ |

la-1033212

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Defendants object to this proposed instruction in its entirety on the grounds that Plaintiff already has an instruction based on CACI 303 (Proposed Instruction No. 3). Thus, Proposed Instruction No. 4 is redundant.  Jury instructions should provide the relevant rules of law generally and should avoid singling out or stressing particular legal theories; otherwise, the Court's emphasis of certain facts or issues may cause a juror to attach undue importance or credibility to the selected matters.  *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235-36 (7th Cir. 1956); *Dupre v. Fru-Con Engineering Inc.*, 112 F.3d 329, 335 (8th Cir. 1997).   This instruction also improperly deviates from CACI 303 because it adds improper argument.

For example, Section 3 references Rule 8-A, but it does not properly summarize Rule 8-A.  Rule 8-A does more than prevent "soliciting or recruiting."  Rule 8-A prevents soliciting, promoting, sponsoring, or recruiting and thus is a much broader restriction on trade and is unenforceable under California law because noncompetition covenants are to be closely scrutinized and narrowly construed, and will not be enforced.  *Edwards vs. Arthur Anderson*, 44 Cal. 4th 937, 955 (2008).

In addition, Rule 8-A goes so far as to include any Herbalife distributor or customer the Defendants "became aware of in the course of their Herbalife Distributorship."  Defendants contend that this rule is illegal and Herbalife should not be permitted to narrow the restraint in the jury instructions.  Furthermore, Section 5, as written, would cause liability for lawful conduct in that it would impose liability on Defendants for soliciting or recruiting Herbalife distributors whom the Defendants were not "aware of in the course of their Herbalife Distributorship."  *See* Rule 8-A.

Defendants also object in that the language of Section 2, which refers to "Herbalife policies and rules," is vague and ambiguous and would thus tend to confuse the jury.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2        Herbalife is entitled to an instruction informing the jury as to the specific nature

3 of its claims.  While Defendants may challenge the legality of the non-solicitation

4 provision in their Distributor contracts, the provision is a key part of Herbalife's

5 breach of contract claim.  Including specific language regarding the provisions at issue

6 will provide guidance for the jury in their deliberations.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2
3

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 5**
**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**
**(AS TO DEFENDANTS ROBERT FORD, JULIA FORD, BRUCE ROTH,**
**NANCY ROTH, JEFF ORR, AND KATHY ORR ONLY)**

4
5
6

To recover damages from Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr, and Kathy Orr for breach of contract arising out of their use of Herbalife's trade secrets, Herbalife. must prove all of the following:

7
8
9

    1.    That Herbalife and the Defendant entered into a contract by virtue of the Defendant agreeing to the provisions of Herbalife's Confidentiality and Non-Disclosure Agreement ("CNDA");

10
11
12

    2.    That this agreement contained a provision requiring the Defendant not to "use the Confidential Information to solicit any Distributor or Customer of Herbalife.";

13
14

    3.    That Herbalife did all, or substantially all, of the significant things that the contract required it to do;

15
16

    4.    That the Defendant failed to hold in confidence information contained in Herbalife's confidential information; and

17
18

    5.    That Herbalife was harmed by the failure of the Defendant to comply with the CNDA.

19
20
21
22
23
24
25
26
27
28

17

la-1033212

**Authority:** CACI 303.

**Modified**: Accounts for specific claims in this case.

|  | GIVEN: \_\_\_\_\_ |
|---|---|
|  | REFUSED: \_\_\_\_\_ |
|  | MODIFIED: \_\_\_\_\_ |
|  | WITHDRAWN: \_\_\_\_\_ |

la-1033212

1
2

# DEFENDANTS' STATEMENT OF OBJECTION
# TO THE DISPUTED LANGUAGE

3    Defendants object to this proposed instruction in its entirety on the grounds that

4 Plaintiff already has an instruction based on CACI 303 (Proposed Instruction No. 3).

5 Thus, Proposed Instruction No. 5 is redundant.  Jury instructions should provide the

6 relevant rules of law generally and should avoid singling out or stressing particular

7 legal theories; otherwise, the Court's emphasis of certain facts or issues may cause a

8 juror to attach undue importance or credibility to the selected matters.  *Howard v.*

9 *Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235-36 (7th Cir. 1956); *Dupre v.*

10 *Fru-Con Engineering Inc.*, 112 F.3d 329, 335 (8th Cir. 1997).

11    Furthermore, the instruction contains improper argument and an improper

12 summary of the evidence.  The proposed instruction is also confusing, misleading, and

13 is not supported by the evidence.

14    For example, the proposed instruction references Herbalife's Confidentiality and

15 Non-Disclosure Agreement ("CNDA") but it does not specify which version of the

16 CNDA was agreed to by the Defendants.  (Exs. 11, 12, and 13).  Moreover, the

17 proposed instruction improperly references Herbalife's "confidential information"

18 without identifying that information.  This reference presupposes that the information

19 that Herbalife alleges was used by Defendants was, in fact, kept secret by Herbalife.

20    To the extent that the CNDA operates as a noncompetition agreement, such

21 covenants are to be closely scrutinized and narrowly construed, and will not be

22 enforced unless they plainly fall within certain statutory exceptions.  *Edwards vs.*

23 *Arthur Anderson*, 44 Cal. 4th 937, 955 (2008).

24    Finally, the proposed instruction deviates from CACI 303 to add improper

25 argument regarding the terms of the CNDA and should thus be rejected in its entirety.

26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2         Herbalife is entitled to instruction informing the jury as to the specific nature of

3    its claims.  There are distinct contract claims against the Defendants in this case.

4    Because several of the breach of contract allegations apply only to certain Defendants,

5    delineating each of the claims will help the jury distinguish what is at issue when

6    determining who breached what.  Including specific language regarding the provisions

7    at issue will provide guidance for the jury in their deliberations and minimize

8    confusion.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 6**
**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**
**(AS TO DEFENDANT DIANNA THOMPSON ONLY)**

To recover damages from Dianna Thompson for breach of contract arising out of her solicitation of Herbalife distributors while still enrolled in the organization, Herbalife must prove all of the following:

1.   That Herbalife and Dianna Thompson entered into a contract by virtue of her signing an Herbalife Tabulator Team Production Bonus Agreement;

2.   That the Herbalife Tabulator Team Production Bonus Agreement contained a provision prohibiting Defendant Thompson from recruiting any Herbalife Distributor in any way to join any other direct sales or multi-level marketing company;

4.   That Herbalife did all, or substantially all, of the significant things that the contract required it to do;

5.   That Defendant Thompson, while still an Herbalife Distributor, solicited Herbalife Distributors to join Melaleuca, a multi-level marketing company; and

5.   That Herbalife was harmed by the failure of Defendant Thompson to comply with the provision contained in her Tabulator Team Production Bonus Agreement.

21

la-1033212

**Authority:** CACI 303.

**Modified**: Accounts for the specific claims in this case.

|  | GIVEN: _____ |
|---|---|
|  | REFUSED: _____ |
|  | MODIFIED: _____ |
|  | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3          Defendants object to this proposed instruction in its entirety for the same reasons

4   as those stated in Defendants' objections to Proposed Instruction Nos. 4 and 5, above.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2

There are distinct contract claims against the Defendants in this case.  Because

3

several of the breach of contract allegations apply only to certain Defendants,

4

delineating each of the claims will help the jury distinguish what is at issue when

5

determining who breached what.  Including specific language regarding the provisions

6

at issue will provide guidance for the jury in their deliberations and minimize

7

confusion.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 7**
**BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS**
**(AS TO DEFENDANTS ROBERT FORD, JULIA FORD, BRUCE ROTH,**
**NANCY ROTH, JEFF ORR, AND KATHY ORR ONLY)**

To recover damages from Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr, and Kathy Orr for breach of contract arising out of their use of Herbalife's trade secrets, Herbalife must prove all of the following:

1.  That Herbalife and the Defendant entered into a contract by virtue of the Defendant agreeing to the provisions of Herbalife's Confidentiality and Non-Disclosure Agreement ("CNDA");

2.  That this agreement contained a provision requiring the Defendant not to "use the Confidential Information to solicit any Distributor or Customer of Herbalife.";

3.  That Herbalife did all, or substantially all, of the significant things that the contract required it to do;

4.  That the Defendant failed to hold in confidence information contained in Herbalife's confidential information; and

5.  That Herbalife was harmed by the failure of the Defendant to comply with the CNDA.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI 303.

**Modified**: Accounts for the specific claims in this case.

| | GIVEN: \_\_\_\_\_ |
|---|---|
| | REFUSED: \_\_\_\_\_ |
| | MODIFIED: \_\_\_\_\_ |
| | WITHDRAWN: \_\_\_\_\_ |

26

la-1033212

1

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3          Defendants object to this proposed instruction in its entirety for the same reasons

4    as those stated in Defendants' objections to Proposed Instruction Nos. 4 and 5, above.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2      There are distinct contract claims against the Defendants in this case.  Because

3  several of the breach of contract allegations apply only to certain Defendants,

4  delineating each of the claims will help the jury distinguish what is at issue when

5  determining who breached what.  Including specific language regarding the provisions

6  at issue will provide guidance for the jury in their deliberations and minimize

7  confusion.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 8**
**INTRODUCTION TO CONTRACT DAMAGES**

If you decide that Herbalife has proved its claim against any Defendant for breach of contract, you also must decide how much money will reasonably compensate Herbalife for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Herbalife in as good a position as it would have been if the Defendant had performed as promised.

To recover damages for any harm, Herbalife must prove:

1.    That the harm was likely to arise in the ordinary course of events from the breach of the contract; or

2.    That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach

Herbalife also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Herbalife claims damages according to the following calculation: The amount that Herbalife would have earned from the Distributors that each Defendant unlawfully recruited to Melaleuca had those Distributors remained with Herbalife.

la-1033212

**Authority:** CACI 350.

|  | GIVEN: _____ |
|---|---|
|  | REFUSED: _____ |
|  | MODIFIED: _____ |
|  | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Defendants object to the final paragraph of this proposed instruction.  The final paragraph misstates the law and contains improper argument in that it purports to have the Court instruct the jury on how to calculate damages for Plaintiff's breach of contract claims.  Such an instruction from the Court is unduly prejudicial and improper because, among other things, the jury could give undue weight to such an instruction from the Court.

The instruction is also vague because it does not specify what is meant by the phrase: "The amount that Herbalife would have earned . . . ."  The phrase "unlawfully recruited" is also vague and overbroad and should be tied to one of Herbalife's specific claims.

Furthermore, the proposed instruction is inconsistent with CACI 350 which does not provide for inclusion of a method to calculate damages.

Accordingly, Defendants propose that the final paragraph be amended to read as follows:

> *Herbalife claims damages for lost profits.*

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2      The CACI instructions require Herbalife to provide information regarding the

3  damages claimed.  In explaining how Herbalife claims damages for lost profits,

4  Herbalife has done precisely this.  Providing a framework for the jury's calculation

5  will aid the jury in determining Herbalife's losses as a result of Defendants'

6  wrongdoing.  Defendants' proposal does not give the jury sufficient information for it

7  to calculate damages.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1
2
### PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 9
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
### ADVANTAGE

3      Herbalife claims that Robert Ford, Julia Ford, Bruce Roth, Nancy Roth, Jeff Orr,

4   Kathy Orr, Jason Fisher and/or Dianna Thompson intentionally interfered with  an

5   economic relationship between Herbalife and its Distributors that probably would have

6   resulted in an economic benefit to Herbalife.  To establish this claim, Herbalife must

7   prove all of the following:

8      1.    That Herbalife and [See Exhibit A] were in an economic relationship that

9            probably would have resulted in an economic benefit to Herbalife;

10     2.    That the Defendant knew of the relationship;

11     3.    That the Defendant intended to disrupt the relationship;

12     4.    That the Defendant engaged in wrongful conduct by using Herbalife's

13           trade secrets to solicit Herbalife's Distributors for their Melaleuca

14           business;

15     5.    That the relationship was disrupted;

16     6.    That Herbalife was harmed; and

17     7.    That the Defendant's wrongful conduct was a substantial factor in causing

18           Herbalife's harm.

19
20
21
22
23
24
25
26
27
28

la-1033212

1    **Authority:** CACI 2202.

2

3                                              GIVEN:        _____

4                                              REFUSED:      _____

5                                              MODIFIED:     _____

6                                              WITHDRAWN:    _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3

4

5

6

7

8

9

10

Defendants object to the portion of the proposed instruction that purports to list all of the individuals with whom Herbalife was in an economic relationship. Defendants feel that it is unreasonable to include all of these names and such inclusion does not leave the instruction as brief and concise as possible. Furthermore, the inclusion of every possible name may well be confusing to the jury and might tend improperly lead the jury to give undue weight to Herbalife's claims in that jurors may conclude that Defendants must have engaged in some misconduct if so many names are listed.

11

12

13

Finally, Defendants object in that the unnecessary inclusion of these names may violate this Court's Local Rule No. 79-5.4, which protects individuals from having personal data identifiers revealed in public filings.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

1

2       Defendants' objection ignores well-settled law that recovery for an IIPEA claim

3   is premised upon the identification of specific individuals who have had their

4   economic relationships disrupted as a result of a party's wrongful conduct.  As CACI

5   2202 requires, the instruction must include the names of the persons or entities with

6   whom the Defendants were in an economic relationship that Herbalife allegedly

7   disrupted.  The first element in CACI 2202 reads as follows:  "That [*name of plaintiff*]

8   and [*name of third party*] were in an economic relationship that probably would have

9   resulted in an economic benefit to [*name of plaintiff*]."  The preface to the instruction

10  also contemplates identification of those third parties.

