CHARLES E. PATTERSON (CA SBN 120081)
CPatterson@mofo.com
SEAN P. GATES (CA SBN 186247)
Sgates@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California  90013-1024
Telephone:  213.892.5200
Facsimile:   213.892.5454

Attorneys for Plaintiff and Counterclaim Defendant
Herbalife International of America, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Herbalife International of America, Inc., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Robert E. Ford and Julia A. Ford, husband and wife; Bruce H. Roth and Nancy A. Roth, husband and wife; Jeff Orr and Kathy Orr, husband and wife; Dianna N. Thompson; and Jason Fisher,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. CV 07 2529 GAF (FMOx)<br><br>Hon. Gary A. Feess<br><br>***EX PARTE* APPLICATION BY HERBALIFE INTERNATIONAL OF AMERICA INC. FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT JASON FISHER SHOULD NOT BE HELD IN CONTEMPT**<br><br>Complaint Filed: Apr. 16, 2007<br>Discovery Cut-Off: Sept. 8, 2009<br>Pretrial Conf.: NA<br>Trial Date: NA |

# TABLE OF CONTENTS

**Page**

I. CONTACT INFORMATION OF OPPOSING COUNSEL ........................... 1

II. REASONS FOR SEEKING AN EX PARTE ORDER .................................. 1

III. STATEMENT OF FACTS ............................................................................ 2

    A. Fisher Obtained Confidential Information Regarding Herbalife Distributor Geri Cvitanovich ............................................................... 2

    B. The Court's Preliminary Injunction Bars Fisher from Using Herbalife Confidential Information ..................................................... 3

    C. Fisher Uses the Confidential Information in Violation of the Preliminary Injunction ......................................................................... 4

IV. GOVERNING STANDARD ........................................................................ 5

V. ARGUMENT ................................................................................................ 6

    A. Fisher is in Contempt for Violating a Specific and Definite Court Order ........................................................................................... 6

    B. Fisher's Conduct Threatens Immediate and Continuing Irreparable Harm to Herbalife ............................................................. 7

    C. This Court Should Enjoin Fisher from Recruiting Any Herbalife Distributors and Award Herbalife Attorneys' Fees ............................. 8

VI. CONCLUSION ............................................................................................. 9

i

***EX PARTE* APPLICATION BY HERBALIFE INTERNATIONAL OF AMERICA INC. FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT JASON FISHER SHOULD NOT BE HELD IN CONTEMPT**

la-1040422

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Advantacare Health Partners, LP v. Access IV*,
   No. C 03-04496 JF 2004 WL 1837997, at *8 (N.D. Cal. Aug. 17, 2004) .................................................................................................................. 8

*Am. Fed'n of State County and Mun. Employees v. United Domestic Workers of Am.*,
   No. 05CV1251BTM (POR), 2005 WL 2128979 (S.D. Cal. Aug. 9, 2005) .................................................................................................................. 8

*Aradia Women's Health Ctr. v. Operation Rescue*,
   929 F.2d 530 (9th Cir. 1991) ................................................................................ 5

*Fortyune v. Am. Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004) ............................................................................ 6

*FTC v. Affordable Media, L.L.C.*,
   179 F.3d 1228 (9th Cir. 1999) ............................................................................ 6

*In re Crystal Palace Gambling Hall, Inc.*,
   817 F.2d 1361 (9th Cir. 1987) ....................................................................... 5, 6

*In re Dual-Deck Video Cassette Anti-Trust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ................................................................................ 5

*Int'l Union, UMW v. Bagwell*,
   512 U.S. 821 (1994) ............................................................................................ 8

*Jerry's Famous Deli, Inc. v. Papanicolaou*,
   383 F.3d 998 (9th Cir. 2004) .............................................................................. 6

*Lillge v. Verity*,
   No. C 07-02748 MHP, 2008 WL 906466, at *13-16 (N.D. Cal. Apr. 1, 2008) .................................................................................................................. 7

*Nikko Materials USA, Inc. v. R.E. Serv. Co.*,
   No. C 03-2549 SBA, 2006 WL 931748 (N.D. Cal. Apr. 11, 2006) ..................... 8

*Perry v. O'Donnell*,
   759 F.2d 702 (9th Cir. 1985) ........................................................................... 5, 9

*Summit Fin. Res., L.P. v. Walthers Oil Co.*,
   No. 2:07-CV-949 TS, 2008 WL 183380 (D. Utah Jan. 18, 2008) ..................... 8

