1  STEPHENS FRIEDLAND LLP
   John B. Stephens, Bar No. 14271
2  4695 MacArthur Court, Suite 310
   Newport Beach, CA 92660
3  Telephone: (949) 468-3200 / Facsimile (949) 468-3201
   Email: john@sf-lawyers.com
4
   Attorney for Defendants and Counterclaimants
5  ROBERT E. FORD, JULIA A. FORD,
   BRUCE H. ROTH, NANCY A. ROTH,
6  DIANNA N. THOMPSON and JASON FISHER
7  MIXON JOLLY LLP
   Cameron M. Jolly, Bar No. 132541
8  575 Anton Boulevard, Suite 670
   Costa Mesa, CA 92626
9  Telephone: (714) 885-7000 / Facsimile (714) 885-7001
   Email: CJolly@mixonjollylaw.com
10
   Attorney for Defendants and Counterclaimants
11 JEFF ORR and KATHY ORR
12
13              IN THE UNITED STATES DISTRICT COURT
14      FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
15
16 HERBALIFE INTERNATIONAL OF          Case No.: CV 07 2529 GAF (FMOx)
   AMERICA, INC., a Nevada corporation,
                                       **STATEMENT OF GENUINE ISSUES**
17                                      **IN SUPPORT OF DEFENDANTS AND**
              Plaintiff,                **COUNTERCLAIMANTS'**
18                                      **OPPOSITION TO MOTION BY**
         v.                             **HERBALIFE INTERNATIONAL OF**
19                                      **AMERICA, INC. FOR PARTIAL**
                                        **SUMMARY JUDGMENT ON THE**
20 ROBERT E. FORD and JULIA A.          **ENDLESS CHAIN SCHEME**
   FORD, husband and wife; BRUCE H.     **COUNTERCLAIM**
21 ROTH and NANCY A. ROTH, husband
   and wife; JEFF ORR and KATHY ORR,
22 husband and wife; DIANNA N.          Hearing Date:    March 9, 2010
   THOMPSON; and JASON FISHER,          Time:            9:30 a.m.
23                                      Courtroom:       740 – Roybal Crthse
              Defendants.
24
25
26 AND RELATED CROSSCLAIMS.
27
28

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. Defendants contend that rescission under section 1689.2 is not the exclusive civil remedy for violations of section 327.  As Defendants' counsel explained, "I think that 1689.2, which is the Civil Code that gives standing under 327 of the Penal Code, I don't think that that's an exclusive remedy saying rescission and restitution.  Nowhere in the statute does it say that." | 1. **Disputed based on evidentiary objections.**<br>Herbalife's Evidence:  Gates Decl. Ex. B (12/7/09 Hearing Tr. at 7)<br><br>**Objections:** California Civil Code section 1689.2 speaks for itself and Counterclaimants object to Plaintiff's characterization of the statute.<br><br>"A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, **and** may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme. **In addition**, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff."  (Emphasis added.)<br><br>Furthermore, counsel's arguments are not evidence. |

- 1 -

| | | |
|---|---|---|
| 2. | Defendants made substantial profits through their association with Herbalife. | 2. **Disputed.** |

Herbalife's Evidence:  Declaration of Jennifer Hienrich in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Dkt. No. 221); Exhibit A to the Hienrich declaration, attached to the Confidential Declaration of Sean P. Gates in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment (Dkt. No. 269); Confidential Declaration of Yvette Oliver in Support of Motion By Herbalife International of America, Inc. for Summary Judgment or, in the Alternative Partial Summary Judgment on the Endless Chain Scheme; Gates Decl. ¶¶ 9-11.

**Opposing Evidence:**  Declaration of Dianna Thompson ["D. Thompson Decl."], ¶¶ 2-9; Declaration of Jeffrey Allen Orr ["J. Orr Decl."], ¶¶ 2-7.

Declaration of Bruce Roth, ¶ 6 [Docket

No. 251]; Declaration of Jeff Orr, ¶ 6 [Docket No. 252]; Declaration of Kathy Orr, ¶ 6 [Docket No. 253]; Declaration of Robert Ford, ¶ 6 [Docket No. 255].