11      A claim for interference cannot proceed with an unidentified group of potential

12  distributors as the subject of the claim.  In *Westside Ctr. Assocs. v. Safeway Stores* 23,

13  42 Cal. App. 4th 507, 522 (1996), for example, the court held that "[t]he law precludes

14  recovery for overly speculative expectancies by initially requiring proof the business

15  relationship contained 'the probability of future economic benefit to the plaintiff.'"  *Id.*

16  (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)).  In *Westside Center*, the plaintiff

17  claimed that the defendant interfered not with a particular sale, but with the plaintiffs

18  general "opportunity" to sell its property to third parties.  The court held that this

19  "interference with the market" theory failed to provide sufficient factual basis to

20  determine whether the plaintiff was likely to have actually received the expected

21  benefit.  *See also Rickards v. Canine Eye Registration Found.*, 704 F.2d 1449, 1456

22  (9th Cir. 1983) (affirming summary judgment because no evidence of interference with

23  *ongoing* economic relationships, as opposed to potential new relationships).

24      Defendants oppose this instruction simply because they do not want, and cannot,

25  provide the names of the specific individuals whose relationships must form the basis

26  of their IIPEA counterclaim against Herbalife.  But the law is clear: an IIPEA claim

27  requires specificity.  The jury should be instructed likewise with regards to both

28  parties' claims.

36

la-1033212

1
2

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 10**
**INTRODUCTION TO TORT DAMAGES**
**—LIABILITY CONTESTED**

3   If you decide that Herbalife has proved its claim against Robert Ford, Julia Ford,

4   Bruce Roth, Nancy Roth, Jeff Orr, Kathy Orr, Jason Fisher and/or Dianna Thompson,

5   you also must decide how much money will reasonably compensate Herbalife for the

6   harm. This compensation is called "damages."

7   The amount of damages must include an award for each item of harm that was

8   caused by the Defendant's wrongful conduct, even if the particular harm could not

9   have been anticipated.

10   Herbalife does not have to prove the exact amount of damages that will provide

11   reasonable compensation for the harm. However, you must not speculate or guess in

12   awarding damages.

13   Herbalife claims damages according to the following calculation: The amount

14   that Herbalife would have earned from the Distributors that the Defendant unlawfully

15   recruited to Melaleuca had those Distributors remained with Herbalife.

16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI 3900.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3        Defendants object to the final paragraph of this proposed instruction.  The final

4    paragraph misstates the law and contains improper argument in that it purports to have

5    the Court instruct the jury on how to calculate damages for Plaintiff's breach of

6    contract claims.  Such an instruction from the Court is unduly prejudicial and improper

7    because, among other things, the jury could give undue weight to such an instruction

8    from the Court.

9        The instruction is also vague because it does not specify what is meant by the

10   phrase: "The amount that Herbalife would have earned…."  The phrase "unlawfully

11   recruited" is also vague and overbroad and should be tied to one of Herbalife's specific

12   claims.

13       Furthermore, the proposed instruction is inconsistent with CACI 3900 which

14   does not provide for inclusion of a method to calculate damages.

15       Accordingly, Defendants propose that the final paragraph be amended to read as

16   follows:

17            *Herbalife claims damages for lost profits.*

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

The CACI instructions require Herbalife to provide information regarding the damages claimed.  In explaining how Herbalife claims damages for lost profits, Herbalife has done precisely this.  Providing a framework for the jury's calculation will aid the jury in determining Herbalife's losses as a result of Defendants' wrongdoing.  Defendants' proposal does not give the jury sufficient guidance on how to calculate damages.

la-1033212

1
2
3

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 11**
**AFFIRMATIVE DEFENSE: INTENTIONAL INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**DUTY TO MITIGATE DAMAGES FOR PAST LOST EARNINGS**

4       A Counterclaimant is not entitled to recover damages for economic losses that

5   Herbalife proves the Counterclaimant could have avoided.  If you decide that

6   Counterclaimant could have recruited individuals other than Herbalife distributors for

7   his or her Melaleuca business, then you must not award him or her any damages for the

8   amount he or she would have earned from this recruitment.

9       To calculate the amount of damages you must:

10    1.    Determine the amount Counterclaimant would have earned but for
11        Herbalife's conduct; and

12    2.    Subtract the amount Counterclaimant earned or could have earned by
13        recruiting people other than Herbalife distributors for his or her Melaleuca
14        business.

15      The resulting amount is the Counterclaimant's damages for lost earnings.

16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1    **Authority:** CACI 3961.

2    **Modified**: Removes references to a return to gainful employment and inserts

3    references to Defendants' alternative source of income, the recruitment of non-

4    Herbalife distributors.

5

| | GIVEN: _____ |
| --- | --- |
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3    Defendants and Counterclaimants object to this proposed instruction in its

4   entirety because it misstates the law and contains improper argument.  This proposed

5   instruction is based on CACI 3961, but CACI 3961 is oriented to employment law

6   situations (i.e. referencing "returning to gainful employment") and, therefore, does not

7   fit well here.

8    Defendants and Counterclaimants suggest instead that the Court use the Ninth

9   Circuit Model Civil Jury Instruction No. 5.3 [Damages – Mitigation] because that

10   instruction is more general and, thus, more suited to this case.  In addition, Defendants

11   and Counterclaimants believe that Model Instruction No. 5.3 is brief, concise, and

12   more easily understood by the jury.

13    Accordingly, Defendants propose that this instruction read as follows:

14    *The Counterclaimants have a duty to use reasonable efforts to mitigate*

15    *damages. To mitigate means to avoid or reduce damages.*

16    *Herbalife has the burden of proving by a preponderance of the evidence:*

17    *1. that the Counterclaimants failed to use reasonable efforts to mitigate*

18    *damages; and*

19    *2. the amount by which damages would have been mitigated.*

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

Per this Court's stated preference, Herbalife has submitted the relevant CACI instruction, and provided the information requested by the CACI instruction accordingly.

Defendants' proposal does not give the jury sufficient guidance on how to calculate the amount that should have been mitigated.  Defendants do no dispute that the means of calculating that amount in Herbalife's proposed instruction is improper.

la-1033212

1
2
3

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 12**
**AFFIRMATIVE DEFENSE: INTENTIONAL INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**DUTY TO MITIGATE DAMAGES FOR FUTURE LOST EARNINGS**

4
5

A Counterclaimant is not entitled to recover damages for future economic losses
that Herbalife proves the Counterclaimant could have avoided.

6
7
8
9

If you decide that Counterclaimant will be able to recruit individuals other than
Herbalife distributors for his or her Melaleuca business, then you must not award him
or her any damages for the amount he or she will be able to earn from this recruitment.
To calculate the amount of damages you must:

10
11

1.      Determine the amount the Counterclaimant would have earned from his or
her Melaleuca business at the time he or she was injured by Herbalife's conduct; and

12
13

2.      Subtract the amount the Counterclaimant is reasonably able to earn from
recruiting individuals other than Herbalife distributors.

14

The resulting amount is the Counterclaimant's damages for future lost earnings.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1    **Authority:** CACI 3962.

2    **Modified**: Removes references to a return to gainful employment and inserts

3    references to Defendants' alternative source of income, the recruitment of non-

4    Herbalife distributors.

5

6    |  | GIVEN: _____ |
     | --- | --- |
     |  | REFUSED: _____ |
     |  | MODIFIED: _____ |
     |  | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Defendants object to this proposed instruction in its entirety because it misstates the law and contains improper argument.  In addition, it is redundant to the extent that it overlaps with Proposed Instruction No. 11.  Proposed Instruction No. 12 is based on CACI 3962, but CACI 3962 is oriented to employment law situations (i.e. referencing "returning to gainful employment") and, therefore, does not fit well here.

Defendants suggest instead that the Court use the Ninth Circuit Model Civil Jury Instruction No. 5.3 [Damages – Mitigation] because that instruction is more general and, thus, more suited to this case.  In addition, Defendants and Counterclaimants believe that Model Instruction No. 5.3 is brief, concise, and more easily understood by the jury.  (*See* Objections to Proposed Jury Instruction No. 11).

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2          Per this Court's stated preference, Herbalife has submitted the relevant CACI

3     instruction.

4          Defendants' proposal does not give the jury sufficient guidance on how to

5     calculate the amount that should have been mitigated.  Defendants do no dispute that

6     the means of calculating that amount in Herbalife's proposed instruction is improper.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 13**
***NOERR-PENNINGTON* DOCTRINE**

The Constitution ensures the right of everybody to petition or appeal to the courts for judicial action, recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others.  The law provides that the right to use the courts to seek judicial action is an important right, and that the exercise of that right, even if it causes others' harm, cannot normally be the basis for tort liability.  This right includes not only the filing and prosecuting of a lawsuit, it also includes conduct incidental to the lawsuit such as communications threatening to sue.

You cannot find Herbalife liable for any of the counterclaims based on the filing and prosecuting of this lawsuit against the Defendants or any conduct incidental to the lawsuit unless the lawsuit is a sham.

To prove that the litigation is a sham, and that it thus can be the basis for their counterclaims, Defendants must prove by clear and convincing evidence two things:

(1)     that Herbalife's suit is objectively baseless; and

(2)     the baseless suit must have been an attempt to harass or interfere directly with the business relationships of one or more competitors through the use of governmental process as opposed to through the outcome of the suit.

A lawsuit is objectively baseless only if no reasonable litigant could realistically expect to win.  Even if Herbalife's suit is unsuccessful that does not mean that it was objectively baseless.  In other words, if someone in Herbalife's position could have had a reasonable belief that there was a chance of winning, the suit was not objectively baseless.

If you find that Herbalife's suit was not objectively baseless, then you do not need to consider whether Herbalife's lawsuit was an attempt to interfere with the Defendants' businesses.  Instead, you must find for Herbalife and against Defendants

la-1033212

on their charges that Herbalife engaged in tortious conduct or unfair competition by filing and prosecuting the lawsuit or any incidental conduct.

If, however, you find that Herbalife's lawsuit was objectively baseless, then you must determine whether Herbalife's primary objective in bringing the lawsuit was to hurt the Defendants by bringing or continuing the lawsuit regardless of the ultimate outcome of the lawsuit, or whether Herbalife's primary objective was to obtain the relief sought in the suit.

If you find by clear and convincing evidence that no reasonable person could have realistically expected to succeed in the lawsuit Herbalife brought against Defendants, and that Herbalife's primary purpose in bringing or continuing it was to inflict harm on Defendants caused by the suit itself, as opposed to the relief sought, then you may consider the filing and prosecution of the lawsuit or any incidental conduct as a basis for Defendants' counterclaims.  You must next consider whether Defendants' counterclaims have been proven.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1   **Authority:**  *Professional Real Estate Inv., Inc. v. Columbia Pictures Indus.*, 508
2   U.S. 49 (1993); *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552
3   F.3d 1033 (9th Cir. 2009); *Theme Promotions, Inc. v. News American Marketing FSI*,
4   546 F.3d 991 (9th Cir. 2008); ABA, Model Jury Instructions in Civil Antitrust Cases
5   (2005).
6
7
8
9
10

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

la-1033212

1
2

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3   Counterclaimants object to this proposed instruction in its entirety because
4   Herbalife failed to raise the *Noerr-Pennington* doctrine as an affirmative defense in its
5   answer.  Failure to raise these affirmative defenses constitutes waiver.  *See Allustiarte*
6   *v. Cooper,* 786 F.2d 910, 914 (9th Cir. 1986); *Tancredi v. Dive Makai Charters,* 823
7   F.Supp. 778, 786 (D. Ha. 1993) (citing *Wright & Miller,* catch-all defense insufficient
8   and "Failure to plead an affirmative defense results in the waiver of that defense and its
9   exclusion from the case.").  This omission substantially prejudiced Counterclaimants.
10  Furthermore, the communication that Herbalife contends is protected by the *Noerr-*
11  *Pennington* ("N-P") doctrine was specifically referenced in the Counterclaim at
12  paragraph 28.  Accordingly, Herbalife was required to plead the N-P defense.

13  Counterclaimants also object in that the N-P doctrine is not applicable to this
14  action, but applies only to claims that are based on filing a lawsuit or otherwise
15  seeking governmental redress.  *See SOSA v. Direct TV, Inc.*, 437 F.3d 923, 929 (9th
16  Cir. 2006); *Bayou Fleet, supra,* 234 F.3d at 859 (N-P applies to "any concerted effort
17  to sway public officials").  Herbalife singles out two publications as if they are the
18  only bases of the counterclaims, but Herbalife did not seek governmental redress
19  through these documents.  They were part of a commercial attack on Counter-
20  claimants.  The documents did not petition the government, but were sent to Herbalife
21  distributors and to a private, non-governmental agency.

22  Finally, Counterclaimants object to this proposed instruction because it misstates
23  the law and contains improper argument.  The N-P doctrine does not apply if the
24  litigation is a sham and there is evidence that Herbalife's lawsuit was objectively
25  baseless.  For example, Herbalife sued Counterclaimants for violating ¶ 4 of their
26  distributorship agreements even though Herbalife now claims that it does not enforce
27  this provision.

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION

2   Herbalife did not need to raise the *Noerr-Pennington* doctrine in its answer.  It is

3   not an affirmative defense but an immunity under the First Amendment.  *See U.S. ex*

4   *rel. Wilson v. Maxxam, Inc.*, No. C 06-7497 CW, 2009 WL 322934, at *3 n.4 (N.D.

5   Cal. Feb. 9, 2009).  Moreover, Defendants' Counterclaim is devoid of any allegation

6   that they were harmed by the filing of the lawsuit and had only a passing reference to

7   one of the two emails to which the common interest instruction would apply.

8   (Counterclaim [Dkt. No. 98].)  It was not until Defendants' depositions that they

9   finally asserted they were harmed by the filing of the lawsuit and two emails.