*Verigy US, Inc. v. Mayder*,
   No. C-07-04330 RMW, 2008 WL 2128145 (N.D. Cal. May 20, 2008) ............................................................................................................. 6, 9

*Whittaker Corp. v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) ............................................................................ 9

**STATUTES**

18 U.S.C. § 401 ........................................................................................................ 9

Fed. R. Civ. P. 65(b) ................................................................................................ 8

Fed. R. Civ. P. 65(d) ................................................................................................ 6

**OTHER AUTHORITIES**

3 William W. Schwarzer et al., *California Practice Guide: Federal
   Civil Procedure Before Trial* § 12:170.1 (2009) ............................................. 8

**EX PARTE APPLICATION**

Pursuant to Local Rule 7-19, Plaintiff and Counterclaim Defendant Herbalife International of America, Inc. ("Herbalife") applies to the Court for an *ex parte* order to show cause why defendant Jason Fisher should not be held in contempt for violating this Court's order issuing a preliminary injunction.

**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION**

**I.     CONTACT INFORMATION OF OPPOSING COUNSEL**

The name, address and telephone number of counsel for defendant and counterclaimant Jason Fisher is as follows:

> John B. Stephens, Esq.
> Stephens Friedland
> 4695 MacArthur Court, Suite 310
> Newport Beach, CA 92660
> (949) 468-3200

Herbalife gave notice to Fisher of its intent to file this application on August 13, 2009.  (Gates Decl. ¶¶ 11-12.)  Fisher opposes this application.  (*Id.* ¶ 12.)

**II.    REASONS FOR SEEKING AN *EX PARTE* ORDER**

Herbalife filed this suit seeking injunctive relief and monetary damages against the eight former distributors, including Jason Fisher, for using Herbalife confidential information to recruit Herbalife distributors to join them at a competing company, Melaleuca.  In December 2007, the Court issued a preliminary injunction, enjoining defendants from "[u]sing or disclosing Herbalife Confidential Information, or any information derived directly or indirectly from such information, for any purpose." (Dec. 17, 2007 Prelim. Inj. Order [Dkt. No. 78] at 2.)  The Court defined "Confidential Information" to include "[a]ll data and reports relating to [a distributor's] downline or upline distributors, including, but not limited to, name, … identification number, … volume and sales statistics, economic activities and all data contained therein," specifically including "Herbalife Lineage Reports, Royalty Override Statements, Production Bonus Statements, … and the

like." (*Id.*) The Ninth Circuit affirmed this portion of the Court's preliminary injunction. (Notice of Ruling [Dkt. No. 113] at 5.)

Evidence has just come to Herbalife's attention that, despite the injunction, Fisher has recently used Herbalife Confidential Information to recruit an Herbalife distributor to join Melaleuca. Specifically, the evidence shows that Fisher recently used in his recruiting efforts information from an Herbalife Royalty Override Statement of one of Herbalife's most successful current distributors.

Fisher's conduct is in direct violation of this Court's preliminary injunction. Accordingly, the Court should issue an order to show cause why Fisher should not be held in contempt, the sanction for which should be an injunction precluding Fisher from recruiting Herbalife distributors.

### III.   STATEMENT OF FACTS

Fisher and his co-defendants are former Herbalife distributors who joined a competing company, Melaleuca, and have engaged in a campaign to recruit current Herbalife distributors to Melaleuca. (Gates Decl. ¶ 3, Ex. A (B. Roth Dep. Tr. at 152:25-154:21); ¶ 4, Ex. B (J. Fisher Dep. Tr. at 195:3-20).) Herbalife brought this suit to prevent Fisher and his co-defendants from misusing Herbalife confidential information in their raids. (Complaint [Dkt. No. 1] at 18-19.) Specifically, Herbalife sought injunctive relief to enjoin defendants from using "data and reports relating to Herbalife downlines or uplines," including "Herbalife Lineage Reports," "Royalty Override Statements," and "Production Bonus Statements." (Motion for Prelim. Inj. [Dkt. No. 46] at 2-3.)