3. Defendants testified that they were successful in retailing Herbalife product.

3. **Disputed.**

Herbalife's Evidence:  Gates Decl. Ex. G (R. Ford Dep. Tr. at 46; J. Ford Dep. Tr. at 66, 118-19; D. Thompson Dep. Tr. at 23-24, 71-72, 81-82, 123-24; K. Orr Dep. Tr. at 72; J. Fisher Dep. Tr. at 60; N. Roth Dep. Tr. at 51.)

**Opposing Evidence**: Declaration of Bruce Roth, ¶ 6 [Docket No. 251]; Declaration of Jeff Orr, ¶ 6 [Docket No. 252]; Declaration of Kathy Orr, ¶ 6 [Docket No. 253]; Declaration of Robert Ford, ¶ 6 [Docket No. 255]; Declaration of Jason Fisher ¶ 6 [Docket No. 256]; Declaration of Dianna Thompson ¶ 6 [Docket No. 257].

D. Thompson Decl., ¶¶ 2-9; J. Orr Decl., ¶¶ 2-7.

4. Defendants' endless chain scheme claim "seeks injunctive relief and

4. **Disputed in part.  Counterclaimants' endless chain scheme claim seeks**

| | |
|---|---|
| 1 | damages they sustained because |
| 2 | Herbalife is an endless chain |
| 3 | (pyramid) scheme." |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |

damages they sustained because Herbalife is an endless chain (pyramid) scheme."

**relief under California Civil Code section 1689.2, which provides for rescission and restitution and attorneys' fees.**

Herbalife's Evidence:  Gates Decl. Ex. C (Def. Mem. Contentions of Facts and Law [Dkt. No. 316] at 23).

**Opposing Evidence:**  Amended Counterclaim, ¶¶ 53-54, p. 20-21 [Docket No. 98].

5. Defendants have explicitly stated that they seek relief as competitors of Herbalife, not as participants. Defendants' counsel stated to the Court, "Well, Your Honor, my clients are competitors with Herbalife. Every distributor that goes to Herbalife . . . can't be working with my clients . . . What I'm saying is right now my clients are, in fact, competing with Herbalife, and Herbalife is out there. And what Herbalife is doing is continuing to force people to buy products in order to receive their checks or to qualify to become supervisors, and they're hurting people. And while they're doing it, they are putting up a road block for my client and their ability to compete lawfully with a business that doesn't require these kinds of things."

5. **Disputed based on evidentiary objections.**
Herbalife's Evidence:  Gates Decl. ¶ 5, Ex. B (12/7/09 Hearing Tr. at 8-9.), D (email re meet and confer).

**Opposing Evidence:**  Amended Counterclaim, ¶¶ 53-54, p. 20-21 [Docket No. 98].

**Objections:** Gates Decl. ¶ 5, Ex. B (12/7/09 Hearing Tr. at 8-9., D (email re meet and confer): irrelevant; misstates statements of counsel; and counsel's arguments are not evidence.

6. The legislative history of Penal Code section 327 shows that the statute was enacted to help law enforcement, not create private suits. The legislation leading to

6. **Disputed in that the California Legislature intended to create a private right of action under Section 327.**
Herbalife's Evidence:  Request for

section 327 was introduced "at the request of the Office of the Attorney General . . . to enable local law enforcement agencies to halt the operations of . . . fraudulent endless chain pyramid 'investment' schemes."

Judicial Notice, Ex. A (Legislative History of California Penal Code § 327 as added by Statutes of 1968, Chapter 1468.

**Opposing Evidence:** California Civil Code section 1689.2; *People v. Bestline Prods., Inc.*, 61 Cal. App. 3d 879, 914 (1976).

**Objections:** Lacks foundation; hearsay. The quoted citation comes from a letter to Governor Reagan sent by the Office of the Attorney General. It does not come from a California legislator. (Ex. A at 23.)

7. Defendants argued that the alleged endless chain scheme was a wrongful act supporting their claim for intentional interference with prospective economic advantage.

7. **Undisputed.**
Herbalife's Evidence: Gates Decl. Ex. E (Def. Mem. In Opp. To Mtn. by Herbalife for Partial Summary Judgment [Dkt. No. 250] at 13), Ex. C (Def. Mem. Contentions of Facts and Law [Dkt. No. 316 at 23-24).