10   Furthermore, Defendants were not prejudiced because Herbalife raised the

11   *Noerr-Pennington* doctrine at summary judgment.  Herbalife's filing of its lawsuit is

12   immune from state law liability unless Defendants can show "the lawsuit [is]

13   objectively baseless in the sense that no reasonable litigant could reasonably expect

14   success on the merits."  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d

15   991, 1007-08 (9th Cir. 2008).  No amount of discovery would have helped Defendants

16   to show this.  The fact that Herbalife obtained a preliminary injunction guts any such

17   notion.  *See Omni Res. Dev. Corp. v. Conoco Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984)

18   (suit cannot be baseless where, although outcome unknown, plaintiffs were successful

19   in securing preliminary injunction).

20   The *Noerr-Pennington* doctrine also immunizes Herbalife from any liability for

21   Herbalife's communications with its distributors.  Defendants contend that Herbalife's

22   communications with its distributors served as a warning that they would be sued if

23   they were to join Melaleuca.  The *Noerr-Pennington* doctrine, however, protects pre-

24   litigation communications such as demand letters and informing customers of a lawsuit

25   against a competitor.  *Theme Promotions*, 546 F.3d at 1007-08 (protecting

26   communication with the plaintiff's customers stating that they would be "embroiled"

27   in litigation if they placed orders with plaintiff).

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 14**
**AFFIRMATIVE DEFENSE: LITIGATION PRIVILEGE**

2

3       A privilege is a legal right to do a thing without suffering any legal liability for

4   doing it.

5       You are instructed that Herbalife had a privilege to file and prosecute its lawsuit

6   against the Defendants.  You therefore may not assess any damages or liability against

7   Herbalife for harm to Defendants or their businesses, if any, that was caused by the

8   filing or prosecution of Herbalife's lawsuit.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1    **Authority:** California Affirmative Defenses § 41:21 (2009); Cal. Civ. Code §

2    47(b); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232 (2007); *1100*

3    *Park Lane Assocs. v. Feldman*, 160 Cal. App. 4th 1467 (2008).

4

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Counterclaimants object to this proposed instruction in its entirety because Herbalife failed to raise the litigation privilege as an affirmative defense in its answer. Failure to raise these affirmative defenses constitutes waiver. *See Allustiarte v. Cooper,* 786 F.2d 910, 914 (9th Cir. 1986); *Tancredi v. Dive Makai Charters,* 823 F.Supp. 778, 786 (D. Ha. 1993) (citing *Wright & Miller,* catch-all defense insufficient and "Failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case."). This omission substantially prejudiced Counterclaimants. Furthermore, the communication that Herbalife contends is protected by the *Noerr-Pennington* ("N-P") doctrine was specifically referenced in the Counterclaim at paragraph 28. Accordingly, Herbalife was required to plead the N-P defense.

In addition, this proposed instruction misstates the law and is inapplicable to this case. The four elements needed to make a publication privileged under § 47(b) are: (1) it was made in a judicial proceeding; (2) it had some connection or logical relation to the action; (3) it was made to achieve the objects of the litigation; and (4) it involved litigants or other participants authorized by law. *Kimmel v. Goland*, 51 Cal.3d 205, 209 (1990). To be privileged, the communication must "function intrinsically" to "advance a litigant's case." *Rothman v. Jackson*, 49 Cal.App.4th 1134, 1147-1148 (1996). Neither the Sales Documents, nor the Important Message qualifies.

Finally, the proposed instruction is not supported by the evidence. The documents did not further a yet-to-be-filed lawsuit; indeed, one states that it should be used as a sales piece "in your pitch books and your trainings. . . ." These were not communications to the Court, the parties, counsel, or third-party witnesses. Herbalife presents no evidence about how the communications advanced the case. Indeed, the documents' signatories did not even submit declarations.

Accordingly, Counterclaimants request that this instruction be stricken.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

An affirmative defense may be raised for the first time at summary judgment in the absence of a showing of prejudice.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 367 (1998) (finding no waiver though privilege raised for the first time on summary judgment). Herbalife did so.  Defendants have not shown prejudice.

Defendants' Counterclaim is devoid of any allegation that they were harmed by the filing of the lawsuit and had only a passing reference to one of the two emails to which the common interest instruction would apply.  (Counterclaim [Dkt. No. 98].)  It was not until Defendants' depositions that they finally asserted they were harmed by the filing of the lawsuit and two emails.

Moreover, Defendants cannot not show prejudice with respect to the litigation privilege under California Civil Code section 47(b).  The privilege is absolute.  No amount of discovery could help Defendants vitiate the privilege.  As a matter of law, Defendants cannot obtain damages for any harm caused by Herbalife's filing and prosecution of this lawsuit.  The jury needs to be so instructed.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 15**
**AFFIRMATIVE DEFENSE: COMMON INTEREST PRIVILEGE**

A privilege is a legal right to do a thing without suffering any legal liability for doing it.

Herbalife had a privilege to communicate with its distributors regarding Defendants' conduct, the filing of this lawsuit, and steps Herbalife was taking to address Defendants' conduct, if you find the following to be true:

1.    Herbalife had an interest in the Defendants' conduct and steps to address that conduct.

2.    Herbalife's distributors had an interest in the Defendants' conduct and steps Herbalife was taking to address that conduct *or* Herbalife's distributors requested such information.

3.    The communications between Herbalife and its distributors related to that common interest.

If you find the privilege applies, you may not assess any damages or liability against Herbalife for harm to Defendants or their businesses, if any, that was caused by Herbalife's communications with its distributors regarding Defendants' conduct, the filing of this lawsuit, and steps Herbalife was taking to address Defendants' conduct.

The privilege does not apply, however, if it was abused.  Defendants have the burden of proving by a preponderance of the evidence all of the facts necessary to establish that the privilege was abused by Herbalife.  To prove abuse, Defendants must prove that Herbalife made defamatory statements about Defendants without reasonable grounds for believing the statement true or the statement was motivated by hatred or ill will towards Defendants.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI Qualified Privilege (Civ. Code § 47(c)) § 1723; BAJI 7.05.1; Cal. Civ. Code § 47(c).

| | |
|---|---|
| | GIVEN: _____ |
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

2

# DEFENDANTS' STATEMENT OF OBJECTION
# TO THE DISPUTED LANGUAGE

3    Counterclaimants object to this proposed instruction in its entirety because

4    Herbalife failed to raise the common interest privilege as an affirmative defense in its

5    answer.  Failure to raise these affirmative defenses constitutes waiver.  *See Allustiarte*

6    *v. Cooper,* 786 F.2d 910, 914 (9th Cir. 1986); *Tancredi v. Dive Makai Charters,* 823

7    F.Supp. 778, 786 (D. Ha. 1993) (citing *Wright & Miller,* catch-all defense insufficient

8    and "Failure to plead an affirmative defense results in the waiver of that defense and its

9    exclusion from the case.").  This omission substantially prejudiced Counterclaimants

10   because Counterclaimants could not address these issues in discovery.

11   Counterclaimants specifically referenced the communication that Herbalife contends is

12   protected by the *Noerr-Pennington* doctrine in their Counterclaim at paragraph 28.

13   Accordingly, Herbalife was required to plead the *Noerr-Pennington* defense.

14   In addition, this proposed instruction misstates the law, contains improper

15   argument, and is inapplicable to this case.  Under California law, the presence of

16   malice precludes a party from invoking the common interest privilege.  For purposes

17   of § 47(c), malice has been defined as "a state of mind arising from hatred or ill will,

18   evidencing a willingness to vex, annoy or injure another person."  *Brown v. Kelly*

19   *Broadcasting Co.*, 48 Cal.3d 711, 723 (1989).  Purposeful avoidance of the truth or

20   failure to investigate also gives rise to malice.  *See Rollenhagen v. City of Orange*, 116

21   Cal. App. 3d 414, 423 (1981).

22   "Malice in fact may be proved either directly or indirectly – either by direct

23   evidence . . . or by legitimate inferences to be drawn from other facts and surrounding

24   circumstances. . . ." *Siemon v. Finkle*, 190 Cal. 611, 618 (1923).   And malice may

25   appear from the statement at issue.  *See Tschirky v. Sup. Ct.*, 124 Cal.App.3d 534, 539

26   (1981).

27   Accordingly, Counterclaimants request that this instruction be stricken.

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2          An affirmative defense may be raised for the first time at summary judgment in

3   the absence of a showing of prejudice.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639

4   (9th Cir. 1993); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 367 (1998) (finding no

5   waiver though privilege raised for the first time on summary judgment).  Herbalife did

6   so.  Defendants have not shown prejudice.

7          Defendants' Counterclaim is devoid of any allegation that they were harmed by

8   the filing of the lawsuit and had only a passing reference to one of the two emails to

9   which the common interest instruction would apply.  (Counterclaim [Dkt. No. 98].)  It

10  was not until Defendants' depositions that they finally asserted they were harmed by

11  the filing of the lawsuit and two emails.

12         Defendants were not prejudiced with respect to the common interest privilege.

13  As demonstrated in Herbalife's reply brief in support of its motion for summary

14  judgment, Defendants took substantial discovery regarding the reasons why Herbalife

15  sent the two emails.  (Reply Brief [Dkt. No. 271] at 9-11.)

16         Therefore, Herbalife is entitled to an instruction on its affirmative defense.

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

### PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 16
### ENDLESS CHAIN SCHEME: DEFINITION

3

4

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

5

6

7

8

9

10

11

12

13

14

The Defendants contend that Herbalife has violated section 327 of the California Penal Code, which prohibits the operation of an endless chain scheme, and they seek to recover monies based on this claim.  Section 327 provides that every person who willfully contrives, prepares, sets up, or operates any endless chain scheme is guilty of a crime.  An 'endless chain' means any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme, or for the chance to receive compensation when a person introduced by the participant introduces a new participant.  In order to prove this crime, each of the following elements must be proven:

15

16

(1) a person willfully contrived, prepared, set up, or operated a business entity or other organization.

17

(2) the business entity or other organization gives compensation to a participant.

18

19

20

21

(3) the participant pays valuable consideration for the chance to receive such compensation for introducing one or more additional persons into participation in the scheme, or, for the chance to receive compensation when a person introduced by the participant introduces a new participant.

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1   **Authority:** Based on instruction approved by California Court of Appeal in

2   *People v. Frederick*, 142 Cal. App. 4th 400, 415 (Cal. Ct. App. 2006).

3

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

la-1033212

1
2

# DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3       Counterclaimants object to these proposed instructions in their entirety because

4    these instructions are not understandable to the average juror and are vague,

5    ambiguous, and confusing.  The basic requirement of jury instructions is that the

6    proposed instructions fairly and adequately cover the issues presented, correctly state

7    the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345,

8    1348 (9th Cir. 1998).  These instructions do not meet these requirements.

9       Moreover, some of these instructions are not relevant to this case to the extent

10   that they are based on model criminal, rather than civil, instructions.  Accordingly,

11   these proposed instructions are even more likely to mislead and confuse the jury.

12      Finally, these instructions misstate the law regarding endless chain/pyramid

13   schemes and contain improper argument.  For example, one of the proposed

14   instructions states: "Herbalife also contends that it has in place certain safeguards that

15   are designed to promote retail sales."  The instruction goes on to state that if  the "10

16   Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the

17   jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless

18   Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is

19   improper, and should be stricken.

20      Accordingly, Counterclaimants request that these instructions be stricken and

21   that the Court use the Endless Chain Scheme instructions proposed by

22   Counterclaimants.

23      As an alternative, Counterclaimants respectfully request that the jury be

24   instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless

25   Chain Scheme] which tracks the language of the controlling Ninth Circuit case,

26   *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION

2

3    First, Herbalife does not believe the jury should be instructed at all regarding

4    Defendants' endless chain scheme, for reasons explained in its Objection to

5    Defendants' proposed endless chain scheme instruction and in its Memorandum of

Contentions of Fact and Law (and to be explained in a motion in limine).

6

7    Moreover, although Defendants complain that Herbalife's instructions are

8    unduly complicated, the jury would need specific guidance to make the determination

9    as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have

10   offered a single instruction on endless chain scheme that is not only far too general, but

11   badly mischaracterizes the test on endless chain scheme.  Defendants' objection that

12   Herbalife's proposed instructions "are not relevant to this case to the extent that they

13   are based on model criminal, rather than civil, instructions" ignores the fact that its

endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code

14   § 327.  Defendants cannot prove their endless chain scheme claim without proving

15   violation of the criminal statute.

16   Furthermore, while Defendants contend generally that Herbalife's instructions

17   misstate the law on endless chain scheme, their objection is short on specifics.  The

18   "critical question" as to endless chain scheme "is whether the revenue that primarily

19   supports the commissions paid to all participants are generated from purchases of

20   goods and services that are not simply incidental to the purchase of the right to

21   participate in a money-making venture."  (FTC Advisory Opinion Letter, dated

22   January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618

23   (1979), Herbalife's proposed instructions focus on and explain this key factor, while

24   Defendants' proposed instruction ignores it.  And while Defendants object to

25   Herbalife's proposed instructions regarding prevention of inventory loading, and

26   encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

27

28

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 17**
**ENDLESS CHAIN SCHEME: MENTAL STATE**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

In Defendant's allegation that Herbalife is an endless chain scheme, there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator. Unless this mental state exists, the act to which it relates is not committed.

Here, Counterclaimants must prove that Herbalife "willfully" operated an endless chain scheme.  The definition of "willfully"is set forth elsewhere in these instructions.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CALJIC 3.31.5

| | |
|---|---|
| | GIVEN: _____ |
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2

## DEFENDANTS' STATEMENT OF OBJECTION TO THE DISPUTED LANGUAGE

3   Counterclaimants object to these proposed instructions in their entirety because
4   these instructions are not understandable to the average juror and are vague,
5   ambiguous, and confusing.  The basic requirement of jury instructions is that the
6   proposed instructions fairly and adequately cover the issues presented, correctly state
7   the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345,
8   1348 (9th Cir. 1998).  These instructions do not meet these requirements.