#### A.   Fisher Obtained Confidential Information Regarding Herbalife Distributor Geri Cvitanovich

Fisher freely admits that he has used Herbablife Lineage Reports to recruit Herbalife distributors. For instance, Fisher testified that he and co-defendant Robert Ford used Ford's lineage reports in their recruiting efforts as "mind joggers, who we know, who we don't know." (Gates Decl. ¶ 4, Ex. B (J. Fisher Dep. Tr. at

2

*EX PARTE* APPLICATION BY HERBALIFE INTERNATIONAL OF AMERICA INC. FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT JASON FISHER SHOULD NOT BE HELD IN CONTEMPT
la-1040422

196:19-23).) Moreover, the evidence shows that he and co-defendants Robert Ford, Bruce Roth, and Nancy Roth together used the Roths' Lineage Reports during a ten-day recruiting blitz immediately after the Roths joined Melaleuca. (Gates Decl. ¶ 5, Ex. C (N. Roth Dep. Tr. at 126:16-127:11, 144:2-15).)

Fisher also obtained from one of his co-defendants a copy of a Royalty Override Statement from one of Herbalife's most successful distributors. Co-defendant Dianna Thompson testified that she was granted access to the Royalty Override Statement and Production Bonus Statement of her upline supervisor, Geri Cvitanovich, to help Cvitanovich contact members of her organization. (Gates Decl. ¶ 6, Ex. D (D. Thompson Dep. Tr. at 53:13-57:14).) Thompson understood that these statements were confidential, that she was given access solely to help Cvitanovich, and that Cvitanovich would not consent to Thompson using the statements to recruit for Melaleuca. (*Id.* at 85:16-86:3, 91:18-92:1.) When becoming a Melaleuca distributor, however, Thompson gave copies of a Cvitanovich Royalty Override Statement to Robert Ford, suggesting that they use the statement to recruit for Melaleuca. (*Id.* at 86:4-22, 87:9-23.) In fact, Fisher freely admits that he obtained a copy of the Cvitanovich Royalty Statement from Thompson by way of Ford. (Gates Decl. ¶ 4, Ex. B (J. Fisher Dep. Tr. at 177:22-178:20) (the Cvitanovich Royalty Override Statement was marked as deposition exhibit 75)); *see also* (Gates Decl. ¶ 7, Ex. E (R. Ford Dep. Tr. at 161:25-162:21).)

### B. The Court's Preliminary Injunction Bars Fisher from Using Herbalife Confidential Information

In ruling on Herbalife's motion, the Court agreed that "[g]iven Herbalife's economic model, information between and among Herbalife distributors is in the nature of a customer database and has economic value." (Dec. 11, 2007 Minute Order [Dkt. No. 77] at 2.) The Court found that such information included "Herbalife Lineage Reports, Royalty Override Statements, Production Bonus

3

*EX PARTE* APPLICATION BY HERBALIFE INTERNATIONAL OF AMERICA INC. FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT JASON FISHER SHOULD NOT BE HELD IN CONTEMPT

la-1040422

Statements, … and the like." (*Id.* at 3.) The Court thus issued a preliminary injunction, enjoining Fisher and his co-defendants from:

> 1. Using or disclosing Herbalife Confidential Information, or any information derived directly or indirectly from such information, for any purpose. As used herein, "Confidential Information" means "[a]ll data and reports relating to [a distributor's] downline or upline distributors, including, but not limited to, name, address, identification number, telephone number, email address, fax number, level or rank, volume and sales statistics, economic activities and all data contained therein." Confidential Information shall also include, without limitation, information such as Herbalife Lineage Reports, Royalty Override Statements, Production Bonus Statements, information obtained through Bizworks, and the like;
>
> 2. Copying, distributing, opening, accessing, using, publishing or authorizing others to copy, distribute, open, access, use or publish, any Confidential Information as defined above …

(Dec. 17, 2007 Prelim. Inj. Order at 2.)

### C. Fisher Uses the Confidential Information in Violation of the Preliminary Injunction

Fisher and his co-defendants have developed scripts for their recruiting calls to Herbalife distributors. (Gates Decl. ¶ 3, Ex. A (B. Roth Dep. Tr. at 163:20-164:2); ¶ 5, Ex. C (N. Roth Dep. Tr. at 135:24-136:3); ¶ 8, Ex. F). In these scripts, the defendants have made a number of claims regarding Herbalife in an effort to convince Herbalife distributors to join Melaleuca. (Gates Decl. ¶ 8, Ex. F at 12-14). For instance, in one of defendants' recruiting scripts, they claimed that Herbalife distributors were leaving Herbalife incomes of up to fifteen thousand dollars a month for Melaleuca. (*Id.* at 12.)