8. Defendant's theory of harm for their intentional interference claim was that Herbalife's conduct prevented them from successfully

8. **Disputed based on evidentiary objections. Disputed in that Counterclaimants seek rescission and attorneys' fees and restitution for the**

recruiting more Herbalife distributors to Melaleuca. Defendants' endless chain scheme claim is based on the same theory of harm. As Defendants' counsel stated, "Well, Your Honor, my clients are competitors with Herbalife. Every distributor that goes to Herbalife . . . can't be working with my clients . . . What I'm saying is right now my clients are, in fact, competing with Herbalife, and Herbalife is out there. And what Herbalife is doing is continuing to force people to buy products in order to receive their checks or to qualify to become supervisors, and they're hurting people. And while they're doing it, they are putting up a road block for my client and their ability to compete lawfully with a business that doesn't require these kinds of things."

**following: (1) consideration paid in excess of consideration received under Herbalife's scheme; (2) unreturned Herbalife products; and (3) fully earned royalties withheld by Herbalife.**

Herbalife's Evidence: Gates Decl. Ex. F (Defendants' Responses to Plaintiff's Second Set of Interrogatories No. 17), Ex. B (12/7/09 Hearing Tr. at 8-9.)

**Opposing Evidence:** Amended Counterclaim, ¶¶ 31-38 [Docket No. 98].

D. Thompson Decl., ¶¶ 2-9; J. Orr Decl., ¶¶ 2-7.

K. Orr Decl. [Docket No. 253], ¶ 17; J. Orr Decl. [Docket No. 252], ¶ 17; J. Fisher Decl. [Docket No. 256], ¶ 16; R. Ford Decl. ¶ 16; D. Thompson Decl. [Docket No. 257], ¶ 14; B. Roth Decl. [Docket No. 251], ¶ 16.

**Objections:** Gates Decl. ¶ 5, Ex. B (12/7/09 Hearing Tr. at 8-9.): irrelevant;

misstates statements of counsel; and
counsel's arguments are not evidence.

**COUNTERCLAIMANTS' ADDITIONAL MATERIAL**
**FACTS IN SUPPORT OF OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| 9. | Herbalife is a multi-level marketing company that sells nutritional supplements, vitamins, and skin care products. | 9. Miller Depo. 30:24-31:4 (Dyer Decl. [Docket No. 230], ¶ 2, Ex. "A," pp. 12-13). |
| 10. | According to Herbalife's Marketing Plan, royalties, bonuses, and advancement at Herbalife are based exclusively on purchases from Herbalife | 10. "Live the Good Life with Herbalife," p. 22 (Dyer Decl., Ex. "C," p. 60).<br><br>"Sales & Marketing Plan and Business Rules," p. 4 (Dyer Decl. [Docket No. 230], Ex. "D," p. 63).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 11. | In its Memorandum & Order Regarding Cross-Motions for Summary Judgment, the Court noted that: "Although Herbalife purports to emphasize the importance of retail sales, the | 11. Memorandum & Order Regarding Cross-Motions for Summary Judgment, August 25, 2009 ["Prior Summary Judgment Order"] [Docket No. 374], 11:24-26. |

| | | |
|---|---|---|
| 1 | | company does not maintain records |
| 2 | | of retail customers or transactions |
| 3 | | or keep track of the cumulative |
| 4 | | amount of retail transactions into |
| 5 | | which its distributors enter." |
| 6 | 12. | The Counterclaimants were |
| 7 | | Herbalife independent distributors |
| 8 | | for many years – *i.e.*, they were |
| 9 | | "participants" in Herbalife's |
| 10 | | pyramid scheme. |
| 11 | | |
| 12 | 13. | Counterclaimants have asserted |
| 13 | | Counterclaims based on Herbalife's |
| 14 | | illegal restraints of trade, false |
| 15 | | advertising, and for rescission under |
| 16 | | California's "endless chain scheme" |
| 17 | | laws and are seeking rescission, |
| 18 | | restitution, and attorneys' fees. |
| 19 | 14. | The Ninth Circuit ruled that the |
| 20 | | portion of the preliminary |
| 21 | | injunction that prohibited the |
| 22 | | Counterclaimants from "Using or |
| 23 | | disclosing for business related |
| 24 | | purpose . . . contacts or business |
| 25 | | information acquired during |
| 26 | | [Counterclaimants'] work with |
| 27 | | Herbalife" was "overbroad." |
| 28 | 15. | The Ninth Circuit narrowed the |

Right column:

12. K. Orr Decl. [Docket No. 253], ¶ 2; J. Orr Decl. [Docket No. 252], ¶ 2; J. Fisher Decl. [Docket No. 256], ¶ 2; R. Ford Decl. ¶ 2; D. Thompson Decl. [Docket No. 257], ¶ 2; B. Roth Decl. [Docket No. 251], ¶ 2.