9   Moreover, some of these instructions are not relevant to this case to the extent
10  that they are based on model criminal, rather than civil, instructions.  Accordingly,
11  these proposed instructions are even more likely to mislead and confuse the jury.

12  Finally, these instructions misstate the law regarding endless chain/pyramid
13  schemes and contain improper argument.  For example, one of the proposed
14  instructions states: "Herbalife also contends that it has in place certain safeguards that
15  are designed to promote retail sales."  The instruction goes on to state that if  the "10
16  Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the
17  jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless
18  Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is
19  improper, and should be stricken.

20  Accordingly, Counterclaimants request that these instructions be stricken and
21  that the Court use the Endless Chain Scheme instructions proposed by
22  Counterclaimants.

23  As an alternative, Counterclaimants respectfully request that the jury be
24  instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless
25  Chain Scheme] which tracks the language of the controlling Ninth Circuit case,
26  *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

27
28

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

First, Herbalife does not believe the jury should be instructed at all regarding Defendants' endless chain scheme, for reasons explained in its Objection to Defendants' proposed endless chain scheme instruction and in its Memorandum of Contentions of Fact and Law (and to be explained in a motion in limine).

Moreover, although Defendants complain that Herbalife's instructions are unduly complicated, the jury would need specific guidance to make the determination as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have offered a single instruction on endless chain scheme that is not only far too general, but badly mischaracterizes the test on endless chain scheme.  Defendants' objection that Herbalife's proposed instructions "are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions" ignores the fact that its endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code § 327.  Defendants cannot prove their endless chain scheme claim without proving violation of the criminal statute.

Furthermore, while Defendants contend generally that Herbalife's instructions misstate the law on endless chain scheme, their objection is short on specifics.  The "critical question" as to endless chain scheme "is whether the revenue that primarily supports the commissions paid to all participants are generated from purchases of goods and services that are not simply incidental to the purchase of the right to participate in a money-making venture."  (FTC Advisory Opinion Letter, dated January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618 (1979), Herbalife's proposed instructions focus on and explain this key factor, while Defendants' proposed instruction ignores it.  And while Defendants object to Herbalife's proposed instructions regarding prevention of inventory loading, and encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 18**
**ENDLESS CHAIN SCHEME: "WILLFULLY" DEFINED**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

The word "willfully" when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act in question. The word "willfully" does not require any intent to violate the law, or to injure another, or to acquire any advantage.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1    **Authority**: CALJIC 1.20

2

| | GIVEN: _____ |
| --- | --- |
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Counterclaimants object to these proposed instructions in their entirety because these instructions are not understandable to the average juror and are vague, ambiguous, and confusing.  The basic requirement of jury instructions is that the proposed instructions fairly and adequately cover the issues presented, correctly state the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998).  These instructions do not meet these requirements.

Moreover, some of these instructions are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions.  Accordingly, these proposed instructions are even more likely to mislead and confuse the jury.

Finally, these instructions misstate the law regarding endless chain/pyramid schemes and contain improper argument.  For example, one of the proposed instructions states: "Herbalife also contends that it has in place certain safeguards that are designed to promote retail sales."  The instruction goes on to state that if  the "10 Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is improper, and should be stricken.

Accordingly, Counterclaimants request that these instructions be stricken and that the Court use the Endless Chain Scheme instructions proposed by Counterclaimants.

As an alternative, Counterclaimants respectfully request that the jury be instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless Chain Scheme] which tracks the language of the controlling Ninth Circuit case, *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

la-1033212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

Defendants' endless chain scheme claim is based on Penal Code § 327, which contains willfulness as an element.  Defendants cannot prove their endless chain scheme claim without proving willfulness.  *See People v. Frederick*, 142 Cal. App. 4th 400, 415 (2006).

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 19**
**ENDLESS CHAIN SCHEME: ELEMENTS OF STATUTORY OFFENSE**

3

4

**[NOTE: THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY. HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

5

6

7

8

9

10

11

In order to find for Defendants on their endless chain scheme claim, you would have to find that Herbalife willfully operates a scheme in which (1) individuals must pay for the right to sell products, (2) Herbalife encourages individuals to receive compensation through recruitment of others and not through product sales made by themselves or those they recruit *and* that Herbalife does not seek to encourage actual product sales by its distributors as opposed to promoting a recruitment scheme not involving genuine product sales.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1    **Authority***:   Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In*

2    *re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975) (two-prong test adopted by

3    *Omnitrition* court); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) (listing factors

4    which defeated endless chain scheme allegations and relied upon by *Omnitrition* court

5    to determine whether the second prong of the *Koscot* test had been met).

6

|  |  |
|---|---|
|  | GIVEN:          _____ |
|  | REFUSED:       _____ |
|  | MODIFIED:      _____ |
|  | WITHDRAWN:  _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3   Counterclaimants object to these proposed instructions in their entirety because

4   these instructions are not understandable to the average juror and are vague,

5   ambiguous, and confusing.  The basic requirement of jury instructions is that the

6   proposed instructions fairly and adequately cover the issues presented, correctly state

7   the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345,

8   1348 (9th Cir. 1998).  These instructions do not meet these requirements.

9   Moreover, some of these instructions are not relevant to this case to the extent

10   that they are based on model criminal, rather than civil, instructions.  Accordingly,

11   these proposed instructions are even more likely to mislead and confuse the jury.

12   Finally, these instructions misstate the law regarding endless chain/pyramid

13   schemes and contain improper argument.  For example, one of the proposed

14   instructions states: "Herbalife also contends that it has in place certain safeguards that

15   are designed to promote retail sales."  The instruction goes on to state that if  the "10

16   Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the

17   jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless

18   Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is

19   improper, and should be stricken.

20   Accordingly, Counterclaimants request that these instructions be stricken and

21   that the Court use the Endless Chain Scheme instructions proposed by

22   Counterclaimants.

23   As an alternative, Counterclaimants respectfully request that the jury be

24   instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless

25   Chain Scheme] which tracks the language of the controlling Ninth Circuit case,

26   *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

27

28

la-1033212

1

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2    First, Herbalife does not believe the jury should be instructed at all regarding

3 Defendants' endless chain scheme, for reasons explained in its Objection to

4 Defendants' proposed endless chain scheme instruction and in its Memorandum of

5 Contentions of Fact and Law (and to be explained in a motion in limine).

6    Moreover, although Defendants complain that Herbalife's instructions are

7 unduly complicated, the jury would need specific guidance to make the determination

8 as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have

9 offered a single instruction on endless chain scheme that is not only far too general, but

10 badly mischaracterizes the test on endless chain scheme.  Defendants' objection that

11 Herbalife's proposed instructions "are not relevant to this case to the extent that they

12 are based on model criminal, rather than civil, instructions" ignores the fact that its

13 endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code

14 § 327.  Defendants cannot prove their endless chain scheme claim without proving

15 violation of the criminal statute.

16    Furthermore, while Defendants contend generally that Herbalife's instructions

17 misstate the law on endless chain scheme, their objection is short on specifics.  The

18 "critical question" as to endless chain scheme "is whether the revenue that primarily

19 supports the commissions paid to all participants are generated from purchases of

20 goods and services that are not simply incidental to the purchase of the right to

21 participate in a money-making venture."  (FTC Advisory Opinion Letter, dated

22 January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618

23 (1979), Herbalife's proposed instructions focus on and explain this key factor, while

24 Defendants' proposed instruction ignores it.  And while Defendants object to

25 Herbalife's proposed instructions regarding prevention of inventory loading, and

26 encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 20**
**ENDLESS CHAIN SCHEME: HEADHUNTING FEE**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

In determining whether Herbalife operates a scheme in which individuals must pay for the right to sell product, you must decide whether Defendants have proven that a person seeking to become a distributor for Herbalife must pay a large sum of money, either as an entry fee (usually called a 'headhunting' fee) or for the purchase of a large amount of nonreturnable inventory.  If Herbalife does not require an entry free or the purchase of a large amount of nonreturnable inventory, then it is not engaged in an endless chain scheme.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1  **Authority**:   *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In*

2  *re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975) (two-prong test adopted by

3  *Omnitrition* court); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) (listing factors

4  which defeated endless chain scheme allegations and relied upon by *Omnitrition* court

5  to determine whether the second prong of the *Koscot* test had been met).

6

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' STATEMENT OF OBJECTION
TO THE DISPUTED LANGUAGE**

Counterclaimants object to these proposed instructions in their entirety because these instructions are not understandable to the average juror and are vague, ambiguous, and confusing.  The basic requirement of jury instructions is that the proposed instructions fairly and adequately cover the issues presented, correctly state the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998).  These instructions do not meet these requirements.

Moreover, some of these instructions are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions.  Accordingly, these proposed instructions are even more likely to mislead and confuse the jury.

Finally, these instructions misstate the law regarding endless chain/pyramid schemes and contain improper argument.  For example, one of the proposed instructions states: "Herbalife also contends that it has in place certain safeguards that are designed to promote retail sales."  The instruction goes on to state that if  the "10 Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is improper, and should be stricken.

Accordingly, Counterclaimants request that these instructions be stricken and that the Court use the Endless Chain Scheme instructions proposed by Counterclaimants.

As an alternative, Counterclaimants respectfully request that the jury be instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless Chain Scheme] which tracks the language of the controlling Ninth Circuit case, *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION

First, Herbalife does not believe the jury should be instructed at all regarding Defendants' endless chain scheme, for reasons explained in its Objection to Defendants' proposed endless chain scheme instruction and in its Memorandum of Contentions of Fact and Law (and to be explained in a motion in limine).

Moreover, although Defendants complain that Herbalife's instructions are unduly complicated, the jury would need specific guidance to make the determination as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have offered a single instruction on endless chain scheme that is not only far too general, but badly mischaracterizes the test on endless chain scheme.  Defendants' objection that Herbalife's proposed instructions "are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions" ignores the fact that its endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code § 327.  Defendants cannot prove their endless chain scheme claim without proving violation of the criminal statute.

Furthermore, while Defendants contend generally that Herbalife's instructions misstate the law on endless chain scheme, their objection is short on specifics.  The "critical question" as to endless chain scheme "is whether the revenue that primarily supports the commissions paid to all participants are generated from purchases of goods and services that are not simply incidental to the purchase of the right to participate in a money-making venture."  (FTC Advisory Opinion Letter, dated January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618 (1979), Herbalife's proposed instructions focus on and explain this key factor, while Defendants' proposed instruction ignores it.  And while Defendants object to Herbalife's proposed instructions regarding prevention of inventory loading, and encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 21**
**ENDLESS CHAIN SCHEME: RELEVANT FACTORS**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

In order to carry their burden of demonstrating that Herbalife operates an "endless chain scheme," Defendants must establish that distributors purchase products from Herbalife primarily for the purpose of obtaining the right to make money by recruiting others to become Herbalife distributors, and not for actual use or resale to individuals who intend to use the products.  If you find that distributors purchase Herbalife's products primarily in order to use them, or to resell them to others who will use them, then you must find in favor of Herbalife.  In making this determination you should consider, among other things, the following factors:

1) Whether Herbalife actually encourages product sales by its distributors, or instead simply promotes recruitment of distributors without regard to product sales for end use;

2) Evidence of actual usage of Herbalife products;

3) Whether Herbalife manufactures products that are genuinely intended for actual use, as opposed to sham products that are not expected to be used; and

4) Whether Herbalife invests in the quality of its products and the promotion of its brand in order to encourage product sales.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Authority**: *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975) (two-prong test adopted by *Omnitrition* court); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) (listing factors which defeated endless chain scheme allegations and relied upon by *Omnitrition* court to determine whether the second prong of the *Koscot* test had been met); (FTC Advisory Opinion Letter, dated January 14, 2004.).

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Counterclaimants object to these proposed instructions in their entirety because these instructions are not understandable to the average juror and are vague, ambiguous, and confusing.  The basic requirement of jury instructions is that the proposed instructions fairly and adequately cover the issues presented, correctly state the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998).  These instructions do not meet these requirements.

Moreover, some of these instructions are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions.  Accordingly, these proposed instructions are even more likely to mislead and confuse the jury.

Finally, these instructions misstate the law regarding endless chain/pyramid schemes and contain improper argument.  For example, one of the proposed instructions states: "Herbalife also contends that it has in place certain safeguards that are designed to promote retail sales."  The instruction goes on to state that if  the "10 Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is improper, and should be stricken.

Accordingly, Counterclaimants request that these instructions be stricken and that the Court use the Endless Chain Scheme instructions proposed by Counterclaimants.

As an alternative, Counterclaimants respectfully request that the jury be instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless Chain Scheme] which tracks the language of the controlling Ninth Circuit case, *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION

First, Herbalife does not believe the jury should be instructed at all regarding Defendants' endless chain scheme, for reasons explained in its Objection to Defendants' proposed endless chain scheme instruction and in its Memorandum of Contentions of Fact and Law (and to be explained in a motion in limine).

Moreover, although Defendants complain that Herbalife's instructions are unduly complicated, the jury would need specific guidance to make the determination as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have offered a single instruction on endless chain scheme that is not only far too general, but badly mischaracterizes the test on endless chain scheme.  Defendants' objection that Herbalife's proposed instructions "are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions" ignores the fact that its endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code § 327.  Defendants cannot prove their endless chain scheme claim without proving violation of the criminal statute.