On July 30, 2009, Fisher contacted Kimberly Maxson, an Herbalife distributor, by telephone in an effort to recruit her to join Melaleuca. (Maxson Decl. ¶ 2.) During the conversation, Fisher indicated that "we have" a copy of an Herbalife "statement" for a highly successful and well regarded Herbalife distributor, Geri Cvitanovich, obtained by a former employee of Cvitanovich. (*Id.* ¶¶ 4, 5.) In Herbalife, a "statement" means a Royalty Override Statement or a Production Bonus Statement. (*Id.* ¶ 4.) Fisher claimed that the Cvitanovich statement provided proof that Cvitanovich was not earning a "President's Team check" in the United States, which Maxson understood as a claim that Cvitanovich was not earning at least $10,000 per month in the United States. (*Id.* ¶ 6.) Fisher claimed that Herbalife was giving Cvitanovich "bonus money" to make it appear she was earning more when Cvitanovich spoke at Herbalife meetings. (*Id.* ¶ 7.) Fisher used this information as the predicate for his request that Maxson join him at Melaleuca, which she declined to do. (Maxson Decl. ¶ 8.)

Given Fisher's use of scripts in the past, it is likely that he is using information from the Cvitanovich Royalty Override Statement in other recruiting calls.

### IV.   GOVERNING STANDARD

Civil contempt consists of a "party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Anti-Trust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The violation of an injunction constitutes contempt. *See Aradia Women's Health Ctr. v. Operation Rescue*, 929 F.2d 530, 532, 534 (9th Cir. 1991) (upholding civil contempt sanctions assessed by the district court requested by one of the litigants for violation of a preliminary injunction). It does not matter what the party's intent was when he disobeyed the court's order, and the contempt "need not be willful." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (*citing Perry v. O'Donnell*, 759 F.2d 702, 704-706 (9th Cir. 1985)).

There is no good faith or "exceptional circumstances" exception to the requirement of obedience to a court order. *Crystal Palace*, 817 F.2d at 1365.

Proof of contempt must be clear and convincing. *FTC v. Affordable Media, L.L.C.*, 179 F.3d 1228, 1239 (9th Cir. 1999). The decision as to whether contempt sanctions should be imposed is within the sound discretion of the trial court. *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004).

### V.   ARGUMENT

#### A.   Fisher is in Contempt for Violating a Specific and Definite Court Order

The Court should issue an order to show cause because Fisher disobeyed the Court's preliminary injunction. There is no doubt that the preliminary injunction was sufficiently specific and definite to support a contempt sanction. Rule 65 requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d). Here, the Court's preliminary injunction clearly and specifically details what acts Fisher could not do: He could not use or disclose "any information derived directly or indirectly from … Herbalife … Royalty Override Statements." (Prelim. Injunction at 2.) This type of specificity and detail is sufficient in a trade secrets case. *See, e.g.*, *Verigy US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 2128145 (N.D. Cal. May 20, 2008). Moreover, the Ninth Circuit affirmed this portion of the Court's preliminary injunction. (Notice of Ruling at 5); *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086-87 (9th Cir. 2004) (injunction complying with Rule 65(d) "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders, and [ ] avoid[s] the possible founding of a contempt citation on a decree too vague to be understood").

6

Fisher's conduct clearly violated the preliminary injunction. He used information derived from the Cvitanovich Royalty Override Statement to claim that Cvitanovich was not truly successful. And he used this claim to attempt to recruit Maxson, and likely other Herbalife distributors, to join Melaleuca. (Maxson Decl. ¶¶ 6-8.) This is a clear violation. *See Lillge v. Verity*, No. C 07-02748 MHP, 2008 WL 906466, at *13-16 (N.D. Cal. Apr. 1, 2008) (finding contempt where defendants initiated contact with plaintiff's customers despite preliminary injunction enjoining defendants from soliciting those customers).[1]

### B. Fisher's Conduct Threatens Immediate and Continuing Irreparable Harm to Herbalife

As the Court acknowledged in issuing its preliminary injunction, the defendants' continued use of Herbalife Confidential Information would cause irreparable injury to Herbalife. The Court stated, "Herbalife explains that distributors will be pirated and revenues will be lost due to defendants use of Prohibited Material (and subsequent solicitation), and that the legal remedy cannot fully compensate them for the damage to their position in the marketplace. The Court finds the argument persuasive. . . ." (Minute Order at 4.)