13. Amended Counterclaim [Docket No. 98].

14. Ninth Circuit Memorandum, filed July 22, 2008 (Dyer Decl. [Docket No. 230], ¶ 15, Ex. "N," p. 143).

15. Ninth Circuit Memorandum, filed

| | | |
|---|---|---|
| 1 | preliminary injunction to "exempt | July 22, 2008 (Dyer Decl. [Docket No. |
| 2 | from its coverage only customer | 230], ¶ 15, Ex. "N," p. 143). |
| 3 | contact or business information that | |
| 4 | the defendants developed of their | |
| 5 | own accord." | |
| 6 | 16. This Court ruled that Herbalife's | 16. Prior Summary Judgment Order |
| 7 | restraints of trade are unlawful and | [Docket No. 374], 27:9-28:2. |
| 8 | violate California's *Business and* | |
| 9 | *Professions Code* § 16600. | |
| 10 | 17. When this Court denied Herbalife's | 17. Prior Summary Judgment Order |
| 11 | motion for summary judgment on | [Docket No. 374], 14:14-15. |
| 12 | Counterclaimants' pyramid scheme | |
| 13 | claims, it recognized that "the | |
| 14 | central question in this case [is] | |
| 15 | whether Herbalife constitutes an | |
| 16 | illegal pyramid scheme." | |
| 17 | 18. In denying Herbalife's motion, this | 18. Prior Summary Judgment Order |
| 18 | Court stated that Herbalife's | [Docket No. 374], 15:4-9. |
| 19 | business model appeared to be | |
| 20 | "completely indistinguishable" | Reporter's Transcript of Proceedings, |
| 21 | from the unlawful pyramid business | June 2, 2009 [Docket No. 300], 6:5-7. |
| 22 | model in *Webster v. Omnitrition* | |
| 23 | *Int'l, Inc.,* 79 F.3d 776 (9th Cir. | |
| 24 | 1996), which the Court found to be | |
| 25 | "a case with very similar facts in | |
| 26 | issue here . . . ." | |
| 27 | 19. This Court concluded that the sole | 19. Prior Summary Judgment Order |
| 28 | issue to be tried is whether "in | [Docket No. 374], 16:1-17:5. |

| | | |
|---|---|---|
| | reality" distributors become supervisors without purchasing anything from Herbalife. | |
| 20. | This Court previously ruled on summary judgment that "Herbalife's standing argument is unpersuasive; Section 1689.2 provides litigants with standing to enforce Section 327 even though the latter is a criminal statute." | 20. Prior Summary Judgment Order [Docket No. 374], 17 n.4. |
| 21. | Counterclaimants have previously stated their objection to Herbalife's second Motion for Summary Judgment (on the Endless Chain Scheme Counterclaim). | 21. Joint Status Report [Docket No. 388], 1:15-28. |
| 22. | Advancement at Herbalife "is not based on retail.  It's based on volume purchased from the company." | 22. McKee Depo. 90:22-91:15 (Dyer Decl. [Docket No. 230], Ex. "F," p. 109-110). |
| 23. | Herbalife does not keep track of retail sales. | 23. Greenberg Depo. 117:3-5 (Dyer Decl. [Docket No. 230], ¶ 6, Ex. "E," p. 80). |
| 24. | A participant in an endless chain scheme may rescind the contract and Counterclaimants have asked this Court to rescind their contracts with Herbalife. | 24. Amended Counterclaim, ¶¶ 53-54 [Docket No. 98]; D. Thompson Decl., ¶ 2; J. Orr Decl., ¶ 2; California Civil Code section 1689.2. |