Furthermore, while Defendants contend generally that Herbalife's instructions misstate the law on endless chain scheme, their objection is short on specifics.  The "critical question" as to endless chain scheme "is whether the revenue that primarily supports the commissions paid to all participants are generated from purchases of goods and services that are not simply incidental to the purchase of the right to participate in a money-making venture." (FTC Advisory Opinion Letter, dated January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618 (1979), Herbalife's proposed instructions focus on and explain this key factor, while Defendants' proposed instruction ignores it.  And while Defendants object to Herbalife's proposed instructions regarding prevention of inventory loading, and encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 22**
**ENDLESS CHAIN SCHEME: PRESENCE OF SAFEGUARDS**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

Herbalife also contends that it has in place certain safeguards that are designed to promote retail sales.  For example, Herbalife has in place a "10 customer rule" and a "70% rule."  If you find that Herbalife's safeguards are enforced and actually serve to deter "inventory loading" and encourage product sales to end users, then you should not find that Herbalife operates an endless chain scheme.

la-1033212

1  **Authority***:   Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996); *In*
2  *re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975) (two-prong test adopted by
3  *Omnitrition* court); *In re Amway Corp.*, 93 F.T.C. 618, 700 (1979) (listing factors
4  which defeated endless chain scheme allegations and relied upon by *Omnitrition* court
5  to determine whether the second prong of the *Koscot* test had been met).

6

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

2

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3

Counterclaimants object to these proposed instructions in their entirety because

4

these instructions are not understandable to the average juror and are vague,

5

ambiguous, and confusing.  The basic requirement of jury instructions is that the

6

proposed instructions fairly and adequately cover the issues presented, correctly state

7

the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345,

8

1348 (9th Cir. 1998).  These instructions do not meet these requirements.

9

Moreover, some of these instructions are not relevant to this case to the extent

10

that they are based on model criminal, rather than civil, instructions.  Accordingly,

11

these proposed instructions are even more likely to mislead and confuse the jury.

12

Finally, these instructions misstate the law regarding endless chain/pyramid

13

schemes and contain improper argument.  For example, one of the proposed

14

instructions states: "Herbalife also contends that it has in place certain safeguards that

15

are designed to promote retail sales."  The instruction goes on to state that if  the "10

16

Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the

17

jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless

18

Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is

19

improper, and should be stricken.

20

Accordingly, Counterclaimants request that these instructions be stricken and

21

that the Court use the Endless Chain Scheme instructions proposed by

22

Counterclaimants.

23

As an alternative, Counterclaimants respectfully request that the jury be

24

instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless

25

Chain Scheme] which tracks the language of the controlling Ninth Circuit case,

26

*Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

27

28

la-1033212

1      **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION**

2          First, Herbalife does not believe the jury should be instructed at all regarding

3   Defendants' endless chain scheme, for reasons explained in its Objection to

4   Defendants' proposed endless chain scheme instruction and in its Memorandum of

5   Contentions of Fact and Law (and to be explained in a motion in limine).

6          Moreover, although Defendants complain that Herbalife's instructions are

7   unduly complicated, the jury would need specific guidance to make the determination

8   as to whether Herbalife violates Penal Code § 327.  Defendants, in contrast, have

9   offered a single instruction on endless chain scheme that is not only far too general, but

10  badly mischaracterizes the test on endless chain scheme.  Defendants' objection that

11  Herbalife's proposed instructions "are not relevant to this case to the extent that they

12  are based on model criminal, rather than civil, instructions" ignores the fact that its

13  endless chain scheme claim *is based on the violation of a criminal statute*, Penal Code

14  § 327.  Defendants cannot prove their endless chain scheme claim without proving

15  violation of the criminal statute.

16         Furthermore, while Defendants contend generally that Herbalife's instructions

17  misstate the law on endless chain scheme, their objection is short on specifics.  The

18  "critical question" as to endless chain scheme "is whether the revenue that primarily

19  supports the commissions paid to all participants are generated from purchases of

20  goods and services that are not simply incidental to the purchase of the right to

21  participate in a money-making venture."  (FTC Advisory Opinion Letter, dated

22  January 14, 2004.)  Consistent with *Omnitrition, Koscott* and *Amway*, 93 F.T.C. 618

23  (1979), Herbalife's proposed instructions focus on and explain this key factor, while

24  Defendants' proposed instruction ignores it.  And while Defendants object to

25  Herbalife's proposed instructions regarding prevention of inventory loading, and

26  encouraging product sales, those concepts come directly from *Amway* and *Omnitrition*.

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 23**
**SPECIAL INSTRUCTION: ENDLESS CHAIN SCHEME-RECOVERY**

**[NOTE:  THIS INSTRUCTION IS CONDITIONALLY SUBMITTED ONLY, IN THE EVENT THE COURT DETERMINES THAT ENDLESS CHAIN ISSUES WILL BE PRESENTED TO THE JURY.  HERBALIFE CONTENDS THAT ENDLESS CHAIN ISSUES SHOULD NOT BE HEARD BY THE JURY.]**

If and only if you find that Herbalife operates an endless chain scheme, you must then consider whether Defendants are entitled to any recovery.  If you find that Herbalife operated an endless chain scheme and that Defendants were victims of such a scheme, then each Defendant is entitled to receive the consideration he or she paid to Herbalife pursuant to the scheme, less any amounts paid or consideration provided to such Defendant by Herbalife pursuant to the scheme.

la-1033212

1    **Authority:**   Civil Code § 1689.2

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Counterclaimants object to these proposed instructions in their entirety because these instructions are not understandable to the average juror and are vague, ambiguous, and confusing.  The basic requirement of jury instructions is that the proposed instructions fairly and adequately cover the issues presented, correctly state the applicable law, and not be misleading.  *Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir. 1998).  These instructions do not meet these requirements.

Moreover, some of these instructions are not relevant to this case to the extent that they are based on model criminal, rather than civil, instructions.  Accordingly, these proposed instructions are even more likely to mislead and confuse the jury.

Finally, these instructions misstate the law regarding endless chain/pyramid schemes and contain improper argument.  For example, one of the proposed instructions states: "Herbalife also contends that it has in place certain safeguards that are designed to promote retail sales."  The instruction goes on to state that if  the "10 Customer Rule" and the "70% Rule" are enforced and deter "inventory loading," the jurors "should not find that Herbalife operates an endless chain scheme."  [*See* Endless Chain Scheme: Presence of Safeguards]  This instruction, and all of those like it, is improper, and should be stricken.

Accordingly, Counterclaimants request that these instructions be stricken and that the Court use the Endless Chain Scheme instructions proposed by Counterclaimants.

As an alternative, Counterclaimants respectfully request that the jury be instructed through Counterclaimants Disputed Instruction No. 8 [Violation of Endless Chain Scheme] which tracks the language of the controlling Ninth Circuit case, *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).

la-1033212

1

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION

2

3        Herbalife's proposed instruction is based directly on Civil Code § 1689.2, the

4   only code section that affords a right of action for operation of an endless chain

5   scheme.  Civil Code § 1689.2 specifies the sole available recovery, which is a measure

6   of restitution.  Defendants have not proposed a jury instruction for recovery of losses

7   in connection with their endless chain scheme claim.  Instead, they apparently intend to

8   argue that normal tort damages apply.  But, by the terms of Civil Code § 1689.2,

9   normal tort damages are not recoverable.  Moreover, as explained in Herbalife's

10   Memorandum of Contentions of Fact and Law, and elsewhere, Defendants cannot

11   plausibly pursue their endless chain scheme claim through any of their other claims

12   (which is apparently what they seek to do).  In short, Defendants' endless chain

13   scheme claim is limited to a claim under Civil Code § 1689.2.  If the jury is to be

14   instructed on Defendants' endless chain scheme claim (which it should not be), then it

15   must be instructed as to the amounts recoverable pursuant to Civil Code § 1689.2.

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 1**
**CLAIMS AND DEFENSES**

3       To help you follow the evidence, I will give you a brief summary of the

4   positions of the parties:

5       Herbalife contends that Defendants used its trade secrets and breached their

6   agreements with Herbalife.  Herbalife contends it was damaged by Defendants'

7   conduct because Defendants' conduct interfered with Herbalife's business.

8       Defendants deny Herbalife's claims and assert counterclaims against Herbalife.

9   In those counterclaims, Defendants contend that Herbalife's rules and agreements are

10  illegal restraints of trade, Herbalife is an illegal pyramid scheme and Herbalife

11  engaged in false advertising.  Defendants contend that they were damaged by

12  Herbalife's conduct because Herbalife's conduct interfered with Defendants' business.

13  Herbalife denies Defendants' counterclaims.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

**Authority:** Ninth Circuit Model Jury Instruction 1.2.

**Modified**: To include claims and defenses.

| | GIVEN: | _____ |
|---|---|---|
| | REFUSED: | _____ |
| | MODIFIED: | _____ |
| | WITHDRAWN: | _____ |

95

la-1033212

1

2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3      **Objection:** Herbalife objects to this instruction on the grounds that Defendants

4   have included claims in their instructions which are not properly before the jury.  (See

5   Herbalife's objections to Defendants' Endless Chain Scheme instruction, Section

6   17500 and Section 16600 claims, *supra*.)

7      Herbalife believes that its version of Ninth Circuit Model Jury Instruction No.

8   1.2 is more appropriate and follows the form of the instruction more closely by simply

9   stating the names of the various claims brought by each party.  See Herbalife's

10  Proposed Instructions.  To the extent that this Court allows additional claims other than

11  Defendant's IIPEA claim to proceed before the jury, Herbalife suggests the following

12  language be used to describe Defendant's counterclaims:

13      "Defendants counterclaim that Herbalife (1) illegally restrained their ability to

14  recruit Herbalife Distributors for their new businesses; (2) interfered with Defendants'

15  prospective economic advantage; (3) operated an endless chain scheme; and (4)

16  engaged in false advertising."

17

18

19

20

21

22

23

24

25

26

27

28

96

la-1033212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

This instruction is proper because information about the Defendants' and Counterclaimants' counterclaims and affirmative defenses is required to be presented to the jury because once the right to a jury trial attaches, it extends to all factual issues necessary to resolve the claim. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999).  With regard to Counterclaimants' Lanham Act claims (i.e. false advertising), there is a right to a trial by jury under the Lanham Act.  *See L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F. Supp. 644, 646 (D. Me. 1986); *NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 422 (D. Minn. 1994).

Herbalife's objection acknowledges that the names of the claims brought be each party should be stated.  Its objection, however, is not well taken because when a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues.  "It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable.  As long as any legal cause is involved the jury rights it creates control."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).

In addition, issues raising mixed questions of law and fact may be presented to the jury if they are essentially factual.  *City of Monterey*, 526 U.S. at 720.

97

la-1033212

1
2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 2**
**LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE**

3

Under the law, a corporation is considered to be a person.  It can only act

4

through its employees, agents, directors, or officers.  Therefore, a corporation is

5

responsible for the acts of its employees, agents, directors, and officers performed

6

within the scope of authority.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

la-1033212

1  **Authority**: Ninth Circuit Model Jury Instruction 4.2

2

3

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## PLAINTIFF'S STATEMENT OF OBJECTION
### TO THE DISPUTED LANGUAGE

2

3        **Objection:** Herbalife objects to this instruction as misleading and irrelevant.

4   Defendants have not raised any elements in their claims which would require the

5   reading of this instruction.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

Ninth Circuit Model Jury Instruction No. 4.2 is a standard instruction used to explain the nature of a corporation as a legal "person."  All acts of Herbalife are taken through their human agents, employees, officers, and directors.  Herbalife's actions that are at issue in this case include adapting illegal restraints, using a business plan that is a pyramid scheme, making false and misleading statements about Herbalife's own business performance.  Herbalife has also made statements about the Defendants and Counterclaimants in this matter, for example, Tom Zimmer's "toxic/blackmail" memorandum (*see* Exhibit 25), Michael Johnson and Greg Probert's "Important Message" accusing Defendants of unlawful acts (*see* Exhibit 32), and Paul Greenberg's letters demanding that Jason Fisher and Robert Ford stop putting flyers on cars (*see* Exhibit 25).

Also, Herbalife's CEO, Michael Johnson testified that he routinely represented at large Herbalife events that Herbalife had reached $3 billion in retail sales in 2006, and $3.5 billion in retail sales in 2007.  Mr. Johnson knows that this claim is patently false.  Mr. Johnson also testified that he represented at Herbalife events that Herbalife paid its distributors $2.2 billion in commissions, royalties and bonuses in 2006.  This statement is also completely false.   Mr. Johnson made these statements in his capacity as an authorized agent of Herbalife.

In addition, much of Counterclaimants evidence will come through the testimony of Herbalife's employees, agents, officers, and directors.  Accordingly, the jury is entitled to know the legal relationship between these people and Herbalife.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' DISPUTED INSTRUCTION NO. 3**
**AGENT AND PRINCIPAL—DEFINITION**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.  One may be an agent without receiving compensation for service.  The agency agreement may be oral or written.

la-1033212

**Authority**: Ninth Circuit Model Jury Instruction 4.4.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3    Herbalife objects to this instruction as misleading and irrelevant.  Defendants

4 have not raised any elements in their claims which would require the reading of this

5 instruction.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION**

There will be evidence in the case about conduct or statements of Herbalife's agents for which Herbalife is legally bound.  For instance, Herbalife's trainer, Stefan Gratziani, made admissions about Herbalife's business model that are particularly damning.  Counterclaimants will offer the videotape of this meeting and a transcript of his remarks into evidence.  Herbalife executive attended the meeting and adapted Mr. Gratziani's remarks.  (*See* Exhibit Nos. 648-649.)  Moreover, other Herbalife agents will testify at trial and Counterclaimants will testify about their dealings with Herbalife's agents.

Counterclaimants anticipate that Herbalife will try to distance themselves from Mr. Gratziani's statements.  Accordingly, the law of agency as expressed in this model instruction would assist the jury.

la-1033212

1

2

## DEFENDANTS' DISPUTED INSTRUCTION NO. 4
## ACT OF AGENT IS ACT OF PRINCIPAL—SCOPE OF AUTHORITY NOT IN ISSUE

3    Any act or omission of an agent within the scope of authority is the act or

4  omission of the principal.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1    **Authority**: Ninth Circuit Model Jury Instruction 4.6.