Fisher's continued use of information from the Cvitanovich Royalty Override Statement as a recruiting tool for Melaleuca threatens just this sort of harm. Fisher is using this information to convince current Herablife distributors to leave Herbalife and join its competitor, Melaleuca. (Maxson Decl. ¶¶ 4, 6-8.) Herbalife is therefore threatened with the very irreparable harm the Court found to support its

---

[1] Defendants did not designate the statement as "Confidential" when they produced it in discovery, and it was subsequently used as a deposition exhibit. For purposes of a violation of the preliminary injunction, it does not matter whether the statement was designated under the protective order – the preliminary injunction states simply that Fisher cannot use information derived from the statement or any like it. *See Lillge*, 2008 WL 906466, at *11 & 13 n.11 (entering contempt order despite fact that "plaintiffs has abandoned its efforts to maintain the names of its client contacts under seal").

preliminary injunction – the loss of its distributors.  *See Advantacare Health Partners, LP v. Access IV*, No. C 03-04496 JF 2004 WL 1837997, at *8 (N.D. Cal. Aug. 17, 2004) (finding violations of a preliminary injunction "exacerbate the unfair advantage that the Court sought to remedy by granting the preliminary injunction").

Good cause therefore exists to grant Herbalife's *ex parte* application.  3 William W. Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 12:170.1 (2009) (*ex parte* application proper when circumstances threaten immediate and irreparable injury); *see also* Fed. R. Civ. P. 65(b).  Because of the threat of harm, courts often issue orders to show cause why a party should not be held in contempt where the moving party has sought relief *ex parte*.  *See, e.g.*, *Summit Fin. Res., L.P. v. Walthers Oil Co.*, No. 2:07-CV-949 TS, 2008 WL 183380 (D. Utah Jan. 18, 2008) (court granted *ex parte* application for order to show cause regarding contempt for violating preliminary injunction); *see also Nikko Materials USA, Inc. v. R.E. Serv. Co.*, No. C 03-2549 SBA, 2006 WL 931748 (N.D. Cal. Apr. 11, 2006); *Am. Fed'n of State County and Mun. Employees v. United Domestic Workers of Am.*, No. 05CV1251BTM (POR), 2005 WL 2128979 (S.D. Cal. Aug. 9, 2005).

### C. This Court Should Enjoin Fisher from Recruiting Any Herbalife Distributors and Award Herbalife Attorneys' Fees

The Court should issue an order to show cause why Fisher should not be held in contempt and issue an injunction barring him from soliciting any Herbalife distributor.  The court has the power to impose injunctive relief as a remedy for contempt: "Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."  *Int'l Union, UMW v. Bagwell*, 512 U.S. 821, 831 (1994); 18 U.S.C. § 401 (statute authorizing courts to

8

enforce their orders with contempt proceedings). The purpose of civil contempt sanctions is to coerce a party into compliance with the Court's order and to compensate the plaintiff for the violation. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992).

Here, the Court's preliminary injunction barred Fisher from using Herbalife Confidential Information for any purpose.  The thrust of Herbalife's suit, and the Court's findings supporting the preliminary injunction, is to prevent the use of that Confidential Information by defendants for the purpose of recruiting Herbalife distributors to join Melaleuca.  Given the demonstrated violation of the Court's order and the difficulty of detecting further violations, an injunction barring Fisher from any recruiting of Herbalife distributors would coerce compliance with the Court's order. *Cf. Verigy US*, 2008 WL 2128145, at *9 (extending TRO in light of violation).

Moreover, the Court should grant to Herbalife attorneys' fees to compensate it for the costs of bringing this application.  The Court has the inherent power to award attorneys' fees to the opposing party as a sanction for disobedience of its orders. *See Perry*, 759 F.2d at 702.  While Fisher's violation of the injunction appears willful, an express finding of willfulness is not required for attorneys' fee awards in civil contempt cases. *Id.* at 705 (holding that attorneys' fees can be granted even when the violation is not willful so as to adequately compensate the victim of the violation).  Thus, the evidence is sufficient to support an award of attorneys' fees.

**VI.   CONCLUSION**

The Court's preliminary injunction was clear and unequivocal.  It barred Fisher from using information derived from Herbalife data and reports regarding its distributors, including Royalty Override Statements.  Fisher obtained the Cvitanovich Royalty Override Statement before the injunction, but clearly continues to use information from that statement after the injunction issued.  This is

a clear violation. The Court should issue an order to show cause, find Fisher in contempt, issue an injunction barring him from recruiting Herbalife distributors, and require him to pay Herbalife's attorneys' fees related to this motion.

Dated: August 13, 2009    MORRISON & FOERSTER LLP

/s/ Sean P. Gates
Charles E. Patterson
Sean P. Gates

Attorneys for Plaintiff and Counterclaim Defendant
HERBALIFE INTERNATIONAL OF AMERICA, INC.