- 11 -

| | | |
|---|---|---|
| 25. | A participant in an endless chain scheme may recover attorneys' fees and Counterclaimants have incurred attorneys' fees and asked this Court to award same. | 25. Amended Counterclaim, ¶¶ 53-54 [Docket No. 98]; D. Thompson Decl., ¶¶ 2, 9; J. Orr Decl., ¶¶ 2, 7; California Civil Code section 1689.2. |
| 26. | A participant in an endless chain scheme may recover all consideration paid pursuant to the scheme, less amounts paid or consideration provided to the participant pursuant to the scheme. | 26. California Civil Code section 1689.2. |
| 27. | Jeff Orr paid Herbalife $129,376.59 for its products and Herbalife paid Jeff Orr approximately $60,000, thus the consideration paid by Jeff Orr ($129,376.59) less the amounts paid by Herbalife ($60,000) leaves Herbalife owing Jeff Orr over $69,000 in restitution. | 27. J. Orr Decl., ¶¶ 2-7; "Jeff Orr 10722077 Gross Earnings Summary," Exhibit A to the Declaration of Jennifer Heinrich [Docket 221]; Exhibit C to Declaration of Yvette Oliver at 50-54. |
| 28. | Counterclaimant Jeff Orr paid Herbalife $69,000 more than Herbalife paid to Jeff Orr and Counterclaimant Jeff Orr seeks restitution of the $69,000. | 28. Amended Counterclaim, ¶¶ 53-54, p. 20-21 [Docket No. 98]; J. Orr Decl., ¶¶ 2-7. |
| 29. | Dianna Thompson joined Herbalife in 1984 and has paid Herbalife at least $689,250.87 for its products between 1984 and 2006; Herbalife | 29. D. Thompson Decl., ¶¶ 2-9; "Dianna Thompson ID#271540491 Gross Earnings Summary," Exhibit A to the Declaration of Jennifer Heinrich |

|  | | |
|---|---|---|
| | paid Dianna Thompson approximately $215,000, thus the consideration paid by Dianna Thompson ($689,250.87) less the amounts paid by Herbalife ($215,000) leaves Herbalife owing Dianna Thompson $474,250.87 in restitution. | [Docket 221]; Exhibit F to Declaration of Yvette Oliver at 87-105. |
| 30. | Dianna Thompson received an award from Herbalife called the Million Dollar Award due to her purchase of one million volume points from Herbalife.  This equates to purchases from Herbalife of $500,000 in product. | 30. D. Thompson Decl., ¶ 4. |
| 31. | Counterclaimant Dianna Thompson paid Herbalife $474,250.87 more than Herbalife paid to Dianna Thompson and Counterclaimant Dianna Thompson seeks restitution of the $474,250.87. | 31. Amended Counterclaim, ¶¶ 53-54, p. 20-21 [Docket No. 98]; D. Thompson Decl., ¶¶ 2-9. |
| 32. | Counterclaimants are entitled to restitution for royalties fully earned but withheld by Herbalife. | 32. California Civil Code §§ 1689.2, 1692; B. Roth Decl. [Docket No. 251], ¶ 16; J. Fisher Decl. [Docket No. 256], ¶ 16; D. Thompson Decl., ¶ 8. |
| 33. | Herbalife wrongly withheld fully-earned royalties of approximately $10,000 from the Roths. | 33. B. Roth Decl. [Docket No. 251], ¶ 16. |

| | | |
|---|---|---|
| 1 | 34. | Herbalife failed to pay Jason Fisher | 34. J. Fisher Decl. [Docket No. 256], ¶ 16. |

34. Herbalife failed to pay Jason Fisher fully-earned royalties and bonuses of approximately $1,000 that Jason Fisher earned prior to leaving Herbalife.

34. J. Fisher Decl. [Docket No. 256], ¶ 16.

35. Herbalife wrongly withheld fully-earned royalties of approximately $3,000 to $4,000 from Dianna Thompson.

35. D. Thompson Decl., ¶ 8.

36. Counterclaimants are entitled to restitution for product that they were unable to return to Herbalife when they left Herbalife's business scheme.