2

3    | | GIVEN: _____ |
     | --- | --- |
     | | REFUSED: _____ |
     | | MODIFIED: _____ |
     | | WITHDRAWN: _____ |

la-1033212

1

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3       Herbalife objects to this instruction as misleading and irrelevant.  Defendants

4   have not raised any elements in their claims which would require the reading of this

5   instruction.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

Ninth Circuit Model Jury Instruction No. 4.6 is a standard instruction used to explain the nature of the agency relationship.  All acts of Herbalife are taken through their human agents, employees, officers, and directors.  Herbalife's actions that are at issue in this case include adapting illegal restraints, using a business plan that is a pyramid scheme, making false and misleading statements about Herbalife's own business performance.  Herbalife's agents have made statements about the Defendants and Counterclaimants in this matter, for example, Tom Zimmer's "toxic/blackmail" memorandum (*see* Exhibit 25), Michael Johnson and Greg Probert's "Important Message" accusing Defendants of unlawful acts (*see* Exhibit 32), and Paul Greenberg's letters demanding that Jason Fisher and Robert Ford stop putting flyers on cars (*see* Exhibit 25).

Also, Herbalife's CEO, Michael Johnson testified that he routinely represented at large Herbalife events that Herbalife had reached $3 billion in retail sales in 2006, and $3.5 billion in retail sales in 2007.  Mr. Johnson knows that this claim is patently false.  Mr. Johnson also testified that he represented at Herbalife events that Herbalife paid its distributors $2.2 billion in commissions, royalties and bonuses in 2006.  This statement is also completely false.   Mr. Johnson made these statements in his capacity as an authorized agent of Herbalife.

In addition, much of Counterclaimants evidence will come through the testimony of Herbalife's employees, agents, officers, and directors.  Accordingly, the jury is entitled to know the legal relationship between these people and Herbalife.  Furthermore, there will be evidence in the case about conduct or statements of Herbalife's agents for which Herbalife is legally bound

la-1033212

1
2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 5**
**DAMAGES—MITIGATION**

3
4

The plaintiff and counterclaimants have a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

5
6

The defendants or counterdefendants have the burden of proving by a preponderance of the evidence:

7
8

1.      that the plaintiff or counterclaimants failed to use reasonable efforts to mitigate damages; and

9

2.      the amount by which damages would have been mitigated.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**<u>Authority</u>**: Ninth Circuit Model Jury Instruction 5.3.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1
2

**PLAINTIFF'S STATEMENT OF OBJECTION
TO THE DISPUTED LANGUAGE**

3      Herbalife objects to this instruction because Counterclaimaints are not entitled to

4  claim that Herbalife should have mitigated its damages.  To prove failure to mitigate,

5  Defendants must show damages for harm that Defendants prove Herbalife could have

6  avoided with reasonable efforts or expenditures.  This harm must have "already

7  occurred and it then has become the obligation of the injured or damaged party to

8  avoid continuing or enhanced damages through reasonable efforts."  *Valle de Oro*

9  *Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

10      But Defendants have failed to identify any way Herbalife could have limited its

11  damages once Defendants had misused Herbalife's trade secrets, used coercive and

12  deceptive tactics to recruit Herbalife distributors, and disrupted the relationships in the

13  uplines and downlines of those distributors.  That is the specific harm at issue here.  It

14  is not, as Defendants contend, that Herbalife could have offered a better business

15  opportunity, including expanding its product offerings, to thwart Defendants' attempts

16  to lure Herbalife distributors to Melaleuca.  This is irrelevant. Any duty Herbalife

17  would have had to mitigate began only after Defendants began to misappropriate its

18  trade secrets, and not when it formulated its business opportunity.  Defendants have

19  never identified any proper remedial measures Herbalife could have taken, and thus are

20  not entitled to this instruction.

21      As to this instruction's potential application to Herbalife's affirmative defense

22  regarding Defendants' failure to mitigate their damages, Herbalife objects on the

23  grounds that this instruction is largely duplicative of CACI 358, which has also been

24  proposed, and should be used per this Court's stated preference for CACI instructions.

25
26
27
28

112
**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

2

3        If Defendants breached the contract and the breach caused harm, Herbalife is not

4   entitled to recover damages for harm that Defendants prove could have avoided with

5   reasonable efforts or expenditures.  Herbalife's objection attempts to obscure this

6   point, but its argument ignores Herbalife's legal duty to mitigate its damages.

7        "A plaintiff who suffers damage as a result of either a breach of contract or a tort

8   has a duty to take reasonable steps to mitigate those damages and will not be able to

9   recover for any losses which could have been thus avoided." *Shaffer v. Debbas*,17

10  Cal.App.4th 33, 41 (1993). "A party injured by a breach of contract is required to do

11  everything reasonably possible to negate his own loss and thus reduce the damages for

12  which the other party has become liable.  The plaintiff cannot recover for harm he

13  could have foreseen and avoided by such reasonable efforts and without undue

14  expense." *Brandon & Tibbs v. Kevorkian.*, 226 Cal.App.3d 442, 460 (1990).

15       It is for the jury—not Herbalife—to decide whether Defendants have met their

16  burden to show that Herbalife failed to use reasonable efforts to mitigate its damages

17  and the amount by which those damages would have been mitigated.  It is premature

18  for Herbalife to claim the Defendants cannot do so.

19       Herbalife blames Counterclaimants for its loss of distributors to Melaleuca, but

20  Herbalife is responsible for its own losses, if any.  To the extent any Herbalife

21  distributor was receptive to moving to Melaleuca, it was because Herbalife insists on

22  rewarding purchases and recruiting instead of retail sales, fails to provide an attractive

23  business opportunity and persists with large purchase quotas and a very narrow

24  product offering.  Herbalife's model also rewards front-loading, inventory loading, and

25  does not encourage retail sales.  Herbalife could mitigate any damages by simply

26  changing its business practices so that it would not be so vulnerable to recruiting

27  efforts from a superior competitor, Melaleuca.

28

la-1033212

**DEFENDANTS' DISPUTED INSTRUCTION NO. 6**
**DAMAGES ARISING IN THE FUTURE—DISCOUNT TO**
**PRESENT CASH VALUE**

Any award for future economic damages must be for the present cash value of those damages.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred or would have been received.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money which may be caused by future inflation.

la-1033212

**Authority**: Ninth Circuit Model Jury Instruction 5.4.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

**PLAINTIFF'S STATEMENT OF OBJECTION
TO THE DISPUTED LANGUAGE**

2

3       Herbalife objects to this instruction on the basis that the Court should use CACI

4   3904 instead, which Herbalife has proposed in compliance with this Court's stated

5   preference to use CACI instructions.  *See* Herbalife's Proposed Instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION**

2

3          This proposed instruction is proper because the Ninth Circuit Model Instructions

4   are better used by a federal district court than CACI instructions when both sources

5   cover the same legal issue.  This Ninth Circuit instruction appears to be more clear and

6   will be easily understood by the jurors in this case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' DISPUTED INSTRUCTION NO. 7**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**ADVANTAGE**

Counterclaimants claim that Herbalife intentionally interfered with economic relationships between them, or any of them, and former and current Herbalife's customers and independent distributors that probably would have resulted in an economic benefit to the Counterclaimants. To establish this claim, Counterclaimants, or any of them, must prove all of the following:

1.      That Counterclaimants and former and current customers and independent distributors of Herbalife were in an economic relationship that probably would have resulted in an economic benefit to the Counterclaimants.

2.      That Herbalife knew of the relationship;

3.      That Herbalife intended to disrupt the relationship;

4.      That Herbalife engaged in wrongful conduct through misrepresentation or violation of law;

5.      That the relationship was disrupted;

6.      That Counterclaimants, or any of them, were harmed; and

7.      That Herbalife's wrongful conduct was a substantial factor in causing Counterclaimants' harm.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI 2202.

**Modified**: Section No. 1 has been modified to reflect the claims.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

CACI 2202 requires the instruction to include the names of the persons or entities with whom the Defendants were in an economic relationship.  The first element in CACI 2202 reads as follows:  "That [*name of plaintiff*] and [*name of third party*] were in an economic relationship that probably would have resulted in an economic benefit to [*name of plaintiff*]."  Defendants must "fill in the blanks."  The preface to the instruction also contemplates identification of those third parties. Defendants refer to an unspecified group of "former and current customers and independent distributors of Herbalife."  California law precludes this approach.  In *Westside Ctr. Assocs. v. Safeway Stores* 23, 42 Cal. App. 4th 507, 522 (1996), for example, the court held that "[t]he law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained 'the probability of future economic benefit to the plaintiff.'"  *Id., quoting Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).  In *Westside Center*, the plaintiff claimed that the defendant interfered not with a particular sale, but with plaintiff's general "opportunity" to sell. The court held that this allegation failed to provide any factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit.  The court held that without an existing relationship with an identifiable buyer, the plaintiff's expectation of a future sale was at most a "hope." The same is true here. Defendants must specifically identify third parties.

In addition, CACI provides that "the court must specifically state for the jury the conduct that the judge has determined as a matter of law would satisfy the 'wrongful conduct' standard."  There are brackets in the instruction for this purpose.  According to CACI, "the jury must then decide whether the defendant engaged in the conduct as defined by the judge."  Judicial Counsel of California Civil Jury Instructions, v. 1 at 1167 (2009).  Defendants' proposed instruction fails in this regard as well.

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

It would be a waste of time and inefficient for the Court to have to include the names of the hundreds, if not thousands, of distributors and individuals in the Defendant's network of personal contacts in connection with this instruction. Moreover, the case cited by Herbalife does not mandate the result for which Herbalife argues.  There is no "overly speculative" expectancy here.  It is undisputed that Defendants had ongoing economic and business relationships with scores of individuals that contained "the probability of future economic benefit to the plaintiff." These individuals have been identified in the lists produced in discovery between the parties and will be specifically named and identified during the course of the trial.  But to require the jury to sit through an endless list of these names will only serve to confuse and mislead the jury and is not an efficient use of the Court's judicial resources.

With regard to Herbalife's second objection, if the Court tells the jury what conduct is wrongful, it will violate Counterclaimants' right to a jury trial.  In addition, other jury instructions cover wrongful acts.  For example, CACI 4400 defines what wrongful acts constitute "misappropriation" of trade secrets.  CACI 3940 also defines what wrongful acts satisfy the definitional requirements of "malice," "oppression," "despicable conduct," and "fraud."  Furthermore, the text of CACI 2202 requires the Court to "insert grounds for wrongfulness, e.g., misrepresentation, fraud, violation of statute."  The proposed instruction does this for element 4.  Specifically, the instruction states that Counterclaimants must prove that "Herbalife engaged in wrongful conduct through *misrepresentation or violation of law*."  (emphasis added.)  Accordingly, the instruction is proper and should be given to assist the jury.

la-1033212

1

2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 8**
**VIOLATION OF ENDLESS CHAIN SCHEME**

3

4

5

6

7

　　　In considering whether Herbalife engaged in an endless chain scheme, you must decide whether Herbalife's focus was in promoting the Herbalife program to its distributors rather than selling the Herbalife products to retail customers.  If you find that Herbalife's focus was on promoting the Herbalife program to its distributors, you must find that Herbalife engaged in an endless chain scheme.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1      **Authority**: Penal Code Section 327; *Webster v. Omnitrition Intl.*, 79 F. 3d 776,

2 781 (9th Cir. 1996).

3

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3    First, there is no right to a jury under an endless chain scheme claim.  The sole

4 private remedy for violation of California Penal Code § 327 is under Civil Code §

5 1689.2, which affords only the remedy of restitution pursuant to rescission of the

6 underlying contract.  In determining the right to a jury trial, the Court must consider

7 the "gist" of the claim.  Where the remedies are solely equitable, there is no right to a

8 jury trial.  *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284-285 (2006).

9 Furthermore, it is unclear to Herbalife whether defendants are seeking to assert endless

10 chain scheme as a predicate act for their intentional interference claim.  If so, then

11 there is no plausible connection between those two claims, and defendants are not

12 entitled to an endless chain instruction in connection with their intentional interference

13 claim.  *See, e.g., Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008)

14 (defendants must prove "economic harm to [them] proximately caused by the

15 defendant's wrongful act, including an intentional act by the defendant that is designed

16 to disrupt the relationship between the plaintiff and a third party.").

17    In any event, Defendants' proposed instruction misstates the test for an endless

18 chain scheme.  First, it omits elements of the test.  *See, e.g., Webster v. Omnitrition*

19 *Int'l, Inc.*, 79 F.3d 776, 781 (9th Cir. 1996) (defining pyramid as (1) the right to sell a

20 product and (2) the right to receive in return for recruiting other participants into the

21 program rewards which are unrelated to the sale of the product to the ultimate users).

22 It also improperly frames the issue as "whether Herbalife's focus was in promoting the

23 Herbalife program to its distributors rather than selling the Herbalife products to retail

24 customers."  That is not the relevant inquiry.  The key issue is "whether the revenue

25 that primarily supports the commissions paid to all participants are generated from

26 purchases of goods and services that are not simply incidental to the purchase of the

27 right to participate in a money-making venture."  (FTC Advisory Opinion Letter, dated

28 January 14, 2004.)

la-1033212

1

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

2

3          This instruction is proper because it is based on the Ninth Circuit's holding in

4   *Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).  *Omnitrition* is

5   binding law in this case and supercedes the nonbinding authorities cited by Herbalife

6   in its objection (including the FTC Advisory Opinion).  It would certainly be improper

7   for this Court to ignore *Omnitrition* to instead follow an FTC Advisory Opinion.