36. K. Orr Decl. [Docket No. 253], ¶ 17; J. Orr Decl. [Docket No. 252], ¶ 17; J. Fisher Decl. [Docket No. 256], ¶ 16; R. Ford Decl. ¶ 16; D. Thompson Decl. [Docket No. 257], ¶ 14; B. Roth Decl. [Docket No. 251], ¶ 16; California Civil Code §§ 1689.2, 1692.

37. Counterclaimants paid Herbalife to purchase products in order to obtain their paychecks from Herbalife. Counterclaimants were stuck with thousands of dollars in products at the time they left Herbalife and Herbalife must pay restitution to Counterclaimants for same.

37. K. Orr Decl. [Docket No. 253], ¶ 17; J. Orr Decl. [Docket No. 252], ¶ 17; J. Fisher Decl. [Docket No. 256], ¶ 16; R. Ford Decl. ¶ 16; D. Thompson Decl. [Docket No. 257], ¶ 14; B. Roth Decl. [Docket No. 251], ¶ 16; D. Thompson Decl., ¶ 7; California Civil Code §§ 1689.2, 1692.

38. Current Herbalife distributors are not eligible for any buyback.

38. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66). This document was authenticated by Paul Greenberg,

- 14 -

|  |  |  |
|---|---|---|
|  |  | Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 39. | Herbalife distributors who request a buyback suffer a permanent loss of their distributorships. | 39. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 40. | Herbalife will not buy back product from an active distributor or even an inactive distributor who has not "permanently" resigned. | 40. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 41. | A distributor requesting a buyback must first permanently resign his/her distributorship in writing. | 41. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23- |

| | | |
|---|---|---|
| | | 226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 42. | A distributor that requests a buyback loses all royalties, commissions, bonuses, and discounts from Herbalife. | 42. Greenberg Depo. 264:11-21 (Dyer Decl. [Docket No. 230], ¶ 6, Ex. "E," p. 92). |
| 43. | If a distributor asks for a buyback, the distributor and the distributor's upline are retroactively charged back on their royalty bonus checks. | 43. "Sales & Marketing Plan and Business Rules," p. 43 (Dyer Decl. [Docket No. 230], Ex. "D," p. 65-66). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 44. | To obtain a buyback, the former Herbalife distributor must sign an agreement that states that the former distributor agrees to Herbalife's various buyback terms and rules. | 44. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66). This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel. Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 45. | To obtain a buyback, the former Herbalife distributor must also | 45. "Sales & Marketing Plan and Business Rules," p. 45 (Dyer Decl. [Docket No. |

| | |
|---|---|
| provide a complete, detailed written inventory of product to be returned. | 230], Ex. "D," p. 67).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 46.  To obtain a buyback, the former Herbalife distributor must also provide cancelled checks and credit card statements proving the purchase of each item on the inventory. | 46. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 47.  To obtain a buyback, the former Herbalife distributor must also provide two years of records of sales to his/her retail customers and downline. | 47. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 48.  Herbalife's buyback offer is discretionary based on Herbalife's determinations of condition of the | 48. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document |

| | | |
|---|---|---|
| | product and other factors. | was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87). |
| 49. | When it provides its buyback refund, Herbalife does not return its 10-11% handling charges that were originally paid on the product and the former distributor must pay the shipping charges to return the product to Herbalife. | 49. "Sales & Marketing Plan and Business Rules," p. 44 (Dyer Decl. [Docket No. 230], Ex. "D," p. 66).  This document was authenticated by Paul Greenberg, Herbalife's Senior Vice President, Counsel.  Greenberg Depo. 225:23-226:1 (Dyer Decl. [Docket No. 230], Ex. "E," pp. 86-87).<br><br>Greenberg Depo. 264:11-265:10 (Dyer Decl. [Docket No. 230], ¶ 6, Ex. "E," p. 92-93). |
| 50. | As independent Herbalife distributors, Counterclaimants had their own independent business and paid for their own rent, utilities, computer equipment, office supplies, customer and distributor leads, phone equipment and service, and office supplies. | 50. K. Orr Decl. [Docket No. 253], ¶ 2; J. Orr Decl. [Docket No. 252], ¶ 2; J. Fisher Decl. [Docket No. 256], ¶ 2 ; R. Ford Decl. [Docket No. 255], ¶ 2; D. Thompson Decl. [Docket No. 257], ¶ 2; B. Roth Decl. [Docket No. 251], ¶ 2. |