8          Furthermore, the violation of the Endless Chain Scheme statute (Penal Code

9   327) is a predicate wrongful act that can support an intentional interference with

10  prospective advantage claim.  To establish IIPEA, a plaintiff must prove that the

11  defendant "engaged in an independently wrongful act."  *Korea Supply Co. v. Lockheed

12  Martin Corp.*, 29 Cal.4th 1134, 1158 (2003).  An act is "independently wrongful" if it

13  is "proscribed by some constitutional, statutory, regulatory, common law, or other

14  determinable legal standard."  *Korea Supply*, 29 Cal.4th at 1158-59.  Violation of the

15  Endless Chain Scheme statute is an inherent fraud and is actionable.

16         Causation is a question of fact for the jury to determine based on the facts and

17  circumstances of the case.  Herbalife's cited authorities regarding the right to a jury

18  trial are all California authorities.  Federal law, however, determines the extent of the

19  Defendants rights to a jury trial under the Seventh Amendment.  When a case involves

20  mainly equitable issues and only "incidental" legal issues, the right to a jury trial still

21  attaches to the legal issues.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).

22         Finally, California Civil Code section 1689.2 is not an exclusive remedy.  The

23  text of the statute provides, in pertinent part, as follows: "A participant in an endless

24  chain scheme . . . may rescind the contract upon which the scheme is based, and may

25  recover all consideration paid pursuant to the scheme, less any amounts paid or

26  consideration provided to the participant pursuant to the scheme . . . ."  Nothing within

27  the text of the statute provides that Section 1689.2 is the sole remedy for victims of an

28  endless chain scheme.  Thus, this instruction is proper.

la-1033212

**DEFENDANTS' DISPUTED INSTRUCTION NO. 9**
**BUSINESS & PROFESSIONS CODE SECTION 17500**

Any advertising that is known by the business or person making the advertisement to be untrue or misleading or which by exercise of reasonable care should be known, to be untrue or misleading is illegal.

The duty of reasonable care to determine whether an advertisement is true or misleading is not satisfied by blind reliance on representations made by others. Instead, the law requires that those responsible for the advertisement must verify and investigate to make sure that the representations made in an advertisement are true and correct.

It is not necessary that counterclaimants establish that they have been injured or damaged by the false advertising. Counterclaimants need only show that members of the public are likely to be deceived by Herbalife's false advertising.

la-1033212

**Authority**: Bus. & Prof. Code Section 17500.

|  | GIVEN: _____ |
|---|---|
|  | REFUSED: _____ |
|  | MODIFIED: _____ |
|  | WITHDRAWN: _____ |

la-1033212

1

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

2

3    Herbalife objects to this instruction, because there is no right to a jury under the

4    UCL.  *See, e.g., People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 721, 732-733

5    (2002) ("the concern that juror passion or prejudice may affect a punitive damage

6    award . . . is absent in UCL cases because there is no right to a jury trial in such

7    cases.").  Furthermore, defendants have no standing to raise a claim under § 17500 on

8    behalf of themselves or anyone else.  To have standing, Defendants must show (1) they

9    suffered injury in fact, (2) in the form of lost money or property eligible for restitution,

10   (3) that was "as a result of" the unfair competition.  Cal. Bus. & Prof. Code § 17204.

11   Furthermore, Defendants cannot "bootstrap" their § 17500 claim into their claim for

12   intentional interference.  As the court held in *Hodge v. Superior Court*, 145 Cal. App.

13   4th 278, 284-285 (2006), "the UCL is not simply a legislative conversion of a legal

14   right into an equitable one.  It is a separate equitable cause of action," which is

15   "independently actionable" and "subject to … distinct remedies."  Defendants cannot

16   attach their UCL claim to yet another claim in order to seek remedies not available

17   under the UCL.

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

This instruction is proper because Defendants and Counterclaimants have a right to a jury on their tort claims, including their claim for Intentional Interference with Prospective Economic Advantage ("IIPEA").  To establish IIPEA, a plaintiff must prove that the defendant "engaged in an independently wrongful act."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158 (2003).  An act is "independently wrongful" if it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply*, 29 Cal.4th at 1158-59.  Thus, a violation of Section 17500 will satisfy the independent wrongful act necessary to prevail on the Defendants' and Counterclaimants' IIPEA claim and Defendants and Counterclaimants are, accordingly, entitled to this instruction.

Furthermore, this instruction is proper because once the fundamental, Constitutional right to a jury trial pursuant to Seventh Amendment attaches, it extends to all factual issues necessary to resolve the claim.  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999).  When a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues.  "It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable.  As long as any legal cause is involved the jury rights it creates control."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).  The Court should, therefore, include this proposed instruction.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

**DEFENDANTS' DISPUTED INSTRUCTION NO. 10**
**FALSE ADVERTISING (SECTION 43(A)) LANHAM ACT CLAIM**

2

3

To succeed on a claim of false advertising, Counterclaimants must prove all of the following:

4

5

1.    Herbalife made one or more false statements about its business;

6

2.    The statement was made in commercial advertisement or promotion;

7

3.    The statement actually deceived or had the tendency to deceive a substantial segment of its audience;

8

9

4.    The deception is material;

10

5.    Herbalife caused its false statement to enter interstate commerce; and

11

6.    Counterclaimants have been or are likely to be injured as a result of the false statement.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority**: Section 43(a) Lanham Act 15 U.S.C. § 1125(a); *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038,1051 (9th Cir. 2008).

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Herbalife objects to this instruction on the ground that Defendants have never before asserted a Lanham Act claim.  At this stage in the action, it is too late for them to assert it and, in any event, they have not sought leave to amend to add it.  See *Orlowski v. Massachusetts Rehabilitation Com.*, 585 F. Supp. 1408, 1409 (D. Mass. 1984) ("each side in a lawsuit must give the other some idea of what laws and facts it is relying on for relief or as a defense. If each side has to put its cards on the table, the Court can weed out cases that are frivolous and, if a case does get to trial, each side has been able to prepare and neither side is unfairly surprised by the other's presentation."). In addition, Defendants have not and cannot allege facts demonstrating a claim for false advertising under the Lanham Act.  As the court held in *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003):  "In order to prove a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a claimant must establish: 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public." Defendants' purported claim has nothing to do with representations concerning Herbalife's products and, therefore, Defendants cannot pursue a Lanham Act claim.

24

25

26

27

28

la-1033212

1

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

2

3       Federal courts employ notice pleading and Counterclaimants' need only provide

4  "a short and  plain statement of the claim showing that [Counterclaimants are] entitled

5  to relief."  Fed. R. Civ. P. 8(a).  If facts giving the court jurisdiction are set forth in the

6  complaint, the provision conferring jurisdiction *need not be specifically pleaded*.

7  *Aguirre v. Automotive Teamsters*, 633 F.2d 168, 174 (9th Cir. 1980)(emphasis added);

8  *see also Fanucchi & Limi Farms v. United Agri Prods.,* 414 F.3d 1075, 1082 (9th Cir.

9  2005)(reversing summary judgment to defendants on novation claim despite

10  defendants' argument that it was not specifically pleaded in complaint).   Indeed, under

11  Rule 8(a), a district court is obligated to "read the complaint liberally and determine

12  whether the facts set forth justify it in assuming jurisdiction on grounds other than

13  those pleaded."    *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir. 1980);

14       Defendants and Counterclaimants' counterclaim sets forth the facts describing

15  Plaintiff's violation of the Lanham Act and have provided ample notice of the basis of

16  their Lanham Act claim.  In addition, a violation of the Lanham Act is a predicate

17  wrongful act that can support an intentional interference with prospective advantage

18  claim.  *Korea Supply*, 29 Cal.4th at 1158-59.

19       Counterclaimants' Lanham Act claims are not limited to Herbalife's false

20  statements about its products.  The Lanham Act also applies to false or "deceptive

21  statements made in connection with the sale of goods or services."  *Radio Today, Inc.*

22  *v. Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988) ("The Lanham Act does

23  not apply merely to false advertising through traditional media channels, but to a broad

24  range of deceptive statements made in connection with the sale of goods or services.")

25  In addition to selling its products, Herbalife also advertises and sells its "business

26  opportunity."  Thus, Herbalife's false or deceptive statements about the nature of its

27  business opportunity are actionable under the Lanham Act.

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' DISPUTED INSTRUCTION NO. 11**
**FALSE ADVERTISING – DEFINITION OF MATERIALITY**
**(SECTION 43(A) LANHAM ACT 15 U.S.C. SECTION 11259(A))**

A material advertising claim is one which attracts a customer or otherwise affects his or her choice. Literally false statements are presumed to be material.  It is not necessary in order to be material, that a misrepresentation be the only information on which a person relies. It is sufficient if the advertisement is likely to have some influence.

la-1033212

1    **Authority**: Section 43(a) Lanham Act 15 U.S.C. § 1125(a).

2

3

4                                                      GIVEN:        _____

5                                                      REFUSED:      _____

6                                                      MODIFIED:     _____

7                                                      WITHDRAWN:    _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Herbalife objects to this instruction on the ground that Defendants have never before asserted a Lanham Act claim.  At this stage in the action, it is too late for them to assert it and, in any event, they have not sought leave to amend to add it.  See *Orlowski v. Massachusetts Rehabilitation Com.*, 585 F. Supp. 1408, 1409 (D. Mass. 1984) ("each side in a lawsuit must give the other some idea of what laws and facts it is relying on for relief or as a defense. If each side has to put its cards on the table, the Court can weed out cases that are frivolous and, if a case does get to trial, each side has been able to prepare and neither side is unfairly surprised by the other's presentation."). In addition, Defendants have not and cannot allege facts demonstrating a claim for false advertising under the Lanham Act.  As the court held in *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003):  "In order to prove a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a claimant must establish: 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public." Defendants' purported claim has nothing to do with representations concerning Herbalife's products and, therefore, Defendants cannot pursue a Lanham Act claim.

24

25

26

27

28

la-1033212

1

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

2

3        Federal courts employ notice pleading and Counterclaimants' need only provide

4   "a short and  plain statement of the claim showing that [Counterclaimants are] entitled

5   to relief."  Fed. R. Civ. P. 8(a).  If facts giving the court jurisdiction are set forth in the

6   complaint, the provision conferring jurisdiction *need not be specifically pleaded*.

7   *Aguirre v. Automotive Teamsters*, 633 F.2d 168, 174 (9th Cir. 1980)(emphasis added);

8   *see also Fanucchi & Limi Farms v. United Agri Prods.,* 414 F.3d 1075, 1082 (9th Cir.

9   2005)(reversing summary judgment to defendants on novation claim despite

10  defendants' argument that it was not specifically pleaded in complaint).   Indeed, under

11  Rule 8(a), a district court is obligated to "read the complaint liberally and determine

12  whether the facts set forth justify it in assuming jurisdiction on grounds other than

13  those pleaded."   *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir. 1980);

14        Defendants and Counterclaimants' counterclaim sets forth the facts describing

15  Plaintiff's violation of the Lanham Act and have provided ample notice of the basis of

16  their Lanham Act claim.  In addition, a violation of the Lanham Act is a predicate

17  wrongful act that can support an intentional interference with prospective advantage

18  claim.  *Korea Supply*, 29 Cal.4th at 1158-59.

19  Counterclaimants' Lanham Act claims are not limited to Herbalife's false statements

20  about its products.  The Lanham Act also applies to false or "deceptive statements

21  made in connection with the sale of goods or services."  *Radio Today, Inc. v.*

22  *Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988) ("The Lanham Act does not

23  apply merely to false advertising through traditional media channels, but to a broad

24  range of deceptive statements made in connection with the sale of goods or services.")

25  In addition to selling its products, Herbalife also advertises and sells its "business

26  opportunity."  Thus, Herbalife's false or deceptive statements about the nature of its

27  business opportunity are actionable under the Lanham Act.

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## DEFENDANTS' DISPUTED INSTRUCTION NO. 12
## AFFIRMATIVE DEFENSE – FRAUD

Defendants claim that no contract was created with Herbalife because their consent was obtained by fraud. To succeed, Defendants, or any of them, must prove all of the following:

(1) That Herbalife made a false statement of fact, for instance that Herbalife represented that Defendants are the owners of an independent business and that Defendants were growing their own sales organizations through their effort and expense.

(2) That Herbalife knew that said representations were not true;

(3) That Herbalife made the representations to persuade Defendants to agree to the terms of the Herbalife distributorship contract;

(4) That Defendants reasonably relied on these representations; and

(5) That Defendants would not have entered into the Herbalife distributorship contract if they had known that the representations were not true;

If you decide that Defendants, or any of them, have proved all of the above, then no contract was created between Defendants and Herbalife.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority:** CACI 335.

**Modified**: to reflect Herbalife's representations.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1
2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3    Herbalife objects to Defendants' characterization of the following statements as

4  "fraudulent" as defined in Section 1: "for instance that Herbalife represented that

5  Defendants are the owners of an independent business and that Defendants were

6  growing their own sales organizations through their effort and expense."

7    These statements are an attempt to confuse the jury.  Herbalife's distributors are

8  independent contractors.  Defendants imply that this statement is fraudulent, when it is

9  not.  Including such language as examples of fraudulent conduct assumes facts not in

10  evidence, and is highly likely to mislead and prejudice the jury.  Defendants'

11  instruction is improper.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION**

Herbalife is arguing its case in opposition the jury instruction. Defendants and Counterclaimants will present evidence of statements made that Herbalife distributors were "building their own businesses." Furthermore, what is false is a question of fact for the jury to determine. If the jury determines that the statement is not false, then it will have no basis to impose liability on Herbalife.

la-1033212

1

2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 13**
**AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE**

3

4

If Defendants breached the contract and the breach caused harm, Herbalife is not

5

entitled to recover damages for harm that Defendants prove could have avoided with

6

reasonable efforts or expenditures. You should consider the reasonableness of

7

Herbalife's efforts in light of the circumstances facing it at the time, including its

8

ability to make the efforts or expenditures without undue risk or hardship.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212

1    **Authority:** CACI 358; *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41 (1993);

2    *Brandon & Tibbs v. George Kevorkian Accounting Corp.*, 226 Cal.App.3d 442, 460

3    (1990).