| | | |
|---|---|---|
| 1 | 51. | As independent distributors, Counterclaimants were responsible for developing their distributor and customer base through their own effort and expense. | 51. K. Orr Decl. [Docket No. 253], ¶ 3; J. Orr Decl. [Docket No. 252], ¶ 3; J. Fisher Decl. [Docket No. 256], ¶ 3; R. Ford Decl. ¶ 3; D. Thompson Decl. [Docket No. 257], ¶ 3; B. Roth Decl. [Docket No. 251], ¶ 3. |
| 7 | 52. | As Herbalife independent distributors, Counterclaimants invested considerable time and considerable financial resources to develop business relationships with customers, prospective customers, and their Herbalife downline distributors. | 52. K. Orr Decl. [Docket No. 253], ¶ 3;  J. Orr Decl. [Docket No. 252], ¶ 3; J. Fisher Decl. [Docket No. 256], ¶ 3; R. Ford Decl. [Docket No. 255], ¶ 3; D. Thompson Decl. [Docket No. 257], ¶ 3; B. Roth Decl. [Docket No. 251], ¶ 3. |
| 15 | 53. | Counterclaimants expended thousands of hours and thousands of dollars, locating, grooming, training, sponsoring, and recruiting their potential customers, actual customers, and "downline" independent distributors. Counterclaimants networked and developed business relationships with persons who were in their independent sales organizations. | 53. K. Orr Decl. [Docket No. 253], ¶ 3; J. Orr Decl. [Docket No. 252], ¶ 3; J.Fisher Decl., ¶ 3; R. Ford Decl. [Docket No. 255], ¶ 3; D. Thompson Decl. [Docket No. 257], ¶ 3; B. Roth Decl. [Docket No. 251], ¶ 3. |
| 26 | 54. | Herbalife charged admission to the Herbalife classes taught by Counterclaimants but Herbalife did | 54. K. Orr Decl. [Docket No. 253], ¶ 15; J. Fisher Decl. [Docket No. 256], ¶ 14; R. Ford Decl. [Docket No. 255], ¶ 14; B. |

1   not pay Counterclaimants any

2   wages.  Counterclaimants were led

3   to believe that teaching the classes

4   was networking and growing their

5   independent distributorship

6   businesses.  Herbalife owes

7   Counterclaimants wages for these

8   classes.

9

10

11  Dated:  February 22, 2010

12

13  STEPHENS FRIEDLAND LLP

14

15  By: /s/John B. Stephens

16       Todd G. Friedland
         J. Gregory Dyer
17       Attorney for Defendants and
         Counterclaimants Robert E. Ford,
18       Julia A. Ford, Bruce H. Roth,
         Nancy A. Roth, Dianna N.
19       Thompson and Jason Fisher

Roth Decl. [Docket No. 251], ¶ 14.

MIXON JOLLY LLP

By: /s/Cameron M. Jolly
     Cameron M. Jolly
     Attorney for Defendants and
     Counterclaimants Jeff Orr and
     Nancy Orr

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

I further declare that on February 23, 2010, I served a true copy of: **Statement of Genuine Issues In Support Of Defendants And Counterclaimants' Opposition To Plaintiff Herbalife International Of America, Inc.'s Motion For Summary Judgment On The Endless Chain Scheme Counterclaim**

☐ **BY PERSONAL SERVICE** by causing such envelope to be delivered by hand to the addressee listed below.

☑ **BY ELECTRONIC SERVICE [Federal Rule Civ. Proc. Rule 5(b)]** by electronically mailing a true and correct copy through Stephens Friedland LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure rule 5(b).

| NAME & ADDRESS | PARTY REPRESENTING |
|---|---|
| Charles E. Patterson<br>CPatterson@mofo.com<br>Sean P. Gates<br>SGates@mofo.com<br>MORRISON & FOERSTER LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013-1024<br>Telephone: (213) 892-5200<br>Facsimile: (213) 892-5454 | Attorneys for Plaintiff and Counter-Defendant Herbalife International of America, Inc. |

I declare under penalty of perjury that the above is true and correct. Executed at Newport Beach, California, this 23rd day of February, 2010.

_____        _____
Carolyn McHardy Peca