4

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

la-1033212

1

2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3    Herbalife objects to this instruction because Counterclaimaints are not entitled to

4    claim that Herbalife should have mitigated its damages.  To prove failure to mitigate,

5    Defendants must show damages for harm that Defendants prove Herbalife could have

6    avoided with reasonable efforts or expenditures.  This harm must have "already

7    occurred and it then has become the obligation of the injured or damaged party to

8    avoid continuing or enhanced damages through reasonable efforts."  *Valle de Oro*

9    *Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

10    But Defendants have failed to identify any way Herbalife could have limited its

11    damages once Defendants had misused Herbalife's trade secrets, used coercive and

12    deceptive tactics to recruit Herbalife distributors, and disrupted the relationships in the

13    uplines and downlines of those distributors.  That is the specific harm at issue here.  It

14    is not, as Defendants contend, that Herbalife could have offered a better business

15    opportunity, including expanding its product offerings, to thwart Defendants' attempts

16    to lure Herbalife distributors to Melaleuca.  This is irrelevant. Any duty Herbalife

17    would have had to mitigate began only *after* Defendants began to misappropriate its

18    trade secrets, and not when it formulated its business opportunity.  Defendants have

19    never identified any proper remedial measures Herbalife could have taken, and thus are

20    not entitled to this instruction.

21    If Defendants were entitled to this instruction – which they are not   Herbalife

22    additionally objects to their' deletion of the second paragraph of the form instruction.

23    Including the model language, the instruction should have an additional paragraph

24    stating: "If Herbalife made reasonable efforts to avoid harm, then your award should

25    include reasonable amounts that it spent for this purpose."

26

27

28

la-1033212

# DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

If Defendants breached the contract and the breach caused harm, Herbalife is not entitled to recover damages for harm that Defendants prove could have avoided with reasonable efforts or expenditures.  Herbalife's objection attempts to obscure this point, but its argument ignores Herbalife's legal duty to mitigate its damages.

Herbalife blames Defendants their business losses because Herbalife contends that Defendants  "raided" or "poached" Herbalife's distributors.  Herbalife, however, turns a blind eye to its role in the loss of its distributors. Herbalife's limited product offering and its oppressive pyramid and purchase volume quotas have diminished the attractiveness of its business opportunity.  In addition, the dumping of its product on eBay has made it difficult, if not impossible, to sell Herbalife products on a retail basis.

These factors (which are under Herbalife's control) have made Herbalife distributors receptive to recruitment efforts by Defendants as well as others.  The jury is entitled to reduce Herbalife's alleged damages proportionately to the extent those damages resulted from Herbalife's own conduct.

Furthermore, Defendant are entitled to a mitigation instruction on this affirmative defense.  "A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." *Shaffer v. Debbas*,17 Cal.App.4th 33, 41 (1993) (internal citation omitted).   "A party injured by a breach of contract is required to do everything reasonably possible to negate his own loss and thus reduce the damages for which the other party has become liable.  The plaintiff cannot recover for harm he could have foreseen and avoided by such reasonable efforts and without undue expense." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 460 (1990) (internal citations omitted).  Accordingly, Defendants and Counterclaimants respectfully request that this instruction be retained for the jury.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' DISPUTED INSTRUCTION NO. 14
### AFFIRMATIVE DEFENSE - ILLEGALITY

California statutes require that a contract have a lawful purpose.  If a contract has as its object a violation of law, it is against the policy of the law.  An illegal contract may not serve as the foundation of any action.

Defendants claim as a defense that the Herbalife distributorship contracts were illegal because Herbalife uses the contract to operate an illegal pyramid scheme and because the contracts illegally restrain lawful competition. To establish this defense, Defendants must prove that the object of the distributorship contracts was not a lawful distributorship contract but rather an illegal pyramid scheme or that the contract illegally restrains lawful competition.

la-1033212

1  **Authority:** Civil Code Section 1608; Civil Code Section 1550(3); 1596; 1667;
2  1608; *see also* 1441; *Tiedie v. Aluminum Taper Milling Co.*, 46 Cal.2d 450 (1956);
3  *Wells v. Comstock*, 46 Cal.2d 528 (1956); *Hamilton v. Abadjian*, 30 Cal.2d 49, 53
4  (1947); *McIntosh v. Mills*, 121 Cal. App.4th 333, 344 (2004); *also see* 1-3FCalifornia
5  Forms of Jury Instruction 300F.90.
6
7  |  | GIVEN: _____ |
8  |  | REFUSED: _____ |
9  |  | MODIFIED: _____ |
10 |  | WITHDRAWN: _____ |
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

Herbalife objects to this instruction on the grounds that this Court, and not the jury, determines whether a contract is illegal. As such, Defendants are not entitled to instruct the jury regarding this affirmative defense.

The issue of whether a contract is illegal is a question of law. *Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 350 (1989). So too is the issue of whether an illegal provision in a contract may be severed, and the remainder of the contract enforced. As an equitable remedy, severance is a question of law "appropriately directed to the sound discretion of the … trial courts in the first instance." *Marathon Entertainment, Inc. v. Blasi*, 42 Cal. 4th 974, 998(2008); accord  v. *Harling*, 61 Cal.2d 318, 320 (1964) ("Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court …")

This Court has already recognized it can sever any provision that violates section 16600 and enforce the remainder of the agreement. (Memorandum And Order Regarding Defendants' Motion To Dismiss And To Strike filed 9/28/07 [Docket No. 55] at 8-9, citing *Winston Research 26 Corp. v. Minnesota Mining & Mfg. Co.*, 350 F.2d 134, 140 (9th Cir. 1965).

Given the Court's authority to determine whether the contract at issue, or any portion of it, is illegal, a jury instruction on this affirmative defense would be improper.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION**

This instruction is proper because once the fundamental, Constitutional right to a jury trial pursuant to Seventh Amendment attaches, it extends to all factual issues necessary to resolve the claim. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999). When a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962).

Herbalife's claims that this Court should ignore California law and re-write its contracts to make them legal. Herbalife asks this Court to ignore and re-write its illegal 3 year blanket covenant not to compete, its illegal restraint on the use of business information, and its Rule 8-A. Herbalife's Agreements at issue in this case are all in direct violation of B&P Code Section 16600 (See, *Edwards vs. Arthur Anderson*, 44 Cal.4th 937 (2008)   Courts are not permitted to "blue pencil" agreements with covenants not to compete to enforce less restrictive provision therein. *See D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 935; *Koloni vs. Gluska* (1998) 64 Cal.App.4th 402, 408 (cited with approval by *Edwards*). Otherwise, parties would have license to circumvent B&P Code Section 16600 by taking advantage of the extra-judicial benefit of the *in terrorem* effect of the void competition restrains as well as the judicial benefits of the "trade secret" provisions. Courts have rejected this gambit. *See, Latona v. Aetna U.S. Healthcare, Inc.,* 82 F.Supp.2d 1089, 1097 (C.D. 1999); *Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1074; *Playhut, supra,* 85 Cal.App.4th at 935.

Herbalife's citation to this Court's ruling on the Motion to Strike is misplaced. First, they have misstated the ruling. Moreover, the ruling was decided well before the California Supreme Court's mandate in *Edwards* that such covenants are unlawful and per-se constitute a the predicate act for Counterclaimants Intentional Interference with Economic Advantage count.

149

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' DISPUTED INSTRUCTION NO. 15**
**AFFIRMATIVE DEFENSE - UNCONSCIONABILITY**

Defendants claim as a defense that the Herbalife distributorship contract is unenforceable because it is unconscionable. Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.

To prove that the contract is unconscionable, Defendants must show that the terms of the contract involve either oppression or surprise and that the results of the unconscionable contract provision are unduly harsh or one-sided.  It is a sliding scale. The more oppressive or surprising a contract provision is, the less evidence of unduly harsh or one-sided results is required to come to the conclusion that the contract is unconscionable, or vice versa.  "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. "Surprise" involves the extent to which the terms of the bargain are hidden or buried in a prolix printed form drafted by the party seeking to enforce the disputed terms.

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority**: Civil Code Section 1670.5; *Nunes Turfgrass v. Vaughn-Jacklin Seed Co.*, (1988) 200 Cal. App.3d 1518, 1534; *Neal v. State Farm Ins. Cos.*, 188 Cal.App2d 690, 694 (1961); *A&M Produce Co.*, 135 Cal.App.3d ___.

| | GIVEN: _____ |
|---|---|
| | REFUSED: _____ |
| | MODIFIED: _____ |
| | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1
2

## PLAINTIFF'S STATEMENT OF OBJECTION
## TO THE DISPUTED LANGUAGE

3      Herbalife objects to this instruction on the grounds that this Court, and not the

4   jury, determines whether a contract is unconscionable.  California law explicitly

5   empowers the Courts to decide whether a contract, or any of its provisions, are

6   unconscionable.  Cal. Civ. Code § 1670.5(a) ("If the *court as a matter of law* finds the

7   contract or any clause of the contract to have been unconscionable at the time it was

8   made the court may refuse to enforce the contract . . .") (emphasis added); see also

9   *Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660, 668 (2003)

10  ("Unconscionability is ultimately a question of law for the court."); 3 Schwing,

11  Affirmative Defenses § 55:5 (West 2004) ("The defense of unconscionability is tried

12  to the court, not the jury.")

13     Indeed, it is well-settled that equitable questions, such as unconscionability are

14  matters that must be decided by the Court.  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d

15  807, 820 (1990) ("[A] principle of equity applicable to all contracts generally--is that a

16  contract or provision, even if consistent with the reasonable expectations of the parties,

17  will be denied enforcement if, considered in its context, it is unduly oppressive or

18  'unconscionable.'"); *A-C Co. v. Sec. Pac Nat'l Bank*, 173 Cal. App. 3d 462, 473

19  (1985) ("The tradition and heredity of the flexible equitable powers of the modern trial

20  judge derive from the role of the trained and experienced chancellor and depend upon

21  skills and wisdom acquired through years of study, training and experience which are

22  not susceptible of adequate transmission through instructions to a lay jury.")

23     Defendants have not demonstrated why the Court should deviate from this well-

24  established rule.  As such, instruction on unconscionability would be improper.

25
26
27
28

la-1033212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION**

This instruction is proper because once the fundamental, Constitutional right to a jury trial pursuant to Seventh Amendment attaches, it extends to all factual issues necessary to resolve the claim. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999). When a case involves mainly equitable issues and only "incidental" legal issues, the right to a jury trial still attaches to the legal issues. "It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962). The Court should, therefore, include this proposed instruction.

la-1033212

1
2

**DEFENDANTS' DISPUTED INSTRUCTION NO. 16**
**VIOLATION OF CALIFORNIA CIVIL CODE SECTION 16600**

3

California law provides that a contract by which anyone is restrained from

4

engaging in a lawful profession, trade or business of any kind is to that extent void.

5

Defendants assert that the following provisions in Herbalife's distributorship

6

agreement are unlawful restraints of trade in violation of California law:   Herbalife's

7

Rule 8-A, the 3-year non-competition provision, and the prohibition on the use of

8

business information.

9

If you find that any of these provisions are unlawful restraints of trade, you must

10

consider them void.  You must therefore find for Counterclaimants on its claim that

11

Herbalife violated California Civil Code Section 16600.  Further, violations of these

12

provisions cannot serve as a basis to impose liability on Defendants for Herbalife's

13

claim that Defendants intentionally interfered with Herbalife's relationship with its

distributors.

14
15
16

If Herbalife included unlawful provisions in its agreements or rules, you may

conclude that Herbalife engaged in wrongful conduct because it illegally restrained

lawful conduct.

17
18
19
20
21
22
23
24
25
26
27
28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

**Authority**: Bus. & Prof. Code § 16600.

|  | GIVEN: _____ |
|---|---|
|  | REFUSED: _____ |
|  | MODIFIED: _____ |
|  | WITHDRAWN: _____ |

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

2

**PLAINTIFF'S STATEMENT OF OBJECTION
TO THE DISPUTED LANGUAGE**

3         The application of Civil Code § 16600 is a question of law; not a question of

4    fact for the jury. *See, e.g., Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944

5    (2008) (referring to resolution of § 16600 as one of the "issues of law" resolved by

6    trial court); *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 707 (2002)

7    (noting that issue of whether provision is void is determined by court).  In addition,

8    Herbalife objects to the inclusion of any claim relating to Rule 8-A or the three year

9    non-compete provision as part of Defendants' intentional interference claim, on the

10   ground that there is no evidence that either provision intentionally interfered with

11   Defendants' contractual relationships.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DOCUMENT RE DISPUTED JURY INSTRUCTIONS**

la-1033212

1

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

2

3        This instruction is proper because once the fundamental, Constitutional right to a

4   jury trial pursuant to Seventh Amendment attaches, it extends to all factual issues

5   necessary to resolve the claim.  *City of Monterey v. Del Monte Dunes at Monterey,*

6   *Ltd.*, 526 U.S. 687, 720 (1999).  When a case involves mainly equitable issues and

7   only "incidental" legal issues, the right to a jury trial still attaches to the legal issues.

8   "It would make no difference if the equitable cause clearly outweighed the legal cause

9   so that the basic issue of the case taken as a whole is equitable.  As long as any legal

10   cause is involved the jury rights it creates control."  *Dairy Queen, Inc. v. Wood*, 369

11   U.S. 469, 473 n.8 (1962).

12       Moreover, causation is not to be determined when deciding which jury

13   instructions to read.  Causation is a question of fact for the jury to determine based on

14   the facts and circumstances of the case.  The Court should, therefore, include this

15   proposed instruction.

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1033212